# EXHIBIT A

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED DATE: 7/24/2020 5:14 PM   2018CH07627

FILED
7/24/2020 5:14 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

9884855

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| **JAMES NOSAL, individually, and on behalf of all others similarly situated,** )<br>)<br>) | |
| **Plaintiff,** )<br>) | |
| **v.** )<br>) | **Case No. 2018-CH-07627** |
| **RICH PRODUCTS CORPORATION,** )<br>) | |
| **Defendant.** )<br>) | |

### SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff James Nosal ("Nosal" or "Plaintiff"), individually and on behalf of all others similarly situated (the "Class"), by and through his attorneys, brings the following Second Amended Class Action Complaint ("Second Amended Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against Rich Products Corporation ("Rich Products" or "Defendant"), its subsidiaries and affiliates, to redress and curtail Defendant's unlawful collection, use, storage, and disclosure of Plaintiff's sensitive and proprietary biometric data. Plaintiff alleges as follows upon personal knowledge as to himself, his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      Defendant Rich Products is a multinational supplier and solutions provider for food service, in-store bakery and retail marketplaces.

FILED DATE: 7/24/2020 5:14 PM   2018CH07627

2.      When Rich Products hires an employee, he or she is enrolled in its ADP employee database. Rich Products uses the ADP employee database to monitor the time worked by its hourly employees.

3.      While many employers use conventional methods for tracking time worked (such as ID badge swipes or punch clocks), Rich Products' employees are required, as a condition of employment, to have their fingerprints scanned by a biometric timekeeping device.

4.      Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Rich Products – and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

5.      Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each employee. This exposes Rich Products employees to serious and irreversible privacy risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels and Facebook/Cambridge Analytica data breaches – employees have **_no_** means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

6.      In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* www.opm.gov/cybersecurity/cybersecurity-incidents.

FILED DATE: 7/24/2020 5:14 PM   2018CH07627

7.     An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

8.     In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

9.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that collect, store, use and disseminate Illinois citizens' biometrics, such as fingerprints.

10.     Notwithstanding the clear and unequivocal requirements of the law, Rich Products disregards its employees' statutorily protected privacy rights and unlawfully collects, stores, disseminates, and uses their biometric data in violation of BIPA. Specifically, Defendant has violated and continues to violate BIPA because it did not and continues not to:

     a.     Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by BIPA;

FILED DATE: 7/24/2020 5:14 PM    2018CH07627

  b.  Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' fingerprints, as required by BIPA;

  c.  Receive a written release from Plaintiff and others similarly situated to collect, store, or otherwise use their fingerprints, as required by BIPA; and

  d.  Obtain consent from Plaintiff and others similarly situated to disclose, redisclose, or otherwise disseminate their fingerprints to a third party as required by BIPA

11.  Accordingly, Plaintiff, on behalf of himself as well as the putative Class, seeks an Order: (1) declaring that Defendant's conduct violates BIPA; (2) requiring Defendant to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

## PARTIES

12.  Plaintiff James Nosal is a natural person and a citizen of the State of Illinois.

13.  Defendant Rich Products is a corporation organized and existing under the laws of Delaware, with its principal place of business in Buffalo, New York. Rich Products is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

## JURISDICTION AND VENUE

14.  This Court has jurisdiction over Defendant pursuant to 735 ILCS § 5/2-209 because Defendant conducts business transactions in Illinois, committed the statutory violations alleged herein in Illinois and is registered to conduct business in Illinois.

15.  Venue is proper in Cook County because Defendant is authorized to conduct business in this State, Defendant conducts business transactions in Cook County, and Defendant committed the statutory violations alleged herein in Cook County and throughout Illinois.

FILED DATE: 7/24/2020 5:14 PM   2018CH07627

## FACTUAL BACKGROUND

**I.      The Biometric Information Privacy Act.**

16.      Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

17.      In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used that company's fingerprint scanners were completely unaware the scanners were not transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

18.      Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

19.      Additionally, to ensure compliance, BIPA provides that, for <u>each</u> violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent

FILED DATE: 7/24/2020 5:14 PM    2018CH07627

violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

20.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

> a.     Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;
>
> b.     Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> c.     Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS 14/15(b).

21.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

22.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

23.     BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or

FILED DATE: 7/24/2020 5:14 PM   2018CH07627

biometric information without first obtaining consent for such disclosures. *See* 740 ILCS 14/15(d)(1).

24. BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

25. The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at a heightened risk for identity theft and left without any recourse.

26. BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics. BIPA also protects individuals' rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed, allowing individuals to make a truly informed choice. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

FILED DATE: 7/24/2020 5:14 PM   2018CH07627

27.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

## II.     Defendant Violates the Biometric Information Privacy Act.

28.     By the time BIPA passed through the Illinois Legislature in mid-2008, most companies who had experimented with using individuals' biometric data stopped doing so.

29.     However, Defendant failed to take note of the shift in Illinois law governing the collection, use, storage and dissemination of biometric data. As a result, Defendant continues to collect, store, use and disseminate individuals' biometric data in violation of BIPA.

30.     Specifically, when employees are hired by Rich Products, they are required to have their fingerprints captured and stored to enroll them in its ADP employee database(s).

31.     Rich Products uses an employee time-tracking system supplied by ADP that requires employees to use their fingerprint as a means of authentication. Unlike a traditional timeclock, employees have to use their fingerprints multiple times each day to "punch" in and out of work.

32.     Upon information and belief, Rich Products failed and continues to fail to inform its employees that it discloses their fingerprint data to at least one out-of-state third-party vendor, ADP, and likely others; fails to inform its employees that it discloses their fingerprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to inform its employees of the purposes and duration for which it collects their sensitive biometric data; and, fails to obtain written releases from employees before collecting their fingerprints.

33.     Furthermore, Defendant fails to provide employees with a written, publicly available policy identifying its retention schedule and guidelines for permanently destroying

FILED DATE: 7/24/2020 5:14 PM   2018CH07627

individuals' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

34.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA, as well as the recent data breaches, highlight why such conduct – where individuals are aware that they are providing a fingerprint, but not aware of to whom or for what purposes they are doing so – is dangerous. The Pay by Touch bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as a fingerprint, who exactly is collecting their biometric data, where it will be transmitted, for what purposes, and for how long. Defendant disregards these obligations and its employees' statutory rights and instead unlawfully collects, stores, uses and disseminates individuals' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

35.     Upon information and belief, Defendant lacks a retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and has not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

36.     Plaintiff and others similarly situated are not told what might happen to their biometric data if and when Defendant merges with another company, or worse, if and when Defendant's business folds or when the other third parties that have received the biometric data businesses fold.

37.     Since Defendant neither publishes a BIPA-mandated data retention policy nor disclose the purposes for its collection of biometric data, Rich Products employees have no idea

FILED DATE: 7/24/2020 5:14 PM   2018CH07627

whether Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. Moreover, Plaintiff and others similarly situated are not told the extent to whom Defendant currently discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

38.     These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

39.     By and through the actions detailed above, Defendant disregarded Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

### III.     Plaintiff James Nosal's Experience

40.     Plaintiff James Nosal worked for Rich Products located at 21511 Division Street, Crest Hill, IL 60403, as a maintenance technician from approximately November 2012 until approximately November 2017.

41.     As an employee, Nosal <u>was required</u> to scan his fingerprint so Rich Products could use it as an authorization method to track his time.

42.     Rich Products subsequently stored Nosal's fingerprint data in its ADP database.

43.     Nosal was required to scan his fingerprint each time he began and ended his workday.

44.     Nosal has never been informed, prior to the collection of his biometric identifiers and/or biometric information, of the specific limited purposes or length of time for which Defendant collected, stored, used and/or disseminated his biometric data.

45.     Prior to the collection of his biometric identifiers and/or biometric information, Nosal has never been informed of any biometric data retention policy developed by Defendant,

FILED DATE: 7/24/2020 5:14 PM    2018CH07627

nor has he ever been informed of whether Defendant will ever permanently delete his biometric data.

46.     Prior to the collection of his biometric identifiers and/or biometric information, Nosal has never been provided with nor ever signed a written release allowing Defendant to collect, store, use or disseminate his biometric data.

47.     Nosal has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of BIPA alleged herein.

48.     No amount of time or money can compensate Nosal if his biometric data is compromised by the lax procedures through which Defendant captured, stored, used, and disseminated his and other similarly-situated individuals' biometric data. Moreover, Nosal would not have provided his biometric data to Defendant if he had known that it would retain such information for an indefinite period of time without his consent.

49.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

50.     As Nosal is not required to allege or prove actual damages in order to state a claim under BIPA, he seeks statutory damages under BIPA as compensation for the injuries caused by Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

51.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiff brings claims on his own behalf and as a representative of all other similarly-situated individuals pursuant

FILED DATE: 7/24/2020 5:14 PM   2018CH07627

to BIPA, 740 ILCS 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

52.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it ***first*** (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; ***and*** (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS 14/15.

53.     Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, for the following class of similarly situated individuals under BIPA:

> All individuals working for Rich Products in the State of Illinois who had their fingerprints collected, captured, received, obtained, maintained, stored, disclosed or disseminated by Defendant during the applicable statutory period.

54.     This action is properly maintained as a class action under 735 ILCS 5/2-801 because:

A.     The class is so numerous that joinder of all members is impracticable;

B.     There are questions of law or fact that are common to the class;

C.     The claims of the Plaintiff are typical of the claims of the class; and,

D.     The Plaintiff will fairly and adequately protect the interests of the class.

### Numerosity

55.     The total number of putative class members exceeds fifty (50) individuals. The exact number of class members may easily be determined from Rich Products' payroll records.

FILED DATE: 7/24/2020 5:14 PM   2018CH07627

**Commonality**

56.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendant's failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

A.     Whether Defendant collected, captured, maintained, stored or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

B.     Whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, storing and disseminating their biometric identifiers or biometric information;

C.     Whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, store and disseminate Plaintiff's and the Class's biometric identifiers or biometric information;

D.     Whether Defendant has disclosed or re-disclosed Plaintiff's and the Class's biometric identifiers or biometric information;

E.     Whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

F.     Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of its last interaction with the individual, whichever occurs first;

G.     Whether Defendant complies with any such written policy (if one exists);

H.     Whether Defendant's violations of BIPA have raised a material risk that Plaintiff's and the putative Class' biometric data will be unlawfully accessed by third parties;

I.     Whether Defendant used Plaintiff's and the Class's fingerprints to identify them;

J.     Whether the violations of BIPA were committed negligently; and

FILED DATE: 7/24/2020 5:14 PM    2018CH07627

K.      Whether the violations of BIPA were committed intentionally and/or recklessly.

57.     Plaintiff anticipates that Defendant will raise defenses that are common to the class.

### Adequacy

58.     Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

### Typicality

59.     The claims asserted by Plaintiff are typical of the class members he seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

60.     Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS 5/2-801.

### Predominance and Superiority

61.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were

FILED DATE: 7/24/2020 5:14 PM    2018CH07627

brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

62.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

### FIRST CAUSE OF ACTION
**Violation of 740 ILCS 14/15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule**

63.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

64.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

65.     Defendant fails to comply with these BIPA mandates.

66.     Defendant qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

FILED DATE: 7/24/2020 5:14 PM   2018CH07627

67.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

68.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

69.     Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

70.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and has not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

71.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

FILED DATE: 7/24/2020 5:14 PM   2018CH07627

### SECOND CAUSE OF ACTION
**Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or information**

72.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

73.     BIPA requires companies to obtain informed written consent from individuals before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; ***and*** (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

74.     Defendant fails to comply with these BIPA mandates.

75.     Defendant qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

76.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

77.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

78.     Defendant systematically and automatically collected, used, stored and disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

FILED DATE: 7/24/2020 5:14 PM   2018CH07627

79.     Defendant did not inform Plaintiff and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, and used, nor did Defendant inform Plaintiff and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

80.     By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

81.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

### THIRD CAUSE OF ACTION
**Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent**

82.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

83.     BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

FILED DATE: 7/24/2020 5:14 PM   2018CH07627

84.     Defendant fails to comply with this BIPA mandate.

85.     Defendant qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

86.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

87.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

88.     Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

89.     By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

90.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

FILED DATE: 7/24/2020 5:14 PM   2018CH07627

## PRAYER FOR RELIEF

Wherefore, Plaintiff James Nosal respectfully requests that this Court enter an Order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff James Nosal as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B.    Declaring that Defendant's actions, as set forth above, violate BIPA;

C.    Awarding statutory damages of $5,000 for *each* intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.    Declaring that Defendant's actions, as set forth above, were intentional or reckless;

E.    Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to collect, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

F.    Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

G.    Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

H.    Awarding such other and further relief as equity and justice may require.


Date:   July 24, 2020                           Respectfully Submitted,

                                                */s/ Andrew C. Ficzko*

                                                Ryan F. Stephan
                                                James B. Zouras
                                                Andrew C. Ficzko
                                                Stephan Zouras, LLP
                                                100 N. Riverside Plaza
                                                Suite 2150
                                                Chicago, Illinois 60606
                                                312.233.1550
                                                312.233.1560 *f*
                                                rstephan@stephanzouras.com

FILED DATE: 7/24/2020 5:14 PM   2018CH07627

jzouras@stephanzouras.com
aficzko@stephanzouras.com
Firm ID: 43734

**ATTORNEYS FOR PLAINTIFF**