# EXHIBIT D

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
CALENDAR: 15
PAGE 1 of 24
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| JOSEPH TELLADO, individually, and on behalf) of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RICH PRODUCTS CORPORATION and ADP )<br>LLC, )<br>)<br>Defendants. )<br>)<br>)<br>) | **Case No.**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Joseph Tellado ("Tellado" or "Plaintiff"), by and through his attorneys, individually and on behalf of all others similarly situated (the "Class"), brings the following Class Action Complaint ("Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against Rich Products Corporation ("Rich Products") and ADP LLC ("ADP") (collectively, "Defendants"), their subsidiaries and affiliates, to redress and curtail Defendants' unlawful collection, use, storage, and disclosure of Plaintiff's sensitive biometric data. Plaintiff alleges as follows upon personal knowledge as to himself, his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      Defendant Rich Products is a multinational supplier and solutions provider for food service, in-store bakery and retail marketplaces.

1

2. When Rich Products hires an employee, he or she is enrolled in its ADP employee database. Defendants use the employee database to monitor the time worked by Rich Products hourly employees.

3. While many employers use conventional methods for tracking time worked (such as ID badge swipes or punch clocks), Rich Products employees are required, as a condition of employment, to have their fingerprints scanned by a biometric timekeeping device.

4. Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Defendants – and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

5. Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each employee. This exposes Rich Products employees to serious and irreversible privacy risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels and Facebook/Cambridge Analytica data breaches – employees have *no* means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

6. Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate the collection and storage of Illinois citizens' biometrics, such as fingerprints.

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 2 of 24

2

7. Despite this law, Defendants disregard Rich Products employees' statutorily protected privacy rights and unlawfully collect, store, disseminate, and use their biometric data in violation of BIPA. Specifically, Defendants have violated and continues to violate BIPA because Defendants did not and continue not to:

      a. Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, disseminated, and used, as required by BIPA;

      b. Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' fingerprints, as required by BIPA; and

      c. Receive a written release from Plaintiff and others similarly situated to collect, store, disseminate, or otherwise use their fingerprints, as required by BIPA.

8. Plaintiff and other similarly-situated individuals are aggrieved because they were not: (1) informed in writing of the purpose and length of time for which fingerprints were being collected, stored, disseminated, and used; (2) provided a publicly available retention schedule or guidelines for permanent destruction of the biometric data; and (3) provided (nor did they execute) a written release, as required by BIPA.

9. Upon information and belief, Rich Products improperly discloses employees' fingerprint data to at least one out-of-state third-party vendor, ADP.

10. Upon information and belief, Rich Products improperly discloses employees' fingerprint data to other, currently unknown, third parties, including, but not limited to third parties that host biometric data in their data center(s).

11. Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and have not and will not destroy their biometric data as required by BIPA.

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 3 of 24

3

12.     Plaintiff and others similarly situated are aggrieved by each Defendant's failure to destroy the biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interactions with the company.

13.     Plaintiff and other similarly-situated individuals have suffered an injury in fact based on each Defendant's improper disclosures to third parties.

14.     Plaintiff and other similarly-situated individuals have suffered an injury in fact based on each Defendant's violations of their legal rights.

15.     These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties. The Illinois Attorney General has just ranked identity theft as the top scam targeting Illinois residents. (*See* Exhibit A).

16.     Each Defendant is directly liable for, and had actual knowledge of, the BIPA violations alleged herein.

17.     Accordingly, Plaintiff, on behalf of himself as well as the putative Class, seeks an Order: (1) declaring that Defendants' conduct violates BIPA; (2) requiring Defendants to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 4 of 24

## PARTIES

18.     Plaintiff Joseph Tellado is a natural person and a citizen of the State of Illinois.

19.     Defendant Rich Products is a corporation organized and existing under the laws of Delaware, with its principal place of business in Buffalo, New York. Rich Products is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

4

20.     Defendant ADP is a Delaware limited liability company that is registered to do business in Illinois

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over Defendants pursuant to 735 ILCS § 5/2-209 because they conduct business transactions in Illinois, committed statutory violations and tortious acts in Illinois and are registered to conduct business in Illinois.

22.     Venue is proper in Cook County because Defendants conduct business in Cook County and committed the statutory violations alleged herein in Cook County and throughout Illinois.

## FACTUAL BACKGROUND

**I.      The Biometric Information Privacy Act.**

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 5 of 24

23.     Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

24.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who

used that company's fingerprint scanners were completely unaware the scanners were not transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

25. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

26. Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

27. BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 6 of 24

      a.    Informs the subject in writing that a biometric identifier or biometric information is being collected or stored;

      b.    Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

      c.    Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS 14/15(b).

28.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

29.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

30.     BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for such disclosures. *See* 740 ILCS 14/15(d)(1).

31.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

32.     Compliance with BIPA is straightforward, and the necessary disclosures and written release can be achieved easily through a single, signed sheet of paper. BIPA's requirements bestow upon employees a right to privacy in their biometrics, as well as the right to make informed

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 7 of 24

7

decisions when electing to provide or withhold their most sensitive information and the terms upon which they do so.

33.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at a heightened risk for identity theft and left without any recourse.

34.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics. BIPA also protects individuals' rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed, allowing individuals to make a truly informed choice. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

35.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

## II.     Defendants Violate the Biometric Information Privacy Act.

36.     By the time BIPA passed through the Illinois Legislature in mid-2008, most companies who had experimented with using employees' biometric data as an authentication method stopped doing so.

37.     However, Defendants failed to take note of the shift in Illinois law governing the collection, use, and dissemination of biometric data and still utilize their biometric allowable-

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 8 of 24

access regime. As a result, each Defendant continues to collect, store, use and disseminate employees' biometric data in violation of BIPA.

38.     Specifically, when employees are hired, Rich Products requires them to have their fingerprints scanned to enroll them in its ADP employee database(s).

39.     Rich Products uses an employee time tracking system supplied by ADP that requires employees to use their fingerprint as a means of authentication. Unlike a traditional timeclock, employees have to use their fingerprints multiple times each day to "punch" in and out of work.

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 9 of 24

40.     Upon information and belief, Rich Products fails to inform its employees that it discloses employees' fingerprint data to at least one out-of-state third-party vendor, ADP; fails to inform its employees that it discloses their fingerprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to inform its employees of the purposes and duration for which it collects employees' sensitive biometric data; and, fails to obtain written releases from employees before collecting their fingerprints.

41.     Upon information and belief, ADP fails to inform Rich Products employees that it discloses their fingerprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to inform Rich Products employees of the purposes and duration for which it collects their sensitive biometric data; and, fails to obtain written releases from employees before collecting their fingerprints.

42.     Furthermore, each Defendant fails to provide employees with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

9

43.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA, as well as the recent data breaches, highlight why such conduct – where individuals are aware that they are providing a fingerprint, but not aware of to whom or for what purposes they are doing so – is dangerous. The Pay by Touch bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as a fingerprint, who exactly is collecting their biometric data, where it will be transmitted, for what purposes, and for how long. Each Defendant disregards these obligations and their employees' statutory rights and instead unlawfully collects, stores, uses and disseminates employees' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

44.     Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and has not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data  and have not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interaction with the company.

45.     Plaintiff and others similarly situated are not told what might happen to their biometric data if and when either Defendant merges with another company, or worse, if and when either Defendant's business folds or when the other third parties that have received biometric data businesses fold.

46.     Since Defendants neither publish a BIPA-mandated data retention policy nor disclose the purposes for their collection of biometric data, Rich Products employees have no idea whether either Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 10 of 24

10

data. Moreover, Plaintiff and others similarly situated are not told to whom either Defendant currently discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

47.     These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

48.     By and through the actions detailed above, each Defendant disregarded Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

**III.     Plaintiff Joseph Tellado's Experience**

49.     Plaintiff Joseph Tellado worked for Rich Products located at 6200 Mulford St, Niles, IL 60714, as an inventory coordinator from February 2, 1997 until September 26, 2016.

50.     As an employee, Tellado <u>was required</u> to scan his fingerprint so Rich Products could use it as an authorization method to track his time.

51.     Rich Products subsequently stored Tellado's fingerprint data in its ADP database.

52.     Tellado was required to scan his fingerprint each time he began and ended his workday.

53.     Tellado has never been informed of the specific limited purposes or length of time for which either Defendant collected, stored, used and/or disseminated his biometric data.

54.     Tellado has never been informed of any biometric data retention policy developed by either Defendant, nor has he ever been informed of whether either Defendant will ever permanently delete his biometric data.

55.     Tellado has never been provided with nor ever signed a written release allowing either Defendant to collect, store, use or disseminate his biometric data.

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 11 of 24

11

56.     Tellado has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendants' violations of BIPA alleged herein.

57.     Unlike a social security number that can be changed, no amount of time or money can compensate Tellado if his biometric data is compromised by the lax procedures through which Defendants captured, stored, used, and disseminated his and other similarly-situated individuals' biometrics, and Tellado would not have provided his biometric data to either Defendant if he had known that they would retain such information for an indefinite period of time without his consent.

58.     A showing of actual damages is not necessary in order to state a claim under BIPA. Nonetheless, Tellado has been aggrieved because he suffered an injury-in-fact based on Defendants' violations of his legal rights. Additionally, Tellado suffered an invasion of a legally protected interest when Defendants secured his personal and private biometric data at a time when they had no right to do so, a gross invasion of his right to privacy. BIPA protects employees like Tellado from this precise conduct, and Defendants had no lawful right to secure this data or share it with third parties absent a specific legislative license to do so.

59.     Tellado's biometric information is economically valuable, and such value will increase as the commercialization of biometrics continues to grow. As such, Tellado was not sufficiently compensated by either Defendant for its retention and use of his and other similarly-situated employees' biometric data. Tellado would not have agreed to work for Rich Products for the compensation he received if he had known that either Defendant would retain his biometric data indefinitely and disseminate it third parties without adequate compensation to Tellado.

60.     Tellado also suffered an informational injury because Defendants failed to provide him with information to which he was entitled by statute. Through BIPA, the Illinois legislature has created both a right: an employee has the right to receive certain information prior to an

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 12 of 24

employer securing their highly personal, private and proprietary biometric data – and an injury – not receiving this extremely critical information.

61. Tellado also suffered an injury in fact because each Defendant improperly disseminated his biometric identifiers and/or biometric information to third parties, including but not limited to ADP and any other third party that hosted the biometric data in their data centers, in violation of BIPA.

62. Pursuant to 740 ILCS 14/15(b), Tellado was entitled to receive certain information prior to Defendants securing his biometric data. Namely, Tellado was entitled to information advising him of the specific limited purpose(s) and length of time for which each Defendant collects, stores, uses and disseminates his private biometric data; information regarding each Defendant's biometric retention policy; and, a written release allowing each Defendant to collect, store, use and disseminate his private biometric data. By depriving Tellado of this information, Defendants injured him. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

63. Finally, as a result of Defendants' conduct, Tellado has experienced personal injury in the form of mental anguish. For example, Tellado experiences mental anguish and injury when contemplating what would happen to his biometric data if the Defendants went bankrupt, whether either Defendant will ever delete his biometric information, and whether (and to whom) either Defendant share his biometric information.

64. Tellado has plausibly inferred actual and ongoing harm in the form of monetary damages for the value of the collection and retention of his biometric data; in the form of monetary damages by not obtaining additional compensation as a result of being denied access to material information about Defendants' policies and practices; in the form of the unauthorized disclosure

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 13 of 24

13

of his confidential biometric data to third parties; and in the form of the continuous and ongoing exposure to substantial and irreversible loss of privacy.

65.    As Tellado is not required to allege or prove actual damages in order to state a claim under BIPA, he seeks statutory damages under BIPA as compensation for the injuries caused by Defendants.

## CLASS ALLEGATIONS

66.    Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiff brings claims on his own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

67.    As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS 14/15.

68.    Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, for the following class of similarly situated employees under BIPA:

> All individuals working for Rich Products in the State of Illinois who had their fingerprints collected, captured, received, or otherwise obtained or disclosed by either Defendant during the applicable statutory period.

69.    This action is properly maintained as a class action under 735 ILCS 5/2-801

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 14 of 24

because:

    A.    The class is so numerous that joinder of all members is impracticable;

    B.    There are questions of law or fact that are common to the class;

    C.    The claims of the Plaintiff are typical of the claims of the class; and,

    D.    The Plaintiff will fairly and adequately protect the interests of the class.

### Numerosity

70.    The total number of putative class members exceeds fifty (50) individuals. The exact number of class members may easily be determined from Rich Products' payroll records.

### Commonality

71.    There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendants' failure to comply with BIPA. The common questions of law and fact include, but not limited to the following:

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 15 of 24

    A.    Whether either Defendant collected, captured or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

    B.    Whether either Defendant properly informed Plaintiff and the Class of their purposes for collecting, using, storing and disseminating their biometric identifiers or biometric information;

    C.    Whether either Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, store and disseminate Plaintiff's and the Class's biometric identifiers or biometric information;

    D.    Whether either Defendant has disclosed or re-disclosed Plaintiff's and the Class's biometric identifiers or biometric information;

    E.    Whether either Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

    F.    Whether either Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial

purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction with the employee, whichever occurs first;

G.   Whether either Defendant complies with any such written policy (if one exists);

H.   Whether either Defendant's violations of BIPA have raised a material risk that Plaintiff's and the putative Class' biometric data will be unlawfully accessed by third parties;

I.   Whether either Defendant used Plaintiff's and the Class's fingerprints to identify them;

J.   Whether the violations of BIPA were committed negligently; and

K.   Whether the violations of BIPA were committed willfully.

72.   Plaintiff anticipates that Defendants will raise defenses that are common to the class.

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 16 of 24

**Adequacy**

73.   Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

**Typicality**

74.   The claims asserted by Plaintiff are typical of the class members he seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

75.   Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation

16

against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS 5/2-801.

<strong><u>Predominance and Superiority</u></strong>

76.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

77.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

<strong>FIRST CAUSE OF ACTION<br>Violation of 740 ILCS 14/1, <em>et seq.</em><br>(On Behalf of Plaintiff and the Class)</strong>

78.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 17 of 24

17

79.    BIPA requires companies to obtain informed written consent from workers before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; **and** (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

80.    BIPA also prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

81.    Furthermore, BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

82.    Each Defendant fails to comply with these BIPA mandates.

83.    Defendant Rich Products is a Delaware corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

84.    Defendant ADP is a Delaware limited liability company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 18 of 24

18

85.    Plaintiff is an individual who had his "biometric identifiers" collected by each Defendant (in the form of his fingerprints), as explained in detail in Section II and III, *supra*. *See* 740 ILCS 14/10.

86.    Plaintiff's biometric identifiers were used to identify him and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

87.    Each Defendant systematically and automatically collected, used, stored, and disclosed Plaintiff's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

88.    Upon information and belief, Rich Products systematically disclosed Plaintiff's biometric identifiers and biometric information to at least one out-of-state third-party vendor, ADP.

89.    Upon information and belief, each Defendant systematically disclosed Plaintiff's biometric identifiers and biometric information to other, currently unknown, third parties, which hosted the biometric data in their data centers.

90.    Neither Defendant informed Plaintiff in writing that his biometric identifiers and/or biometric information were being collected, stored, used and disseminated, nor did either Defendant inform Plaintiff in writing of the specific purpose and length of term for which his biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

91.    Neither Defendant provided a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 19 of 24

19

92.     By collecting, storing, using and disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

93.     Upon information and belief, both Defendants lack retention schedules and guidelines for permanently destroying Plaintiff's and the Class' biometric data and have not and will not destroy Plaintiff's or the Class' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interaction with the company.

94.     These violations have raised a material risk that Plaintiff's and the Class's biometric data will be unlawfully accessed by third parties.

95.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 20 of 24

## SECOND CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Class)

96.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

97.    Each Defendant owed Plaintiff and the Class a duty of reasonable care. Such duty required each Defendant to exercise reasonable care in the collection and use of Plaintiff's and the Class's biometric data.

98.    Additionally, Rich Products owed Plaintiff and the Class a heightened duty – under which it assumed a duty to act carefully and not put Plaintiff and the Class at undue risk of harm – because of the employment relationship of the parties.

99.    Each Defendant breached its duty by failing to implement reasonable procedural safeguards around the collection and use of Plaintiff's and the Class's biometric identifiers and biometric information.

100.    Specifically, each Defendant breached its duties by failing to properly inform Plaintiff and the Class in writing of the specific purpose or length of time for which their fingerprints were being collected, stored, used and disseminated.

101.    Each Defendant also breached its duties by failing to provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprint data.

102.    Upon information and belief, each Defendant breached its duties because it lack retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and have not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interaction with the company.

103.    These violations have raised a material risk that Plaintiff's and the Class's biometric data will be unlawfully accessed by third parties.

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 21 of 24

21

104.    As a direct and proximate cause of Defendants' negligent misrepresentations, Plaintiff and the other Class members have suffered from diminution in the unique identifying value of their biometric information caused by Defendants' repeated dissemination and exposure of such information to multiple third parties, including ADP and data storage vendors, among others.

105.    Defendants knew and should have known that their breach would cause Plaintiff and other Class members to experience foreseeable harm associated with the exposure of their biometrics to third parties, including the discontinuation of Plaintiff's and the Class members' exclusive possession and control of their biometrics and the accompanying loss of the unique identifying value of their biometrics.

106.    Further, each Defendant's breach of its duties proximately caused and continues to cause an invasion of Plaintiff's and the Class's privacy, an informational injury, and mental anguish, in addition to the statutory damage provided in BIPA.

107.    Accordingly, Plaintiff seeks an order declaring that Defendants' conduct constitutes negligence and awarding Plaintiff and the Class damages in an amount to be calculated at trial.

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 22 of 24

## PRAYER FOR RELIEF

Wherefore, Plaintiff Joseph Tellado respectfully requests that this Court enter an Order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Joseph Tellado as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B.    Declaring that Defendants' actions, as set forth above, violate BIPA;

C.    Awarding statutory damages of $5,000 for *each* willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.    Declaring that Defendants' actions, as set forth above, constitute negligence;

E.   Declaring that Defendants' actions, as set forth above, were willful;

F.   Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendants to collect, store, use and disseminate biometric identifiers or biometric information in compliance with BIPA;

G.   Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

H.   Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

I.   Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Date:  June 18, 2018                          Respectfully Submitted,

                                              /s/ Andrew C. Ficzko

                                              Ryan F. Stephan
                                              James B. Zouras
                                              Andrew C. Ficzko
                                              Stephan Zouras, LLP
                                              205 N. Michigan Avenue
                                              Suite 2560
                                              Chicago, Illinois 60601
                                              312.233.1550
                                              312.233.1560 *f*
                                              rstephan@stephanzouras.com
                                              jzouras@stephanzouras.com
                                              aficzko@stephanzouras.com
                                              Firm ID: 43734

                                              **ATTORNEYS FOR PLAINTIFF**

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 23 of 24

23

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on June 18, 2018, I filed the attached with the Clerk of

the Court using the electronic filing system which will send such filing to all attorneys of record.

_/s/ Andrew C. Ficzko_

ELECTRONICALLY FILED
6/18/2018 4:07 PM
2018-CH-07627
PAGE 24 of 24

Order                                    (Rev. 02/24/05) CCG N002

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Tellado

       v.                    No. 18-CH-7627

Rich Products Corp.

          et al  ORDER

This matter coming to be heard on
Plaintiffs motion for class certification,
notice being given and the court being
duly advised, it is so ordered:

    Plaintiffs motion is entered and
continued to the parties' initial case 427
management date of 10/16/18 at 10:00am,
at which time the parties will address a
date for defendents to answer or otherwise
plead.

Attorney No.: 43734
Name: Haley Jenkins
Atty. for: Plaintiff
Address: 205 N Michigan #2950
City/State/Zip: Chicago IL 60601
Telephone: 312-283-1550

ENTERED
JUDGE KATHLEEN M. PANTLE-1775
JUL 09 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Dated                9            , 2018

Kathleen M. Pantle
Judge

Judge's No.

1775

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

**12-Person Jury**

Appearance

(03/10/15) CCL 0530

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

FILED
10/4/2018 2:19 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

Joseph Tellado
_____
                                           Plaintiff

v.

Rich Products Corporation, et al.
_____
                                           Defendant

No.   2018 CH 07627

Calendar:   15

FILED DATE: 10/4/2018 2:19 PM   2018CH07627

## APPEARANCE

☑ GENERAL APPEARANCE        0900 - APPEARANCE - FEE PAID;  0909 - APPEARANCE - NO FEE;
                            0904 - APPEARANCE FILED - FEE WAIVED

☑ JURY DEMAND               1900 - APPEARANCE & JURY DEMAND - FEE PAID
                            1909 - APPEARANCE & JURY DEMAND - NO FEE

The undersigned enters the appearance of:        ☐ Plaintiff    ☑ Defendant

Rich Products Corporation

(Insert litigant's name.)

                                                /s/ Joseph A. Donado
                                                _____
                                                            Signature

☑ INITIAL COUNSEL OF RECORD      ☐ PRO SE
☐ ADDITIONAL APPEARANCE          ☐ SUBSTITUTE APPEARANCE

    A copy of this appearance shall be given to all parties who have appeared and have not been found by the Court to be in default.

☑ Atty. No.:  90747          ☐ Pro Se  99500

(Please complete the following contact information.)

Name:  Seyfarth Shaw, LLP

Atty. for:  Defendant Rich Products Corporation

Address:  233 South Wacker Dr.; Suite 8000

City/State/Zip Code:  Chicago, IL 60606

Telephone:  (312) 460-5000

Service via email from opposing party/counsel will be accepted at:
rmcardle@seyfarth.com; jdonado@seyfarth.com; hahmad@seyfarth.com

by consent pursuant to Ill. Sup. Court Rules 11 and 131.

**Pro Se Only:** ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

RECEIVED
NOV 29 2018
SEYFARTH SHAW

Appearance                                                          (12/30/15) CCL N530

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

FILED
10/18/2018 5:29 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

FILED DATE: 10/18/2018 5:29 PM   2018CH07627

JOSEPH TELLADO,

                                        Plaintiff       No. 2018-CH-07627

                    v.

RICH PRODUCTS CORPORATION and ADP LLC,       Calendar:   Judge Anna Loftus

                                        Defendant

## APPEARANCE

☑ GENERAL APPEARANCE        0900 - APPEARANCE - FEE PAID;  0909 - APPEARANCE - NO FEE;
                            0904 - APPEARANCE FILED - FEE WAIVED

☐ JURY DEMAND               1900 - APPEARANCE & JURY DEMAND - FEE PAID
                            1909 - APPEARANCE & JURY DEMAND - NO FEE

The undersigned enters the appearance of:      ☐ Plaintiff   ☑ Defendant

ADP LLC

(Insert litigant's name.)

_____/s/ David C. Layden_____
                            Signature

☑ INITIAL COUNSEL OF RECORD      ☐ PRO SE
☐ ADDITIONAL APPEARANCE          ☐ SUBSTITUTE APPEARANCE

A copy of this appearance shall be given to all parties who have appeared and have not been found by the
Court to be in default.

☑ Atty. No.: 05003           ☐ Pro Se 99500

(Please complete the following contact information.)

Name: Jenner & Block LLP/David C. Layden

Atty. for: Defendant ADP LLC

Address: 353 N. Clark Street

City/State/Zip: Chicago, IL 60654

Telephone: (312) 222-9350

Primary Email: dlayden@jenner.com

Secondary Email: _____

Tertiary Email: _____

**Pro Se Only:** ☐ I have read and agree to the terms of
the Clerk's Office Electronic Notice Policy and choose
to opt in to electronic notice from the Clerk's office for
this case at this email address:

_____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

FILED
1/29/2019 2:01 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

FILED DATE: 1/29/2019 2:01 PM   2018CH07627

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| **JOSEPH TELLADO, individually,** | ) |
| **and on behalf of all others similarly situated,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **RICH PRODUCTS CORPORATION and ADP** | ) |
| **LLC,** | ) |
| | ) |
| **Defendants.** | ) |

**Case No. 2018-CH-07627**

## NOTICE OF AUTHORITY

Please take notice that Plaintiff hereby submits the attached Illinois Supreme Court

Opinion in *Rosenbach v. Six Flags Entertainment Corp.*, No. 123186 (Jan. 25, 2019), for the

Court's consideration.

Date:   January 29, 2019                    Respectfully Submitted,

                                            */s/ Andrew C. Ficzko*
                                            **ONE OF PLAINTIFF'S ATTORNEYS**

                                            Ryan F. Stephan
                                            James B. Zouras
                                            Andrew C. Ficzko
                                            **STEPHAN ZOURAS, LLP**
                                            100 N. Riverside Plaza,
                                            Suite 2150
                                            Chicago, Illinois 60606
                                            312.233.1550
                                            312.233.1560 *f*
                                            rstephan@stephanzouras.com
                                            jzouras@stephanzouras.com
                                            aficzko@stephanzouras.com

FILED DATE: 1/29/2019 2:01 PM   2018CH07627

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on January 29, 2019, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

_/s/ Andrew C. Ficzko_

FILED
1/29/2019 2:01 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

**2019 IL 123186**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

————————————

(Docket No. 123186)

STACY ROSENBACH, as Mother and Next Friend of Alexander Rosenbach, Appellant, v. SIX FLAGS ENTERTAINMENT CORPORATION *et al.*, Appellees.

*Opinion filed January 25, 2019.*

CHIEF JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Justices Thomas, Kilbride, Garman, Burke, Theis, and Neville concurred in the judgment and opinion.

## OPINION

¶ 1    The Biometric Information Privacy Act (Act) (740 ILCS 14/1 *et seq.* (West 2016)) imposes numerous restrictions on how private entities collect, retain, disclose and destroy biometric identifiers, including retina or iris scans, fingerprints, voiceprints, scans of hand or face geometry, or biometric information. Under the Act, any person "aggrieved" by a violation of its provisions "shall have a

FILED DATE: 1/29/2019 2:01 PM   2018CH07627

right of action *** against an offending party" and "may recover for each violation" the greater of liquidated damages or actual damages, reasonable attorney fees and costs, and any other relief, including an injunction, that the court deems appropriate. *Id.* § 20. The central issue in this case, which reached the appellate court by means of a permissive interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016), is whether one qualifies as an "aggrieved" person and may seek liquidated damages and injunctive relief pursuant to the Act if he or she has not alleged some actual injury or adverse effect, beyond violation of his or her rights under the statute. The appellate court answered this question in the negative. In its view, "a plaintiff who alleges only a technical violation of the statute without alleging *some* injury or adverse effect is not an aggrieved person" within the meaning of the law. (Emphasis in original.) 2017 IL App (2d) 170317, ¶ 23. We granted leave to appeal (Ill. S. Ct. R. 315(a) (eff. Nov. 1, 2017)) and now reverse and remand to the circuit court for further proceedings.

¶ 2                                    BACKGROUND

¶ 3        The question the appellate court was asked to consider in this case arose in the context of a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)). We therefore take the following well-pleaded facts from the complaint and accept them as true for purposes of our review. *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11.

¶ 4        Six Flags Entertainment Corporation and its subsidiary Great America LLC own and operate the Six Flags Great America amusement park in Gurnee, Illinois. Defendants sell repeat-entry passes to the park. Since at least 2014, defendants have used a fingerprinting process when issuing those passes. As alleged by the complaint, their system "scans pass holders' fingerprints; collects, records and stores 'biometric' identifiers and information gleaned from the fingerprints; and then stores that data in order to quickly verify customer identities upon subsequent visits by having customers scan their fingerprints to enter the theme park." According to the complaint, "[t]his makes entry into the park faster and more seamless, maximizes the time pass holders are in the park spending money, and eliminates lost revenue due to fraud or park entry with someone else's pass."

- 2 -

FILED DATE: 1/29/2019 2:01 PM  2018CH07627

¶ 5        In May or June 2014, while the fingerprinting system was in operation, Stacy Rosenbach's 14-year-old son, Alexander, visited defendants' amusement park on a school field trip. In anticipation of that visit, Rosenbach had purchased a season pass for him online. Rosenbach paid for the pass and provided personal information about Alexander, but he had to complete the sign-up process in person once he arrived at the amusement park.

¶ 6        The process involved two steps. First, Alexander went to a security checkpoint, where he was asked to scan his thumb into defendants' biometric data capture system. After that, he was directed to a nearby administrative building, where he obtained a season pass card. The card and his thumbprint, when used together, enabled him to gain access as a season pass holder.

¶ 7        Upon returning home from defendants' amusement park, Alexander was asked by Rosenbach for the booklet or paperwork he had been given in connection with his new season pass. In response, Alexander advised her that defendants did "it all by fingerprint now" and that no paperwork had been provided.

¶ 8        The complaint alleges that this was the first time Rosenbach learned that Alexander's fingerprints were used as part of defendants' season pass system. Neither Alexander, who was a minor, nor Rosenbach, his mother, were informed in writing or in any other way of the specific purpose and length of term for which his fingerprint had been collected. Neither of them signed any written release regarding taking of the fingerprint, and neither of them consented in writing "to the collection, storage, use sale, lease, dissemination, disclosure, redisclosure, or trade of, or for [defendants] to otherwise profit from, Alexander's thumbprint or associated biometric identifiers or information."

¶ 9        The school field trip was Alexander's last visit to the amusement park. Although he has not returned there since, defendants have retained his biometric identifiers and information. They have not publicly disclosed what was done with the information or how long it will be kept, nor do they have any "written policy made available to the public that discloses [defendants'] retention schedule or guidelines for retaining and then permanently destroying biometric identifiers and biometric information."

¶ 10   In response to the foregoing events, Rosenbach, acting in her capacity as mother and next friend of Alexander (see 755 ILCS 5/11-13(d) (West 2016)), brought this action on his behalf in the circuit court of Lake County.[1] The action seeks redress for Alexander, individually and on behalf of all other similarly situated persons, under the Act (740 ILCS 14/1 *et seq.* (West 2016)), which, as noted at the outset of this opinion, provides that any person "aggrieved" by a violation of the Act's provisions "shall have a right of action *** against an offending party" and "may recover for each violation" the greater of liquidated damages or actual damages, reasonable attorney fees and costs, and any other relief, including an injunction, that the court deems appropriate (*id.* § 20).

¶ 11   The complaint, as amended, is in three counts. Count I seeks damages on the grounds that defendants violated section 15(b) of the Act (*id.* § 15(b)) by (1) collecting, capturing, storing, or obtaining biometric identifiers and biometric information from Alexander and other members of the proposed class without informing them or their legally authorized representatives in writing that the information was being collected or stored; (2) not informing them in writing of the specific purposes for which defendants were collecting the information or for how long they would keep and use it; and (3) not obtaining a written release executed by Alexander, his mother, or members of the class before collecting the information. Count II requests injunctive relief under the Act to compel defendants to make disclosures pursuant to the Act's requirements and to prohibit them from violating the Act going forward. Count III asserts a common-law action for unjust enrichment.

¶ 12   Defendants sought dismissal of Rosenbach's action under both sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2016)) in a combined motion filed pursuant to section 2-619.1 (*id.* § 2-619.1). As grounds for their motion, defendants asserted that one of the named defendants had no relation to the facts alleged, that plaintiff had suffered no actual or threatened injury and therefore

---

[1]Although Stacy Rosenbach has been referred to as the plaintiff in these proceedings, that is not technically accurate. Alexander is the plaintiff. Rosenbach is his next friend. A next friend of a minor is not a party to the litigation but simply represents the real party, who, as a minor, lacks capacity to sue in his or her own name. See *Blue v. People*, 223 Ill. App. 3d 594, 596 (1992). During oral argument, counsel for Rosenbach confirmed that she appears here solely on behalf of her son and asserts no claim for herself.

- 4 -

FILED DATE: 1/29/2019 2:01 PM 2018CH07627

FILED DATE: 1/29/2019 2:01 PM   2018CH07627

lacked standing to sue, and that plaintiff's complaint failed to state a cause of action for violation of the Act or for unjust enrichment.

¶ 13      Following a hearing, and proceeding only under section 2-615 of the Code, the circuit court denied the motion as to counts I and II, which sought damages and injunctive relief under the Act, but granted the motion as to count III, the unjust enrichment claim, and dismissed that claim with prejudice.

¶ 14      Defendants sought interlocutory review of the circuit court's ruling under Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016) on the grounds that it involved a question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal might materially advance the ultimate termination of the litigation. The following two questions of law were identified by the circuit court:

      (1) "[w]hether an individual is an aggrieved person under §20 of the Illinois Biometric Information Privacy Act, 740 ILCS 14/20, and may seek statutory liquidated damages authorized under §20(l) of the Act when the only injury he alleges is a violation of §l5(b) of the Act by a private entity who collected his biometric identifiers and/or biometric information without providing him the required disclosures and obtaining his written consent as required by §15(b) of the Act," and

      (2) "[w]hether an individual is an aggrieved person under §20 of the Illinois Biometric Information Privacy Act, 740 ILCS 14/20, and may seek injunctive relief authorized under §20(4) of the Act, when the only injury he alleges is a violation of §15(b) of the Act by a private entity who collected his biometric identifiers and/or biometric information without providing him the required disclosures and obtaining his written consent as required by §15(b) of the Act."

¶ 15      The appellate court granted review of the circuit court's order and answered both certified questions in the negative. In its view, a plaintiff is not "aggrieved" within the meaning of the Act and may not pursue either damages or injunctive relief under the Act based solely on a defendant's violation of the statute. Additional injury or adverse effect must be alleged. The injury or adverse effect need not be pecuniary, the appellate court held, but it must be more than a "technical violation of the Act." 2017 IL App (2d) 170317, ¶ 28.

FILED DATE: 1/29/2019 2:01 PM   2018CH07627

¶ 16      Rosenbach petitioned this court for leave to appeal. Ill. S. Ct. R. 315 (eff. Nov. 1, 2017). We allowed her petition and subsequently permitted friend of the court briefs to be filed in support of her position by the Electronic Privacy Information Center and by a consortium of groups including the American Civil Liberties Union, the Center for Democracy and Technology, and the Electronic Frontier Foundation. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). The court also permitted the Restaurant Law Center and Illinois Restaurant Association, the Internet Association, and the Illinois Chamber of Commerce to file friend of the court briefs in support of defendants.

¶ 17                                    ANALYSIS

¶ 18      Because this appeal concerns questions of law certified by the circuit court pursuant to Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016), our review is *de novo*. *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21. *De novo* review is also appropriate because the appeal arose in the context of an order denying a section 2-615 motion to dismiss (*Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006)) and its resolution turns on a question of statutory interpretation (*Eads v. Heritage Enterprises, Inc.*, 204 Ill. 2d 92, 96 (2003)).

¶ 19      The Biometric Privacy Information Act (740 ILCS 14/1 *et seq.* (West 2016)), on which counts I and II of Rosenbach's complaint are founded, was enacted in 2008 to help regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* § 5(g). The Act defines "biometric identifier" to mean "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* § 10. "Biometric information" means "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.* It is undisputed that the thumbprint collected by defendants from Rosenbach's son, Alexander, when they processed his season pass constituted a biometric identifier subject to the Act's provisions and that the electronically stored version of his thumbprint constituted biometric information within the meaning of the law.

¶ 20      Section 15 of the Act (*id.* § 15) imposes on private entities such as defendants various obligations regarding the collection, retention, disclosure, and destruction of biometric indentifiers and biometric information. Among these is the following:

FILED DATE: 1/29/2019 2:01 PM    2018CH07627

"(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." *Id.* § 15(b).

¶ 21    These provisions are enforceable through private rights of action. Specifically, section 20 of the Act provides that "[a]ny person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party." *Id.* § 20. Section 20 further provides that

"[a] prevailing party may recover for each violation:

(1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;

(2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;

(3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and

(4) other relief, including an injunction, as the State or federal court may deem appropriate." *Id.*

¶ 22    As noted earlier in this opinion, Rosenbach's complaint alleges that defendants violated the provisions of section 15 of the Act when it collected her son's

FILED DATE: 1/29/2019 2:01 PM    2018CH07627

thumbprint without first following the statutorily prescribed protocol. For the purposes of this appeal, the existence of those violations is not contested. The basis for defendants' current challenge is that no other type of injury or damage to Rosenbach's son has been alleged. Rosenbach seeks redress on her son's behalf and on behalf of a class of similarly situated individuals based solely on defendants' failure to comply with the statute's requirements. In defendants' view, that is not sufficient. They contend that an individual must have sustained some actual injury or harm, apart from the statutory violation itself, in order to sue under the Act. According to defendants, violation of the statute, without more, is not actionable.

¶ 23     While the appellate court in this case found defendants' argument persuasive, a different district of the appellate court subsequently rejected the identical argument in *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175. We reject it as well, as a recent federal district court decision correctly reasoned we might do. *In re Facebook Biometric Information Privacy Litigation*, 326 F.R.D. 535, 545-47 (N.D. Cal. 2018).

¶ 24     We begin our analysis with basic principles of statutory construction. When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. That intent is best determined from the plain and ordinary meaning of the language used in the statute. When the statutory language is plain and unambiguous, we may not depart from the law's terms by reading into it exceptions, limitations, or conditions the legislature did not express, nor may we add provisions not found in the law. *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 37-38 (2009).

¶ 25     Defendants read the Act as evincing an intention by the legislature to limit a plaintiff's right to bring a cause of action to circumstances where he or she has sustained some actual damage, beyond violation of the rights conferred by the statute, as the result of the defendant's conduct. This construction is untenable. When the General Assembly has wanted to impose such a requirement in other situations, it has made that intention clear. Section 10a(a) of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/10a(a) (West 2016)) is an example. To bring a private right of action under that law, actual damage to the plaintiff must be alleged. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002); *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018).

- 8 -

FILED DATE: 1/29/2019 2:01 PM   2018CH07627

¶ 26      In contrast is the AIDS Confidentiality Act (410 ILCS 305/1 *et seq.* (West 2016)). There, the legislature authorized private rights of action for monetary relief, attorney fees, and such other relief as the court may deem appropriate, including an injunction, by any person "aggrieved" by a violation of the statute or a regulation promulgated under the statute. *Id.* § 13. Proof of actual damages is not required in order to recover. *Doe v. Chand*, 335 Ill. App. 3d 809, 822 (2002).

¶ 27      Section 20 of the Act (740 ILCS 14/20 (West 2016)), the provision that creates the private right of action on which Rosenbach's cause of action is premised, clearly follows the latter model. In terms that parallel the AIDS Confidentiality Act, it provides simply that "[a]ny person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party." *Id.*

¶ 28      Admittedly, this parallel, while instructive (*Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25), is not dispositive. Separate acts with separate purposes need not, after all, define similar terms in the same way. Rather, " 'the same word may mean one thing in one statute and something different in another, dependent upon the connection in which the word is used, the object or purpose of the statute, and the consequences which probably will result from the proposed construction. [Citations.]' " *People v. Ligon*, 2016 IL 118023, ¶ 26 (quoting *Mack v. Seaman*, 113 Ill. App. 3d 151, 154 (1983)). Accepted principles of statutory construction, however, compel the conclusion that a person need not have sustained actual damage beyond violation of his or her rights under the Act in order to bring an action under it.

¶ 29      As with the AIDS Confidentiality Act, the Act does not contain its own definition of what it means to be "aggrieved" by a violation of the law. Where, as here, a statutory term is not defined, we assume the legislature intended for it to have its popularly understood meaning. Likewise, if a term has a settled legal meaning, the courts will normally infer that the legislature intended to incorporate that established meaning into the law. *People v. Johnson*, 2013 IL 114639, ¶ 9. Applying these canons of construction, it is clear that defendants' challenge to Rosenbach's right to bring suit on behalf of her son is meritless.

¶ 30      More than a century ago, our court held that to be aggrieved simply "means having a substantial grievance; a denial of some personal or property right." *Glos v.*

FILED DATE: 1/29/2019 2:01 PM   2018CH07627

*People*, 259 Ill. 332, 340 (1913). A person who suffers actual damages as the result of the violation of his or her rights would meet this definition of course, but sustaining such damages is not necessary to qualify as "aggrieved." Rather, "[a] person is prejudiced or aggrieved, in the legal sense, when a legal right is invaded by the act complained of *or* his pecuniary interest is directly affected by the decree or judgment." (Emphasis added.) *Id.*

¶ 31     This understanding of the term has been repeated frequently by Illinois courts and was embedded in our jurisprudence when the Act was adopted. See *American Surety Co. v. Jones*, 384 Ill. 222, 229-30 (1943); *In re Estate of Hinshaw*, 19 Ill. App. 2d 239, 255 (1958); *In re Estate of Harmston*, 10 Ill. App. 3d 882, 885 (1973); *Greeling v. Abendroth*, 351 Ill. App. 3d 658, 662 (2004). We must presume that the legislature was aware of that precedent and acted accordingly. See *People v. Cole*, 2017 IL 120997, ¶ 30.

¶ 32     The foregoing understanding of the term is also consistent with standard definitions of "aggrieved" found in dictionaries, which we may consult when attempting to ascertain the plain and ordinary meaning of a statutory term where, as here, the term has not been specifically defined by the legislature. *In re M.I.*, 2016 IL 120232, ¶ 26. Merriam-Webster's Collegiate Dictionary, for example, defines aggrieved as "suffering from an infringement or denial of legal rights." Merriam-Webster's Collegiate Dictionary 25 (11th ed. 2006). Similarly, the leading definition given in Black's Law Dictionary is "having legal rights that are adversely affected." Black's Law Dictionary 77 (9th ed. 2009). This is therefore the meaning we believe the legislature intended here.

¶ 33     Based upon this construction, the appellate court's response to the certified questions was incorrect. Through the Act, our General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information. See *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 953 (N.D. Cal. 2018). The duties imposed on private entities by section 15 of the Act (740 ILCS 14/15 (West 2016)) regarding the collection, retention, disclosure, and destruction of a person's or customer's biometric identifiers or biometric information define the contours of that statutory right. Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person

FILED DATE: 1/29/2019 2:01 PM   2018CH07627

or customer whose biometric identifier or biometric information is subject to the breach. Consistent with the authority cited above, such a person or customer would clearly be "aggrieved" within the meaning of section 20 of the Act (*id.* § 20) and entitled to seek recovery under that provision. No additional consequences need be pleaded or proved. The violation, in itself, is sufficient to support the individual's or customer's statutory cause of action.

¶ 34 In reaching a contrary conclusion, the appellate court characterized violations of the law, standing alone, as merely "technical" in nature. 2017 IL App (2d) 170317, ¶ 23. Such a characterization, however, misapprehends the nature of the harm our legislature is attempting to combat through this legislation. The Act vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent. *Patel*, 290 F. Supp. 3d at 953. These procedural protections "are particularly crucial in our digital world because technology now permits the wholesale collection and storage of an individual's unique biometric identifiers—identifiers that cannot be changed if compromised or misused." *Id.* at 954. When a private entity fails to adhere to the statutory procedures, as defendants are alleged to have done here, "the right of the individual to maintain [his or] her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized." *Id.* This is no mere "technicality." The injury is real and significant.

¶ 35 This construction of the law is supported by the General Assembly's stated assessment of the risks posed by the growing use of biometrics by businesses and the difficulty in providing meaningful recourse once a person's biometric identifiers or biometric information has been compromised. In enacting the law, the General Assembly expressly noted that

> "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS 14/5(c) (West 2016).

FILED DATE: 1/29/2019 2:01 PM    2018CH07627

The situation is particularly concerning, in the legislature's judgment, because "[t]he full ramifications of biometric technology are not fully known." *Id.* § 5(f).

¶ 36      The strategy adopted by the General Assembly through enactment of the Act is to try to head off such problems before they occur. It does this in two ways. The first is by imposing safeguards to insure that individuals' and customers' privacy rights in their biometric identifiers and biometric information are properly honored and protected to begin with, before they are or can be compromised. The second is by subjecting private entities who fail to follow the statute's requirements to substantial potential liability, including liquidated damages, injunctions, attorney fees, and litigation expenses "for each violation" of the law (*id.* § 20) whether or not actual damages, beyond violation of the law's provisions, can be shown.

¶ 37      The second of these two aspects of the law is as integral to implementation of the legislature's objectives as the first. Other than the private right of action authorized in section 20 of the Act, no other enforcement mechanism is available. It is clear that the legislature intended for this provision to have substantial force. When private entities face liability for failure to comply with the law's requirements without requiring affected individuals or customers to show some injury beyond violation of their statutory rights, those entities have the strongest possible incentive to conform to the law and prevent problems before they occur and cannot be undone. Compliance should not be difficult; whatever expenses a business might incur to meet the law's requirements are likely to be insignificant compared to the substantial and irreversible harm that could result if biometric identifiers and information are not properly safeguarded; and the public welfare, security, and safety will be advanced. That is the point of the law. To require individuals to wait until they have sustained some compensable injury beyond violation of their statutory rights before they may seek recourse, as defendants urge, would be completely antithetical to the Act's preventative and deterrent purposes.

¶ 38      In sum, defendants' contention that redress under the Act should be limited to those who can plead and prove that they sustained some actual injury or damage beyond infringement of the rights afforded them under the law would require that we disregard the commonly understood and accepted meaning of the term "aggrieved," depart from the plain and, we believe, unambiguous language of the

- 12 -

FILED DATE: 1/29/2019 2:01 PM   2018CH07627

law, read into the statute conditions or limitations the legislature did not express, and interpret the law in a way that is inconsistent with the objectives and purposes the legislature sought to achieve. That, of course, is something we may not and will not do. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83 (1994); *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 275 (2009).

¶ 39                                    CONCLUSION

¶ 40         For the foregoing reasons, we hold that the questions of law certified by the circuit court must be answered in the affirmative. Contrary to the appellate court's view, an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act. The judgment of the appellate court is therefore reversed, and the cause is remanded to the circuit court for further proceedings.

¶ 41         Certified questions answered.

¶ 42         Appellate court judgment reversed.

¶ 43         Cause remanded.

## PROOF OF SERVICE

**Tellado v. Rich Products Corporation**
**Case No.: 18-CH-07627**

I, the undersigned, declare as follows:

On January 29, 2019, I served the foregoing documents described as follows:

1. Notice of Authority
2. IL Supreme Court Opinion-Rosenbach v. Six Flags Entertainment

on all interested parties in this action addressed as follows:

David C. Layden
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
dlayden@jenner.com

Linda H. Joseph
Schroder, Joseph & Associates
392 Pearl Street, Suite 301
Buffalo, NY 14202
ljoseph@sjalegal.com

  X   By Electronic Mail on January 29, 2019, in Chicago, Illinois, I served the above-referenced documents on the above-stated addressee(s) by electronic mail.

_____ By depositing in U.S. Mail on January 29, 2019 at 100 N. Riverside Plaza, Chicago, Illinois, I served the above-referenced documents on the above-stated addressee(s) with proper postage prepaid.

_____ By Facsimile on January 29, 2019 in Chicago, Illinois, I served the above-referenced documents on the above-stated addressee(s).

    I declare under penalty of perjury that the above is true and correct.

Executed on January 29, 2019, in Chicago, Illinois.

    _/s/ Andrew C. Ficzko_
    Andrew C. Ficzko
    Ryan F. Stephan
    James B. Zouras
    STEPHAN ZOURAS, LLP
    100 North Riverside Plaza, Suite 2150
    Chicago, Illinois 60606
    Telephone: (312) 233-1550
    Fax: (312) 233-1560
    aficzko@stephanzouras.com

SUBSCRIBED AND SWORN
TO BEFORE ME THIS 29TH DAY
OF JANUARY, 2019
_____
NOTARY PUBLIC



OFFICIAL SEAL
MARK S SCHAFFNER
My Commission Expires
October 14, 2020

Order                                    (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

TELLADO
          v.                    No. 2018 CH 7627

RICH PRODUCTS CORP,
ADP LLC            **ORDER**

THIS MATTER COMING TO BE HEARD ON
STATUS AND EACH PARTY APPEARING THROUGH
ITS COUNSEL, IT IS HEREBY ORDERED:

(1) DEFENDANTS SHALL ANSWER OR
OTHERWISE RESPOND TO THE COMPLAINT
BY MARCH 20, 2019; AND

(2) THIS MATTER IS SET FOR FURTHER
STATUS ON APRIL 10, 2019 AT 10:00 A.M.

Attorney No.: 96747
Name: J DONADO
Atty. for: DEF. RICH PRODUCTS
Address: 233 S WACKER, STE 8000
City/State/Zip: CHICAGO 60606
Telephone: 312 460 5000

**ENTERED:**

Dated: Judge Anna M. Loftus
FEB 6 2019
_____
Judge    Circuit Court-2102    Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Hearing Date: 4/2/2019 9:30 AM - 9:30 AM

FILED
3/20/2019 9:29 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

FILED DATE: 3/20/2019 9:29 PM   2018CH07627

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| JOSEPH TELLADO, individually and on behalf of all others similarly situated, ) ) ) | |
| *Plaintiff,* ) | |
| v. ) | No. 2018-CH-07627 |
| ) | Hon. Anna M. Loftus |
| RICH PRODUCTS CORPORATION and ADP, LLC, ) ) ) | |
| *Defendants.* ) | |

## <u>NOTICE OF MOTION</u>

TO:   Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
Stephan Zouras, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, IL 60601
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

Richard P. McArdle
Joseph A. Donado
Seyfarth Shaw LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606
rmcardle@seyfarth.com
jdonado@seyfarth.com

PLEASE TAKE NOTICE THAT, on April 2, 2019, at 9:30 a.m., or at such time thereafter as counsel may be heard, we shall appear before the Honorable Anna M. Loftus, or any judge sitting in her stead, in Courtroom 2410, Daley Center, 50 W. Washington, Chicago, Illinois 60602, and then and there present the attached Defendant ADP, LLC's Motion To Dismiss Pursuant to 735 ILCS 5/2-615.

FILED DATE: 3/20/2019 9:29 PM   2018CH07627

Dated: March 20, 2019

Respectfully submitted,

ADP, LLC

By: /s/ David C. Layden
       One of its attorneys

Ross B. Bricker
David C. Layden
Joshua M. Levin
Reanne Zheng
JENNER & BLOCK LLP (05003)
353 N. Clark St.
Chicago, Illinois 60654
(312) 222-9350
RBricker@jenner.com
DLayden@jenner.com
JLevin@jenner.com
RZheng@jenner.com

FILED DATE: 3/20/2019 9:29 PM    2018CH07627

## <u>CERTIFICATE OF SERVICE</u>

I, David C. Layden, an attorney, hereby certify that I caused to be served the following Defendant ADP, LLC's Motion To Dismiss Pursuant to 735 ILCS 5/2-615 on the counsel of record first above listed via email on March 20, 2019.

/s/ David C. Layden

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
3/20/2019 3:42 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

**Firm ID No. 90747**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

JOSEPH TELLADO, individually and on behalf
of all other similarly situated,

                    Plaintiff,

        v.

RICH PRODUCTS CORPORATION and
ADP, LLC,

                    Defendant.

Case No. 2018-CH-7627

Calendar: 15

Honorable Anna Loftus

## DEFENDANT RICH PRODUCTS CORPORATION'S
## SECTION 2-615 MOTION TO DISMISS

In accordance with 735 ILCS 5/2-615 ("Section 2-615"), Defendant Rich Products Corporation ("Rich Products") hereby moves to dismiss Count II of Plaintiff Joseph Tellado's Complaint because it fails to allege a cognizable negligence claim. In further support of this Motion, Rich Products states as follows:

## **BACKGROUND**

1.      Tellado has filed a two-count purported class action Complaint against Rich Products, asserting claims under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") and common law negligence.

2.      The essence of these claims is that Tellado believes that he should have received notice regarding the collection, storage, and use of his "biometric data," *i.e.*, the data collected by the alleged scanner that Tellado used when clocking in and out from work. (Compl. at ¶¶7, 50, 57.) Notably, however, Tellado has not alleged a cognizable duty under Illinois common law or that he has actually been harmed by Rich Products' supposed conduct, which means he has not adequately

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

alleged the essential elements of a common law negligence claim. Count II should be dismissed as a result.

## LEGAL STANDARD

3.        A Section 2–615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429–30 (2006). In reviewing the sufficiency of a complaint, a court accepts as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Id.* But as the Supreme Court has "repeatedly stated * * * Illinois is a fact-pleading jurisdiction," which means that a "plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of faction, not simply conclusions." *Id.* (citation omitted).

## ARGUMENT

4.        Tellado's negligence claim should be dismissed for want of duty. *See Cooney v. Chicago Pub. Sch.*, 407 Ill. App. 3d 358, 361–63 (1st Dist. 2010) (to prevail on a negligence claim, a plaintiff "must allege" that "[1] defendants owed a duty to plaintiffs; [2] defendants breached that duty; and [3] the breach caused injury to plaintiffs"). Indeed, Illinois does not impose a common-law duty to safeguard personal information. *Id.* (affirming dismissal of negligence claim because the defendant "had no duty to protect the plaintiff's [personal] information from disclosure.").

5.        And "unless a duty is owed, there is no negligence" *Washington v. City of Chicago*, 188 Ill. 2d 235, 239 (1999) (internal quotation omitted). *See also Dolmage v. Combined Ins. Co. of Am.*, No. 14-cv-3809, 2015 WL 292947, **5–6 (N.D. Ill. Jan. 21, 2015) ("Because there is no common law duty to protect personal information in Illinois, Plaintiff has failed to state a claim for negligence.") (internal citation omitted); *Cmty. Bank of Trenton v. Schnuck Markets*, Inc., No. 15-cv-01125, 2016 WL 5409014, *12 (S.D. Ill. Sept. 28, 2016) (similar); *Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*, No. 16-CV-7619, 2016 WL 7409916, *3 (N.D. Ill. Dec. 22, 2016) (similar); *Worix v. MedAssets, Inc.*, 869 F.

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

Supp. 2d 893, 897–98 (N.D. Ill. 2012) (similar).  That Tellado has failed to allege a cognizable duty gives reason alone to warrant dismissal of Count II.

6.     Moreover, even if Illinois common law recognized a duty to safeguard personal information, Tellado does not plead any breach of such a duty or that he has suffered an injury proximately caused by the supposed breach of duty.  *See also Boyd v. Travelers Ins. Co.*, 166 Ill. 2d 188, 197 (1995) (stating that "[t]o state a cause of action for negligence, a plaintiff must plead the existence of a duty owed by the  defendant to the plaintiff, a breach of that duty, an injury proximately caused by the breach, and damages" and holding that a "threat of future harm, not yet realized, is not actionable."); *Lewis v. Lead Indus. Ass'n, Inc.*, 342 Ill. App. 3d 95, 101 (1st Dist. 2003) ("in order for a plaintiff to recover damages for an increased risk of future harm in a tort action, he or she must establish, among other things, that the defendant's breach of duty caused a present injury which resulted in that increased risk"); *see also Dillon v. Evanston Hospital*, 199 Ill.2d 483, 496–507 (2002) (similar); *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 177 (1982) (similar).

7.     Indeed, there is no allegation that Tellado's information has been hacked, compromised, or improperly accessed or that he has been hurt by improper disclosure or otherwise. For these reasons, too, the Complaint fails to allege the essential elements of a common-law negligence claim such that Count II should be dismissed in accordance with Section 2-615.

8.     Count II is also duplicative of the BIPA claim alleged in Count I.  To be sure, the alleged breaches of Illinois common law in Count II are directly connected to the alleged breaches of BIPA in Count I, meaning that the negligence claim rests upon the same operative facts as Count I and the same injury.  (*See* Compl. at ¶¶79-107.)  Because Count II of the Complaint cannot stand on its own, Defendants respectfully submit that that Count should be dismissed as duplicative.  *See, e.g., Fabricare Equip. Credit Corp. v. Bell, Boyd & Lloyd*, 328 Ill. App. 3d 784, 791 (1st Dist. 2002); *Sandler*

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

*v. Sweet*, 2017 IL App (1st) 163313, ¶23; *see generally Calhoun v. Rane*, 234 Ill. App. 3d 90, 95 (1st Dist. 1992) (a "duplicative count may be properly dismissed").

*   *   *

WHEREFORE Defendant Rich Products Corporation respectfully submits that the Complaint fails to allege duty, causation, or injury with respect to Plaintiff Joseph Tellado's common-law negligence claim such that Count II should be dismissed in accordance with 735 ILCS 5/2-615 for failure to allege these essential elements. In the alternative, Count II should be dismissed as duplicative of Count I. Accordingly, Rich Products respectfully requests that the Court enter and Order dismissing Count II and granting whatever other relief the Court deems appropriate.

DATED: March 20, 2019                Respectfully submitted,

                                                      SEYFARTH SHAW LLP


                                                      By:  /s/ Joseph A. Donado
                                                      _____

                                                      Richard P. McArdle (rmcardle@seyfarth.com)
                                                      Joseph A. Donado (jdonado@seyfarth.com)
                                                      SEYFARTH SHAW LLP
                                                      233 South Wacker Drive; Suite 8000
                                                      Chicago, Illinois 60606
                                                      Telephone:  (312) 460-5000
                                                      Facsimile:  (312) 460-7000

                                                      ***Attorneys for Defendant Rich Products Corporation***

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph A. Donado, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing **DEFENDANT RICH PRODUCTS CORPORATION'S SECTION 2-615 MOTION TO DISMISS** to be served upon the following by email on this 20th day of February 2019:

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue
Suite 2560
Chicago, Illinois, 60601
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

Ross B. Bricker
David C. Layden
Joshua M. Levin
Reanne Zheng
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
RBricker@jenner.com
DLayden@jenner.com
JLevin@jenner.com
RZheng@jenner.com

/s/ Joseph A. Donado

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
3/20/2019 3:42 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

**Firm ID No. 90747**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

JOSEPH TELLADO, individually and on behalf
of all other similarly situated,

     Plaintiff,

  v.

RICH PRODUCTS CORPORATION and
ADP, LLC,

     Defendant.

Case No. 2018-CH-7627

Calendar: 15

Honorable Anna Loftus

---

## DEFENDANT RICH PRODUCTS CORPORATION'S
## SECTION 2-619 MOTION TO DISMISS

---

DATED: March 20, 2019

Respectfully submitted,

SEYFARTH SHAW LLP


By: /s/ Joseph A. Donado

Richard P. McArdle (rmcardle@seyfarth.com)
Joseph A. Donado (jdonado@seyfarth.com)
SEYFARTH SHAW LLP
233 South Wacker Drive; Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

***Attorneys for Defendant Rich Products
Corporation***

55601954v.2

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

# TABLE OF CONTENTS

**Page**

BACKGROUND ....................................................................................2

    I.    Tellado's Complaint Does Not Allege a "Distinct and Palpable" Injury.......................2

    II.    The Illinois Supreme Court's Recent Interpretation of Statutory Language
    Does Not Affect a Common-Law Standing Defense.........................................3

LEGAL STANDARD ..............................................................................5

ARGUMENT .......................................................................................5

    I.    Tellado Lacks Standing Under Illinois Common Law Because He Has Not
    Alleged a "Distinct and Palpable" Injury-In-Fact...........................................5

        A.    With Respect to Claims Relating to Improper Data Retention, A Risk
        of Future Harm Is Not A "Distinct and Palpable" Injury.............................6

        B.    Illinois Law Accords With Other Jurisdictions as to What Constitutes
        an Injury-in-Fact for Claims Based on Personal Data Retention. ...................8

        C.    Tellado Lacks Common-Law Standing For The Added Reason That
        His Alleged Injury—Fear of Disclosure of His Biometric
        Information—Exists Irrespective of Defendants' Compliance With
        BIPA. ..........................................................................10

        D.    Bare Allegations of an "Invasion" of Privacy and "Mental Anguish"
        Are Insufficient To Give Rise To a "Palpable" Injury-In-Fact. ....................11

        E.    That BIPA Allows for Liquidated And Actual Damages Does Not
        Mean That Tellado Has Standing or that he Is Automatically Entitled
        to Relief. .......................................................................13

    II.    In the Alternative, If Tellado Has Suffered an "Injury" from Clocking In and
    Out of Work, Then His Claims Are Preempted by the Illinois Workers'
    Compensation Act, Which Supplies the Exclusive Remedy for Workplace
    Injuries..........................................................................................17

CONCLUSION.....................................................................................19

i

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Scott Labor LLC,*
    377 F. Supp. 2d 647 (N.D. Ill. 2005) ...................................................................12

*Allison v. Aetna, Inc.,*
    No. CIV.A. 09-2560, 2010 WL 3719243 (E.D. Pa. Mar. 9, 2010) .....................9

*Amburgy v. Express Scripts, Inc.,*
    671 F. Supp. 2d 1046 (E.D. Mo. 2009) ..............................................................9

*Amtech Sys. Corp. v. Illinois State Toll Highway Auth.,*
    264 Ill. App. 3d 1095 (1st Dist. 1994) ...........................................................5, 11

*Baylay v. Etihad Airways P.J.S.C.,*
    222 F. Supp. 3d 698 (N.D. Ill. 2016), *aff'd*, 881 F.3d 1032 (7th Cir. 2018) ....................18

*Beck v. McDonald,*
    848 F.3d 262 (4th Cir 2017)...........................................................................9, 10

*BMW of North Am., Inc. v. Gore,*
    517 U.S. 559 (1996) ........................................................................................16

*Braitberg v. Charter Commc'ns, Inc.,*
    836 F.3d 925 (8th Cir. 2016).............................................................................9

*Busse v. Motorola, Inc.,*
    351 Ill. App. 3d 67 (3rd Dist. 2004) ................................................................12

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013).........................................................................6, 7, 12, 13

*Cooley v. Power Constr. Co., LLC,*
    2018 IL App (1st) 171292 ...............................................................................18

*Cooney v. Chicago Pub. Sch.,*
    407 Ill. App. 3d 358 (1st Dist. 2010) ........................................................*passim*

*Crisafulli v. Amertias Life Insurance Co.,*
    No. 13–5937, 2015 WL 1969176 (D.N.J. 2015) ..............................................12

*Doe v. Chao,*
    540 U.S. 614 (2004) ........................................................................................14

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

*Dowd & Dowd, Ltd. v. Gleason,*
   181 Ill.2d 460 (1998) ................................................................................ 4

*Folta v. Ferro Eng'g,*
   2015 IL 118070 ...................................................................................... 18

*Greer v. Ill. Housing Dev. Auth.,*
   122 Ill.2d 462 (1988) ................................................................. 1, 4, 7, 14

*Gubala v. Time Warner Cable, Inc.,*
   846 F.3d 909 (7th Cir. Jan. 20, 2017) .................................................... 9

*Hammond v. The Bank of New York Mellon Corp.,*
   No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010) .............................. 9

*Hydrite Chem. Co. v. Calumet Lubricants Co.,*
   47 F.3d 887 (7th Cir. 1995) .................................................................. 13

*Key v. DSW, Inc.,*
   454 F. Supp. 2d 684 (S.D. Ohio 2006) ................................................... 9

*Lebron v. Gottlieb Mem'l Hosp.,*
   237 Ill. 2d 217 (2010) ............................................................................ 5

*Lewis v. Lead Indus. Ass'n, Inc.,*
   342 Ill. App. 3d 95 (1st Dist. 2003) ..................................................... 6

*Loitz v. Remington Arms Co.,*
   138 Ill. 2d 404 (1990) .......................................................................... 16

*Long v. Elborno,*
   397 Ill. App. 3d 982 (1st Dist. 2010) ................................................... 4

*Lutkauskas v. Ricker,*
   2015 IL 117090 ...................................................................................... 3

*Lyon v. Dep't of Children & Family Servs.,*
   209 Ill. 2d 264 (2004) .......................................................................... 16

*Maglio v. Advocate Health & Hosps. Corp.,*
   2015 IL App (2d) 140782, *appeal denied,* 39 N.E.3d 1003 (Ill. 2015) ......................... *passim*

*Marshall v. Cty. of Cook,*
   2016 IL App (1st) 142864 ...................................................................... 5

*Martini v. Netsch,*
   272 Ill. App. 3d 693 (1st. Dist. 1995) ................................................. 11

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

*McCollough v. Smarte Carte, Inc.*,
    No. 16 C 03777, 2016 WL 4077108 (N.D. Ill. Aug. 1, 2016) ............................................12

*Messenger v. Edgar*,
    157 Ill. 2d 162 (1993) ....................................................................................... 11, 13, 14

*Meyers v. Nicolet Rest. of De Pere, LLC*,
    843 F.3d 724 (7th Cir. 2016) ....................................................................................14

*Morr-Fitz, Inc. v. Blagojevich*,
    231 Ill. 2d 474 (2008) ............................................................................................14

*Pathfinder Co. v. Indus. Comm'n*,
    62 Ill. 2d 556 (1976) ..............................................................................................18

*People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*,
    177 Ill. 2d 314 (1997) ..............................................................................................3

*People v. Coe*,
    2018 IL App (4th) 170359 ......................................................................................3, 4

*Peters v. St. Joseph Services Corp.*,
    74 F. Supp. 3d 847 (S.D. Tex. 2015) ..........................................................................9

*Ratliff v. Celadon Trucking Servs., Inc.*,
    No. 17 CV 7163, 2018 WL 1911797 (N.D. Ill. Apr. 23, 2018) ........................................12

*Reilly v. Ceridian*,
    664 F.3d 38 (3d Cir. 2011) ......................................................................................13

*Remijas v. Neiman Marcus Grp., LLC*,
    794 F.3d 688 (7th Cir. 2015) ....................................................................................9

*Rosenbach v. Six Flags Entm't Corp.*,
    2017 IL App (2d) 170317, *appeal allowed*, 98 N.E.3d 36 ............................................4

*Rosenbach v. Six Flags Entm't Corp.*,
    2019 IL 123186 (2019) ..................................................................................1, 4, 14, 16

*Schacht v. Brown*,
    2015 IL App (1st) 133035 ........................................................................................5

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
    2014 WL 1858458 ............................................................................................. 12, 13

*In re: Science Applications International Corp. (SAIC) Backup Tape Data Theft Litigation*,
    45 F. Supp. 3d 14 (D.D.C. 2014) ...........................................................................9, 12

FILED DATE: 3/20/2019 3:42 PM  2018CH07627

*Sharp v. Gallagher,*
  95 Ill. 2d 322 (1983) ............................................................................................18

*Spears v. Ass'n of Illinois Elec. Co-op.,*
  2013 IL App (4th) 120289 .....................................................................................4

*Sterk v. Redbox Automated Retail, LLC,*
  672 F.3d 535 (7th Cir. 2012).................................................................10, 14, 15

*Storm v. Paytime, Inc.,*
  90 F. Supp. 3d 359 (M.D. Pa. 2015) ..................................................................12

*Susan B. Anthony List v. Driehaus,*
  134 S.Ct. 2334 (2014)...........................................................................................6

*Van Alstyne v. Electronic Scriptorium, Ltd.,*
  560 F.3d 199 (4th Cir. 2009) ..............................................................................14

*Van Meter v. Darien Park District,*
  207 Ill.2d 359 (2003) ............................................................................................5

*Vega-Rodriguez v. Puerto Rico Telephone Co.,*
  110 F.3d 174 (1st Cir. 1997) ..............................................................................12

*Wexler v. Wirtz Corp.,*
  211 Ill.2d 18 (2004) ..............................................................................................5

*Williams v. Manchester,*
  228 Ill.2d 404 (2008) ............................................................................................6

*Wood River Twp. v. Wood River Twp. Hosp.,*
  331 Ill. App. 3d 599 (5th Dist. 2002) ...............................................................5, 14

## Statutes

740 ILCS 14/1, *et seq.* ................................................................................................*passim*

740 ILCS 14/15(b)(2) ........................................................................................................15

740 ILCS 14/20..................................................................................................................13

815 ILCS § 530/1 ................................................................................................................6

815 ILCS § 530/5 ................................................................................................................7

820 ILCS 305/5(a) .............................................................................................................18

## Other Authorities

RESTATEMENT (SECOND) OF TORTS § 496A cmt. c ....................................................12

RESTATEMENT (SECOND) OF TORTS §892A ............................................................................................ 12

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

Plaintiff Joseph Tellado lacks standing under Illinois **common law** to sue under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), notwithstanding the Illinois Supreme Court's recent decision concerning **statutory** standing under BIPA in *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186 (2019), ¶15. Tellado filed a two-count purported class action Complaint against Defendant Rich Products Corporation ("Rich Products"), asserting claims under BIPA and common law negligence. The gravamen of these claims is that Rich Products supposedly failed to obtain informed consent before collecting, storing, and disseminating Tellado's "biometric data," *i.e.*, the data collected by the alleged fingerprint scanner that Tellado used when clocking in and out while working for Rich Products. (Compl. at ¶¶7, 50, 52.) Critically, however, Tellado does not allege that his "biometric information" has been hacked, compromised, or otherwise improperly accessed by an ill-intentioned third-party, or that any of those things is imminently about to happen. Rather, the only "injury" he alleges is that his privacy was "invaded" when he willingly placed his finger on a fingerprint scanner to clock in and out of work each day (*id.* at ¶¶50, 58) and that he "experiences mental anguish and injury when contemplating what would happen to his biometric data if the Defendants went bankrupt, whether either Defendant will ever delete his biometric information, and whether (and to whom) either Defendant share[s] his biometric information" (*id.* at ¶63). For reasons discussed below, dismissal is appropriate because these "harms" that Tellado alleges do not give rise to the "distinct and palpable" injury sufficient to survive a common-law standing defense. *See Greer v. Ill. Housing Dev. Auth.*, 122 Ill.2d 462, 493 (1988). Indeed, if Tellado were allowed to assert such remote and speculative claims, Illinois's common law standing doctrine would be rendered meaningless.

In addition to failing to allege a distinct and palpable injury, Tellado lacks common-law standing because his alleged injury—fear of improper disclosure of his biometric information—exists irrespective of Rich Products' compliance with BIPA. Stated another way, even if Tellado

FILED DATE: 3/20/2019 3:42 PM    2018CH07627

concedes that Rich Products fully complied with BIPA's notice and consent requirements, Tellado's alleged fear of disclosure would not be alleviated because the risk of hacking and other improper attempts to access that information would continue to exist. Accordingly, Tellado's injury or fear is not fairly traceable to Rich Products' actions, and is not "substantially likely to be prevented or redressed by the grant of the requested relief." *See id.*

Moreover, even if Tellado has suffered a cognizable injury in connection with clocking in and out of work, his claim would be preempted under the Illinois Workers' Compensation Act, which provides the exclusive remedies for injuries arising amid the employer-employee relationship. For these reasons, Rich Products respectfully requests that the Complaint be dismissed with prejudice in accordance with Section 2-619(a)(9).

## BACKGROUND

### I. Tellado's Complaint Does Not Allege a "Distinct and Palpable" Injury.

Tellado is a former employee who separated from Rich Products on September 26, 2016. (*See* Compl. at ¶49.) He alleges that employees at Rich Products are required to scan their fingerprint in its time clocks as part of a biometric time-tracking system as a means of authentication. (*Id.* at ¶¶50-52.) Tellado further alleges that each time he began and ended his workday he was required to scan his fingerprint. (*Id.* at ¶50.) These fingerprint scans were subsequently stored in Defendant ADP's database. (*Id.* at ¶51.)

Tellado contends that this time-clock system violates BIPA, which the Complaint acknowledges to be an informed consent statute that does not absolutely bar the collection, storage or transmission of biometric information. (*See id.* at ¶¶6-8.) Specifically, Tellado alleges that Rich Products "unlawfully collect[ed], store[d], disseminate[d], and use[d] [his] biometric data" in violation of BIPA by failing to:

55601954v.2

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

- Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, disseminated, and used, as required by BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' fingerprints, as required by BIPA; and

- Receive a written release from Plaintiff and others similarly situated to collect, capture, disseminate, or otherwise use their fingerprints, as required by BIPA.

(*See, e.g., id.* at ¶7.)  Tellado, however, does ***not*** allege that his fingerprints or biometric data have been hacked, compromised, or improperly accessed by an ill-intentioned third-party, much less that he has actually suffered some sort of palpable injury arising from Defendants' alleged conduct. Instead, he alleges that his privacy has been "invaded" when he (knowingly and willfully) placed his finger on a fingerprint scanner when clocking in and out for work (*id.* at ¶¶50, 58) and that he "experiences mental anguish and injury when contemplating what would happen to his biometric data if the Defendants went bankrupt, whether either Defendant will ever delete his biometric information, and whether (and to whom) either Defendant share[s] his biometric information" (*id.* at ¶63).

## II. The Illinois Supreme Court's Recent Interpretation of *Statutory* Language Does Not Affect a *Common-Law* Standing Defense.

A key point underlies this motion:  that common-law standing is different than statutory standing.  "[C]ommon-law standing [ ] requires an injury in fact to a legally recognized interest" whereas "statutory standing [ ] requires the fulfillment of statutory conditions in order to sue for legislatively created relief." *See People v. Coe*, 2018 IL App (4th) 170359, ¶43.  And if a plaintiff meets statutory standing requirements, it does not necessarily mean that he also meets common-law standing requirements and vice versa. *See, e.g., People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 331 (1997) (noting that "[i]n Illinois, standing is part of the common law" and applying common-law standing analysis to statutory claim); *see also Lutkauskas v. Ricker*, 2015 IL

55601954v.2

117090, ¶31 ("a plaintiff can sustain a cause of action only where he or she has suffered some injury to a legal right, harm caused by the defendant's conduct is an essential element of every cause of action. As a consequence, an allegation that the plaintiff has suffered an injury resulting from the defendant's action is both a pleading requirement and a prerequisite of standing").

It is statutory standing to which the recent *Rosenbach* decision pertains. In that case, the certified questions before the Supreme Court dealt only with the issue of what it means to be an "aggrieved person" under section 20 of BIPA. *Rosenbach v. Six Flags Entm't Corp.*, 2017 IL App (2d) 170317, ¶15, *appeal allowed*, 98 N.E.3d 36, *and rev'd*, 2019 IL 123186, ¶40. Accordingly, in answering those questions, the Supreme Court resolved the pure legal question of what "fulfill[s] the statutory conditions in order to sue for legislatively created relief," *see Coe*, 2018 IL App (4th) 170359 at ¶43, but it did not address standing under Illinois common law, which is particularly apparent given that common-law standing is an affirmative defense, *see Greer*, 122 Ill. 2d at 494, that was not at issue in the certified questions before the Court, *see Long v. Elborno*, 397 Ill. App. 3d 982, 988 (1st Dist. 2010) (under Rule 308 "our examination is strictly limited to the certified question presented to the court."); *Spears v. Ass'n of Illinois Elec. Co-op.*, 2013 IL App (4th) 120289, ¶15 (same); *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 469 (1998) (noting that a court should only answer a certified question if it asks a question of law and decline to answer where the ultimate disposition "will depend on the resolution of a host of factual predicates"). Accordingly, Rich Products hereby requests dismissal based on a lack of standing under Illinois common law (Argument Section I) and assert, in the alternative, that, if Tellado is deemed to have suffered an "injury" from clocking in and out of work, it would be preempted under the Illinois Workers' Compensation Act, which provides the exclusive remedy for workplace-related harms (Argument Section II).

55601954v.2

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

**LEGAL STANDARD**

A motion brought pursuant to section 2–619 admits the sufficiency of the complaint, but asserts an affirmative defense or other matter that avoids or defeats the claim. *Maglio v. Advocate Health & Hosps. Corp.*, 2015 IL App (2d) 140782, ¶20, *appeal denied*, 39 N.E.3d 1003 (Ill. 2015) (further noting that "[l]ack of standing is an affirmative matter that is properly raised under section 2–619(a)(9)"); *see also Lebron v. Gottlieb Mem'l Hosp.*, 237 Ill. 2d 217, 252–53 (2010) ("Under Illinois law, lack of standing is an affirmative defense, which is the defendant's burden to plead and prove. While a lack of subject matter jurisdiction cannot be forfeited, a lack of standing will be forfeited if not raised in a timely manner in the trial court (citation omitted)). In ruling on a section 2–619 motion to dismiss, the court must view the pleadings and supporting materials, if any, in the light most favorable to the non-movant. *Van Meter v. Darien Park District*, 207 Ill.2d 359, 367–68 (2003).

**ARGUMENT**

**I.      Tellado Lacks Standing Under Illinois Common Law Because He Has Not Alleged a "Distinct and Palpable" Injury-In-Fact.**

Where a plaintiff lacks standing, "the proceedings must be dismissed" because "the lack of standing negates the plaintiff's cause of action." *Wexler v. Wirtz Corp.*, 211 Ill.2d 18, 22 (2004); *Marshall v. Cty. of Cook*, 2016 IL App (1st) 142864, ¶14 (same); *Schacht v. Brown*, 2015 IL App (1st) 133035, ¶14 (same); *Wood River Twp. v. Wood River Twp. Hosp.*, 331 Ill. App. 3d 599, 604 (5th Dist. 2002) (same). In order to have standing under Illinois common law, a plaintiff "must have suffered some injury-in-fact to a legally cognizable interest," *Maglio*, 2015 IL App (2d) 140782 at ¶¶22-30, which means a plaintiff must have alleged an "actual or threatened" injury that is: "[1] distinct and palpable; [2] fairly traceable to the defendant's actions; and [3] substantially likely to be prevented or redressed by the grant of the requested relief," *id.* at ¶22; *Amtech Sys. Corp. v. Illinois State Toll Highway Auth.*, 264 Ill. App. 3d 1095, 1103 (1st Dist. 1994) (same). Here, Tellado lacks standing because his

alleged injury—a supposed "invasion" of privacy based on his own volitional conduct—as a matter of law, does not constitute an injury-in-fact.

**A.    With Respect to Claims Relating to Improper Data Retention, A Risk of Future Harm Is Not A "Distinct and Palpable" Injury.**

A risk of future harm is insufficient to give rise to standing.  *See Williams v. Manchester*, 228 Ill.2d 404, 425 (2008) ("as a matter of law, an increased risk of future harm is an *element of damages* that can be recovered for a present injury—it is *not* the injury itself" (emphasis in original)); *Cooney v. Chicago Pub. Sch.*, 407 Ill. App. 3d 358, 365–66 (1st Dist. 2010) (same; citing authority); *see also Lewis v. Lead Indus. Ass'n, Inc.*, 342 Ill. App. 3d 95, 101 (1st Dist. 2003) (similar).  As courts have described this general principle, a risk of future harm is not an "actual or threatened" injury unless it is "certainly impending," or there is a "substantial risk" that the harm will occur.  *Maglio*, 2015 IL App (2d) 140782 at ¶25 (citing *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 234 (2014) and quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).  Stated conversely, a "**possible** future injury" or a "theory that relies on a highly attenuated chain of events" is not an injury-in-fact and is insufficient to establish standing.  *Id.* (internal quotation omitted; emphasis original).

In the data-retention context in particular, courts have applied this general principle to hold that the risk of identity theft, even where personal-identifying information has been compromised or stolen, is insufficient in itself to give rise to standing.  A recent case from the Second District— *Maglio v. Advocate Health & Hosps. Corp.*—well illustrates this point.  2015 IL App (2d) 140782 at ¶¶22-30.  In that case, the plaintiff sued Advocate, a network of affiliated doctors and hospitals, alleging that burglars stole four password-protected computers that contained certain information relating to four million patients.  *Id.* at ¶3.  Advocate subsequently "notified patients about the incident, set up a call center to answer their questions, and offered one year of free credit-monitoring services, including identity theft resolution assistance and identity theft insurance."  *Id.* The plaintiffs alleged that this conduct violated the Personal Information Protection Act, 815 ILCS

FILED DATE: 3/20/2019 3:42 PM    2018CH07627

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

§ 530/1—which, like BIPA, pertains to "[u]nique biometric data generated from measurements * * * such as a fingerprint, retina or iris image, or other unique physical representation or digital representation of biometric data," 815 ILCS § 530/5—and that they were injured because they faced an increased risk of identity theft and because they had suffered emotional distress, *Maglio*, 2015 IL App (2d) 140782 at ¶¶9, 30.  Applying recent jurisprudence from the United States Supreme Court,[1] the *Maglio* court held that plaintiffs did not have standing because their "allegations of injury are clearly speculative":

> [The United States Supreme Court decision in] *Clapper* compels rejection of [the plaintiffs'] claim that an increased risk of identity theft is sufficient to satisfy the injury-in-fact requirement for standing.  As plaintiffs here have not alleged that their personal information has actually been used or that they have been victims of identity theft or fraud, the arguably increased risk of such acts as a result of Advocate's data breach is insufficient to confer standing as that concept is applied in federal cases.

*Maglio*, 2015 IL App (2d) 140782 at ¶¶25, 26 (further holding that plaintiffs lack standing to pursue common law negligence claim).  And the First District likewise has recognized that a claim based upon the improper disclosure of personal data cannot proceed where the alleged injury is merely the increased risk of future identity theft.  *See Cooney*, 407 Ill. App. 3d at 365–66.  Thus, to have an injury-in-fact under Illinois common law, a plaintiff must allege that he, personally, has suffered some actual harm (or the imminent risk of actual harm) from the improper use of his information. *Maglio*, 2015 IL App (2d) 140782 at ¶¶25-29 (the "fact that two plaintiffs to date (out of those 4 million) have received notification of fraudulent activity, *i.e.*, have suffered actual injury arising from Advocate's alleged wrongful acts, does not show that plaintiffs here face imminent, certainly

---

[1] Because federal standing principles under Article III "are similar to those" that arise as a matter of common law in Illinois, federal case law interpreting Article III standing "is instructive."  *Id.* at ¶25; *see also, e.g., Clapper*, 568 U.S. at 409  ("threatened injury must be ***certainly impending*** to constitute injury in fact" because "[a]llegations of ***possible*** future injury" are not sufficient (emphasis in original)).  Indeed, the Illinois Supreme Court itself has relied upon United States Supreme Court precedent in discussing the "distinct and palpable" component of standing under Illinois common law.  *Greer*, 122 Ill. 2d at 494.

55601954v.2

impending, or a substantial risk of harm as a result of the burglary, where no such activity has occurred with respect to their personal data." (parentheses in original)).

This holding—that "an increased risk of identity theft" is "insufficient to confer standing" with respect to data that may have been compromised—controls the outcome here. Tellado does **not** allege that his "biometric information" has been actually hacked, compromised, or otherwise improperly disclosed, or that there is some imminent risk that those things are about to happen. He also does **not** allege that his "biometric information" has been used in a way that has actually resulted in some sort of pecuniary or otherwise palpable harm. Thus, this is an *a fortiori* case: if a plaintiff lacks a cognizable injury where there has been an actual data breach or improper disclosure (such as in *Maglio* and *Cooney*), then Tellado must also lack a cognizable injury since, based on his allegations, he is even further removed from a potentially cognizable injury. Accordingly, the Complaint here should be dismissed because Tellado has alleged facts that are insufficient to establish an injury-in-fact, as a matter of law. *See Maglio*, 2015 IL App (2d) 140782 at ¶¶18-32 (plaintiff's lack of standing warranted dismissal of statutory and common law claims).

### B. Illinois Law Accords With Other Jurisdictions as to What Constitutes an Injury-in-Fact for Claims Based on Personal Data Retention.

Illinois law is in line with the overwhelming weight of non-binding authority as to what constitutes a "distinct and palpable" injury-in-fact for claims based upon the improper retention or disclosure of personal data. This authority holds that, when a plaintiff alleges only that his information is at future risk of harm arising from a potential data breach, it does not constitute a "distinct and palpable" injury:

- "Assuming plaintiff's allegation of security breach to be true, plaintiff alleges that he would be injured 'if' his personal information was compromised, and 'if' such information was obtained by an unauthorized third party, and 'if' his identity was stolen as a result, and 'if' the use of his stolen identity caused him harm. These multiple 'ifs' squarely place plaintiff's claimed injury in the realm of the hypothetical. If a party were allowed to assert such remote and speculative claims * * * [the]

-8-

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

standing doctrine would be meaningless." *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1053 (E.D. Mo. 2009);

- Plaintiffs lack "standing because they claim to have suffered little more than an increased risk of future harm from the loss (whether by accident or theft) of their personal information." *Hammond v. The Bank of New York Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307, at *2 (S.D.N.Y. June 25, 2010) (internal citation omitted; citing authorities; parentheses in original);

- "In the identity theft context, courts have embraced the general rule that an alleged increase in risk of future injury is not an 'actual or imminent' injury." *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 689 (S.D. Ohio 2006) (citing authorities).

- "[Plaintiffs] alleged injury of an increased risk of identity theft is far too speculative" to establish standing. *Allison v. Aetna, Inc.*, No. CIV.A. 09-2560, 2010 WL 3719243, at *5 (E.D. Pa. Mar. 9, 2010).

*See Beck v. McDonald*, 848 F.3d 262, 275 (4th Cir 2017) (similar; summarizing federal circuit-level authority on this issue); *In re: Science Applications International Corp. (SAIC) Backup Tape Data Theft Litigation*, 45 F. Supp. 3d 14, 28 (D.D.C. 2014) (similar; citing authorities). The upshot of these cases is that a plaintiff does not have an injury or the imminent risk of injury, where he "cannot describe how [she] will be injured without beginning the explanation with the word 'if.'" *See also Peters v. St. Joseph Services Corp.*, 74 F. Supp. 3d 847, 856–57 (S.D. Tex. 2015) (putative class action against hospital following data breach dismissed because the heightened risk of future identity theft posed by the data breach did not confer an injury in fact on persons whose information might have been accessed); *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 910–13 (7th Cir. Jan. 20, 2017) (similar; regarding violation of the Cable Communications Policy Act); *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016) (same).

To be sure, if a plaintiff has alleged that his personal data has been hacked or otherwise compromised, which caused the plaintiff or a substantial portion of other persons harm, then a cognizable injury-in-fact may have occurred. *See, e.g., Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015) (finding that plaintiff suffered an injury in fact where 9,200 cases of identity theft had occurred as result of a data breach that compromised approximately 350,000 credit card

numbers); *cf. Maglio*, 2015 IL App (2d) 140782 at ¶¶3, 24 (where data breach involved information relating to four million people, plaintiff lacked a "distinct and palpable" injury in fact where only two of those people allegedly suffered identify theft); *Beck*, 848 F.3d at 275-76 (no injury in fact where compromised data included unencrypted personal information of approximately 7,400 patients, including names, birth dates, the last four digits of social security numbers, and physical descriptors such as age, race, gender, height, and weight). But that is not the case here. Recall that Tellado's alleged "injury" has nothing to do with hacking or compromised data, or the threat thereof. Tellado is thus even further removed from a cognizable injury-in-fact because he has not even alleged that a data breach occurred, much less that anyone has actually been hurt by it.

Given this authority, it should go without saying that the mere improper collection or retention of personal information does not give rise to standing under Illinois common law. After all, "[h]ow could there be an injury, unless the information, not having been destroyed, were disclosed? If, though not timely destroyed, it remained secreted [away] until it was destroyed, there would be no injury." *See Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 538 (7th Cir. 2012) (addressing the records destruction provision of the Video Privacy Protection Act). Tellado's lack of a cognizable injury-in-fact dooms his claims and his Complaint should be dismissed for want of common-law standing.

### C. Tellado Lacks Common-Law Standing For The Added Reason That His Alleged Injury—Fear of Disclosure of His Biometric Information—Exists Irrespective of Defendants' Compliance With BIPA.

In order to have standing, a plaintiff "must have suffered some injury-in-fact to a legally cognizable interest," *Maglio*, 2015 IL App (2d) 140782 at ¶¶22-30, which means a plaintiff, in addition to alleging a "a distinct and palpable injury, must also show that: [1] such an injury is fairly traceable to the defendant's actions, and [2] is substantially likely to be prevented or redressed by

55601954v.2

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

the grant of the requested relief," *id.* at ¶22; *Amtech Sys. Corp. v. Illinois State Toll Highway Auth.*, 264 Ill. App. 3d 1095, 1103 (1st Dist. 1994) (same).

Tellado's alleged injury—fear of disclosure—is not connected to or derived from Defendants' compliance or non-compliance with BIPA, which the Complaint tacitly concedes is merely an informed consent statute. (*See* Compl. at ¶19.) Neither BIPA's notice and consent requirements or its requirement to publish a retention policy have any bearing on whether biometric information might be hacked, improperly disclosed, or otherwise compromised. *See generally Martini v. Netsch*, 272 Ill. App. 3d 693, 695 (1st. Dist. 1995) ("The decision as to standing may differ depending on the issue involved and the nature of the relief sought. Whether the plaintiff has standing to sue is to be determined from the allegations contained in the complaint."); *see also Messenger v. Edgar*, 157 Ill. 2d 162, 171 (1993) (standing "must be defined on a case-by-case basis"). And that is true both as to former employees, like Tellado, and as to current employees. *See Maglio*, 2015 IL App (2d) 140782 at ¶21 ("in assessing standing in a class action, which plaintiffs seek these cases to be, we focus on the named plaintiffs' allegations, not the general class they purport to represent"). Defendants could have fully complied with BIPA, and Tellado's alleged fear would not be alleviated. The same is true if Defendants' collected his biometric information and failed to comply with BIPA. Tellado's fear of compromise, therefore, has nothing to do with Defendants' compliance or non-compliance with BIPA. In turn, his alleged injury is not fairly traceable to the Defendant's non-compliance with BIPA, and is not substantially likely to be prevented or redressed by the grant of the requested relief." *See Amtech Sys. Corp.*, 264 Ill. App. 3d at 1103.

### D. Bare Allegations of an "Invasion" of Privacy and "Mental Anguish" Are Insufficient To Give Rise To a "Palpable" Injury-In-Fact.

That the Complaint invokes a (supposed) "invasion" of privacy does not change the analysis. This is the case because "case law requires actual disclosure to a third party" for there to be standing

55601954v.2

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

on such a theory, and the Complaint makes no such allegations. *Maglio*, 2015 IL App (2d) 140782 at ¶¶9, 27 (further rejecting the argument that the medical information at issue "warrants a finding that the harm is implicit"); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d at 28 (invasion of privacy alone was insufficient to constitute "injury in fact" for standing because "[e]xisting case law and legislation support that common-sense intuition:  If no one has viewed your private information (or is about to view it imminently), then your privacy has not been violated") (citing cases; parentheses in original); *Ratliff v. Celadon Trucking Servs., Inc.*, No. 17 CV 7163, 2018 WL 1911797, at *4 (N.D. Ill. Apr. 23, 2018) (similar); *Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 368 (M.D. Pa. 2015) (similar); *see also Cooney*, 407 Ill. App. 3d at 367.  Again, this is an *a fortiori* case:  if an actual data breach and actual improper disclosure of sensitive information is insufficient to establish injury under an invasion of privacy theory (as it was in *Maglio* and *Cooney*), then it must likewise be insufficient here where Tellado does not even allege that his data has been hacked or compromised.[2]

Nor can Tellado manufacture standing merely by alleging that he has suffered "mental anguish."  Indeed, courts "across the country [that] have rejected 'emotional distress' as a basis for standing under similar circumstances."  *Maglio*, 2015 IL App (2d) 140782 at ¶¶25, 26; *Crisafulli v. Amertias Life Insurance Co.*, No. 13–5937, 2015 WL 1969176, at *4 (D.N.J. 2015); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 2014 WL 1858458 at *9 (plaintiffs who suffered "anxiety" "do not have standing based on risk alone, even if their fears are rational); *see also Clapper*, 568 U.S. at 416 ("respondents cannot manufacture standing merely by inflicting harm on themselves

---

[2] This is an eminently sound result, which accords with the more general proposition that to sustain an invasion of privacy claim a plaintiff must have "attempted to keep private facts private."  *See Acosta v. Scott Labor LLC*, 377 F. Supp. 2d 647, 650 (N.D. Ill. 2005) ("[P]ersons cannot reasonably maintain an expectation of privacy in that which they display openly" (quoting *Vega-Rodriguez v. Puerto Rico Telephone Co.*, 110 F.3d 174, 181 (1st Cir. 1997)); *see also Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 72 (3rd Dist. 2004) (similar).  And, here, Tellado obviously did not attempt to keep "private facts private," given that he willfully placed his finger on a fingerprint scanner to clock in and out of work.  *See, e.g., McCollough v. Smarte Carte, Inc.*, No. 16 C 03777, 2016 WL 4077108, at *3 (N.D. Ill. Aug. 1, 2016); RESTATEMENT (SECOND) OF TORTS §892A ("One who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it"); RESTATEMENT (SECOND) OF TORTS § 496A cmt. c.

-12-

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

based on their fears of hypothetical future harm that is not certainly impending"); *Reilly v. Ceridian*, 664 F.3d 38, 42-43 (3d Cir. 2011) (similar). Because Tellado does not have standing based on his fear of the risk of future harm, "even if [his] fears are rational," *SAIC*, 2014 WL 1858458 at *9; *Clapper*, 568 U.S. at 416, the Complaint should be dismissed despite his attempt to manufacture standing based on allegations of "mental anguish" over hypothetical events that may never occur.

> **E.  That BIPA Allows for Liquidated And Actual Damages Does Not Mean That Tellado Has Standing or that he Is Automatically Entitled to Relief.**

Even assuming the Illinois legislature could discard the common-law standing principles that apply to "every cause of action," there is nothing in the text of BIPA to suggest that the Legislature so intended. This is true even though BIPA refers both to "actual damages" and "liquidated damages." *See* 740 ILCS 14/20 ("Any person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party. A prevailing party may recover for each violation: (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater . . .").

The availability of "liquidated damages" as an alternative to "actual damages" does not obviate the need for him to have suffered a "distinct and palpable" injury in fact. Indeed, "injury" and "damages" are two "analytically distinct" concepts. *See Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 890 (7th Cir. 1995). "Injury" is the harm that a plaintiff personally suffers (or that a plaintiff is imminently about to suffer), whereas "damages" comprise the quantification of that injury. *Id.* The former is critical to a standing inquiry; the latter is not. *See Messenger v. Edgar*, 157 Ill. 2d 162, 172 (1993) (noting the distinction between "injury" and "damages" and further noting that standing depends on existence of injury, not existence of damages).

Taking just one example of this distinction, consider a plaintiff that has suffered an injury, but her damages are for whatever reason difficult or impossible to calculate. The failure to be able

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

to prove "actual damages" does not affect the plaintiff's standing to bring a cause of action, *see id.*, but rather affects only the type of relief she is entitled to obtain. Sometimes that remedy might be injunctive or declaratory relief,[3] or sometimes that remedy may be liquidated damages, if a statute so prescribes. But the existence of liquidated damages as a remedy under a statute does not mean that a plaintiff can avoid the need to have suffered an "injury in fact" under Illinois common law, it means only that his damages may be difficult to quantify (or if that quantification would yield less than $1,000). *See Sterk*, 672 F.3d at 538 (7th Cir. 2012) ("liquidated damages are intended to be an estimate of actual damages"); *see also Doe v. Chao*, 540 U.S. 614, 624–25 (2004) (similar); *Van Alstyne v. Electronic Scriptorium, Ltd.*, 560 F.3d 199, 205–06 (4th Cir. 2009) (similar).[4] But a plaintiff must always have suffered an "injury" in order to obtain relief from a court, whatever form that relief may ultimately take. *See, e.g., Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 489 (2008) (noting that, even in when a plaintiff seeks declaratory relief, standing is a "threshold question").

It is the question of "injury" to which Rich Products's above-cited authority pertains. Indeed, Illinois case law specifically holds—like the overwhelming weight of non-binding authority likewise holds—that "an increased risk of identity theft" is "insufficient to confer standing" because that ***injury*** is not "distinct and palpable." *Maglio*, 2015 IL App (2d) 140782 at ¶¶24-26 (citing *Greer*);

---

[3] Setting aside that Rich Products here is asserting lack of standing as an affirmative defense, Rich Products respectfully submits that a person who has been "aggrieved by" a violation of BIPA can seek recourse under the statute, *see Rosenbach*, 2019 IL 123186 (2019) at ¶37, but the type of relief that the plaintiff could obtain would depend on whether the plaintiff has already suffered an injury—for which actual damages or liquidated damages may be recoverable—or injunctive or declaratory relief when the plaintiff has not yet suffered an actual injury, but is at imminent risk of suffering an actual injury. *See, e.g., Wood River Twp.*, 331 Ill. App. 3d at 604 ("A claimed injury, whether actual or threatened, must be distinct and palpable, fairly traceable to the defendant's actions, and substantially likely to be prevented or redressed by the requested relief.") (declaratory judgment context).

[4] The Seventh Circuit has aptly described this distinction between [1] generally falling within the scope of a particular statute and [2] what it means to have a "distinct and palpable" injury arising from an alleged statutory violation. That the legislature "has passed a statute coupled with a private right of action is a good indicator that whatever harm might flow from a violation of that statute would be particular to the plaintiff. Yet the plaintiff still must allege a concrete injury that resulted from the violation in his case." *See Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016). "In other words, Congress' judgment that there should be a legal remedy for the violation of a statute does not mean each statutory violation creates an Article III injury." *Id.; see also Chao*, 540 U.S. at 624–25 (similar).

-14-

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

*see also Cooney*, 407 Ill. App. 3d at 361 (similar).  In line with this authority, Tellado has not alleged that he suffered an actual harm by the mere retention of his biometric data, and his Complaint should be dismissed accordingly.

Any other result would simply buck common sense.  After all, could it possibly be true that a plaintiff has suffered a cognizable "injury in fact" just by virtue of a statutory violation, no matter how technical?  Suppose, for example, that Rich Products was alleged to have provided a disclosure about the retention of Tellado's biometric information, but that disclosure said only that Tellado's information would be stored for "more than a year."  Such a disclosure might be argued to technically violate BIPA, which requires a plaintiff to be advised "in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used."  740 ILCS 14/15(b)(2).  Yet, it would turn common sense on its head to think that a plaintiff (or a class of plaintiffs) could recover liquidated damages for such a hyper-technical violation, even in the absence of actual harm.  Such a plaintiff would be an "aggrieved person" entitled to pursue a private right of action under BIPA, but his claim would be negated under common-law standing principles due to lack of any "distinct and palpable" injury arising from the hyper-technical violation.  And without the jurisprudential limiting principle of common-law standing there would be no basis to distinguish between cases involving only hyper-technical violations of BIPA and cases that involving violations that actually produce some harm.

The plain text of the statute further sustains Rich Products's position.  BIPA allows for "liquidated," not "punitive," damages.  *Sterk*, 672 F.3d at 538 ("liquidated damages are intended to be an estimate of actual damages").  But, to be sure, if a plaintiff class were able to recover a mountain of liquidated damages without any pecuniary or palpable harm, those damages would operate in effect like punitive damages.  Rich Products respectfully submits that the Legislature did not intend to hurl employers across the state into bet-the-company litigation based upon mere

-15-

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

negligence, particularly where the class has not suffered an injury in fact, *see, e.g., Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 415 (1990) ("punitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence" (internal quotation omitted)), and particularly where such a statutory construction would raise significant constitutional concerns, *see BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996) ("Due Process Clause of the Fourteenth Amendment prohibits a State from imposing a grossly excessive punishment on a tortfeasor"); *see also Lyon v. Dep't of Children & Family Servs.*, 209 Ill. 2d 264, 272 (2004) ("due process [] protects fundamental justice and fairness"). Thus, both the text of BIPA and common sense further sustain the proposition that Tellado's Complaint should be dismissed because he lacks standing under Illinois common law.

\*     \*     \*

In sum, a plaintiff who alleges a bare violation of BIPA is entitled to pursue a private right of action. *Rosenbach*, 2019 IL 123186 (2019) at ¶15. But if a defendant asserts lack of standing as an affirmative defense, then the question becomes whether the plaintiff has suffered a "distinct and palpable injury," which means that a plaintiff's BIPA claim can proceed only if he has suffered actual harm or there is an imminent risk that an actual harm will occur. Then, if a plaintiff has standing as a matter of common law, Rich Products submits that a plaintiff who is determined to be at risk of an imminent harm could potentially recover injunctive or declaratory relief (and reasonable attorneys' fees, if he prevails); or, if the plaintiff has already suffered an actual harm, he could obtain his actual damages or liquidated damages when his actual damages are difficult to quantify (or if that quantification would yield less than $1,000). This approach is thus consistent with *Rosenbach*, the Illinois common law of standing, and the statutory text, which potentially allows liquidated damages to be awarded upon a finding of mere negligence.

55601954v.2

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

In contrast, Tellado's apparent contention that a violation of statute automatically leads to bet-the-company damages would contravene several principles of law. First, it would confuse the distinction between what a plaintiff must allege for statutory standing—*i.e.*, what a plaintiff must allege to get in the courthouse door; here, what it means to be "aggrieved" such as to give rise to a private right of action under BIPA—and what a defendant must prove should it assert a lack of standing defense as a matter of Illinois common law—*i.e.*, that, while aggrieved for purposes of pleading a private right of action, the plaintiff cannot proceed for want of a "distinct and palpable" injury in fact. Second, it would ignore a plaintiff's ultimate burden of establishing the right to relief under the statute. Taking a notable example (discussed above), if plaintiff or the class were able to obtain liquidated damages without any actual harm, then those damages would in effect operate like (massive and likely ruinous) punitive damages, but yet would be imposed only for "negligent" conduct, which also would further contravene the principle that punitive damages cannot be awarded for negligent conduct.

Accordingly, Rich Products respectfully submits that its common-law standing defense represents an important limiting principle that accords with the plain meaning of the BIPA statute. And because Tellado has not suffered a "distinct and palpable" injury in fact, his Complaint must be dismissed for lack of standing.

## II. In the Alternative, If Tellado Has Suffered an "Injury" from Clocking In and Out of Work, Then His Claims Are Preempted by the Illinois Workers' Compensation Act, Which Supplies the Exclusive Remedy for Workplace Injuries.

Even assuming that Tellado has pleaded a distinct and palpable injury—and he hasn't—his Complaint is nonetheless ripe for dismissal because any injury he obtained during the course of his employment would be preempted by the Illinois Workers' Compensation Act. The Workers' Compensation Act created a system where "in exchange for a system of no-fault liability upon the employer, the employee is subject to statutory limitations on recovery for injuries and occupational

-17-

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

diseases arising out of and in the course of employment." *Folta v. Ferro Eng'g*, 2015 IL 118070, ¶12. "As part of this 'balancing,' the Act further provides that the statutory remedies under it shall serve as the employee's exclusive remedy if he sustains a compensable injury." *Sharp v. Gallagher*, 95 Ill. 2d 322, 326 (1983) (internal quotation omitted); *Cooley v. Power Constr. Co., LLC*, 2018 IL App (1st) 171292, ¶12 ("Employees that are injured at work do not have a cause of action against their employer, and their exclusive remedy is to apply for benefits under the Workers' Compensation Act"); *see also* 820 ILCS 305/5(a) (setting forth exclusivity provision). An employee may only escape the exclusive remedy provision of the Worker's Compensation Act if the employee establishes that their alleged injury falls within one of four categories: "that the injury [1] was not accidental; [2] did not arise from his employment; [3] was not received during the course of employment; or [4] was not compensable under the Act." *Folta*, 2015 IL 118070 at ¶14. An injury resulting from negligence is, by definition, accidental. *See, e.g., Baylay v. Etihad Airways P.J.S.C.*, 222 F. Supp. 3d 698, 704 (N.D. Ill. 2016), *aff'd*, 881 F.3d 1032 (7th Cir. 2018) ("Both an employee's claim of employer negligence and a claim of employer willful and wanton conduct fall within the definition of 'accidental' and are preempted" by the Illinois Workers' Compensation Act) (citing authority).

Tellado cannot establish that his injury avoids the exclusivity test under the Workers' Compensation Act. First, to the extent Tellado has suffered an injury as a result of placing his finger on a time-clock scanner, his "injury" would only be "accidental" particularly given that the Complaint does not allege any facts that could sustain a "willfulness" determination. Second, Tellado admits that his alleged injuries arose out of his employment and were received during the course of his employment. (*See, e.g., id.* at ¶¶2, 49-52.) Third, Tellado's alleged "mental anguish" is potentially compensable under the Workers' Compensation Act. *See Pathfinder Co. v. Indus. Comm'n*, 62 Ill. 2d 556, 562 (1976). Accordingly, Tellado's claims are barred by the Workers' Compensation Act, and the Complaint should be dismissed under Section 2-619.

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

## <u>CONCLUSION</u>

Plaintiff Joseph Tellado has not suffered a cognizable injury-in-fact and thus lacks standing under Illinois common law to assert either of the claims she alleges in the Complaint. And even if he has suffered an injury in connection with clocking in and out of work, his claim would be preempted under the Illinois Workers' Compensation Act, which provides the exclusive remedy for workplace-related injuries. For both reasons, the Complaint should be dismissed in its entirety in accordance with Section 2-619(a)(9).

55601954v.2

FILED DATE: 3/20/2019 3:42 PM   2018CH07627

## CERTIFICATE OF SERVICE

I, Joseph A. Donado, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing **DEFENDANT RICH PRODUCTS CORPORATION'S SECTION 2-619 MOTION TO DISMISS** to be served upon the following by email on this 20th day of March 2019:

 Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue
Suite 2560
Chicago, Illinois 60601
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

Ross B. Bricker
David C. Layden
Joshua M. Levin
Reanne Zheng
JENNER & BLOCK LLP (05003)
353 N. Clark St.
Chicago, Illinois 60654
RBricker@jenner.com
DLayden@jenner.com
JLevin@jenner.com
RZheng@jenner.com

/s/ Joseph A. Donado

Return Date: No return date scheduled
Hearing Date: 4/2/2019 9:30 AM - 9:30 AM
Courtroom Number:
Location:

FILED
3/20/2019 8:41 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

FILED DATE: 3/20/2019 8:41 PM   2018CH07627

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

JOSEPH TELLADO, individually and on behalf ) 
of all others similarly situated, )
)
*Plaintiff,* )
) No. 2018-CH-07627
v. )
) Hon. Anna M. Loftus
RICH PRODUCTS CORPORATION and )
ADP, LLC, )
)
*Defendants.* )

## DEFENDANT ADP, LLC'S MOTION TO
## <u>DISMISS PURSUANT TO 735 ILCS 5/2-615</u>

Plaintiff Joseph Tellado alleges his biometric privacy rights were violated when his former employer, Defendant Rich Products Corporation ("Rich Products"), required him to use a finger-scan timeclock so that Plaintiff could record his hours worked. Notwithstanding that Plaintiff knowingly used the timeclock every day of his employment, understood the purpose of the finger-scanning process, and alleges no improper use or disclosure of any biometric data, he now brings this putative class action against Rich Products under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA").

Plaintiff also purports to assert claims against ADP, LLC ("ADP"), the company that sold the timeclocks to Rich Products. Plaintiff alleges, among other things, that ADP violated BIPA by not providing written notice to Plaintiff or obtaining a signed release from Plaintiff "as a condition of employment" before Rich Products required Plaintiff to use the timeclock for the first time.

Plaintiff's efforts to apply BIPA's notice and release requirements to a non-employer, third-party technology provider like ADP are foreclosed by the statute. Plaintiff otherwise fails to allege that ADP violated BIPA, and fails to allege a negligence claim.

FILED DATE: 3/20/2019 8:41 PM   2018CH07627

ADP respectfully requests that this Court grant ADP's motion to dismiss and enter an Order dismissing Plaintiff's claims against ADP with prejudice pursuant to 735 ILCS 5/2-615.

## BACKGROUND

Plaintiff is a former employee of Rich Products. (Compl. ¶ 49.)[1] Plaintiff alleges that Rich Products "uses an employee time tracking system supplied by ADP that requires employees to use their fingerprint as a means of authentication." (*Id.*) Many employers use biometric timeclocks in order to record their employees' hours worked accurately. (*Id.* ¶ 4.) Rich Products required Plaintiff to place his finger on a biometric timeclock each time he needed to "punch" in and out of work.[2] (*Id.* ¶¶ 4, 39.) Plaintiff does not allege that any data generated by the finger-scanning process was ever collected, stored, or used for any purpose other than recording his hours so Rich Products could accurately pay him wages. (*Id.* ¶¶ 1–107.)

Notwithstanding that Plaintiff knowingly used the biometric timeclock every day of his employment, understood the purpose of the scanning process, and alleges no improper use or disclosure, he now brings this putative class action against Rich Products and ADP, seeking statutory damages under BIPA.

## ARGUMENT

Plaintiff's Complaint should be dismissed pursuant to 735 ILCS 5/2-615. *First*, Plaintiff's claim under § 15(b) of BIPA should be dismissed because § 15(b) does not apply to a non-

---

[1] Solely for purposes of this motion to dismiss, ADP treats the well-pled allegations in Plaintiff's Complaint as true.

[2] ADP denies that the "biometric timekeeping device" referenced in the Complaint could be used to collect "biometric identifiers" or "biometric information" as defined in BIPA. *See* 740 ILCS 14/10. The timeclocks at issue do not collect or store fingerprints or any images thereof. Rather, the timeclocks scan a portion of the fingertip and generate and store only an encrypted numeric template generated by an algorithm in the finger-scan attachment software. ADP acknowledges, however, that solely for purposes of this motion to dismiss, the Court must treat the well-pled allegations in Plaintiff's Complaint as true.

FILED DATE: 3/20/2019 8:41 PM   2018CH07627

employer, third-party technology provider like ADP. *Second*, Plaintiff's claim that ADP violated the privacy policy requirements of § 15(a) should be dismissed because Plaintiff's allegations fail to state a violation of § 15(a). *Third*, Plaintiff fails to state a claim under § 15(d), which prohibits the unauthorized disclosure of biometric data. *Fourth*, Plaintiff's common-law claim for negligence is preempted by BIPA and should be dismissed.

## I.    Plaintiff's Claim Under § 15(b) Should Be Dismissed.

Plaintiff makes conclusory allegations that "Defendants" collectively violated § 15(b) of BIPA, without alleging facts describing how each defendant purportedly collected biometric data in violation of the statute. (Compl. ¶¶ 7, 37, 40-41, 43, 53, 55, 85, 87, 90, 92.) As demonstrated below, even if Plaintiff had pleaded something more than conclusory allegations that "Defendants" collected biometric data in violation of § 15(b), Plaintiff would fail to state a claim under § 15(b) against ADP because, in the employment context, § 15(b) applies only to an employer that collects biometric data from its employee.[3] Section 15(b) cannot be applied to a non-employer, third-party vendor such as ADP. Plaintiff's claims against ADP under § 15(b) thus should be dismissed with prejudice.

### A.   Section 15(b) of BIPA Does Not Apply to ADP.

#### 1.      BIPA Limits the Scope of § 15(b).

The statutory language of BIPA makes clear that § 15(b) cannot be applied to ADP, which is not Plaintiff's former employer, but instead is a third party that provided biometric timeclocks to Plaintiff's former employer. Section 15(b) requires that an entity that "collect[s], capture[s], purchase[s], receive[s] through trade, or otherwise obtain[s]" a biometric identifier or biometric

---

[3] ADP is not suggesting that Plaintiff has a meritorious § 15(b) claim, or any other claim, against Rich Products.

3

FILED DATE: 3/20/2019 8:41 PM   2018CH07627

information from an individual must first provide notice "in writing" to that individual and obtain "a written release" executed by the individual. 740 ILCS 14/15(b).

Section 15(b) applies only to entities, like employers, that allegedly acquire biometric identifiers or information *directly from* individuals, and not to entities such as ADP that did not collect the data but rather, at most, allegedly received the data from the collecting employer and stored it on the employer's behalf. The General Assembly drew an express distinction between the obligations placed on entities that "possess" biometric data, and the additional obligations placed on entities that actively acquire such data from an individual. Each of the subsections of § 15 other than (b) apply to entities "in possession of" biometric data. *See* 740 ILCS 14/15(a), (c), (d) & (e). But §15(b) uses different language. It applies to entities that "collect, capture, purchase, receive through trade, or otherwise obtain" biometric data. *Id.* § 15(b). The General Assembly's choice of "possession" in four of the five subsections—but not in subsection (b)—shows that "possession" alone does not make an entity subject to the notice and release obligations of § 15(b). *See Carver v. Bond/Fayette/Effingham Reg'l Bd. of Sch. Trs.*, 146 Ill. 2d 347, 353 (1992) ("When the legislature uses certain language in one part of a statute and different language in another, we may assume different meanings were intended."). Indeed, if alleged possession of biometric data alone were enough to trigger the obligations of § 15(b), it would render superfluous the narrower,

FILED DATE: 3/20/2019 8:41 PM   2018CH07627

specifically enumerated set of verbs the legislature used to define the scope of § 15(b).[4] *See Collins v. Bd. of Trs. of Firemen's Annuity & Benefit Fund of Chicago*, 155 Ill. 2d 103, 111 (1993) ("[N]o word or paragraph should be interpreted so as to be rendered meaningless."). Thus, § 15(b) applies to an entity only if that entity acquires biometric data *directly from the individual*.

Moreover, BIPA states that, in "the context of employment," the "written release" required under § 15(b) is "a release executed by an employee *as a condition of employment*." 740 ILCS 14/10 (emphasis added). This means that, in the employment context, an entity collecting biometric data is subject to the § 15(b) notice and consent obligations only if it has authority over the terms and conditions of an individual's employment and the capacity to require that an employee execute a written release "as a condition of employment." *Id.*; *see Boaden v. Dep't of Law Enf't*, 267 Ill. App. 3d 645, 651–52 (1994), *aff'd*, 171 Ill.2d 230 (1996) ("When a statute defines its own terms, those terms must be construed according to the definitions given to them."). Thus, when an employee's biometric data is collected during the course of employment, only the employer is subject to § 15(b)'s written notice and consent requirements. Any other construction of the statute would render meaningless the General Assembly's statutory definition of "written release."

---

[4] The General Assembly's inclusion of the phrase "or otherwise obtain" at the end of the list of acts that trigger § 15(b)'s obligations does not broaden § 15(b) to include receipt or possession. Like the first four verbs, "obtain" covers the active acquisition of biometric data. *See* Black's Law Dictionary 1247 (10th ed. 2014) (defining "obtain" as "[t]o bring into one's own possession; to procure, esp. through effort"). Interpreting "otherwise obtain" more broadly would violate the cardinal rule of statutory construction that, when "a statutory clause specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted to mean 'other such like.'" *Pooh-Bah Enters., Inc. v. Cty. of Cook*, 232 Ill.2d 463, 492 (2009). Moreover, interpreting "otherwise obtain" to simply mean any possession of biometric data would render superfluous the preceding specific verbs, because each of those specific verbs necessarily involves possession. *See id.* ("If the legislature had meant the general words to have their unrestricted sense, it would not have used the specific words.").

FILED DATE: 3/20/2019 8:41 PM    2018CH07627

Further, given BIPA's definition of "written release," applying § 15(b) to non-employer, third-party technology providers would yield absurd results. *See In re Marriage of Goesel*, 2017 IL 122046, ¶ 13 ("[W]e presume that the legislature did not intend absurd, inconvenient, or unjust consequences."). It is not possible for a non-employer third party that provides biometric timeclocks to an employer to obtain a release from the employer's employees "as a condition of employment." Likewise, even if, as Plaintiff asserts, the necessary notice and written release under § 15(b) "can be achieved easily" by an employer "through a single, signed sheet of paper" (Compl. ¶ 32), it cannot be achieved by a third-party technology provider with no relationship to the employees or ability to provide notice and obtain written releases from employees before each employee first uses a biometric timeclock at the employer's workplace. An interpretation of BIPA that would make compliance impossible cannot be the law. *See People v. Hanna*, 207 Ill. 2d 486, 497–500 (2003) (rejecting interpretation of Illinois Administrative Code provision "in light of the absurd consequences that stem from that interpretation," including the "absurd result[]" that the regulated entity would be unable to satisfy the statutory requirements); *People v. Russell*, 2012 IL App (2d) 111098-U, ¶ 14 (same).

## 2. Section 15(b) of BIPA Does Not Apply to ADP, a Non-Employer, Third-Party Technology Provider.

Even if Plaintiff's Complaint included more than conclusory allegations that "Defendants" collected biometric data in violation of § 15(b), other well-pled allegations in the Complaint squarely foreclose Plaintiff from pleading a claim against ADP for violating § 15(b).

First, there is no question that Plaintiff's alleged finger scans occurred in the "context of employment." 740 ILCS 14/10. "[C]ontext of employment" means the "setting or environment" of employment. Black's Law Dictionary 386 (10th ed. 2014); *see also In re M.I. v. J.B.*, 2016 IL 120232, ¶ 26 ("In determining the plain, ordinary, and popularly understood meaning of a term, it

FILED DATE: 3/20/2019 8:41 PM    2018CH07627

is entirely appropriate to look to the dictionary for a definition."). Here, Plaintiff alleges that, "when employees are hired, Rich Products requires them to have their fingerprints scanned . . . ." (Compl. ¶ 38; *accord id.* ¶ 3 ("Rich Products employees are required, as a condition of employment, to have their fingerprints scanned by a biometric timekeeping device.").) Because the alleged biometric scans took place in the "context of employment," § 15(b) cannot apply to ADP.

Plaintiff's allegations make clear that ADP's alleged role was selling the biometric timeclocks to Plaintiff's employer, and at some point receiving biometric data from Plaintiff's employer. (Compl. ¶¶ 39, 40.) This is precisely the sort of alleged indirect, downstream "possession"—after the employer allegedly has already undertaken and completed collection—that is outside the scope of § 15(b)'s written notice and release requirements. Indeed, the Complaint acknowledges that, in the employment context, BIPA's notice and release provisions apply only to the employer-employee relationship and not to third parties that provide biometric timeclocks that employers require their employees to use. *See id.* ¶ 60 ("Through BIPA, the Illinois legislature has created [] a right: an *employee* has the right to receive certain information *prior to an employer securing* their…biometric data." (emphases added)).

### B.  Applying § 15(b) Only to Entities That Collect Biometric Data From Individuals Is Consistent With the Purposes of BIPA.

Correctly interpreting § 15(b) to limit the written notice and release requirements to employers that collect biometric data from their employees, but not to non-employer, third-party technology providers, is consistent with the purposes of the statute.

In *Rosenbach v. Six Flags Entm't Corp.*, the Illinois Supreme Court explained that the purpose of § 15(b) is to safeguard individuals' "right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent."

FILED DATE: 3/20/2019 8:41 PM    2018CH07627

2019 IL 123186, ¶ 34. To achieve that purpose, the General Assembly enacted § 15(b)'s "procedural protections," which require a written exchange between the collecting entity and the individual "before" the data collection may take place. *Id.*; *see* 740 ILCS 14/15(b). The Court observed that "[c]ompliance [with § 15(b)] should not be difficult." 2019 IL 123186, ¶ 37; *see also* Compl. ¶ 32 (alleging that "[c]ompliance…is straightforward").

When biometric data covered by BIPA is collected in the employment context, the General Assembly's objective is achieved when an employer provides notice that such data is being collected and stored, the specific purpose of the collection, and the length of time that the biometric data is being collected, stored, and used, and obtains written consent, all before collecting biometric data from its employee. An employer, unlike a third-party vendor, has a relationship with, and access to, its employee. Moreover, an employer has exclusive control over its workplace, *see Landers-Scelfo v. Corp. Office Sys., Inc.*, 356 Ill. App. 3d 1060, 1069–70 (2005), including whether and how information is communicated to its employees. In contrast, a third-party technology provider that allegedly receives an employee's data *after* collection, and has no relationship with or access to the employee, cannot feasibly provide such notice or obtain such releases before collection.

Furthermore, any non-employer third parties that come into alleged possession of biometric data must comply with the safeguards in BIPA's other subsections. They must develop a publicly available retention schedule. *Id.* § 15(a). They cannot "sell, lease, trade, or otherwise profit" from the biometric data. *Id.* § 15(c). They cannot disclose the data without consent. *Id.* § 15(d). And they must "store, transmit, and protect" the data "using the reasonable standard of care within the private entity's industry." *Id.* § 15(e). In sum, BIPA's statutory framework ensures that employees

FILED DATE: 3/20/2019 8:41 PM    2018CH07627

consent to their employers' collection and use of their biometric data before it is collected, while guaranteeing that any entity alleged to subsequently "possesses" the data safeguards it.[5]

Because ADP is not subject to the written notice and consent requirements of § 15(b), Plaintiff's § 15(b) claim should be dismissed with prejudice.

## II.    Plaintiff's Claim Under § 15(a) Should Be Dismissed.

Plaintiff fails to state a claim under § 15(a) of BIPA. Section 15(a) requires entities in possession of biometric data to develop a publicly available policy "establishing a retention schedule and guidelines for permanently destroying" the biometric data. *Id.* § 15(a). Plaintiff alleges that ADP violated § 15(a) by "fail[ing] to provide [Rich Products] employees" with such a retention schedule and destruction guidelines. (Compl. ¶ 42.) Interpreting § 15(a) to require ADP to affirmatively "provide" a written ADP retention schedule and guidelines to Rich Products' employees would yield an absurd result, because, as described above, ADP has no relationship with Rich Products' employees, and no practical ability to "provide" those employees with a written ADP retention schedule and guidelines. *See Hanna*, 207 Ill. 2d at 497–500 (rejecting interpretation of regulation "in light of the absurd consequences that stem from that interpretation,"

---

[5] Requiring employers, not non-employer, third-party technology providers, to conduct the § 15(b) exchange with employees is also consistent with the construction the Illinois Supreme Court and other courts have given to statutes that govern other employee rights—placing compliance with the employer, not the third-party provider. *See, e.g., Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 104, 114 (2005) (holding that third-party entity which "provided substantial administrative support to [employer], including payroll, purchasing, and accounting services" was not liable for unpaid wages under the Illinois Wage Payment and Collection Act; "[r]ather, . . . an employer is liable for both its own Wage Act violations and those of its agents."); *EEOC v. Cummins Power Generation Inc.*, 313 F.R.D. 93 (D. Minn. 2015) (holding that, under the federal Americans with Disabilities Act (ADA) and Genetic Information Nondiscrimination Act (GINA), employer that used third-party vendors to conduct employee health assessments was responsible for vendors' medical information questionnaires to the extent they violated employee's rights under the ADA or GINA).

including the "absurd result[]" that the regulated entity would be unable to satisfy the statutory requirements); *People v. Russell*, 2012 IL App (2d) 111098-U, ¶ 14 (same).

Moreover, the plain text of § 15(a) does not require an entity to "provide" individuals with a written retention schedule and guidelines. Section 15(a) instead requires an entity's retention schedule and guidelines to be "available to the public." 740 ILCS 14/15(a). When a statutory term is undefined, courts construe the term according to its plain and ordinary meaning, often employing the dictionary definition. *See Price v. Philip Morris, Inc.,* 219 Ill.2d 182, 243 (2005). Merriam-Webster, for example, defines "available" as "accessible or obtainable" and "public" as "accessible to or shared by all members of the community." *Merriam-Webster* (2019). In other words, the plain meaning of the phrase "available to the public" is simply "accessible to the public."

Notwithstanding whether ADP was required to provide Rich Products' employees with a written retention schedule and guidelines, ADP has safeguarded any data that it received as a result of Rich Products' use of the timeclocks, and has not transmitted any such data to any other entity, or used it for any other purpose. ADP also has treated any such data as belonging to its client (Rich Products), and has retained such data until the client notifies ADP that the employee is no longer using the timeclocks. ADP's practices have been memorialized in ADP's Biometric Information Privacy Policy, which is publicly available at: https://www.adp.com/privacy/pdf/Biometric.pdf.

To the extent that Plaintiff attempts to reframe his § 15(a) claim against ADP based on allegations that ADP did not have a publicly available written biometric data retention policy before it allegedly came into possession of Plaintiff's biometric data (*see, e.g.*, Compl. ¶ 91), that allegation also would fail to state a claim under § 15(a). Section 15(a) does not require entities to develop a publicly available written policy *before* coming into possession of biometric data; instead, entities are permitted to do so after they come into possession of such data. *See* 740 ILCS

FILED DATE: 3/20/2019 8:41 PM 2018CH07627

FILED DATE: 3/20/2019 8:41 PM   2018CH07627

14/15(a) ("A private entity in possession of biometric identifiers or biometric information must develop a written policy . . . .").

In contrast, § 15(b) expressly provides that no entity may collect an individual's biometric data "unless it first" complies with that subsection's written notice and consent requirements. 740 ILCS 14/15(b). The General Assembly thus understood how to require entities to take action before coming into possession of biometric data, and chose not to include such a requirement in § 15(a). *See Carver*, 146 Ill. 2d at 353. This Court should reject Plaintiff's misguided attempt to import into § 15(a) the timing requirement of § 15(b).

For all of these reasons, Plaintiff has failed to sufficiently allege a violation of § 15(a).

## III.    Plaintiff's Claim Under § 15(d) Should Be Dismissed.

Plaintiff also fails to sufficiently allege a claim against ADP under § 15(d) of BIPA. Under § 15(d), an entity may not "disclose, redisclose, or otherwise disseminate" a person's biometric data unless the person consents to the disclosure or the disclosure satisfies one of several statutory exceptions. 740 ILCS 14/15(d). The Complaint, however, contains only conclusory allegations that ADP "discloses" employees' biometric data "to other, currently unknown, third parties, which host the biometric data in their data centers." (Compl. ¶ 41.)[6] Because this conclusory allegation is not supported by specific facts, it should be stricken pursuant to Section 2-615.  *See Iseberg v. Gross*, 227 Ill. 2d 78, 86 (2007); *Primax Recoveries, Inc. v. Atherton*, 365 Ill. App. 3d 1007, 1010 (2006) ("Well-pled facts are specific allegations of fact that bring a complaint within a recognized cause of action; mere conclusory allegations unsupported by specific facts will not suffice.").

---

[6] Plaintiff's contention that ADP discloses biometric data to third parties is false. ADP does not "disclose," transfer, or otherwise share biometric data with any third party. For purposes of this motion, however, ADP treats Plaintiff's well-pled allegations as true.

FILED DATE: 3/20/2019 8:41 PM   2018CH07627

Even if Plaintiff had pleaded facts to support his claim that ADP "disclosed" biometric data, Plaintiff cannot assert a valid § 15(d) claim against ADP. The alleged "disclosure" ADP purportedly made was for the purpose of data hosting (*e.g.*, storing data in cloud storage owned by a third-party provider). (*See* Compl. ¶¶ 41, 89.) Plaintiff does not, and cannot, allege that any third-party storage provider ever accessed or used the data.

Plaintiff's position apparently is that *any* transmission of biometric data to a third party is a "disclosure" or "dissemination" under § 15(d). BIPA forecloses such an expansive reading of § 15(d). The plain and ordinary meaning of "disclose" is "to make (something) known or *public*"; "to show (something) after a period of inaccessibility or of being unknown"; or "*to reveal*." Black's Law Dictionary 562 (10th ed. 2014) (emphases added); *see also Merriam-Webster* (2019) ("to expose to view"). "Disseminate" means "to spread abroad" or "to disperse throughout." *Merriam-Webster* (2019). Nothing in the Complaint suggests that ADP (or any other entity) ever made Plaintiff's biometric data broadly or publicly available, or widely dispersed. Rather, the only purported "disclosures" alleged in the Complaint were by Rich Products to "its ADP database" or by "each Defendant" to a third-party storage provider for data-hosting purposes. (Compl. ¶¶ 40-41, 61.) In other words, these purported "disclosures" were transmissions that occurred in connection with timekeeping functions.

The text and structure of BIPA confirm that not every transmission of biometric data constitutes a disclosure or dissemination. In fact, the statute draws an explicit distinction between "disclosing" and "transmitting." "Disclosing" or "disseminating" biometric data is addressed in § 15(d). "Transmit[ting]" biometric data, on the other hand, is addressed in § 15(e). Section 15(e) requires that entities "store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care." 740 ILCS 14/15(e)(1). "When the

FILED DATE: 3/20/2019 8:41 PM   2018CH07627

legislature uses certain language in one part of a statute and different language in another, [the court] may assume different meanings were intended." *Carver*, 146 Ill. 2d at 353. The text of § 15(e) further shows that "transmitting" is distinct from "disclosing" or "disseminating" because it states that entities "shall store, transmit, and protect from disclosure all biometric identifiers and biometric information . . . " 740 ILCS 14/15(e)(1). If "transmitting" data were a "disclosure" under § 15(d), as the Complaint suggests, then entities could never "transmit" biometric data *and* "protect [it] from disclosure," as the statute expressly requires. *See Hanna*, 207 Ill. 2d at 497–500 (rejecting interpretation of Illinois Administrative Code provision that would render the regulated entity unable to satisfy the statutory requirements). Section 15(e) shows that an entity can securely "transmit" biometric data for timekeeping and data-storage purposes—which is all that is alleged here—without disclosing or disseminating the data within the meaning of § 15(d).

For all of these reasons, Plaintiff's § 15(d) claim should be dismissed.

## IV. Plaintiff's Negligence Claim Is Preempted by BIPA and Should Be Dismissed.

Plaintiff's negligence claim is a carbon copy of his BIPA claim, alleging the same legal duty, purported breaches, and purported injuries. (*See* Compl. ¶¶ 97-106.) Because the legislature, by passing BIPA, "ha[s] preempted the field," Plaintiff's duplicative negligence claim must be dismissed. *Mazur v. Hunt*, 227 Ill. App. 3d 785, 789 (1992) (internal quotation marks omitted).

When the legislature "create[s] a remedy in an area" and "carefully spell[s] out" the statutory cause of action, including "the procedure to be followed" and "limit[s] as to recoverable damages," a plaintiff cannot seek relief under a common-law theory of liability that would be "coincidental" with the statutory cause of action. *Cunningham v. Brown*, 22 Ill. 2d 23, 29–30 (1961); *see also Hall v. Gillins*, 13 Ill. 2d 26, 29–30 (1958); *Morris v. Ameritech Illinois*, 337 Ill. App. 3d 40, 49 (2003). As the Illinois Supreme Court has explained, "when the legislature has provided a remedy for a heretofore unremedied evil, the courts should not allow an end-run around

13

FILED DATE: 3/20/2019 8:41 PM   2018CH07627

the limits imposed by that statute by creating a common-law action that remedies the same basic evil." *Cramer v. Ins. Exch. Agency*, 174 Ill. 2d 513, 527 (1996).

BIPA is "a detailed and comprehensive legislative enactment on the subject of" the collection and use of biometric data, and it "specifically describes course of conduct, parties, things affected, limitations and exceptions." *See In re C.B.L.*, 309 Ill. App. 3d 888, 891–93 (1999) (internal quotation marks omitted). The General Assembly's passage of BIPA provided a remedy for privacy violations relating to the collection of biometric data and established requirements for liability, such as the statutory definitions of "written release," "biometric identifier," and "biometric information," and a number of statutory exemptions. 740 ILCS 14/10–25.

Plaintiff's duplicative negligence claim—which alleges nothing more than conduct prohibited by BIPA—is preempted by BIPA and should be dismissed. *See Combs v. Ins. Co. of Illinois*, 146 Ill. App. 3d 957, 963-64 (1986) (holding that common-law claim against insurance company for intentional infliction of emotional distress is preempted by 215 ILCS 5/155, which provides a statutory remedy for a "vexatious and unreasonable" denial of insurance benefits because, "the basis of the allegations remains grounded in unreasonable and vexatious refusal or delay in paying the insurance proceeds," and "*any* count alleging nothing more than the conduct proscribed by [215 ILCS 105/13] is pre-empted by the statute"); *Cramer*, 174 Ill. 2d at 527 (adopting *Combs*).

FILED DATE: 3/20/2019 8:41 PM   2018CH07627

## CONCLUSION

The General Assembly enacted BIPA in order to safeguard consumers' and employees' rights to control their biometric information, and specifically described what the statute requires, and what it prohibits. This Court should reject Plaintiff's efforts to misapply those provisions in an attempt to state a claim against ADP, a non-employer, third-party technology provider. ADP respectfully requests the Court grant its motion and enter an Order dismissing Plaintiff's claims against ADP with prejudice, and providing for such other and further relief as is just and appropriate.


Dated: March 20, 2019                     Respectfully submitted,

                                          ADP, LLC


                                          By: */s/ David C. Layden*
                                                One of its attorneys


Ross B. Bricker
David C. Layden
Joshua M. Levin
Reanne Zheng
JENNER & BLOCK LLP (05003)
353 N. Clark St.
Chicago, Illinois 60654
(312) 222-9350
RBricker@jenner.com
DLayden@jenner.com
JLevin@jenner.com
RZheng@jenner.com

## <u>CERTIFICATE OF SERVICE</u>

I, David C. Layden, an attorney, hereby certify that on the 20th day of March 2019, I caused

a true and correct copy of the foregoing Motion to Dismiss to be served via email on:

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
Stephan Zouras LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

Richard P. McArdle
Joseph A. Donado
Seyfarth Shaw LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606
rmcardle@seyfarth.com
jdonado@seyfarth.com


/s/ David C. Layden

FILED DATE: 3/20/2019 8:41 PM   2018CH07627

Hearing Date: 4/2/2019 9:30 AM - 9:30 AM

FILED DATE: 3/20/2019 9:29 PM   2018CH07627

FILED
3/20/2019 9:29 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| JOSEPH TELLADO, individually and on behalf of all others similarly situated, | ) )  |
| | ) |
| *Plaintiff,* | ) |
| | )  No. 2018-CH-07627 |
| v. | ) |
| | )  Hon. Anna M. Loftus |
| RICH PRODUCTS CORPORATION and ADP, LLC, | ) ) |
| | ) |
| *Defendants.* | ) |

**<u>NOTICE OF MOTION</u>**

TO:    Ryan F. Stephan
         James B. Zouras
         Andrew C. Ficzko
         Stephan Zouras, LLP
         205 N. Michigan Avenue, Suite 2560
         Chicago, IL 60601
         rstephan@stephanzouras.com
         jzouras@stephanzouras.com
         aficzko@stephanzouras.com

         Richard P. McArdle
         Joseph A. Donado
         Seyfarth Shaw LLP
         233 South Wacker Drive, Suite 8000
         Chicago, Illinois 60606
         rmcardle@seyfarth.com
         jdonado@seyfarth.com

     PLEASE TAKE NOTICE THAT, on April 2, 2019, at 9:30 a.m., or at such time thereafter as counsel may be heard, we shall appear before the Honorable Anna M. Loftus, or any judge sitting in her stead, in Courtroom 2410, Daley Center, 50 W. Washington, Chicago, Illinois 60602, and then and there present the attached Defendant ADP, LLC's Motion To Dismiss Pursuant to 735 ILCS 5/2-615.

FILED DATE: 3/20/2019 9:29 PM   2018CH07627

Dated: March 20, 2019

Respectfully submitted,

ADP, LLC

By:/s/ David C. Layden
     One of its attorneys

Ross B. Bricker
David C. Layden
Joshua M. Levin
Reanne Zheng
JENNER & BLOCK LLP (05003)
353 N. Clark St.
Chicago, Illinois 60654
(312) 222-9350
RBricker@jenner.com
DLayden@jenner.com
JLevin@jenner.com
RZheng@jenner.com

FILED DATE: 3/20/2019 9:29 PM    2018CH07627

## **CERTIFICATE OF SERVICE**

I, David C. Layden, an attorney, hereby certify that I caused to be served the following Defendant ADP, LLC's Motion To Dismiss Pursuant to 735 ILCS 5/2-615 on the counsel of record first above listed via email on March 20, 2019.


/s/ David C. Layden            

Return Date: No return date scheduled
Hearing Date: 4/2/2019 9:30 AM - 9:30 AM
Courtroom Number:
Location:

FILED
3/22/2019 9:28 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

**Firm ID No. 90747**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

JOSEPH TELLADO, individually and on behalf
of all other similarly situated,

               Plaintiff,

    v.

RICH PRODUCTS CORPORATION and
ADP, LLC,

              Defendant.

Case No. 2018-CH-7627

Calendar: 15

Honorable Anna Loftus

## DEFENDANT RICH PRODUCTS CORPORATION'S MOTION *INSTANTER* FOR LEAVE TO FILE AN OVERSIZED BRIEF

Defendant Rich Products Corporation hereby respectfully requests leave to submit an oversized brief in connection with their Section 2-619 Motion to Dismiss. In further support of this Motion, Rich Products states as follows:

1.      The Complaint in this matter comprises over 100 paragraphs of allegations, including allegations regarding the purported class that Plaintiff Joseph Tellado seeks to represent.

2.      As set forth in Defendant's Section 2-619 Motion, Tellado lacks standing under Illinois common law because, among other things, he has not suffered a "distinct and palpable" injury-in-fact. In the alternative, Rich Products submits that any injury Tellado allegedly suffered is subject to the Illinois Workers' Compensation Act and its exclusive remedy and timing provisions.

3.      Rich Products respectfully submits that excess pages is warranted to allow Rich Products to explain its common-law standing defense in light of the Illinois Supreme Court's recent ruling in *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186 (2019). Rich Products further respectfully submits that leave to file an oversized brief would serve the ends of justice by allowing Rich Products to fully articulate its request for dismissal under Section 2-619.

FILED DATE: 3/22/2019 9:28 AM   2018CH07627

FILED DATE: 3/22/2019 9:28 AM   2018CH07627

WHEREFORE Defendant Rich Products Corporation respectfully requests that the Court grant leave *instanter* to submit a 19-page brief in connection with its Section 2-619 Motion to Dismiss.

DATED:  March 21, 2019                Respectfully submitted,

                                      SEYFARTH SHAW LLP

                                      By:  /s/ Joseph A. Donado _____

                                      Richard P. McArdle (rmcardle@seyfarth.com)
                                      Joseph A. Donado (jdonado@seyfarth.com)
                                      SEYFARTH SHAW LLP
                                      233 South Wacker Drive; Suite 8000
                                      Chicago, Illinois 60606
                                      Telephone:  (312) 460-5000/ Facsimile:  (312) 460-7000

                                      **Attorneys for Defendant Rich Products Corporation**

FILED DATE: 3/22/2019 9:28 AM   2018CH07627

## CERTIFICATE OF SERVICE

I, Joseph A. Donado, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing **DEFENDANT RICH PRODUCTS MOTION *INSTANTER* FOR LEAVE TO FILE AN OVERSIZED BRIEF** to be served upon the following by email on this 21st day of March 2019:

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue
Suite 2560
Chicago, Illinois, 60601
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

Ross B. Bricker
David C. Layden
Joshua M. Levin
Reanne Zheng
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
RBricker@jenner.com
DLayden@jenner.com
JLevin@jenner.com
RZheng@jenner.com

/s/ Joseph A. Donado

Return Date: No return date scheduled
Hearing Date: 4/2/2019 9:30 AM - 9:30 AM
Courtroom Number:
Location:

FILED
3/22/2019 9:28 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

**Firm ID No. 90747**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

JOSEPH TELLADO, individually and on behalf
of all other similarly situated,

                          Plaintiff,

    v.

RICH PRODUCTS CORPORATION and
ADP, LLC,

                          Defendant.

Case No. 2018-CH-7627

Calendar: 15

Honorable Anna Loftus

## NOTICE OF MOTION

**TO:**    Ryan F. Stephan                Ross B. Bricker
         James B. Zouras           David C. Layden
         Andrew C. Ficzko         Joshua M. Levin
         STEPHAN ZOURAS, LLP    Reanne Zheng
         205 N. Michigan Avenue; Suite 2560    JENNER & BLOCK LLP
         Chicago, Illinois, 60601        353 N. Clark St.
                                         Chicago, Illinois 60654

    **PLEASE TAKE NOTICE** that, on **April 2, 2019**, at **9:30 a.m.**, or at such time thereafter as counsel may be heard, we shall appear before the Honorable Anna M. Loftus, or any judge sitting in her stead, in Courtroom 2410, Daley Center, 50 W. Washington, Chicago, Illinois 60602, and then and there present Defendant Rich Products Corporation's [1] Section 2-615 Motion To Dismiss, [2] Section 2-619 Motion to Dismiss, and [3] Motion *Instanter* to File an Oversized Brief.

DATED:  March 21, 2019        Respectfully submitted,

                                      SEYFARTH SHAW LLP

                                    By:  /s/ Joseph A. Donado
                                    _____

                                    Richard P. McArdle (rmcardle@seyfarth.com)
                                    Joseph A. Donado (jdonado@seyfarth.com)
                                    SEYFARTH SHAW LLP
                                    233 South Wacker Drive; Suite 8000
                                    Chicago, Illinois 60606
                                    Telephone:  (312) 460-5000/ Facsimile:  (312) 460-7000

                                    ***Attorneys for Defendant Rich Products Corporation***

FILED DATE: 3/22/2019 9:28 AM   2018CH07627

FILED DATE: 3/22/2019 9:28 AM   2018CH07627

## CERTIFICATE OF SERVICE

I, Joseph A. Donado, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing **NOTICE OF MOTION** to be served upon the following by email on this 21st day of March 2019:

| | |
|---|---|
| Ryan F. Stephan | Ross B. Bricker |
| James B. Zouras | David C. Layden |
| Andrew C. Ficzko | Joshua M. Levin |
| STEPHAN ZOURAS, LLP | Reanne Zheng |
| 205 N. Michigan Avenue | JENNER & BLOCK LLP |
| Suite 2560 | 353 N. Clark St. |
| Chicago, Illinois, 60601 | Chicago, Illinois 60654 |
| rstephan@stephanzouras.com | RBricker@jenner.com |
| jzouras@stephanzouras.com | DLayden@jenner.com |
| aficzko@stephanzouras.com | JLevin@jenner.com |
| | RZheng@jenner.com |

/s/ Joseph A. Donado

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

Tellado )
            )           2018-CH-7627
      v.      )
            )
Rich Products Corporation )
   & ADP, LLC )
            )
            )
            )
            )

## ORDER FOR BRIEFING SCHEDULE

This matter coming to be heard on Plaintiff's / Defendant's Motion to   Rich Products & ADP LLC's

Dismiss_____, the Court sets the following briefing schedule:

Movant shall file a memorandum in support by _____.

Response brief shall be filed by   April 30, 2019_____.

Reply brief shall be filed by   May 14, 2019_____.

This matter is set for status hearing at 5/24/19 a.m., on a 5/24/19 at 10 Am

Courtesy copies, including briefs, deposition transcripts and most recent complaint relied upon shall be delivered five (5) business days in advance. It is the movant's responsibility to provide the court with a full set of briefs. Briefs shall: (1) contain official case citations, (2) contain separately tabbed exhibits and (3) not exceed 15 / 19 pages. Support for the requested relief cannot be raised initially in the Reply.

o April 10, 2019 Status Stricken
o Rich Products + motion to file enlarged brief granted.
   - Plaintiff may also file a 19 page response brief.

Atty No.: 90747
Name: Seyfarth Shaw LLP
Attorney for Plaintiff / Defendant
Address: 233 S. Wacker Drive, Suite 8000
City/Zip: Chicago, IL 60606
Telephone: (312) 460-5000

Judge Anna M. Loftus

Judge Anna M. Loftus

APR 2 2019

Circuit Court - 2102

Return Date: No return date scheduled
Hearing Date: 5/2/2019 9:30 AM - 9:30 AM
Courtroom Number:
Location:

FILED
4/25/2019 2:53 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

4827075

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| **JOSEPH TELLADO, individually, and on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | Case No. 2018-CH-07627 |
| **v.** | ) ) | Honorable Judge Anna M. Loftus |
| **RICH PRODUCTS CORPORATION and ADP, LLC,** | ) ) ) | |
| **Defendants.** | ) ) ) | |

**<u>NOTICE OF MOTION</u>**

PLEASE TAKE NOTICE that on **<u>Thursday, May 2, 2019</u>** at **<u>9:30a.m.</u>** or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge Anna M. Loftus, or any judge sitting in her stead, in the courtroom usually occupied by her at 50 West Washington, Chicago, Illinois, Room 2410, and present **PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED CLASS ACTION COMPLAINT**

Respectfully submitted,

*/s/ Andrew C. Ficzko*
Andrew C. Ficzko
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
Telephone: 312-233-1550
aficzko@stephanzouras.com

FILED DATE: 4/25/2019 2:53 PM   2018CH07627

## **CERTIFICATE OF SERVICE**

     I, an attorney, hereby certify that on April 25, 2019 a true and correct copy of the foregoing PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED CLASS ACTION COMPLAINT was electronically filed via this Court's electronic filing system and will send notification of such filing to the listed attorneys of record.

          *s/ Andrew C. Ficzko*

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
4/25/2019 2:35 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

4826292

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| **JOSEPH TELLADO, individually, and on behalf of all others similarly situated,** | ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **Case No. 2018-CH-07627** ) |
| **RICH PRODUCTS CORPORATION and ADP, LLC,** | ) **Honorable Anna M. Loftus** ) ) |
| **Defendants.** | ) |

<u>**PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED CLASS ACTION**</u>
<u>**COMPLAINT**</u>

Plaintiff Joseph Tellado, by and through counsel, moves this Honorable Court for leave to file Plaintiff's Amended Class Action Complaint pursuant to the Illinois Rules of Civil Procedure, 735 ILCS 5/2-616. In support thereof, Plaintiff states as follows:

1. On June 18, 2018, Plaintiff filed a Class Action Complaint seeking damages for Defendants' alleged violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. Dkt. No. 1. In particular, Plaintiff alleged that Defendants unlawfully collect, store, use and disseminate individuals' biometric data in violation of BIPA.

2. On March 20, 2019, each Defendant filed a Motion to Dismiss Plaintiff's Class Action Complaint (collectively, "Motions to Dismiss").

3. Plaintiff seeks to amend his Complaint in order to add substantive allegations that will enhance his claim and will narrow the issues raised in Defendants' Motions to Dismiss.[1]

---

[1] Plaintiff's responses to Defendants' Motions to Dismiss are currently due on April 30, 2019. Plaintiff is submitting this motion in lieu of the responses to the Motions to Dismiss.

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

4.      The Illinois Rules of Civil Procedure set forth a liberal policy for allowing a plaintiff to amend a complaint. *See* 735 ILCS 5/2-616.

5.      The interests of justice are served by allowing Plaintiff to amend his Complaint.

For the foregoing reasons, Plaintiff respectfully requests this Honorable Court grant him leave to file his Amended Class Action Complaint, attached hereto as Exhibit A.

Date:   April 25, 2019                          Respectfully Submitted,

                                                */s/ Andrew C. Ficzko*
                                                Ryan F. Stephan
                                                James B. Zouras
                                                Andrew C. Ficzko
                                                **STEPHAN ZOURAS, LLP**
                                                100 N. Riverside Plaza
                                                Suite 2150
                                                Chicago, Illinois 60606
                                                312.233.1550
                                                312.233.1560 *f*
                                                Firm ID: 43734
                                                rstephan@stephanzouras.com
                                                jzouras@stephanzouras.com
                                                aficzko@stephanzouras.com

                                                **ATTORNEYS FOR PLAINTIFF**

FILED DATE: 4/25/2019 2:35 PM    2018CH07627

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on April 25, 2019, I electronically filed the attached with the Clerk of the Court using the electronic filing system and will send such filing to all attorneys of record.

_/s/ Andrew C. Ficzko_

3

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
4/25/2019 2:35 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

4826292

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

# EXHIBIT A

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| **JOSEPH TELLADO, individually, and on behalf)**<br>**of all others similarly situated,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No. 2018-CH-07627** |
| ) | |
| **v.** ) | |
| ) | |
| **RICH PRODUCTS CORPORATION and ADP** ) | **JURY TRIAL DEMANDED** |
| **LLC,** ) | |
| ) | |
| **Defendants.** ) | |

<u>**AMENDED CLASS ACTION COMPLAINT**</u>

Plaintiff Joseph Tellado ("Tellado" or "Plaintiff"), by and through his attorneys, individually and on behalf of all others similarly situated (the "Class"), brings the following Amended Class Action Complaint ("Amended Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against Rich Products Corporation ("Rich Products") and ADP LLC ("ADP") (collectively, "Defendants"), their subsidiaries and affiliates, to redress and curtail each Defendant's unlawful collection, use, storage, and disclosure of Plaintiff's sensitive and proprietary biometric data. Plaintiff alleges as follows upon personal knowledge as to himself, his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1.     Defendant Rich Products is a multinational supplier and solutions provider for food service, in-store bakery and retail marketplaces.

1

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

2.      When Rich Products hires an employee, he or she is enrolled in its ADP employee database. Rich Products uses the ADP employee database to monitor the time worked by its hourly employees.

3.      While many employers use conventional methods for tracking time worked (such as ID badge swipes or punch clocks), Rich Products' employees are required, as a condition of employment, to have their fingerprints scanned by a biometric timekeeping device.

4.      Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Rich Products – and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

5.      Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each employee. This exposes Rich Products employees to serious and irreversible privacy risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels and Facebook/Cambridge Analytica data breaches – employees have **_no_** means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

6.      In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* www.opm.gov/cybersecurity/cybersecurity-incidents.

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

7.    An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

8.    In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

9.    Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that collect, store and use Illinois citizens' biometrics, such as fingerprints.

10.    Notwithstanding the clear and unequivocal requirements of the law, Defendants disregard Rich Products employees' statutorily protected privacy rights and unlawfully collect, store, disseminate, and use their biometric data in violation of BIPA. Specifically, each Defendant has violated and continues to violate BIPA because it did not and continues not to:

      a.    Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by BIPA;

      b.    Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' fingerprints, as required by BIPA;

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

c.     Receive a written release from Plaintiff and others similarly situated to collect, store, or otherwise use their fingerprints, as required by BIPA; and

d.     Obtain consent from Plaintiff and others similarly situated to disclose, redisclose, or otherwise disseminate their fingerprints to a third party as required by BIPA

11.     Accordingly, Plaintiff, on behalf of himself as well as the putative Class, seeks an Order: (1) declaring that Defendants' conduct violates BIPA; (2) requiring Defendants to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

**PARTIES**

12.     Plaintiff Joseph Tellado is a natural person and a citizen of the State of Illinois.

13.     Defendant Rich Products is a corporation organized and existing under the laws of Delaware, with its principal place of business in Buffalo, New York. Rich Products is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

14.     Defendant ADP is a Delaware limited liability company that is registered to do business in Illinois

**JURISDICTION AND VENUE**

15.     This Court has jurisdiction over Defendants pursuant to 735 ILCS § 5/2-209 because Defendants conduct business transactions in Illinois, committed the statutory violations alleged herein in Illinois and are registered to conduct business in Illinois.

16.     Venue is proper in Cook County because Defendants are authorized to conduct business in this State, Defendants conduct business transactions in Cook County, and Defendants committed the statutory violations alleged herein in Cook County and throughout Illinois.

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

## FACTUAL BACKGROUND

### I.     The Biometric Information Privacy Act.

17.     Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

18.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used that company's fingerprint scanners were completely unaware the scanners were not transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

19.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

20.     Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

21.    BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a.    Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;

    b.    Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    c.    Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS 14/15(b).

22.    BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

23.    Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

24.    BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or

FILED DATE: 4/25/2019 2:35 PM    2018CH07627

biometric information without first obtaining consent for such disclosures. *See* 740 ILCS 14/15(d)(1).

25.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

26.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at a heightened risk for identity theft and left without any recourse.

27.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics.  BIPA also protects individuals' rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed, allowing individuals to make a truly informed choice. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

28.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

## II.     Defendants Violate the Biometric Information Privacy Act.

29.     By the time BIPA passed through the Illinois Legislature in mid-2008, most companies who had experimented with using individuals' biometric data stopped doing so.

30.     However, Defendants failed to take note of the shift in Illinois law governing the collection, use, storage and dissemination of biometric data. As a result, each Defendant continues to collect, store, use and disseminate individuals' biometric data in violation of BIPA.

31.     Specifically, when employees are hired by Rich Products, they are required to have their fingerprints captured and stored to enroll them in its ADP employee database(s).

32.     Rich Products uses an employee time tracking system supplied by ADP that requires employees to use their fingerprint as a means of authentication. Unlike a traditional timeclock, employees have to use their fingerprints multiple times each day to "punch" in and out of work.

33.     Upon information and belief, Rich Products failed and continues to fail to inform its employees that it discloses their fingerprint data to at least one out-of-state third-party vendor, ADP, and likely others; fails to inform its employees that it discloses their fingerprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to inform its employees of the purposes and duration for which it collects their sensitive biometric data; and, fails to obtain written releases from employees before collecting their fingerprints.

34.     Upon information and belief, ADP fails to inform Rich Products employees that it discloses their fingerprint data to other, currently unknown, third parties, which host the biometric

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

data in their data centers; fails to inform Rich Products employees of the purposes and duration for which it collects their sensitive biometric data; and, fails to obtain written releases from Rich Products employees before collecting their fingerprints.

35.     Furthermore, each Defendant fails to provide employees with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying individuals' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

36.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA, as well as the recent data breaches, highlight why such conduct – where individuals are aware that they are providing a fingerprint, but not aware of to whom or for what purposes they are doing so – is dangerous. The Pay by Touch bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as a fingerprint, who exactly is collecting their biometric data, where it will be transmitted, for what purposes, and for how long. Each Defendant disregards these obligations and Rich Products employees' statutory rights and instead unlawfully collects, stores, uses and disseminates individuals' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

37.     Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and has not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with each company.

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

38.     Plaintiff and others similarly situated are not told what might happen to their biometric data if and when either Defendant merges with another company, or worse, if and when either Defendant's business folds or when the other third parties that have received biometric data businesses fold.

39.     Since Defendants neither publish a BIPA-mandated data retention policy nor disclose the purposes for their collection of biometric data, Rich Products employees have no idea whether either Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. Moreover, Plaintiff and others similarly situated are not told the extent to whom either Defendant currently discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

40.     These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

41.     By and through the actions detailed above, each Defendant disregarded Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

## III.    Plaintiff Joseph Tellado's Experience

42.     Plaintiff Joseph Tellado worked for Rich Products located at 6200 Mulford St, Niles, IL 60714, as an inventory coordinator from February 2, 1997 until September 26, 2016.

43.     As an employee, Tellado <u>was required</u> to scan his fingerprint so Rich Products could use it as an authorization method to track his time.

44.     Rich Products subsequently stored Tellado's fingerprint data in its ADP database.

45.     Tellado was required to scan his fingerprint each time he began and ended his workday.

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

46.     Tellado has never been informed, prior to the collection of his biometric identifiers and/or biometric information, of the specific limited purposes or length of time for which either Defendant collected, stored, used and/or disseminated his biometric data.

47.     Prior to the collection of his biometric identifiers and/or biometric information, Tellado has never been informed of any biometric data retention policy developed by either Defendant, nor has he ever been informed of whether either Defendant will ever permanently delete his biometric data.

48.      Prior to the collection of his biometric identifiers and/or biometric information, Tellado has never been provided with nor ever signed a written release allowing either Defendant to collect, store, use or disseminate his biometric data.

49.     Tellado has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendants' violations of BIPA alleged herein.

50.     No amount of time or money can compensate Tellado if his biometric data is compromised by the lax procedures through which each Defendant captured, stored, used, and disseminated his and other similarly-situated individuals' biometrics. Moreover, Tellado would not have provided his biometric data to either Defendant if he had known that they would retain such information for an indefinite period of time without his consent.

51.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

FILED DATE: 4/25/2019 2:35 PM    2018CH07627

52.     As Tellado is not required to allege or prove actual damages in order to state a claim under BIPA, he seeks statutory damages under BIPA as compensation for the injuries caused by each Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

53.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiff brings claims on his own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

54.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; ***and*** (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS 14/15.

55.     Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, for the following class of similarly situated individuals under BIPA:

> All individuals working for Rich Products in the State of Illinois who had their fingerprints collected, captured, received, obtained, maintained, stored, disclosed or disseminated by either Defendant during the applicable statutory period.

56.     This action is properly maintained as a class action under 735 ILCS 5/2-801 because:

    A.     The class is so numerous that joinder of all members is impracticable;

    B.     There are questions of law or fact that are common to the class;

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

C.      The claims of the Plaintiff are typical of the claims of the class; and,

D.      The Plaintiff will fairly and adequately protect the interests of the class.

**Numerosity**

57.     The total number of putative class members exceeds fifty (50) individuals. The exact number of class members may easily be determined from Rich Products' payroll records.

**Commonality**

58.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by each Defendant's failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

A.      Whether either Defendant collected, captured, maintained, stored or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

B.      Whether either Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, storing and disseminating their biometric identifiers or biometric information;

C.      Whether either Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, store and disseminate Plaintiff's and the Class's biometric identifiers or biometric information;

D.      Whether either Defendant has disclosed or re-disclosed Plaintiff's and the Class's biometric identifiers or biometric information;

E.      Whether either Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

F.      Whether either Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction with the individual, whichever occurs first;

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

G.    Whether either Defendant complies with any such written policy (if one exists);

H.    Whether either Defendant's violations of BIPA have raised a material risk that Plaintiff's and the putative Class' biometric data will be unlawfully accessed by third parties;

I.    Whether either Defendant used Plaintiff's and the Class's fingerprints to identify them;

J.    Whether the violations of BIPA were committed negligently; and

K.    Whether the violations of BIPA were committed intentionally and/or recklessly.

59.    Plaintiff anticipates that Defendants will raise defenses that are common to the class.

## Adequacy

60.    Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

## Typicality

61.    The claims asserted by Plaintiff are typical of the class members he seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

62.    Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS 5/2-801.

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

**Predominance and Superiority**

63.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

64.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

**FIRST CAUSE OF ACTION**
**Violation of 740 ILCS 14/15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule**

65.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

66.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically,

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

67. Defendants fail to comply with these BIPA mandates.

68. Defendants each qualify as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

69. Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by each Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

70. Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

71. Each Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

72. Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and has not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

73. On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of

FILED DATE: 4/25/2019 2:35 PM  2018CH07627

$5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**SECOND CAUSE OF ACTION**
**Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or information**

74.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

75.     BIPA requires companies to obtain informed written consent from individuals before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; **and** (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

76.     Defendants fail to comply with these BIPA mandates.

77.     Defendants each qualify as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

78.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by each Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

79.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

80.     Each Defendant systematically and automatically collected, used, stored and disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

81.     Each Defendant did not inform Plaintiff and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, and used, nor did Defendants inform Plaintiff and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

82.     By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

83.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA  pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## THIRD CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent

84.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

85.     BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

86.     Defendants fail to comply with this BIPA mandate.

87.     Defendants each qualify as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

88.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by each Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

89.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

90.     Each Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

91.     By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

92.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA

FILED DATE: 4/25/2019 2:35 PM    2018CH07627

pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

**PRAYER FOR RELIEF**

Wherefore, Plaintiff Joseph Tellado respectfully requests that this Court enter an Order:

A.  Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Joseph Tellado as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B.  Declaring that each Defendant's actions, as set forth above, violate BIPA;

C.  Awarding statutory damages of $5,000 for *each* intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.  Declaring that each Defendant's actions, as set forth above, were intentional or reckless;

E.  Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring each Defendant to collect, store, use and disseminate biometric identifiers or biometric information in compliance with BIPA;

F.  Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

G.  Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

H.  Awarding such other and further relief as equity and justice may require.

**JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Date:    April 25, 2019                           Respectfully Submitted,

                                                  */s/ Andrew C. Ficzko*

                                                  Ryan F. Stephan
                                                  James B. Zouras
                                                  Andrew C. Ficzko

20

FILED DATE: 4/25/2019 2:35 PM   2018CH07627

Stephan Zouras, LLP
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com
Firm ID: 43734

**ATTORNEYS FOR PLAINTIFF**

## **PROOF OF SERVICE**

**Tellado v. Rich Products Corporation and ADP, LLC**
**Case No.: 2018-CH-07627**

I, the undersigned, declare as follows:

On April 26, 2019, I served the foregoing documents described as follows:

     1.   Plaintiff's Motion for Leave to File Amended Class Action Complaint.
     2.   Exhibit A.
     3.   Notice of Motion.

on all interested parties in this action addressed as follows:

Ross B. Bricker
David C. Layden
Joshua M. Levin
Reanne Zheng
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, Illinois 60654
rbricker@jenner.com
dlayden@jenner.com
jlevin@jenner.com
rzheng@jenner.com

Richard P. McArdle
Joseph A. Donado
**SEYFARTH SHAW LLP**
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606
rmardle@seyfarth.com
jdonado@seyfarth.com

  _X_  By Electronic Mail on April 26, 2019, in Chicago, Illinois, I served the above-referenced document on the above-stated addressee(s) by electronic mail.

  _____  By depositing in U.S. Mail on April 26, 2019, at 100 N. Riverside Plaza, Chicago, Illinois, I served the above-referenced document on the above-stated addressee(s) with proper postage prepaid.

  _____  By Facsimile on April 26, 2019, in Chicago, Illinois, I served the above-referenced document on the above-stated addressee(s).

     I declare under penalty of perjury that the above is true and correct.

Executed on April 26, 2019, in Chicago, Illinois.

                                    _/s/ Andrew C. Ficzko_
                                      Andrew C. Ficzko
                                      STEPHAN ZOURAS, LLP
                                      100 N. Riverside Plaza, Suite 2150
                                      Chicago, Illinois 60606
                                      Telephone: (312) 233-1550
                                      aficzko@stephanzouras.com

SUBSCRIBED AND SWORN
TO BEFORE ME THIS 26ᵀᴴ DAY
OF APRIL, 2019

_____NOTARY



ADRIANNA PARKER
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
January 03, 2022

Order                                             (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Tellado

v.

No. 2018-CH-07627

Rich Products Corporation and
ADP, LLC

### ORDER

This matter, coming before the Court on Plaintiff's
Motion for Leave to File Amended Class Action Complaint,
the Court being duly advised on the premises, it is hereby
Ordered:

(1) Plaintiff's Motion for Leave to File Amended Class Action
Complaint is granted;

(2) Defendants' to file their motions to dismiss Plaintiff's
Amended Class Action Complaint by May 30, 2019;

(3) Plaintiff to Respond to Defendants' Motions to Dismiss
by June 27, 2019;

(4) Defendants' to reply by July 18, 2019;

(5) Clerk status scheduled for July 25, 2019 @ 10:00 AM;

(6) Previous clerk status scheduled for May 29, 2019 is
stricken.

Attorney No.: 43734

Name: Andrew Ficzko

Atty. for: π

Address: 100 N Riverside Plaza

City/State/Zip: Chicago IL

Telephone: 312-233-1550

ENTERED:

Dated: _____ Judge Anna M. Loftus
MAY - 2 2019
Circuit Court-2102

Judge                            Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

4909681

FILED
5/2/2019 1:52 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

FILED DATE: 5/2/2019 1:52 PM    2018CH07627

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| **JOSEPH TELLADO, individually, and on behalf** of all others similarly situated,   ) <br><br>   ) <br> **Plaintiff,**   ) <br>   ) <br> **v.**   ) <br>   ) <br> **RICH PRODUCTS CORPORATION and ADP**   ) <br> **LLC,**   ) <br>   ) <br> **Defendants.**   ) | **Case No. 2018-CH-07627** <br><br> **JURY TRIAL DEMANDED** |

### AMENDED CLASS ACTION COMPLAINT

Plaintiff Joseph Tellado ("Tellado" or "Plaintiff"), by and through his attorneys, individually and on behalf of all others similarly situated (the "Class"), brings the following Amended Class Action Complaint ("Amended Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against Rich Products Corporation ("Rich Products") and ADP LLC ("ADP") (collectively, "Defendants"), their subsidiaries and affiliates, to redress and curtail each Defendant's unlawful collection, use, storage, and disclosure of Plaintiff's sensitive and proprietary biometric data. Plaintiff alleges as follows upon personal knowledge as to himself, his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      Defendant Rich Products is a multinational supplier and solutions provider for food service, in-store bakery and retail marketplaces.

FILED DATE: 5/2/2019 1:52 PM 2018CH07627

2.      When Rich Products hires an employee, he or she is enrolled in its ADP employee database. Rich Products uses the ADP employee database to monitor the time worked by its hourly employees.

3.      While many employers use conventional methods for tracking time worked (such as ID badge swipes or punch clocks), Rich Products' employees are required, as a condition of employment, to have their fingerprints scanned by a biometric timekeeping device.

4.      Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Rich Products – and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

5.      Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each employee. This exposes Rich Products employees to serious and irreversible privacy risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels and Facebook/Cambridge Analytica data breaches – employees have **_no_** means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

6.      In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* www.opm.gov/cybersecurity/cybersecurity-incidents.

FILED DATE: 5/2/2019 1:52 PM    2018CH07627

7.     An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

8.     In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

9.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that collect, store and use Illinois citizens' biometrics, such as fingerprints.

10.     Notwithstanding the clear and unequivocal requirements of the law, Defendants disregard Rich Products employees' statutorily protected privacy rights and unlawfully collect, store, disseminate, and use their biometric data in violation of BIPA. Specifically, each Defendant has violated and continues to violate BIPA because it did not and continues not to:

a.     Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by BIPA;

b.     Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' fingerprints, as required by BIPA;

3

FILED DATE: 5/2/2019 1:52 PM   2018CH07627

    c.    Receive a written release from Plaintiff and others similarly situated to collect, store, or otherwise use their fingerprints, as required by BIPA; and

    d.    Obtain consent from Plaintiff and others similarly situated to disclose, redisclose, or otherwise disseminate their fingerprints to a third party as required by BIPA

11.    Accordingly, Plaintiff, on behalf of himself as well as the putative Class, seeks an Order: (1) declaring that Defendants' conduct violates BIPA; (2) requiring Defendants to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

## PARTIES

12.    Plaintiff Joseph Tellado is a natural person and a citizen of the State of Illinois.

13.    Defendant Rich Products is a corporation organized and existing under the laws of Delaware, with its principal place of business in Buffalo, New York. Rich Products is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

14.    Defendant ADP is a Delaware limited liability company that is registered to do business in Illinois

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over Defendants pursuant to 735 ILCS § 5/2-209 because Defendants conduct business transactions in Illinois, committed the statutory violations alleged herein in Illinois and are registered to conduct business in Illinois.

16.    Venue is proper in Cook County because Defendants are authorized to conduct business in this State, Defendants conduct business transactions in Cook County, and Defendants committed the statutory violations alleged herein in Cook County and throughout Illinois.

FILED DATE: 5/2/2019 1:52 PM   2018CH07627

## FACTUAL BACKGROUND

**I.    The Biometric Information Privacy Act.**

17.    Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

18.    In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used that company's fingerprint scanners were completely unaware the scanners were not transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

19.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

20.    Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent

FILED DATE: 5/2/2019 1:52 PM    2018CH07627

violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

21.    BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a.    Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;

    b.    Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    c.    Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS 14/15(b).

22.    BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

23.    Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

24.    BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or

FILED DATE: 5/2/2019 1:52 PM   2018CH07627

biometric information without first obtaining consent for such disclosures. *See* 740 ILCS 14/15(d)(1).

25.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

26.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at a heightened risk for identity theft and left without any recourse.

27.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics.  BIPA also protects individuals' rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed, allowing individuals to make a truly informed choice. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

FILED DATE: 5/2/2019 1:52 PM   2018CH07627

28.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

## II.     Defendants Violate the Biometric Information Privacy Act.

29.     By the time BIPA passed through the Illinois Legislature in mid-2008, most companies who had experimented with using individuals' biometric data stopped doing so.

30.     However, Defendants failed to take note of the shift in Illinois law governing the collection, use, storage and dissemination of biometric data. As a result, each Defendant continues to collect, store, use and disseminate individuals' biometric data in violation of BIPA.

31.     Specifically, when employees are hired by Rich Products, they are required to have their fingerprints captured and stored to enroll them in its ADP employee database(s).

32.     Rich Products uses an employee time tracking system supplied by ADP that requires employees to use their fingerprint as a means of authentication. Unlike a traditional timeclock, employees have to use their fingerprints multiple times each day to "punch" in and out of work.

33.     Upon information and belief, Rich Products failed and continues to fail to inform its employees that it discloses their fingerprint data to at least one out-of-state third-party vendor, ADP, and likely others; fails to inform its employees that it discloses their fingerprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to inform its employees of the purposes and duration for which it collects their sensitive biometric data; and, fails to obtain written releases from employees before collecting their fingerprints.

34.     Upon information and belief, ADP fails to inform Rich Products employees that it discloses their fingerprint data to other, currently unknown, third parties, which host the biometric

FILED DATE: 5/2/2019 1:52 PM    2018CH07627

data in their data centers; fails to inform Rich Products employees of the purposes and duration for which it collects their sensitive biometric data; and, fails to obtain written releases from Rich Products employees before collecting their fingerprints.

35.     Furthermore, each Defendant fails to provide employees with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying individuals' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

36.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA, as well as the recent data breaches, highlight why such conduct – where individuals are aware that they are providing a fingerprint, but not aware of to whom or for what purposes they are doing so – is dangerous. The Pay by Touch bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as a fingerprint, who exactly is collecting their biometric data, where it will be transmitted, for what purposes, and for how long. Each Defendant disregards these obligations and Rich Products employees' statutory rights and instead unlawfully collects, stores, uses and disseminates individuals' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

37.     Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and has not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with each company.

FILED DATE: 5/2/2019 1:52 PM   2018CH07627

38.     Plaintiff and others similarly situated are not told what might happen to their biometric data if and when either Defendant merges with another company, or worse, if and when either Defendant's business folds or when the other third parties that have received biometric data businesses fold.

39.     Since Defendants neither publish a BIPA-mandated data retention policy nor disclose the purposes for their collection of biometric data, Rich Products employees have no idea whether either Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. Moreover, Plaintiff and others similarly situated are not told the extent to whom either Defendant currently discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

40.     These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

41.     By and through the actions detailed above, each Defendant disregarded Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

**III.     Plaintiff Joseph Tellado's Experience**

42.     Plaintiff Joseph Tellado worked for Rich Products located at 6200 Mulford St, Niles, IL 60714, as an inventory coordinator from February 2, 1997 until September 26, 2016.

43.     As an employee, Tellado <u>was required</u> to scan his fingerprint so Rich Products could use it as an authorization method to track his time.

44.     Rich Products subsequently stored Tellado's fingerprint data in its ADP database.

45.     Tellado was required to scan his fingerprint each time he began and ended his workday.

FILED DATE: 5/2/2019 1:52 PM   2018CH07627

46. Tellado has never been informed, prior to the collection of his biometric identifiers and/or biometric information, of the specific limited purposes or length of time for which either Defendant collected, stored, used and/or disseminated his biometric data.

47. Prior to the collection of his biometric identifiers and/or biometric information, Tellado has never been informed of any biometric data retention policy developed by either Defendant, nor has he ever been informed of whether either Defendant will ever permanently delete his biometric data.

48. Prior to the collection of his biometric identifiers and/or biometric information, Tellado has never been provided with nor ever signed a written release allowing either Defendant to collect, store, use or disseminate his biometric data.

49. Tellado has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendants' violations of BIPA alleged herein.

50. No amount of time or money can compensate Tellado if his biometric data is compromised by the lax procedures through which each Defendant captured, stored, used, and disseminated his and other similarly-situated individuals' biometrics. Moreover, Tellado would not have provided his biometric data to either Defendant if he had known that they would retain such information for an indefinite period of time without his consent.

51. A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

FILED DATE: 5/2/2019 1:52 PM   2018CH07627

52.     As Tellado is not required to allege or prove actual damages in order to state a claim under BIPA, he seeks statutory damages under BIPA as compensation for the injuries caused by each Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

**CLASS ALLEGATIONS**

53.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiff brings claims on his own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

54.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; ***and*** (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS 14/15.

55.     Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, for the following class of similarly situated individuals under BIPA:

> All individuals working for Rich Products in the State of Illinois who had their fingerprints collected, captured, received, obtained, maintained, stored, disclosed or disseminated by either Defendant during the applicable statutory period.

56.     This action is properly maintained as a class action under 735 ILCS 5/2-801 because:

>     A.     The class is so numerous that joinder of all members is impracticable;
>
>     B.     There are questions of law or fact that are common to the class;

12

FILED DATE: 5/2/2019 1:52 PM    2018CH07627

C.    The claims of the Plaintiff are typical of the claims of the class; and,

D.    The Plaintiff will fairly and adequately protect the interests of the class.

## Numerosity

57.    The total number of putative class members exceeds fifty (50) individuals. The exact number of class members may easily be determined from Rich Products' payroll records.

## Commonality

58.    There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by each Defendant's failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

A.    Whether either Defendant collected, captured, maintained, stored or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

B.    Whether either Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, storing and disseminating their biometric identifiers or biometric information;

C.    Whether either Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, store and disseminate Plaintiff's and the Class's biometric identifiers or biometric information;

D.    Whether either Defendant has disclosed or re-disclosed Plaintiff's and the Class's biometric identifiers or biometric information;

E.    Whether either Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

F.    Whether either Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction with the individual, whichever occurs first;

FILED DATE: 5/2/2019 1:52 PM   2018CH07627

G.   Whether either Defendant complies with any such written policy (if one exists);

H.   Whether either Defendant's violations of BIPA have raised a material risk that Plaintiff's and the putative Class' biometric data will be unlawfully accessed by third parties;

I.   Whether either Defendant used Plaintiff's and the Class's fingerprints to identify them;

J.   Whether the violations of BIPA were committed negligently; and

K.   Whether the violations of BIPA were committed intentionally and/or recklessly.

59.   Plaintiff anticipates that Defendants will raise defenses that are common to the class.

**Adequacy**

60.   Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

**Typicality**

61.   The claims asserted by Plaintiff are typical of the class members he seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

62.   Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS 5/2-801.

FILED DATE: 5/2/2019 1:52 PM    2018CH07627

**Predominance and Superiority**

63.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

64.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

**FIRST CAUSE OF ACTION**
**Violation of 740 ILCS 14/15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule**

65.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

66.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically,

FILED DATE: 5/2/2019 1:52 PM   2018CH07627

those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

67.     Defendants fail to comply with these BIPA mandates.

68.     Defendants each qualify as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

69.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by each Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

70.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

71.     Each Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

72.     Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and has not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

73.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of

FILED DATE: 5/2/2019 1:52 PM    2018CH07627

$5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## SECOND CAUSE OF ACTION

**Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or information**

74.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

75.     BIPA requires companies to obtain informed written consent from individuals before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

76.     Defendants fail to comply with these BIPA mandates.

77.     Defendants each qualify as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

78.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by each Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

79.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

FILED DATE: 5/2/2019 1:52 PM   2018CH07627

80.     Each Defendant systematically and automatically collected, used, stored and disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

81.     Each Defendant did not inform Plaintiff and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, and used, nor did Defendants inform Plaintiff and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

82.     By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

83.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

### THIRD CAUSE OF ACTION
**Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent**

84.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

FILED DATE: 5/2/2019 1:52 PM   2018CH07627

85.     BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

86.     Defendants fail to comply with this BIPA mandate.

87.     Defendants each qualify as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

88.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by each Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra. See* 740 ILCS § 14/10.

89.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

90.     Each Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

91.     By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

92.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for <u>each</u> intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for <u>each</u> negligent violation of BIPA

FILED DATE: 5/2/2019 1:52 PM   2018CH07627

pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## PRAYER FOR RELIEF

Wherefore, Plaintiff Joseph Tellado respectfully requests that this Court enter an Order:

A.  Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Joseph Tellado as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B.  Declaring that each Defendant's actions, as set forth above, violate BIPA;

C.  Awarding statutory damages of $5,000 for *each* intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.  Declaring that each Defendant's actions, as set forth above, were intentional or reckless;

E.  Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring each Defendant to collect, store, use and disseminate biometric identifiers or biometric information in compliance with BIPA;

F.  Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

G.  Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

H.  Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Date:  May 2, 2019                    Respectfully Submitted,

                                      */s/ Andrew C. Ficzko*

                                      Ryan F. Stephan
                                      James B. Zouras
                                      Andrew C. Ficzko

FILED DATE: 5/2/2019 1:52 PM   2018CH07627

Stephan Zouras, LLP
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com
Firm ID: 43734

**ATTORNEYS FOR PLAINTIFF**

FILED DATE: 5/2/2019 1:52 PM   2018CH07627

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on May 2, 2019, I electronically filed the attached with the Clerk of the Court using the electronic filing system and will send such filing to all attorneys of record.

/s/ Andrew C. Ficzko

**Firm ID No. 90747**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| JOSEPH TELLADO, individually and on behalf of all other similarly situated,<br><br>              Plaintiff,<br><br>v.<br><br>RICH PRODUCTS CORPORATION and ADP, LLC,<br><br>              Defendant. | Case No. 2018-CH-7627<br><br>Calendar:  15<br><br>Honorable Anna Loftus |

### NOTICE OF MOTION

**TO:**

| | |
|---|---|
| Ryan F. Stephan<br>James B. Zouras<br>Andrew C. Ficzko<br>STEPHAN ZOURAS, LLP<br>100 N. Riverside Plaza, Suite 2150<br>Chicago, Illinois, 60606 | Ross B. Bricker<br>David C. Layden<br>Joshua M. Levin<br>Reanne Zheng<br>JENNER & BLOCK LLP<br>353 N. Clark St.<br>Chicago, Illinois 60654 |

**PLEASE TAKE NOTICE** that, on **July 25, 2019**, at **9:30 a.m.**, or at such time thereafter as counsel may be heard, we shall appear before the Honorable Anna M. Loftus, or any judge sitting in her stead, in Courtroom 2410, Daley Center, 50 W. Washington, Chicago, Illinois 60602, and then and there present Defendant Rich Products Corporation's Section 2-619 Motion To Dismiss Plaintiff's Amended Class Action Complaint.

DATED:  June 7, 2019

Respectfully submitted,

SEYFARTH SHAW LLP

By:  */s/ Hoorya R. Admad*  _____

Richard P. McArdle (rmcardle@seyfarth.com)
Joseph A. Donado (jdonado@seyfarth.com)
Hoorya R. Admad (hahmad@seyfarth.com)
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000/Facsimile: (312) 460-7000

*Attorneys for Defendant Rich Products Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I, Hoorya R. Ahmad, an attorney, do hereby certify that I have caused a true and correct

copy of the foregoing **NOTICE OF MOTION** to be served upon the following by email on this

7th day of June, 2019:

| | |
|---|---|
| Ryan F. Stephan | Ross B. Bricker |
| James B. Zouras | David C. Layden |
| Andrew C. Ficzko | Joshua M. Levin |
| STEPHAN ZOURAS, LLP | Reanne Zheng |
| 100 N. Riverside Plaza | JENNER & BLOCK LLP |
| Suite 2150 | 353 N. Clark St. |
| Chicago, Illinois, 60606 | Chicago, Illinois 60654 |
| rstephan@stephanzouras.com | RBricker@jenner.com |
| jzouras@stephanzouras.com | DLayden@jenner.com |
| aficzko@stephanzouras.com | JLevin@jenner.com |
| | RZheng@jenner.com |

*/s/ Hoorya R. Ahmad*

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| JOSEPH TELLADO, individually and on behalf of all other similarly situated,<br><br>                Plaintiff,<br><br>   v.<br><br>RICH PRODUCTS CORPORATION and ADP, LLC,<br><br>                Defendant. | Case No. 2018-CH-7627<br><br>Calendar: 15<br><br>Honorable Anna Loftus |

## DEFENDANT RICH PRODUCTS CORPORATION'S SECTION 2-619 MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

Pursuant to 735 ILCS 5/2-619, Defendant Rich Products Corporation moves to dismiss Plaintiff Joseph Tellado's Amended Class Action Complaint for lack of standing, failure to timely file his lawsuit, and because his claims are preempted by the Illinois Workers' Compensation Act.

## INTRODUCTION

On May 2, 2019, Plaintiff filed a three-count Amended Complaint against his former employer Rich Products and a biometric time clock vendor, ADP, LLC asserting putative class claims under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") for Defendants' purported "unlawful collection, use, storage, and disclosure of Plaintiff's sensitive and proprietary biometric data." (Am. Compl.) Count I alleges a violation of BIPA Section 15(a), Count II alleges a violation of Section 15(b), and Count III alleges a violation of Section 15(d). Plaintiff's Amended Complaint must be dismissed with prejudice for several fundamental reasons.

First, Plaintiff lacks Illinois common law standing to sue under BIPA.[1] Plaintiff's Amended Complaint fails to establish this basic requirement because he does not allege a palpable injury, or injury-in-fact. As explained below, Illinois case law on standing is analogous to federal case law applying Article III standing requirements. Federal courts continue to require constitutional standing in BIPA litigation even after the Illinois Supreme Court's decision in *Rosenbach v. Six Flags Entm't Corp*., 2019 IL 123186 (2019), and explain the distinction between statutory and constitutional standing. *See e.g., Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-49 (2016), *as revised* (May 24, 2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."). Exempting Plaintiff from common law standing requirements would produce inconsistent results in lawsuits filed in federal courts versus Illinois state courts. Indeed, the Illinois legislature did not intend such inconsistent applications of BIPA to accomplish its intended purpose of protecting the biometric information of its citizens from falling into the wrong hands, regardless of whether the lawsuit was filed in state or federal court. Moreover, Plaintiff also lacks standing because he provided implied notice and consent by knowingly continuing to provide "fingerprint scans" when he clocked in and out of work. This defeats an assertion that he lacked notice and did not consent, or that he suffered a purported injury.

Second, Plaintiff's claims are barred by the one-year statute of limitation applicable to right to privacy claims under 735 ILCS 5/13-201. BIPA does not provide a statute of limitations. Plaintiff's allegations, coupled with BIPA's legislative intent and *Rosenbach*, make clear that Plaintiff's BIPA claims are in essence right to privacy claims. Plaintiff alleges he worked for Rich Products for over 18 years, from February 2, 1997 to September 26, 2016. During the course of

---

[1] *Rosenbach v. Six Flags Entm't Corp*., 2019 IL 123186 (2019), ¶15 addressed the narrow question of what constitutes an "aggrieved" person under BIPA for purposes of determining *statutory* standing, and the Court did not address the question of, nor did it abrogate, *constitutional* or Illinois *common law* standing. Plaintiff appears to misconstrue these two separate and distinct legal concepts in his failure to allege an injury-in-fact in his Amended Complaint.

2

his lengthy employment, the only time Plaintiff provided his "fingerprint" scans to Rich Products for purposes of enrollment in the biometric time clock was in December 2006. (*See* Affidavit of Timothy Scherer, attached here as Exhibit A.) Thus, under a one-year limitations period, Plaintiff's BIPA claims are time-barred because he filed his lawsuit several years later on June 18, 2018. Alternatively, should this Court determine that Plaintiff's lawsuit is governed by the two-year statute of limitations for claims for statutory penalties and personal injuries under 735 ILCS 5/13-202, his BIPA claims are still time-barred because his claims in fact accrued after BIPA was passed in 2008. Therefore, even under the two-year statute of limitations, the latest Plaintiff could have filed BIPA claims is 2010---when he knew or should have known that his purported right to privacy under BIPA was violated when he continued to clock in and out by scanning his fingerprint.[2] As explained below, ignorance of the law is no excuse for tolling the two-year statute of limitations.

Third, even if Plaintiff suffered an injury by clocking in and out of work, his injury occurred in the course of his employment, thus, it is preempted by the Illinois Workers' Compensation Act, 820 ILCS 305/1, *et. seq.*. The Workers' Compensation Act provides the exclusive remedies for injuries arising amid the employer-employee relationship, which is exactly what Plaintiff alleges here.

For these reasons, Plaintiff's Amended Complaint must be dismissed with prejudice in accordance with Section 2-619(a)(1), (5) and (9).

## **RELEVANT ALLEGATIONS**[3]

Plaintiff alleges he worked for Rich Products as an inventory coordinator in Niles, Illinois from February 2, 1997 to September 26, 2016. (Am. Compl., ¶ 42.) He filed his original Complaint

---

[2] Indeed, Plaintiff's purported BIPA claims would be untimely even under Illinois' five-year "catch-all" statute of limitations.

[3] Plaintiff's factual allegations are taken as true only for the purpose of Defendant's Section 2-619 Motion to Dismiss.

on June 18, 2018. Plaintiff alleges that Rich Products employees are required to have their "fingerprints scanned by a biometric timekeeping device." (*Id*. ¶ 3.) When employees are hired by Rich Products, they are required to have their "fingerprints captured and stored to enroll them in its ADP employee database(s)." (*Id*. ¶ 31.) Rich Products "uses an employee time tracking system supplied by ADP that requires employees to use their fingerprint as a means of authentication." (*Id*. ¶ 32.) "[E]mployees have to use their fingerprints multiple times each day to 'punch' in and out of work." (*Id*. ¶ 32.) Plaintiff was required to scan his "fingerprint" so Rich Products could use it as "an authentication method to track his time." (*Id*. ¶ 43.) Rich Products stored his "fingerprint data" in its ADP database. (*Id*. ¶ 44.) Plaintiff "was required to scan his fingerprint each time he began and ended his workday." (*Id*. ¶ 45.) Plaintiff alleges he would not have provided his biometric data if he had known Defendants would "retain such information for an indefinite period of time without his consent." (*Id*. ¶ 50.) Plaintiff seeks "statutory damages" under BIPA for "the injuries caused by each Defendant." (*Id*. ¶ 52.) Plaintiff does not allege that his biometric data has been unlawfully accessed by third parties.

## **LEGAL STANDARD**

A motion brought pursuant to Section 2-619 admits the sufficiency of the complaint, but asserts an affirmative defense or other matter that avoids or defeats the claim. *Maglio v. Advocate Health & Hosps. Corp*., 2015 IL App (2d) 140782, ¶20, *appeal denied*, 39 N.E.3d 1003 (Ill. 2015) (noting that "[l]ack of standing is an affirmative matter that is properly raised under section 2-619(a)(9)"); *see also Lebron v. Gottlieb Mem'l Hosp*., 237 Ill. 2d 217, 252-53 (2010) ("lack of standing is an affirmative defense, which is the defendant's burden to plead and prove"). In ruling on a section 2-619 motion to dismiss, the court must view the pleadings and supporting materials, if any, in the light most favorable to the non-movant. *Maglio*, at ¶ 20 (internal citation omitted).

## ARGUMENT

**I.     PLAINTIFF LACKS STANDING UNDER ILLINOIS COMMON LAW**

For a plaintiff to have standing to bring a claim, Illinois requires "some injury in fact to a legally cognizable interest." *Greer v. Illinois Housing Development Authority,* 122 Ill. 2d 462, 492 (1988); *Maglio*, 2015 IL App (2d) 140782 at ¶¶ 22-30. The claimed injury may be actual or threatened, and it must be (1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief. *Greer,* at 492-93; *Maglio*, at ¶ 22. In assessing standing in a putative class action, the court focuses on the named plaintiff's allegations, not the general class the plaintiff purports to represent. *Id.* at ¶ 21. Where a plaintiff lacks standing, "the proceedings must be dismissed" because "the lack of standing negates the plaintiff's cause of action." *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 22 (2004); *Schacht v. Brown*, 2015 IL App (1st) 133035, ¶14.

Establishing statutory standing requirements does not necessarily establish common-law standing requirements and vice versa. *See, e.g., People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 331 (1997) (noting that "[i]n Illinois, standing is part of the common law" and applying common law standing analysis to statutory claim); *Lutkauskas v. Ricker*, 2015 IL 117090, ¶¶ 30-31 ("[B]ecause a plaintiff can sustain a cause of action only where he or she has suffered some injury to a legal right, harm caused by the defendant's conduct is an essential element of every cause of action. As a consequence, an allegation that the plaintiff has suffered an injury resulting from the defendant's action is both a pleading requirement and a prerequisite of standing."). The *Rosenbach* decision narrowly addressed the issue of what constitutes an "aggrieved person" under section 20 of BIPA, but it did not address, nor abrogate,

standing under Illinois common law, particularly since common law standing is an affirmative defense. *See People v. Coe*, 2018 IL App (4th) 170359 at ¶ 43; *Greer*, 122 Ill. 2d at 494.

A risk of future harm is insufficient to give rise to standing. *Williams v. Manchester*, 228 Ill. 2d 404, 425 (2008); *Cooney v. Chicago Pub. Sch.*, 407 Ill. App. 3d 358, 365-66 (1st Dist. 2010). A risk of future harm is not an "actual or threatened" injury unless it is "certainly impending," or there is a "substantial risk" that the harm will occur. *Maglio*, at ¶ 25 (citing *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 234 (2014) and quoting *Clapper v. Amnesty International USA*, 133 S.Ct. 1138, 1150 n.5 (2013)). A "possible future injury" or a "theory that relies on a highly attenuated chain of events" is not an injury-in-fact and is insufficient to establish standing. *Id.*

In the data retention context, courts have applied this general principle and held that the risk of identity theft, even where personal-identifying information has been compromised or stolen, is insufficient in itself to give rise to standing. *Maglio* illustrates this point. 2015 IL App (2d) 140782 at ¶¶ 22-30. In that case, the plaintiff sued Advocate, a network of affiliated doctors and hospitals, alleging that burglars stole four password-protected computers that contained certain information relating to four million patients. *Id.* at ¶ 3. Advocate subsequently "notified patients about the incident, set up a call center to answer their questions, and offered one year of free credit-monitoring services, including identity theft resolution assistance and identity theft insurance." *Id.* The plaintiffs alleged that this conduct violated the Personal Information Protection Act, 815 ILCS § 530/1—which, similar to BIPA, pertains to "[u]nique biometric data generated from measurements…such as a fingerprint, retina or iris image, or other unique physical representation or digital representation of biometric data," 815 ILCS § 530/5. The plaintiffs alleged they were injured because they faced an increased risk of identity theft and because they had suffered emotional distress. *Maglio*, at ¶¶ 9, 30. Applying recent jurisprudence from the United States

Supreme Court,[4] the *Maglio* court held that plaintiffs did not have standing because their "allegations of injury are clearly speculative":

> [The United States Supreme Court decision in] *Clapper* compels rejection of [the plaintiffs'] claim that an increased risk of identity theft is sufficient to satisfy the injury-in-fact requirement for standing. As plaintiffs here have not alleged that their personal information has actually been used or that they have been victims of identity theft or fraud, the arguably increased risk of such acts as a result of Advocate's data breach is insufficient to confer standing as that concept is applied in federal cases.

*Maglio*, at ¶¶ 25, 26. The First District likewise has recognized that a claim based upon the improper disclosure of personal data cannot proceed where the alleged injury is merely the increased risk of future identity theft. *See Cooney*, 407 Ill. App. 3d at 365-66. Thus, to have an injury-in-fact under Illinois common law, a plaintiff must allege that he, personally, has suffered some actual harm (or the imminent risk of actual harm) from the improper use of his information. *Maglio*, at ¶¶ 25-29 (the "fact that two plaintiffs to date (out of those 4 million) have received notification of fraudulent activity, *i.e.*, have suffered actual injury arising from Advocate's alleged wrongful acts, does not show that plaintiffs here face imminent, certainly impending, or a substantial risk of harm as a result of the burglary, where no such activity has occurred with respect to their personal data." Here, Plaintiff fails to allege any "injury" at all and simply concludes that Defendants unlawfully collected, stored, used, disclosed, and disseminated his biometric information. (Am. Compl., ¶ 91.) This is wholly speculative. Plaintiff is even further removed from a cognizable injury-in-fact because he has not even alleged that a data breach occurred, much less that anyone has actually been hurt by it, including him. If a plaintiff lacks a cognizable injury

---

[4] Because federal standing principles under Article III "are similar to those" that arise as a matter of common law in Illinois," federal case law interpreting Article III standing "is instructive." *Id.* at ¶ 25; *see also, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("threatened injury must be ***certainly impending*** to constitute injury in fact" because "[a]llegations of ***possible*** future injury" are not sufficient (emphasis in original)). Indeed, the Illinois Supreme Court itself has relied upon United States Supreme Court precedent in discussing the "distinct and palpable" component of standing under Illinois common law. *See Greer*, 122 Ill. 2d at 494.

7

even where there has been an actual data breach or improper disclosure (such as in *Maglio* and *Cooney*), then the Plaintiff here must also lack a cognizable injury since, based on his allegations, he is even further removed from a potentially cognizable injury.

Though not binding on this court, but persuasive, federal courts in the Northern District of Illinois dealing with BIPA litigation have held that technical violations of BIPA's notice and consent provisions are insufficient to constitute injury-in-fact to confer constitutional standing. *See e.g.*, *McGinnis v. United States Cold Storage, Inc.*, No. 17 C 08054, 2019 WL 95154, at *4 (N.D. Ill. Jan. 3, 2019) (citing cases). Furthermore, the Seventh Circuit has held that the mere retention of personally identifying information that was obtained with the person's knowledge (as here) is insufficient to confer constitutional standing if there is no risk of unauthorized disclosure (as is also the case here). *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912-13 (7th Cir. 2017); *Aguilar v. Rexnord LLC*, No. 17 CV 9019, 2018 WL 3239715, at *3 (N.D. Ill. July 3, 2018) ("[N]otice and consent violations [of BIPA] do not without more create a risk of disclosure...."). The *Aguilar* court noted the plaintiff knew his biometric information was being collected, even though he did not receive formal notice and give formal consent because he scanned his fingerprints each time he clocked in and out at work, "and it was clear that the fingerprints were stored since they were used for authentication purposes." *Id.* "So proper compliance with BIPA's disclosure and written authorization requirements would only have made explicit what should have already been obvious, and the procedural violation from disclosure omissions causes negligible harm for Article III purposes." *Id.* (internal quotations and citations omitted).

In line with the aforementioned Illinois case law, the *McGinnis* court noted that the plaintiff confused "two separate legal issues: what it means to be 'aggrieved' under [BIPA]—which is a question of *state statutory* interpretation—versus what it means to have suffered an Article III

injury-in-fact." *McGinnis*, 2019 WL 95154, at *2. Constitutional standing requires a concrete injury even in the context of a statutory violation. *Id*. at *3. If the concrete injury is based on a risk of harm, then the plaintiff must present an "appreciable risk of harm." *Id*. at *3 (citing *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886-87, 889 (7th Cir. 2017) (plaintiff lacked standing to sue for a violation of the Fair Credit Reporting Act where the defendant obtained a credit report without providing the required disclosures; although the defendant's action violated plaintiff's privacy, it was merely a "statutory violation completely removed from any concrete harm or appreciable risk of harm"). The court found that the employer's failure to provide and obtain the statutorily required notice or consent when collecting and retaining McGinnis's fingerprint— without more—did not constitute a concrete injury. *Id*. at *4. Notably, the defendant-employer argued that "[p]ayroll vendors typically are privy to all kinds of confidential information…and have strong protocols and practices in place to protect such data," so it was not clear that a plaintiff alleging disclosure to a "third party" such as payroll vendor, was actually harmed by the alleged violation. *Id*. at *4. The court recognized that "there is some force to that line of reasoning when the third-party is a payroll vendor," but it did not determine this issue because McGinnis did not allege any such disclosure. *Id*.

Significantly, the *Aguilar* and *McGinnis* plaintiffs knew their fingerprints were being collected. The *McGinnis* plaintiff alleged that after his employer implemented its biometric time-tracking system, he was "required to scan his fingerprint and/or handprint so that [his employer] could use it as an authentication method to track his time." *Id*. at *4. "McGinnis knew his fingerprints were being collected because he scanned them in every time he clocked in or out of work, and he knew they were being stored because the time-clock-scanned prints were obviously being compared to a stored set of prints." *Id*. *4. Finally, McGinnis did not plead facts suggesting

9

that there was a risk of disclosure, either intentionally to a third-party vendor or via a data breach of his employer's system. *Id.* at *5. However, "the mere retention of data does not in itself cause an injury-in-fact absent a substantial risk of disclosure." *Id.* at *5. The "fear of indefinite retention arises out of the same underlying fear that the fingerprints will be compromised or disclosed, which is too speculative to satisfy the requirement of concrete injury under Article III." *Id.* at *5.

Similarly here, Plaintiff has not alleged an injury that is distinct and palpable. Despite asserting a purported injury in Count III for "disclosure," the gravamen of Plaintiff's claims is that Rich Products' alleged failure to provide a retention schedule, to obtain informed written consent, or to obtain consent before "disclosure" "*raises a material risk*" that Plaintiff's biometric data "*will be*" unlawfully accessed by third parties. (Am. Compl., ¶ 40) (emphasis added).) Nowhere in his Amended Complaint does Plaintiff allege that his information has been compromised or that his biometric data has been unlawfully accessed by third parties. To the contrary, Plaintiff's allegations demonstrate that ADP is an authorized time clock vendor. (Am. Compl., ¶¶ 31, 32.) He alleges that when employees are hired by Rich Products, they are required to have their "fingerprints captured and stored to enroll them ***in its*** ADP employee database(s)." (*Id.* ¶ 31) (emphasis added).) He also admits that Rich Products "uses an employee ***time tracking system supplied by ADP*** that requires employees to use their fingerprint as a means of authentication." (*Id.* ¶ 32) (emphasis added).) He also admits that he was required to scan his "fingerprint" so Rich Products could use it as "an authentication method to track his time." (*Id.* ¶ 43.) Furthermore, he asserts that Rich Products stored his "fingerprint data" ***in its*** ADP database. (*Id.* ¶ 44) (emphasis added).) These factual allegations do not suggest that Rich Products "disseminated" or "disclosed" his data to a third party or "unknown parties" thereby raising the risk of "material harm" that his data *could be* breached. These technical violations of BIPA's notice and consent provisions are

insufficient to establish the palpable injury necessary to have standing. Moreover, the unidentified "material risks" are too attenuated and speculative and not causally connected to Rich Products' purported failure to obtain Plaintiff's notice and consent. What could happen to his "biometric information" in the future does not constitute an injury-in-fact as a matter of law, cannot be traced to Defendants' actions or inactions, and cannot be redressed by the relief he requests.

As discussed above, under *Greer* and *Maglio*, an injury in fact must be: (1) distinct and palpable; (2) fairly traceable to the defendant's actions; and *(3) substantially likely to be prevented or redressed by the grant of the requested relief. See Greer,* at 492-93; *Maglio,* at ¶ 22 (emphasis added). To that end, by definition Plaintiff cannot satisfy the third element. In fact, Plaintiff's alleged fear about what could happen to his biometric data if it were compromised would exist, irrespective of whether Rich Products complied with BIPA. The notice, consent, and release requirements of BIPA would do nothing to alleviate Plaintiff's purported fear that his information could still be compromised. *See e.g., Amtech Sys. Corp. v. Illinois State Toll Highway Auth.*, 264 Ill. App. 3d 1095, 1103 (1994) ("Where the effect of the challenged action is generalized, speculative or *de minimus,* the complaining party will not have standing…when deciding whether a plaintiff has standing, the trial court must determine whether the party will benefit from the relief granted.") (internal citations omitted).

Here, Plaintiff also impliedly consented to release his alleged biometric identifier when he continued to scan his fingerprint each day for purposes of clocking in and out of work as a "means of authentication." (*Id*. ¶¶ 43, 45.); *see McGinnis*, 2019 WL 95154, at *4; *Aguilar*, 2018 WL 3239715, at *3.

Accordingly, Plaintiff's Amended Complaint should be dismissed because he has alleged facts that are insufficient to establish an injury-in-fact, as a matter of law.

11

## II.     PLAINTIFF'S BIPA CLAIMS MUST BE DISMISSED AS TIME-BARRED

### A.     Plaintiff's Claims Are Time-Barred Under the One-year Statute of Limitations for Publication of Matter Violating the Right of Privacy.

BIPA does not provide a statute of limitation. According to *Rosenbach* and Plaintiff's allegations, BIPA claims are in essence right to privacy claims. Plaintiff alleges BIPA provides individuals with a private right of action to protect their "right to privacy" regarding their biometrics. (Am. Compl.,¶ 27.) Section 13-201 of the Illinois Code of Civil Procedure provides that actions for "publication of matter involving the right of privacy" must be filed within one year after the cause of action accrues. 735 ILCS 5/13-201 (West 2019); *Johnson v. Lincoln Christian College,* 150 Ill. App. 3d 733, 745-46 (1986) (claims for public disclosure of private facts were barred by section 13-201).

Rich Products collected Plaintiff's fingerprints on December 6, 2006 to enroll him in the biometric time clock. (Exhibit A, Affidavit of Scherer, ¶ 3.) Other than this initial collection, his fingerprints were not collected again. (*Id*. ¶ 4.) Thereafter, he merely scanned his fingerprints as a means of authentication to "punch" in and out of work each day. (*Id*. ¶ 5.) Plaintiff's allegations support this; he alleges Rich Products collected and stored his fingerprints to enroll him in its biometric time clock, and thereafter, he "punched" in and out of work by scanning his fingerprints as a means of authentication to track his time. (Am. Compl., ¶¶ 32, 43-45.) In other words, Plaintiff was not providing any new "biometric information" when "scanning" in and out of work after he was enrolled in the biometric time clock on December 6, 2006.

BIPA was passed in October 2008. Thus, Plaintiff's BIPA claims accrued in 2008 and the latest he could have filed his claims was in 2009. Yet, Plaintiff did not file his lawsuit until June 18, 2018, well past the one-year time period, and indeed, almost twenty-one months after his

employment with Rich Products ended. Thus, his claims are time-barred under section 13-201 of the Illinois Code of Civil Procedure.

**B.      Plaintiff's Claims Are Also Time-Barred Under the Two-Year Statute of Limitations for Actions for Personal Injuries or Statutory Penalties.**

Even if the Court determines that the two year statute of limitations under Section 13-202 of the Illinois Code of Civil Procedure for personal injuries or statutory penalties governs Plaintiff's claims, his claims are still time-barred. Section 13-202 provides:

> Personal injury - Penalty. Actions for damages for an injury to the person, or for false imprisonment, or malicious prosecution, or for a statutory penalty, …, shall be commenced within 2 years next after the cause of action accrued….

35 ILCS 5/13-202.

In Illinois, a cause of action for personal injury accrues "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Witherell v. Weimer*, 85 Ill.2d 146, 156 (1981). "Wrongfully caused" means "becoming possessed of sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct was involved." *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 416 (1981). The burden "is upon the injured person to inquire further as to the existence of a cause of action." *Witherell*, 85 Ill. 2d at 156. All persons, including Plaintiff, are presumed to know the law. *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875). *See also, Livingston v. Meyers*, 6 Ill. 2d 325, 334 (1955) (in construing and applying a statute, "[i]t must be presumed that people will know the law and abide by its requirements to protect their property interests"); *Bayo v. Napolitano*, 593 F.3d 495, 504-05 (7th Cir. 2010).

Plaintiff seeks "statutory damages" under BIPA for "the injuries caused by each Defendant." (Am. Compl., ¶ 52.) Plaintiff was employed for Rich Products from February 1997

13

to September 2016. (Am. Compl., ¶ 42.) BIPA was passed in October 2008. Thus, for purposes of this motion, Plaintiff first scanned his fingerprint in 2008 after BIPA was in effect – which means the two year statute of limitations of his BIPA claims expired in 2010.[5] *See Blair v. Nevada Landing Partnership,* 369 Ill. App. 3d 318, 324-25 (2006) (privacy actions are complete at the time of the first publication, and any subsequent publication are of no consequence to the creation or existence of a cause of action, but are only relevant in computing damages). Plaintiff, therefore, knew or should have known that his obligation to sue Rich Products under BIPA expired in 2010.[6]

Plaintiff waited too long to file this lawsuit, and his claims are time-barred.

## III.  PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE ILLINOIS WORKERS' COMPENSATION ACT

Even assuming that Plaintiff has pleaded a distinct and palpable injury—which he has not—his Amended Complaint is nonetheless ripe for dismissal because any injury he allegedly obtained during the course of his employment would be preempted by the Illinois Workers' Compensation Act , 820 ILCS 305/1 (WCA). The WCA created a system where "in exchange for a system of no-fault liability upon the employer, the employee is subject to statutory limitations on recovery for injuries and occupational diseases arising out of and in the course of employment." *Folta v. Ferro Eng'g,* 2015 IL 118070, ¶12. "As part of this 'balancing,' the Act further provides that the statutory remedies under it shall serve as the employee's exclusive remedy if he sustains a compensable injury." *Sharp v. Gallagher*, 95 Ill. 2d 322, 326 (1983) (internal quotation omitted); *Cooley v. Power Constr. Co*., *LLC*, 2018 IL App (1st) 171292, ¶12 ("Employees that are injured

---

[5] Should this case proceed to discovery, the unequivocal evidence will show that Plaintiff first scanned his fingerprint using Rich Products biometric time-clock in 2006. Apparently, Plaintiff did not develop his sincere fear of disclosure of such information for another twelve years when he filed this lawsuit.

[6] Plaintiff had sufficient knowledge or information to "put a reasonable person on inquiry to determine whether actionable conduct was involved" when he began scanning his fingerprint to clock in and out. *See Knox College*, 88 Il. 2d at 416,

14

at work do not have a cause of action against their employer, and their exclusive remedy is to apply for benefits under the [WCA]"); *see also* 820 ILCS 305/5(a) (setting forth exclusivity provision). An employee may only escape the exclusive remedy provision of the WCA if the employee establishes that their alleged injury falls within one of four categories: "that the injury (1) was not accidental; (2) did not arise from his employment; (3) was not received during the course of employment; or (4) was not compensable under the Act." *Folta*, 2015 IL 118070 at ¶14. An injury resulting from negligence is, by definition, accidental. *See, e.g., Baylay v. Etihad Airways P.J.S.C.*, 222 F. Supp. 3d 698, 704 (N.D. Ill. 2016), *aff'd*, 881 F.3d 1032 (7th Cir. 2018) ("Both an employee's claim of employer negligence and a claim of employer willful and wanton conduct fall within the definition of 'accidental' and are preempted" by the [WCA]) (citing authority).

Plaintiff cannot establish that his injury avoids the exclusivity test under the WCA. First, to the extent Plaintiff has suffered an injury as a result of placing his finger on a time-clock scanner, his "injury" would be "accidental." (*See* Am. Compl. ¶ 45.) Plaintiff no longer alleges a negligence claim in his Amended Complaint, yet continues to seek damages for negligent violations. (*Id.* ¶ 92.) He cannot have it both ways. Second, Plaintiff admits that his alleged injuries arose out of his employment and were received during the course of his employment. (*Id.* at ¶¶ 3, 42-45.) Third, Plaintiff's alleged "injury" is potentially compensable under the WCA. *See Pathfinder Co. v. Indus. Comm'n*, 62 Ill. 2d 556, 562 (1976). Accordingly, Plaintiff's claims are preempted by the WCA, which means he has a remedy under the WCA and that his Amended Complaint should be dismissed under Section 2-619(a)(9).

## CONCLUSION

Plaintiff has not suffered a cognizable injury-in-fact and thus lacks standing under Illinois common law to assert his BIPA claims. Plaintiff's lawsuit is also barred by the one-year statute of limitation for privacy claims under Section 13-201 of the Illinois Code of Civil Procedure, and

under the two-year statute of limitation applicable to claims seeking statutory penalties under Section 13-202 of the Illinois Code of Civil Procedure. Furthermore, even if he has suffered an injury in connection with clocking in and out of work, his claim is preempted under the Illinois Workers' Compensation Act, which provides the exclusive remedy for workplace-related injuries.

WHEREFORE, for the foregoing reasons, Defendant Rich Products Corporation respectfully requests that this Court dismiss Plaintiff's Amended Complaint, in its entirety, with prejudice, and grant any additional relief the Court deems appropriate and just.

Dated: June 7, 2019            Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ *Hoorya R. Ahmad*

Richard P. McArdle (rmcardle@seyfarth.com)
Joseph A. Donado (jdonado@seyfarth.com)
Hoorya R. Ahmad (hahmad@seyfarth.com)
SEYFARTH SHAW LLP
233 South Wacker Drive; Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Firm ID No. 90747

Attorneys for Defendant Rich Products Corporation

57153652v.4

## CERTIFICATE OF SERVICE

I, Hoorya R. Ahmad, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing **DEFENDANT RICH PRODUCTS CORPORATION'S SECTION 2-619 MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT** to be served upon the following by email on this 7th day of June 2019:

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois, 60601
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

Ross B. Bricker
David C. Layden
Joshua M. Levin
Reanne Zheng
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
RBricker@jenner.com
DLayden@jenner.com
JLevin@jenner.com
RZheng@jenner.com

/s/ *Hoorya R. Ahmad*

17

57153652v.4

# EXHIBIT A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

JOSEPH TELLADO, individually and on
behalf of all other similarly situated,

               Plaintiff,

    v.

RICH PRODUCTS CORPORATION and
ADP, LLC,

               Defendant.

Case No. 2018-CH-7627

Calendar: 15

Honorable Anna Loftus

## <u>AFFIDAVIT OF TIMOTHY SCHERER</u>

I, Timothy Scherer, having been duly sworn, do hereby attest and state, under penalty of

perjury, based upon personal knowledge and the documents I have reviewed, as follows:

1.    I am currently employed as a Payroll Manager for Rich Products Corporation ("Rich

Products"). In this position, I am responsible for, amongst other things, managing and overseeing

the payroll department to ensure accurate payroll, overseeing Rich Products' timekeeping

practices, and ensuring efficiency and compliance with procedures. In this position, I have access

to employee payroll and time clock records, including records related to employee enrollment in

the biometric time clock utilized by Rich Products.

2.    Rich Products installed and began using the biometric time clock at its Niles, Illinois

location in December 2006.

3.    Based upon my review of Joseph Tellado's payroll files kept in the normal course of Rich

Products' business, Tellado was enrolled in the biometric time clock on December 6, 2006 by

providing "fingerprint" scans of his right thumb and index finger.

4.     December 6, 2006 was the only time that Tellado's fingerprints were collected for enrollment in the biometric time clock.

5.     Rich Products stored Tellado's December 6, 2006 "fingerprint" scans in its biometric time clock "database" only for purposes of authenticating Tellado's clocking in and out of work thereafter.

**Pursuant to Section 1-109 of the Code of Civil Procedure, I, Timothy Scherer, verify under penalty of perjury, that the statements contained in the foregoing affidavit are true and correct based upon my current knowledge and review of documents.**

Executed on _June 5_____, 2019

_[signature]_

Timothy Scherer
Payroll Manager
Rich Products Corporation

Return Date: No return date scheduled
Hearing Date: 7/25/2019 9:30 AM - 9:30 AM
Courtroom Number: N/A
Location: District 1 Court
    Cook County, IL

FILED  5343231
6/7/2019 7:03 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

FILED DATE: 6/7/2019 7:03 PM  2018CH07627

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

JOSEPH TELLADO, individually and on behalf )
of all others similarly situated, )
    )
    *Plaintiff*, )
    )    No. 2018-CH-07627
    v. )
    )    Hon. Anna M. Loftus
    )
RICH PRODUCTS CORPORATION, and )
ADP, LLC, )
    )
    *Defendants*. )

## DEFENDANT ADP, LLC'S MOTION TO DISMISS
## PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO 735 ILCS 5/2-615

Plaintiff Joseph Tellado alleges his biometric privacy rights were violated when his former employer, Defendant Rich Products Corporation ("Rich Products"), required him to use a finger-scan timeclock so he could record his hours worked. Notwithstanding that Plaintiff knowingly used the timeclock every day of his employment, understood the purpose of the finger-scanning process, and alleges no improper use or disclosure of any biometric data, he now brings this putative class action against Rich Products under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA").

Plaintiff also purports to assert claims against ADP, LLC ("ADP"), the company that sold the timeclocks to Rich Products. Plaintiff alleges, among other things, that ADP violated BIPA by not providing written notice to Plaintiff or obtaining a signed release from Plaintiff "as a condition of employment" before Rich Products required Plaintiff to use the timeclock for the first time.

Plaintiff's efforts to apply BIPA's notice and release requirements to a non-employer, third-party technology provider like ADP are foreclosed by the statute. Plaintiff otherwise fails to allege that ADP violated BIPA.

FILED DATE: 6/7/2019 7:03 PM   2018CH07627

ADP respectfully requests that this Court grant ADP's motion to dismiss and enter an Order dismissing Plaintiff's claims against ADP with prejudice pursuant to 735 ILCS 5/2-615.

## BACKGROUND

Plaintiff is a former employee of Rich Products. (Am. Compl. ¶ 42.) Plaintiff alleges that Rich Products "uses an employee time tracking system supplied by ADP that requires employees to use their fingerprint as a means of authentication." (*Id.* ¶ 32.) Many employers use biometric timeclocks in order to record their employees' hours worked accurately. (*Id.* ¶ 4.) Rich Products required Plaintiff to place his finger on a biometric timeclock "each time he began and ended his workday." (*Id.* ¶ 45.) Plaintiff does not allege that any data generated by the finger-scanning process was ever collected, stored, or used for any purpose other than recording his hours so Rich Products could accurately pay him wages. (*Id.* ¶¶ 1–92.)

Notwithstanding that Plaintiff knowingly used the biometric timeclock every day of his employment, understood the purpose of the scanning process, and alleges no improper use or disclosure, he now brings this putative class action against Rich Products and ADP, seeking statutory damages under BIPA.

## ARGUMENT

Plaintiff's Amended Complaint should be dismissed pursuant to 735 ILCS 5/2-615. *First*, Plaintiff's claim under § 15(b) of BIPA should be dismissed because § 15(b) does not apply to a non-employer, third-party technology provider like ADP. *Second*, Plaintiff's claim that ADP violated the retention policy requirements of § 15(a) should be dismissed because Plaintiff fails to allege a violation of § 15(a). *Third*, Plaintiff's claim under § 15(d) should be dismissed because Plaintiff fails to allege that ADP violated § 15(d).

FILED DATE: 6/7/2019 7:03 PM   2018CH07627

## I.   Plaintiff's Claim Under § 15(b) Should Be Dismissed.

Plaintiff makes conclusory allegations that "each Defendant" or "Defendants" collectively violated § 15(b) of BIPA, without alleging facts describing how each defendant purportedly collected biometric data in violation of the statute. (Am. Compl. ¶¶ 10, 46, 48, 76, 80, 81, 82.) As demonstrated below, even if Plaintiff had pleaded something more than conclusory allegations that "Defendants" collected biometric data in violation of § 15(b), Plaintiff would fail to state a claim under § 15(b) against ADP because, in the employment context, § 15(b) applies only to an employer that collects biometric data from its employee.[1] Section 15(b) cannot be applied to a non-employer, third-party vendor such as ADP. Plaintiff's claims against ADP under § 15(b) thus should be dismissed with prejudice.

### A.   Section 15(b) of BIPA Does Not Apply to ADP.

#### 1.   BIPA Limits the Scope of § 15(b).

The statutory language of BIPA makes clear that § 15(b) cannot be applied to ADP, which is not Plaintiff's former employer, but instead is a third party that provided biometric timeclocks to Plaintiff's former employer. (Am. Compl. ¶ 32.) Section 15(b) requires that an entity that "collect[s], capture[s], purchase[s], receive[s] through trade, or otherwise obtain[s]" a biometric identifier or biometric information from an individual must first provide notice "in writing" to that individual and obtain "a written release" executed by the individual. 740 ILCS 14/15(b).

Section 15(b) applies only to entities, like employers, that allegedly acquire biometric identifiers or information directly from individuals, and not to entities such as ADP that did not collect the data but rather, at most, allegedly received the biometric data from the collecting

---

[1] ADP is not suggesting that Plaintiff has a meritorious § 15(b) claim, or any other claim, against Rich Products.

FILED DATE: 6/7/2019 7:03 PM   2018CH07627

employer and stored it on the employer's behalf. The General Assembly drew an express distinction between the obligations placed on entities that "possess" biometric data, and the additional obligations placed on entities that actively acquire such data from an individual. Each of the subsections of § 15 other than (b) apply to entities "in possession of" biometric data. *See* 740 ILCS 14/15(a), (c), (d) & (e). But §15(b) uses different language. It applies to entities that "collect, capture, purchase, receive through trade, or otherwise obtain" biometric data. *Id.* § 15(b). The General Assembly's choice of "possession" in four of the five subsections—but not in subsection (b)—shows that "possession" alone does not make an entity subject to the notice and release obligations of § 15(b). *See Carver v. Bond/Fayette/Effingham Reg'l Bd. of Sch. Trs.*, 146 Ill. 2d 347, 353 (1992) ("When the legislature uses certain language in one part of a statute and different language in another, we may assume different meanings were intended."). Indeed, if alleged possession of biometric data alone were enough to trigger the obligations of § 15(b), it would render superfluous the narrower, specifically enumerated set of verbs the legislature used to define the scope of § 15(b).[2] *See Collins v. Bd. of Trs. of Firemen's Annuity & Benefit Fund of Chicago*, 155 Ill. 2d 103, 111 (1993) ("[N]o word or paragraph should be interpreted so as to be

---

[2] The General Assembly's inclusion of the phrase "or otherwise obtain" at the end of the list of acts that trigger § 15(b)'s obligations does not broaden § 15(b) to include receipt or possession. Like the first four verbs, "obtain" covers the active acquisition of biometric data. *See Black's Law Dictionary* 1247 (10th ed. 2014) (defining "obtain" as "[t]o bring into one's own possession; to procure, esp. through effort"). Interpreting "otherwise obtain" more broadly would violate the cardinal rule of statutory construction that, when "a statutory clause specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted to mean 'other such like.'" *Pooh-Bah Enters., Inc. v. Cty. of Cook*, 232 Ill. 2d 463, 492 (2009). Moreover, interpreting "otherwise obtain" to simply mean any possession of biometric data would render superfluous the preceding specific verbs, because each of those specific verbs necessarily involves possession. *See id.* ("If the legislature had meant the general words to have their unrestricted sense, it would not have used the specific words.").

FILED DATE: 6/7/2019 7:03 PM   2018CH07627

rendered meaningless."). Thus, § 15(b) applies to an entity only if that entity acquires biometric data *from the individual*.

Section 10 of BIPA confirms that the notice and consent obligations of § 15(b) can apply only to entities that acquire biometric data directly from individuals. BIPA states that, in "the context of employment," the "written release" required under § 15(b) is "a release executed by an employee *as a condition of employment*." 740 ILCS 14/10 (emphasis added). This means that, in the employment context, an entity collecting biometric data is subject to the § 15(b) notice and consent obligations only if it has authority over the terms and conditions of an individual's employment and the capacity to require that an employee execute a written release "as a condition of employment." *Id.*; *see Boaden v. Dep't of Law Enf't*, 267 Ill. App. 3d 645, 651–52 (1994), *aff'd*, 171 Ill. 2d 230 (1996) ("When a statute defines its own terms, those terms must be construed according to the definitions given to them."). Thus, when biometric data is collected during the course of employment, § 15(b)'s notice and consent requirements are necessarily limited to employers collecting biometric data directly from employees, as only an employer can require its employees to execute a written release "as a condition of employment." Any other construction of the statute would render meaningless the General Assembly's statutory definition of "written release."

Further, given BIPA's definition of "written release," applying § 15(b) to non-employer, third-party technology providers would yield absurd results. *See In re Marriage of Goesel*, 2017 IL 122046, ¶ 13 ("[W]e presume that the legislature did not intend absurd, inconvenient, or unjust consequences."). It is not possible for a non-employer third party that provides timekeeping services to an employer to obtain a release from the employer's employees "as a condition of employment." A third-party provider has no relationship with the employees or ability to provide

FILED DATE: 6/7/2019 7:03 PM 2018CH07627

notice and obtain written releases from employees before each employee first uses a biometric timeclock at the employer's workplace. An interpretation of BIPA that would make compliance impossible cannot be the law. *See People v. Hanna*, 207 Ill. 2d 486, 497–500 (2003) (rejecting interpretation of Illinois Administrative Code provision "in light of the absurd consequences that stem from that interpretation," including the "absurd result[]" that the regulated entity would be unable to satisfy the statutory requirements); *People v. Russell*, 2012 IL App (2d) 111098-U, ¶ 14 (same).

### 2. Section 15(b) of BIPA Does Not Apply to ADP, a Non-Employer, Third-Party Technology Provider.

Even if Plaintiff's Amended Complaint included more than conclusory allegations that "each Defendant" or "Defendants" collected biometric data in violation of § 15(b), other well-pled allegations in the Amended Complaint squarely foreclose Plaintiff from pleading a claim against ADP for violating § 15(b).

First, there is no question that Plaintiff's alleged finger scans occurred in the "context of employment." 740 ILCS 14/10. "[C]ontext of employment" means the "setting or environment" of employment. *Black's Law Dictionary* 386 (10th ed. 2014); *see also In re M.I. v. J.B.*, 2016 IL 120232, ¶ 26 ("In determining the plain, ordinary, and popularly understood meaning of a term, it is entirely appropriate to look to the dictionary for a definition."). Here, Plaintiff alleges that, "when employees are hired by Rich Products, they are required to have their fingerprints captured and stored . . . ." (Am. Compl. ¶ 31; *accord id.* ¶ 43 ("As an employee, Tellado was required to scan his fingerprint so Rich Products could use it as an authorization method to track his time.").) Because the alleged biometric scans took place in the "context of employment," § 15(b) cannot apply to ADP.

FILED DATE: 6/7/2019 7:03 PM   2018CH07627

Second, Plaintiff's Amended Complaint makes clear that ADP's alleged role was limited to maintaining an "employee database" for Rich Products where Plaintiff's timeclock data was "subsequently stored" by Rich Products. (*Id.* ¶¶ 2, 44.) This is precisely the sort of alleged indirect, downstream "possession"—after the employer allegedly has already undertaken and completed collection—that is outside the scope of § 15(b)'s written notice and release requirements.

**B.    Applying § 15(b) Only to Entities That Collect Biometric Data Directly From Individuals Is Consistent With the Purposes of BIPA.**

Correctly interpreting § 15(b) to limit the written notice and release requirements to employers that collect biometric data from their employees, but not to non-employer, third-party technology providers, is consistent with the purposes of the statute.

In *Rosenbach v. Six Flags Entm't Corp.*, the Illinois Supreme Court explained that the purpose of § 15(b) is to safeguard individuals' "right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent." 2019 IL 123186, ¶ 34. To achieve that purpose, the General Assembly enacted § 15(b)'s "procedural protections," which require a written exchange between the collecting entity and the individual "before" the data collection may take place. *Id.*; *see* 740 ILCS 14/15(b). The Court observed that "[c]ompliance [with § 15(b)] should not be difficult." 2019 IL 123186, ¶ 37.

When biometric data covered by BIPA is collected in the employment context, the General Assembly's objective is achieved when an employer provides notice that such data is being collected and stored, the specific purpose of the collection, and the length of time that the biometric data is being collected, stored, and used, and obtains written consent, all before collecting biometric data from its employee. An employer, unlike a third-party vendor, has a relationship with, and access to, its employee. Moreover, an employer has exclusive control over its workplace, *see Landers-Scelfo v. Corp. Office Sys., Inc.*, 356 Ill. App. 3d 1060, 1069–70 (2005), including

7

FILED DATE: 6/7/2019 7:03 PM   2018CH07627

whether and how information is communicated to its employees. In contrast, a third-party technology provider that allegedly receives an employee's data *after* collection, and has no relationship with or access to the employee, cannot feasibly provide such notice or obtain such releases before collection.

Furthermore, any non-employer third parties that come into alleged possession of biometric data must comply with the safeguards in BIPA's other subsections. They must develop a publicly available retention schedule. 740 ILCS 14/15(a). They cannot "sell, lease, trade, or otherwise profit" from the biometric data. *Id.* § 15(c). They cannot disclose the data without consent. *Id.* § 15(d). And they must "store, transmit, and protect" the data "using the reasonable standard of care within the private entity's industry." *Id.* § 15(e). In sum, BIPA's statutory framework ensures that employees consent to their employers' collection and use of their biometric data before it is collected, while guaranteeing that any entity alleged to subsequently "possess" the data safeguards it.[3]

Because ADP is not subject to the written notice and consent requirements of § 15(b), Plaintiff's § 15(b) claim should be dismissed with prejudice.

---

[3] Requiring employers, not non-employer, third-party technology providers, to conduct the § 15(b) exchange with employees is also consistent with the construction the Illinois Supreme Court and other courts have given to statutes that govern other employee rights—placing compliance with the employer, not the third-party provider. *See, e.g.*, *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 104, 114 (2005) (holding that third-party entity which "provided substantial administrative support to [employer], including payroll, purchasing, and accounting services" was not liable for unpaid wages under the Illinois Wage Payment and Collection Act; "[r]ather, . . . an employer is liable for both its own Wage Act violations and those of its agents."); *EEOC v. Cummins Power Generation Inc.*, 313 F.R.D. 93, 99–100 (D. Minn. 2015) (holding that, under the federal Americans with Disabilities Act (ADA) and Genetic Information Nondiscrimination Act (GINA), employer that used third-party vendors to conduct employee health assessments was responsible for vendors' medical information questionnaires to the extent they violated employee's rights under the ADA or GINA).

FILED DATE: 6/7/2019 7:03 PM    2018CH07627

## II.    Plaintiff's Claim Under § 15(a) Should Be Dismissed.

Plaintiff fails to state a claim under § 15(a) of BIPA. Section 15(a) requires entities in possession of biometric data to develop a publicly available policy "establishing a retention schedule and guidelines for permanently destroying" the biometric data. 740 ILCS 14/15(a). Plaintiff alleges that ADP violated § 15(a) by failing to "provide" him and other Rich Products employees with such a retention schedule and destruction guidelines. (Am. Compl. ¶ 35.) The plain text of § 15(a) does not require an entity to "provide" individuals with a written retention schedule and guidelines. Section 15(a) instead requires an entity's retention schedule and guidelines to be "available to the public." 740 ILCS 14/15(a). When a statutory term is undefined, courts construe the term according to its plain and ordinary meaning, often employing the dictionary definition. *See Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 243 (2005). The definition of "available" is "accessible or obtainable"; the definition of "public" is "accessible to or shared by all members of the community." *Merriam-Webster* (2019). Thus, the plain meaning of the phrase "available to the public" is simply "accessible" to the public.

Moreover, interpreting § 15(a) to require ADP to affirmatively "provide" a written ADP retention schedule and guidelines to Rich Products employees would yield an absurd result because, as described above, ADP has no relationship with Rich Products employees and no practical ability to provide those employees with a written ADP retention schedule and guidelines. *See Hanna*, 207 Ill. 2d at 497–500 (rejecting interpretation of regulation "in light of the absurd consequences that stem from that interpretation," including the "absurd result[]" that the regulated entity would be unable to satisfy the statutory requirements); *Russell*, 2012 IL App (2d) 111098-U, ¶ 14 (same).

To the extent that Plaintiff attempts to reframe his § 15(a) claim against ADP based on allegations that ADP did not have a publicly available written biometric data retention policy

FILED DATE: 6/7/2019 7:03 PM   2018CH07627

before it allegedly came into possession of Plaintiff's biometric data (*see, e.g.*, Am. Compl. ¶ 47), that allegation also would fail to state a claim under § 15(a). Section 15(a) does not require entities to develop a publicly available written policy *before* coming into possession of biometric data; instead, entities are permitted to do so after they come into possession of such data. *See* 740 ILCS 14/15(a) ("A private entity in possession of biometric identifiers or biometric information must develop a written policy . . . .").

In contrast, § 15(b) expressly provides that no entity may collect an individual's biometric data "unless it first" complies with that subsection's written notice and consent requirements. 740 ILCS 14/15(b). The General Assembly thus understood how to require entities to take action before coming into possession of biometric data, and chose not to include such a requirement in § 15(a). *See Carver*, 146 Ill. 2d at 353 ("When the legislature uses certain language in one part of a statute and different language in another, we may assume different meanings were intended."). This Court should reject Plaintiff's misguided attempt to import into § 15(a) the timing requirement of § 15(b).

Notwithstanding whether ADP was required to provide Rich Products employees with a written retention schedule and guidelines, ADP has safeguarded any data that it received as a result of Rich Products' use of the timeclocks, and has not transmitted any such data to any other entity, or used it for any other purpose. ADP also treated any such data as belonging to its client (Rich Products). ADP's practices have been memorialized in ADP's Biometric Information Privacy Policy, which is publicly available at: https://www.adp.com/privacy/pdf/Biometric.pdf.

For all of these reasons, Plaintiff has failed to sufficiently allege a violation of § 15(a).

## III. Plaintiff's Claim Under § 15(d) Should Be Dismissed.

Plaintiff also fails to sufficiently allege a claim against ADP under § 15(d) of BIPA. Under § 15(d), an entity may not "disclose, redisclose, or otherwise disseminate" a person's biometric data unless the person consents to the disclosure or the disclosure satisfies one of several statutory

10

FILED DATE: 6/7/2019 7:03 PM   2018CH07627

exceptions. 740 ILCS 14/15(d). The Amended Complaint, however, contains only conclusory allegations that ADP "disclose[d]" Rich Products employees' biometric data "to other, currently unknown, third parties, which host the biometric data in their data centers." (Am. Compl. ¶ 34; *see also id.* ¶¶ 90, 91.)[4] Because this conclusory allegation is not supported by specific facts, it should be stricken pursuant to Section 2-615. *See Iseberg v. Gross*, 227 Ill. 2d 78, 86 (2007); *Primax Recoveries, Inc. v. Atherton*, 365 Ill. App. 3d 1007, 1010 (2006) ("Well-pled facts are specific allegations of fact that bring a complaint within a recognized cause of action; mere conclusory allegations unsupported by specific facts will not suffice.").

Even if Plaintiff had pleaded facts to support his claim that ADP "disclosed" biometric data, Plaintiff cannot assert a valid § 15(d) claim against ADP. The alleged "disclosure" ADP purportedly made was for the purpose of data hosting (*e.g.*, storing data in cloud storage owned by a third-party provider). (*See* Am. Compl. ¶ 34.) Plaintiff does not, and cannot, allege that any third-party storage provider ever accessed or used the data.

Plaintiff's position apparently is that *any* transmission of biometric data to a third party is a "disclosure" or "dissemination" under § 15(d). BIPA forecloses such an expansive reading of § 15(d). The plain and ordinary meaning of "disclose" is "to make (something) known or *public*"; "to show (something) after a period of inaccessibility or of being unknown"; or "*to reveal.*" *Black's Law Dictionary* 562 (10th ed. 2014) (emphases added); *see also Merriam-Webster* (2019) ("to expose to view"). "Disseminate" means "to spread abroad" or "to disperse throughout." *Merriam-Webster* (2019). Nothing in the Amended Complaint suggests that ADP (or any other entity) ever made Plaintiff's biometric data broadly or publicly available, or widely dispersed. Rather, the only

---

[4] Plaintiff's contention that ADP discloses biometric data to third parties is false. ADP does not "disclose," transfer, or otherwise share biometric data with any third party. For purposes of this motion, however, ADP treats Plaintiff's well-pled allegations as true.

FILED DATE: 6/7/2019 7:03 PM    2018CH07627

purported "disclosures" alleged in the Amended Complaint were by Rich Products to "its ADP database" or by each Defendant to a third-party storage provider for data-hosting purposes. (Am. Compl. ¶¶ 33, 34, 44.) In other words, these purported "disclosures" were transmissions that occurred in connection with data storage for timekeeping functions.

The text and structure of BIPA confirm that not every transmission of biometric data constitutes a disclosure or dissemination. In fact, the statute draws an explicit distinction between "disclosing" and "transmitting." "Disclosing" or "disseminating" biometric data is addressed in § 15(d). "Transmit[ting]" biometric data, on the other hand, is addressed in § 15(e). Section 15(e) requires that entities "store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care." 740 ILCS 14/15(e)(1). "When the legislature uses certain language in one part of a statute and different language in another, [the court] may assume different meanings were intended." *Carver*, 146 Ill. 2d at 353. The text of § 15(e) further shows that "transmitting" is distinct from "disclosing" or "disseminating" because it states that entities "shall store, transmit, and protect from disclosure all biometric identifiers and biometric information . . . " 740 ILCS 14/15(e)(1). If "transmitting" data were a "disclosure" under § 15(d), as the Amended Complaint suggests, then entities could never "transmit" biometric data *and* "protect [it] from disclosure," as the statute expressly requires. *See Hanna*, 207 Ill. 2d at 497–500 (rejecting interpretation of Illinois Administrative Code provision that would render the regulated entity unable to satisfy the statutory requirements). Section 15(e) shows that an entity can securely "transmit" biometric data for timekeeping and data storage purposes—which is all that is alleged here—without disclosing or disseminating the data within the meaning of § 15(d).

For all of these reasons, Plaintiff's § 15(d) claim should be dismissed.

FILED DATE: 6/7/2019 7:03 PM   2018CH07627

## **CONCLUSION**

The General Assembly enacted BIPA in order to safeguard consumers' and employees' rights to control their biometric information, and specifically described what the statute requires and what it prohibits. This Court should reject Plaintiff's efforts to misapply those provisions in an attempt to state a claim against ADP, a non-employer, third-party technology provider. ADP respectfully requests the Court grant its motion and enter an Order dismissing Plaintiff's claims against ADP with prejudice and providing for such other and further relief as is just and appropriate.

Dated: June 7, 2019

Respectfully submitted,

ADP, LLC

By: */s/ David C. Layden*
    One of its attorneys

Ross B. Bricker
David C. Layden
Precious S. Jacobs
Joshua M. Levin
Reanne Zheng
JENNER & BLOCK LLP (05003)
353 N. Clark St.
Chicago, Illinois 60654
(312) 222-9350
RBricker@jenner.com
DLayden@jenner.com
PJacobs@jenner.com
JLevin@jenner.com
RZheng@jenner.com

13

FILED DATE: 6/7/2019 7:03 PM   2018CH07627

## **CERTIFICATE OF SERVICE**

I, David C. Layden, an attorney, hereby certify that on the 7th day of June 2019, I caused a

true and correct copy of the foregoing Motion to Dismiss to be served via email on:

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
Stephan Zouras LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

Richard P. McArdle
Joseph A. Donado
Hoorya R. Ahmad
Seyfarth Shaw LLP
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606
rmcardle@seyfarth.com
jdonado@seyfarth.com
hahmad@seyfarth.com

*/s/ David C. Layden*

Hearing Date: 7/30/2019 9:30 AM - 9:30 AM
Courtroom Number:
Location:

FILED
7/22/2019 4:20 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

5865483

FILED DATE: 7/22/2019 4:20 PM   2018CH07627

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| **JOSEPH TELLADO, individually,** )<br>**and on behalf of all others similarly situated,** )<br> )<br> **Plaintiff,** )<br> )<br> **v.** )<br> )<br> **RICH PRODUCTS CORPORATION and ADP** )<br> **LLC,** )<br> )<br> **Defendants.** ) | **Case No. 2018-CH-07627**<br><br>**Honorable Anna M. Loftus** |

## PLAINTIFF'S MOTION FOR LEAVE TO EXCEED PAGE LIMIT IN RESPONSE TO DEFENDANT RICH PRODUCTS CORPORATION'S MOTION TO DISMISS

Plaintiff, by and through his counsel, hereby respectfully moves this Honorable Court, to allow Plaintiff to exceed this Court's limit of fifteen (15) double-spaced pages for Plaintiff's Response to Defendant Rich Products Corporation's Motion to Dismiss ("Response"). Granting of this motion will enable Plaintiff to sufficiently articulate his arguments in opposition to Defendant's Motion. In support of this motion, Plaintiff states as follows:

1.      Plaintiff will file his Response on July 22, 2019, contemporaneously with the instant motion.

2.      Pursuant to this Court's standing order, briefs in opposition of any motion shall not exceed fifteen (15) pages without court approval.

3.      Plaintiff's Response will address the relevant facts in this case, the applicable legal standards, and each of his arguments in opposition to Defendant's motion to dismiss.

4.      Plaintiff has diligently attempted to keep his Response within fifteen (15) pages, but in light of the volume of legal arguments required to thoroughly present his Response, he could not reasonably comply with this Court's standing order. Thus, Plaintiff respectfully requests that

FILED DATE: 7/22/2019 4:20 PM   2018CH07627

he be permitted to exceed the page limit by five pages to enable him to submit a twenty (20) page

Response.

      Wherefore, Plaintiff respectfully requests this Court to grant this motion.


Dated: July 22, 2019                Respectfully submitted,

                          */s/ Andrew C. Ficzko*
                         Andrew C. Ficzko
                         **STEPHAN ZOURAS, LLP**
                         100 N. Riverside Plaza, Suite 2150
                         Chicago, Illinois 60606
                         312-233-1550
                         312-233-1560 *f*
                         Firm ID: 43734

                         **ATTORNEYS FOR PLAINTIFF**
                         **AND THE PUTATIVE CLASS**

FILED DATE: 7/22/2019 4:20 PM   2018CH07627

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on July 22, 2019, I electronically filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ Andrew C. Ficzko*
_____

Return Date: No return date scheduled
Hearing Date: 7/25/2019 9:30 AM - 9:30 AM
Courtroom Number: N/A
Location: District 1 Court
   Cook County, IL

FILED
7/22/2019 11:22 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

5855012

FILED DATE: 7/22/2019 11:22 AM  2018CH07627

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| JOSEPH TELLADO, individually, and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )    Case No. 2018-CH-07627 |
| RICH PRODUCTS CORPORATION and ADP LLC, | ) ) ) |
| Defendants. | ) |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT ADP, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com
Firm I.D.: 43734

**ATTORNEYS FOR PLAINTIFF
AND THE PUTATIVE CLASS**

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ……………………………………………………....….1

I.    RELEVANT BACKGROUND ………………………………....……….3

     A.  The Illinois Biometric Information Privacy Act …………………………3

     B.  Facts ……………………………………………………………5

II.   LEGAL STANDARD …………………………………………………6

III.  ARGUMENT ………………………………………………………6

     A.  BIPA, By Its Express Terms, Applies to All "Private Entities," Including Third-Party Technology Providers Like ADP ...……………………………………..6

     B.  Plaintiff Has Pled Facts Sufficient to Establish that ADP Violated Section 15(a), and ADP's *Post-Hoc* Implementation of a Privacy Policy After It Was Sued in BIPA Litigation Does Not Retroactively Cure its Prior Violations of Section 15(a)……………………………………………………………...10

     C.  Plaintiff Has Sufficiently Pled Violations of Section 15(d) And He Need Not Allege Public Disclosure or Publication To State A Claim …………………...12

IV.  CONCLUSION ……………………………………………………15

FILED DATE: 7/22/2019 11:22 AM   2018CH07627

FILED DATE: 7/22/2019 11:22 AM   2018CH07627

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Barnes v. Aryzta, LLC*

Case No. 2017-CH-11312 (Cir. Ct. Cook Cty.).................................................. 11

*Bryson v. News America Pub., Inc.*

174 Ill. 2d 77 (1996) ........................................................................ 14

*Cochran v. Securitas Security Servs. USA, Inc.*

2017 IL 121200 ............................................................................ 6

*Collins v. Bd. Of Trs. Of Firemen's Annuity & Benefit Fund of Chicago*

155 Ill. 2d 103, 111 (1993) ................................................................ 10

*Epstein v. Epstein*

843 F.3d 1147 (7th Cir. 2016) ............................................................. 13

*In re Detention of Lieberman*

201 Ill. 2d 300, 308 (2002) ................................................................ 7

*People v. Donaho*

204 Ill. 2d 159, 171-72 (2003).............................................................. 8

*Peterson Plaza Preservation, L.P. v. City of Chicago Dept. of Finance*

2019 IL App (1st) 181502.................................................................. 14

*Rosenbach v. Six Flags Entm't Corp.*

2019 IL 123186...................................................................... passim

*Stone Street Partners, LLC v. City of Chi.*

2017 IL App (1st) 133159................................................................. 6

FILED DATE: 7/22/2019 11:22 AM   2018CH07627

## Statutes

18 U.S.C. § 2511(1)(c) ............................................................................................ 13

740 ILCS 14/10 ............................................................................................ 4, 6, 8

740 ILCS 14/15(a) ............................................................................ 2, 3, 4, 10, 11

740 ILCS 14/15(b) ................................................................................ 2, 3, 6, 7, 8

740 ILCS 14/15(b)(1)-(3) .............................................................................. 4

740 ILCS 14/15(d) ............................................................................ 2, 3, 4, 12, 13

740 ILCS 14/15(e) ..................................................................................... 4, 12

740 ILCS 14/15(f)-(g) ......................................................................................... 5

740 ILCS 14/20 ........................................................................................... 4, 12

740 ILCS 14/5 ................................................................................................... 4

Illinois Biometric Information Privacy Act ("BIPA") ......................................... passim

Wiretap Act ................................................................................................... 13

## Other Authorities

Black's Law Dictionary ...................................................................................... 13

Illinois House Transcript, 2008 Reg. Sess. No. 276 ......................................... 4

Merriam-Webster Dictionary ........................................................................... 13

FILED DATE: 7/22/2019 11:22 AM 2018CH07627

## INTRODUCTION

Plaintiff Joseph Tellado ("Plaintiff" or "Tellado") brought this class action lawsuit against his former employer, Rich Products Corporation ("Rich Products"), and ADP LLC ("ADP") (collectively, "Defendants"), for invading his privacy by unlawfully collecting, using, storing, maintaining and disseminating his biometric identifiers and/or information (*i.e.,* fingerprints) in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*.

Defendant ADP designs and sells biometric timekeeping systems to employers throughout Illinois to track time worked by hourly employees. ADP markets these timekeeping systems because it has a key advantage for employers in the workplace: when employees clock in and out, they must use biometrics (*i.e.* their personal, private, and proprietary data)—like a fingerprint— rather than a badge swipe or traditional punch card. This prevents an unscrupulous employee from manipulating the timekeeping system as it is much more difficult to "borrow" a fingerprint to clock in for a coworker.

To use ADP's biometric timeclocks, an employee at Rich Products must enroll in the system using a fingerprint, which is then collected and stored in a database(s). When Rich Product employees, including Plaintiff, clock in and out, they scan their fingerprint, which is compared against the base template to identify them.

But ADP devices do not necessarily collect and store Rich Products' employees' data locally. Particularly relevant to this case, it is *ADP itself* that collects and stores the employees' biometric data. Employees generally do not know this—because ADP does not tell them—and employees do not give ADP consent to collect or store their fingerprints, because ADP does not procure it. Furthermore, for most of the history of ADP's technology, ADP has failed to provide *any* public-facing information about what it was doing with the thousands of employee fingerprints

1

FILED DATE: 7/22/2019 11:22 AM   2018CH07627

or other biometric data it possessed. ADP also discloses employee biometrics to third-party vendors, again without consent.

BIPA creates basic protections for Illinoisans whose biometric data is collected, "impos[ing] safeguards to ensure that individuals'... privacy rights in their biometric identifiers and biometric information are properly honored[.]" *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 36. Relevant here, the law requires collectors of biometric data, in advance of any such collection, to inform the individual in writing that biometric data is being collected or stored, and receive the person's written consent. 740 ILCS 14/15(b). If the collector discloses the data, it generally must receive consent for that as well. 740 ILCS 14/15(d). And finally, any entity that possesses biometric data must create a publicly accessible policy regarding the retention and destruction of such data. 740 ILCS 14/15(a).

Plaintiff Joseph Tellado was a Rich Products employee from whom ADP collected fingerprints while ignoring his rights under BIPA, and he brings this suit to enforce the statute on his own behalf and on behalf of a class of Illinoisans whose rights have been violated by ADP in the same way. ADP moves to dismiss, essentially casting this case about the conduct of Tellado's former employer, Rich Products. Although this case certainly implicates Rich Products and its violations of BIPA, this case is also about how ADP systematically violated BIPA. ADP's motion studiously ignores Plaintiff's allegations that *ADP* collected Plaintiff's data and retained it, and that even though Plaintiff clocked in and out of work every day using his fingerprint, ADP never obtained his informed written consent to collect or disclose his fingerprint, or established a retention policy while it was doing so. ADP's attempts to defeat these allegations at the pleading stage largely either misconstrue or outright ignore Plaintiff's well-pled allegations.

2

FILED DATE: 7/22/2019 11:22 AM  2018CH07627

In its motion to dismiss, ADP ventures to define itself out of the statute. According to ADP, it does not actually "possess" the employee biometric data that it collected and stored on its servers, and thus there is no requirement to have a retention policy under Section 14/15(a). Alternatively, in ADP's view, its years-late creation of a retention policy retroactively cures those violations. ADP also claims that the statute's requirement that a biometric collector obtain consent before "disclosing" biometric data applies only to a public disclosure at large, despite that this contention lacks any context within Section 14/15(d), and would give ADP license to give employee biometric data to anyone it wants. Finally, ADP argues that it is not an "active" collector of biometric data, and thus is not required to get employee consent under Section 14/15(b). Even if it were not an "active" collector—which it is—BIPA's notice and consent requirements apply uniformly to all entities that "receive [biometric data] through trade, or *otherwise obtain* [biometric data]." 740 ILCS 14/15(b) (emphasis added). Nowhere in the statute does ADP's claimed exception for "passive" collectors exist.

ADP has been operating outside the law as a biometric collector for many years. ADP's rhetoric—decrying the liability it might face in this case—is beside the point on the merits. To the extent that ADP faces liability, it is solely the result of its own conduct in violating the rights of a significant number of hourly-paid Rich Products workers who it hoped would never come to call. ADP's motion should be denied.

## I.    RELEVANT BACKGROUND

### A.    The Illinois Biometric Information Privacy Act.

BIPA represents the legislature's intention that sensitive biometric data necessitates special protections. (*See* Am. Compl. ¶¶ 17-19.) In 2007, the legislature, alarmed by the risk that the millions of fingerprint records amassed by technology company Pay By Touch would be sold as

FILED DATE: 7/22/2019 11:22 AM    2018CH07627

an asset or otherwise disclosed through its bankruptcy, and recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; *see also* 740 ILCS 14/5. BIPA's legislative findings is clear that the legislature's goal was to protect Illinois residents from the unique threat posed by biometrics:

> Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

740 ILCS 14/5(c).

Under BIPA, private entities are prohibited from capturing, possessing, purchasing, or disseminating an individual's "biometric identifiers" and "biometric information" (information based on a biometric identifier that is used to identify an individual), without *first* complying with easy-to-follow requirements. *See* 740 ILCS 14/10. Private entities seeking to collect biometric data must *first* inform the individual that it intends to collect the data, as well as the purpose(s) and length of time the data will be stored and secure a written release to do so. 740 ILCS 14/15(b)(1)-(3). Entities that possess biometric data must establish, and actually follow, a publicly-available retention policy and destruction plan. 740 ILCS 14/15(a). BIPA also prohibits private entities in possession of biometric data from "disclos[ing], redisclose[ing], or otherwise disseminat[ing] a person's or a customer's biometric identifiers or biometric information" unless it is authorized by the individual *first*. 740 ILCS 14/15(d). The information must be protected with industry-standard security measures. 740 ILCS 14/15(e). Finally, the Illinois legislature provided a private right of action to enforce BIPA rights, as well as a statutory remedy. 740 ILCS 14/20.

FILED DATE: 7/22/2019 11:22 AM  2018CH07627

The statute is prophylactic in nature and, on its face, expresses a general intent to regulate and protect biometrics for the purpose of *preventing* an irreversible security breach that would permanently expose an individual to identity theft, privacy invasion, and other evils. *Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 37; 740 ILCS 14/15(f)-(g). The danger is particularly compelling in this context because an individual may never learn – or may only learn long after the fact – that their data has been compromised, improperly used, and/or disseminated. The Illinois legislature recognized these dangers and enacted BIPA as a means to deter careless handling of biometric data and ensure that individuals were fully informed. *Id.*

**B.  Facts.**

Plaintiff worked as an inventory coordinator for Rich Products at its Niles, Illinois facility from February 2, 1997 until September 26, 2016. (Am. Compl. ¶ 42.) As an employee, Tellado was required to scan his fingerprint so Rich Products could use it as an authorization method to track his time. (*Id.* ¶¶ 31, 43.) Plaintiff's fingerprint data (*i.e.*, his personal, private, and proprietary biometric information) was then collected and stored in the ADP database. (*Id.* ¶¶ 31, 44.) Unlike traditional timeclocks, the ADP timeclocks that Rich Products employees used required them to use their fingerprints to clock in and out of work each day they worked. (*Id.* ¶¶ 32, 45.) However, ADP failed to inform Plaintiff of the extent of the purposes for which it collected and stored his sensitive biometric data or the extent to whom the data is disclosed. (*Id.* ¶¶ 10, 34, 39, 46, 81, 90.) Worse, even though BIPA requires entities to obtain written consent before collecting biometric information from Illinois citizen, ADP failed to secure *any* before it first began collecting and storing the data. (*Id.* ¶¶ 10, 34, 48, 80.) Because ADP failed to inform Rich Products employees of the specific purpose(s) and length of time for which it collected and stored their fingerprints, and failed to provide a publicly available retention schedule and guidelines for permanently

FILED DATE: 7/22/2019 11:22 AM   2018CH07627

destroying Rich Product employees' biometric data, Rich Products employees are unaware if ADP will ever destroy their fingerprints within three years of their last interaction with ADP as required by BIPA. (*Id.* ¶¶ 10, 34, 35, 37, 39, 46, 47, 71, 72, 81.) As alleged by Plaintiff, ADP never destroyed his biometric data and continues to store and potentially use it in violation of BIPA. (*Id.*) Thus, Plaintiff has pled ongoing and continuous violations of BIPA.

## II.  LEGAL STANDARD

A motion under § 2-615 requires the Court to accept all well-pled facts as true and make all reasonable inferences in favor of Plaintiff to determine whether the complaint's allegations are sufficient to state a cause of action. *Stone Street Partners, LLC v. City of Chi.*, 2017 IL App (1st) 133159, ¶ 14. The Illinois Supreme Court has explained, "A cause of action should not be dismissed under § 2-615 unless it is clearly apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to recover." *Cochran v. Securitas Security Servs. USA, Inc.*, 2017 IL 121200, ¶ 11.

## III.  ARGUMENT

### A.  BIPA, By Its Express Terms, Applies to All "Private Entities," Including Third-Party Technology Providers Like ADP.

According to ADP, "§ 15(b) cannot be applied to ADP" because it does not "acquire biometric identifiers or information directly from individuals" but rather "received the biometric data from the collecting employer and stored it on the employer's behalf." (Mot. at 3-4.) To reach this tenuous conclusion, ADP ignores that BIPA applies to "any individual, partnership, corporation, limited liability company, association, or other group, however organized," excluding state or local government agencies. 740 ILCS 14/10. Under Section 15(b), "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's…biometric identifier or biometric information" without first satisfying three conditions. 740 ILCS 14/15(b).

FILED DATE: 7/22/2019 11:22 AM   2018CH07627

ADP is indisputably a "private entity" that has "obtained" Plaintiff's fingerprints, but failed to comply with BIPA's prerequisites for doing so. (Am. Compl. ¶¶ 2, 10, 14, 31, 44, 68, 77, 87.) ADP does not dispute that it failed to: (1) inform Plaintiff that it was collecting, storing, using, or disseminating his biometric identifiers and/or biometric information; (2) inform Plaintiff of the purposes and length of time for which his biometric data was collected, stored, used, or disseminated; or (3) secure an executed written release from Plaintiff authorizing the collection, storage, use, or dissemination of his biometric identifiers and/or biometric information. On the face of the Amended Complaint, Plaintiff has stated a claim against ADP for violations of §15(b).

Nevertheless, ADP claims it is somehow exempt from BIPA, first arguing that because every other subsection of § 15 applies only to entities "in possession of" biometric data, it cannot apply to ADP, which purports to not acquire biometric data from individuals directly.[1] (Mot. at 3-4.) But just because possession is not the "trigger" for application of § 15(b) does not mean that "direct" or "active" collection is. *See In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002) ("We are to afford the statutory language the fullest, rather than the narrowest, possible meaning to which it is susceptible"). ADP intentionally misreads a *more* stringent requirement for a less stringent one. BIPA's text unequivocally refutes ADP's "direct collection" argument because the notice and consent requirements of § 15(b) apply uniformly to "private entities" that "receive [biometric data] through trade, or ***otherwise obtain*** [biometric data]." 740 ILCS 14/15(b) (emphasis added). Nothing in BIPA suggests that only entities collecting biometric data directly from individuals are obligated to comply. Rather, consistent with BIPA's laudable goals, *any* entity that obtains biometric data, no matter the source or the manner of collection, must ensure that notice is given and written consent received before doing so. *Id*.

---

[1] It is worth noting that the fingerprint collection Plaintiff alleges is done by an ADP device operating ADP software and integrated with Rich Products' ADP employee database.

The Pay by Touch bankruptcy that motivated BIPA's passage makes clear that "direct collection" is not the touchstone of liability under § 15(b). The bankruptcy prompted concerns that fingerprint databases might be sold to unknown third parties, and, as a result, the Illinois legislature acted upon these concerns by enacting BIPA. (Am. Compl. ¶¶ 17-19.) But under ADP's theory, neither Pay by Touch nor any entity that purchased the fingerprint database through the bankruptcy could be held liable under § 15(b) because it was Pay by Touch's clients that "directly collected" individuals' fingerprints. The legislature specifically addressed these concerns by requiring informed written consent when *any* private entity collects, captures, purchases, receives through trade, or otherwise obtains biometric identifiers and/or information. *See* 740 ILCS 14/15(b). The legislature's emphasis on "major national corporations" testing biometric devices in third-party locations such as grocery stores, gas stations, and schools strongly indicates that the Act targeted companies that were "non-employer, third-party technology provider[s]" if they were collecting and storing the biometric data themselves. *See* 740 ILCS 14/5(b). And as explained in *Rosenbach*, § 15(b) provides Illinoisans with the "power to say no" to the collection or storage of their biometric data. 2019 IL 123186, ¶ 34. "[I]n giving effect to legislative intent, the court should consider…the reason for the law, the problems to be remedied, and the objects and purposes sought." *People v. Donaho*, 204 Ill. 2d 159, 171-72 (2003). The legislature clearly intended BIPA to cover entities such as ADP, and requiring it to ensure individuals' consent to its collection – even "indirect, downstream 'possession'" that ADP asserts – of their fingerprints comports with the purposes of BIPA. (Mot. at 7.)

Next, relying on BIPA's definition of "written release," ADP argues that in the employment context, the employer is the one and only entity responsible for BIPA compliance. (Mot. at 5; *see also* 740 ILCS 14/10.) Here, ADP obtusely mistakes an exception in the law with

FILED DATE: 7/22/2019 11:22 AM   2018CH07627

FILED DATE: 7/22/2019 11:22 AM   2018CH07627

a commandment. BIPA defines the written release required by § 15(b) in two ways: "'Written release' means informed written consent or, in the context of employment, a release executed by an employee as a condition of employment." 740 ILCS 14/10. This provision is plainly aimed at permitting employers to obtain effective consent – consistent with BIPA's requirements, at least – even if they compel employees to sign under threat of losing their jobs.  But this does not mean that a written release can *only* be obtained in the employment context by an employer on the basis of that condition.

Further, ADP's harvesting of Plaintiff's biometric data indisputably did not occur in the context of Plaintiff's employment *with* ADP, and its contention that compliance is impossible because it has no power to set the conditions of Plaintiff's employment is demonstrably false. It could, for example, easily place a notification on the biometric timekeeping devices and require employees to indicate that they consent to ADP's collection by clicking a button. With little difficulty, ADP could also easily require entities purchasing its biometric timekeeping systems in which ADP collects and stores the data to inform users about its collection and storage and obtain their "informed written consent" (which is exceedingly straightforward), and thus comply with BIPA. Instead, ADP did ***nothing*** to ensure that Illinois citizens are informed of its collection and storage of their biometric data – much less that they consented to the capture.

As much as ADP tries to downplay its own role here, its active decision to set up a timekeeping system that collects and stores individuals' biometric data belies its passive collection claim. ADP could have, for instance, designed its systems so that biometric data is stored only locally, as the near-ubiquitous application of fingerprint identification in mobile phones do. But for its own reasons, it chose to sell fingerprint scanners that transmitted data to ADP-controlled servers for storage. That decision triggered ADP's obligation to ensure that individuals were fully

FILED DATE: 7/22/2019 11:22 AM   2018CH07627

informed about what would happen to their biometric data, which ADP could satisfy simply by ensuring that entities using its fingerprint scanners adequately inform employees that it is receiving their fingerprint data, or by communicating that information to individuals itself.

In fact, BIPA's other requirements – particularly § 15(a)'s requirement that entities in possession of biometric identifiers develop and make publicly available a retention policy – would be rendered meaningless if ADP's reading of the law was correct. *Collins v. Bd. Of Trs. Of Firemen's Annuity & Benefit Fund of Chicago*, 155 Ill. 2d 103, 111 (1993) ("no word or paragraph should be interpreted so as to be rendered meaningless"). An individual would never be able to seek out ADP's publicly-available retention and destruction policy if he or she were never informed that ADP was the entity collecting and storing his or her fingerprint. Considering BIPA as a whole, requiring entities that receive biometric data to secure that consent is given is perfectly consistent with the structure and purpose of BIPA. Accordingly, ADP *is* subject to § 15(b)'s requirements and its motion should be denied.

      **B.**    **Plaintiff Has Pled Facts Sufficient to Establish that ADP Violated Section 15(a), and ADP's *Post-Hoc* Implementation of a Privacy Policy After It Was Sued in BIPA Litigation Does Not Retroactively Cure its Prior Violations of Section 15(a).**

ADP, ignoring the fact that it failed to comply with § 15(a) in any respect, avers that Plaintiff's § 15(a) claim should be dismissed because BIPA does not require it to "provide" a publicly-available retention and destruction policy to anyone. (Mot. at 9.) Plaintiff alleges that ADP did not provid him or the putative class with a retention or destruction policy *because it had not created one*. While BIPA may not require ADP to print out its retention policy and serve it on Plaintiff, it certainly requires it to establish a policy – which it indisputably failed to do when it came into possession of Plaintiff's fingerprint data – and make it publicly available. 740 ILCS 14/15(a). Plaintiff has properly alleged that ADP did not create such a policy and that because of

FILED DATE: 7/22/2019 11:22 AM   2018CH07627

this failure, he has no reason to believe that ADP has permanently destroyed his biometric data. (Am. Compl. ¶¶ 10, 34, 35, 37, 39, 46, 47, 71, 72, 81.)

ADP's claim that it has *now* come into compliance with § 15(a) again utterly ignores the fact that it took *no steps* to comply *during the statutory period*. Only after being sued[2] did ADP establish a privacy policy and made it publicly available.[3] (Mot. at 10.) Apparently, ADP believes that its creation of this policy now retroactively cures any prior violations of § 15(a). But nothing in BIPA suggests that private entities can possess biometric data for any length of time without publicly publishing a retention schedule and guidelines for destruction. Instead, the retention schedule and destruction policy must be published whenever a private entity is "in possession of" biometric data. 740 ILCS 14/15(a).

Plaintiff began working for Rich Products in 1997. When Rich Products hires an employee, he or she is enrolled in the ADP employee database which is used to monitor the time worked by hourly employees. Both Rich Products and ADP collected employees' biometric data in order to enroll them in the ADP database. From the time Rich Products started using the biometric timekeeping systems until ADP implemented its privacy policy years later (according to the website, the privacy policy was possibly effective as of May 8, 2018), it was in possession of Plaintiffs' biometric data without having a publicly available retention schedule or destruction policy, in violation of § 15(a). This is the violation for which Plaintiff seeks redress, and ADP cannot avoid liability simply by publishing a privacy policy on its website after being sued. After all, ADP's interpretation of the statute would allow it to avoid liquidated damages at any time up

---

[2] ADP was first sued for violating BIPA in August 2017. *See Barnes v. Aryzta, LLC*, Case No. 2017-CH-11312 (Cir. Ct. Cook Cty.).

[3] ADP has arguably now come into compliance with Section 15(a) with what would appear to be very little effort, belying its own contention that it has "no practical ability" to comply with BIPA. (Mot. at 9.)

FILED DATE: 7/22/2019 11:22 AM   2018CH07627

through the date of judgment in a BIPA case, as long as it posted a privacy policy on its website before then. This would make a mockery and completely eliminate the incentive for compliance with the statutory requirements that BIPA's damages provision is supposed to provide. *Rosenbach*, 2019 IL 123186, ¶ 37 ("When private entities face liability for failure to comply with the law's requirements without requiring affected individuals or customers to show some injury beyond violation of their statutory rights, those entities have the strongest possible incentive to conform to the law and prevent problems before they occur and cannot be undone."). Contrary to ADP's view, every prong of BIPA is enforceable when a violation occurs, both for damages and injunctive relief. 740 ILCS 14/20.

### C.   Plaintiff Has Sufficiently Pled Violations of Section 15(d) And He Need Not Allege Public Disclosure or Publication To State A Claim

Turning to § 15(d), ADP attempts to wring more exceptions out of BIPA's statutory language. The section requires entities that seek to "disclose, redisclose, or otherwise disseminate" biometric data to secure consent from the subject (unless the disclosure completes a financial transaction or is required by law or subpoena). 740 ILCS 14/15(d). To interpret § 15(d), ADP turns to § 15(e), which establishes the data security requirement for BIPA: an entity in possession of biometric data must "store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within the private entity's industry." 740 ILCS 14/15(e). Thus, ADP claims, 14/15(e) allows it to "transmit" information as long as it follows that reasonable standard of care – there is no consent requirement. Disclosure, therefore, must mean "publicly available, or widely dispersed." (Mot. at 11.)

This is a remarkably inventive interpretation of the statute, but not one that can withstand even cursory scrutiny of the statute's text or any common understanding of the word. The statute's exceptions strongly suggest that "disclosure" can occur to as little as one other party, such as that

FILED DATE: 7/22/2019 11:22 AM   2018CH07627

required to "complete[] a financial transaction," or respond to a subpoena. 740 ILCS 14/15(d). ADP's dictionary definitions of "disclose" are not inconsistent with disclosure to one other person or entity, either: to disclose means to give information to someone *other* than the original parties to the communication.[4] The same applies to its definition of "dissemination"; "to spread abroad" or "to disperse throughout." (Mot. at 11.) ADP presents these definitions as if they demonstrate a ***numerosity*** line between what constitutes a "disclosure" or "dissemination" and a mere "transmission," but the actual difference between the words is disclosure's and dissemination's ***breach of privacy*** meaning. BIPA is quite concerned with the secrecy of private biometric data, which is why the anti-disclosure provision exists. *See* 740 ILCS 14/1, 14/15(d). But "disclosure" and "dissemination" occurs when information is transmitted either to one person or many – the point is that a third party has learned previously unrevealed information.

A Seventh Circuit case in the Wiretap Act context, *Epstein v. Epstein*, makes this point. *Epstein v. Epstein*, 843 F.3d 1147 (7th Cir. 2016). There, Paula Epstein's lawyer provided e-mails to Barry Epstein that Barry himself had written, in response to Barry's discovery request. *Id.* at 1149. Barry brought a Wiretap Act claim against the lawyer, asserting that the e-mails had been "disclosed" to him, as the Act requires to state a claim. *Id.*, *see also* 18 U.S.C. § 2511(1)(c). The Seventh Circuit disagreed: "The disclosure theory fails because Barry already knew the contents of the intercepted emails and indeed invited their disclosure by requesting them in discovery in the divorce action." *Id.* at 1152. Despite using the word "disclosure" in relation to a single other party—Barry—the Seventh Circuit found that ultimately the definition did not hold, relying on the same Black's definition above, because the definition of disclose implies that some previously-

---

[4] Black's Law Dictionary ("To make (something) known or public; to show (something) after a period of inaccessibility or of being unknown; to reveal"); Merriam-Webster (1: "to expose to view", 2: "to make known or public").

unknown information is revealed to a third party. *Id*. ("Frank did not publicly disclose Barry's emails, and their content was hardly unknown to Barry").

A word or phrase in a statute cannot be interpreted in a vacuum; rather, "[a] statute must be viewed as a whole, interpreting the words and phrases in light of the other relevant provisions of the statute." *Peterson Plaza Preservation, L.P. v. City of Chicago Dept. of Finance*, 2019 IL App (1st) 181502, ¶ 16. Sections 15(d) and (e) can be read harmoniously. Section 15(e)'s data security requirements insist that when entities *do* transmit information – with the subject's consent, or pursuant to a § 15(d) exception – they do with a reasonable standard of care and consistent with the entity's own security practices.

Section 15(e), though, does not give entities like ADP a blank check to "transmit" information to anyone it wishes as long as it follows reasonable data security practices. That interpretation writes § 15(d) out of the statute. Section 15(d) obviously regulates more than the prevention of widespread public disclosure; a key purpose of the statute is so that people can know where their biometric data is going, and accordingly control who has it. *Rosenbach*, 2019 IL 123186, ¶ 34 ("The Act vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent."). ADP's view that it can freely disseminate Plaintiff's biometric data as long as it is careful would undo one of the statute's key provisions and must be rejected.

Finally, ADP's contention that Plaintiff failed to properly allege that ADP disclosed the biometric data to third parties hosting the data in their data centers is wrong. (Mot. at 11.) "[A] plaintiff need not plead facts with precision when the information needed to plead those facts is within the knowledge and control of the defendant rather than the plaintiff." *Bryson v. News America Pub., Inc.*, 174 Ill. 2d 77 (1996). As pled in the Amended Complaint, ADP failed to

14

FILED DATE: 7/22/2019 11:22 AM   2018CH07627

FILED DATE: 7/22/2019 11:22 AM   2018CH07627

inform Plaintiff of the extent of the purposes for which it collected and stored his sensitive biometric data or the extent to whom the data is disclosed. (Am. Compl. ¶¶ 10, 34, 39, 46, 81, 90.) At this stage, Plaintiff has more than properly alleged disclosure to third parties, including entities that host the biometric data collected by ADP. Thus, ADP's argument should be rejected.

## IV.    CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests this Court to enter an Order denying ADP's Motion to Dismiss Plaintiff's Amended Complaint and granting any further relief the Court deems equitable and just.

Date:   July 22, 2019                    Respectfully Submitted,

JOSEPH TELLADO, INDIVIDUALLY AND ON BEHALF
OF ALL OTHERS SIMILARLY SITUATED

By: */s/ Andrew C. Ficzko*
ONE OF PLAINTIFF'S ATTORNEYS

FILED DATE: 7/22/2019 11:22 AM   2018CH07627

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on July 22, 2019, I electronically filed the attached with the Clerk of the Court using the electronic filing system and will send such filing to all attorneys of record.

_/s/ Andrew C. Fickzo_

FILED
7/22/2019 4:37 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

5866039

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| **JOSEPH TELLADO, individually,** | ) | |
| **and on behalf of all others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2018-CH-07627** |
| **v.** | ) | |
| | ) | |
| **RICH PRODUCTS CORPORATION and ADP** | ) | **Honorable Anna M. Loftus** |
| **LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT RICH PRODUCTS CORPORATION'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com
Firm I.D.: 43734

**ATTORNEYS FOR PLAINTIFF
AND THE PUTATIVE CLASS**

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ………………………………………………………………...1

I.     RELEVANT BACKGROUND ………………………………………………2

    A.  The Illinois Biometric Information Privacy Act …………………………2

    B.  Facts ………………………………………………………………3

II.    LEGAL STANDARD ………………………………………………………...4

III.   ARGUMENT ………………………………………………………………5

    A.  Plaintiff Has Standing Under Controlling First District Precedent ………………5

    B.  Plaintiff's Claims Are Timely ……………………………………………9

        1. A Five-Year Statute of Limitations Period Applies …………………...9

           a.  The one-year period of 735 ILCS 5/13-201 does not apply because Plaintiff does not allege a "publication" of his biometric information …………………………………………………11

           b.  The two-year period of 735 ILCS 5/13-202 does not apply because this is not a personal injury matter and BIPA is a remedial, not penal, statute …………………………………………………12

        2.Plaintiff's Claims Accrued Each Time He Scanned His Fingerprint and Each Day Rich Products Improperly Stored His Biometric Data ……….16

    C.  Plaintiff's Claims Are Not Preempted by the Workers' Compensation Act ……18

IV.   CONCLUSION ………………………………………………………...20

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

## **TABLE OF AUTHORITIES**

Cases

*Accord Taylor v. Bd. of Educ. of City of Chicago*

    2014 IL App (1st) 123744.................................................................. 17

*Aguilar v. Rexnord LLC*

    2019 WL 3239715 (N.D. Ill. July 3, 2018)........................................ 7

*Alvarado v. International Laser Prod., Inc.*

    Case No. 18 C 7756 (N.D. Ill. June 19, 2019).................................. 10

*Armstrong v. Guigler*

    74 Ill. 2d 281 (1996) ....................................................................... 12

*Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*

    19 Ill. 2d 325 (2002) ....................................................................... 16

*Benitez v. KFC Nat. Mgmt. Co.*

    305 Ill. App. 3d 1027 (1999) .......................................................... 11

*Blair v. Nevada Landing P'ship*

    369 Ill. App. 3d 318 (2006) ............................................................ 12

*City of Monmouth v. Pollution Control Bd.*

    57 Ill. 2d 482 (1974) ................................................................. 14, 15

*Cooney v. Chicago Pub. Sch.*

    407 Ill. App. 3d 358 (1st Dist. 2010) ............................................... 7

*Duncan v. FedEx Office and Print Svcs., Inc.*

    2019 IL App (1st) 180857........................................................ passim

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

*Fluker v. Glanbia Performance Nutrition, Inc.*

    No. 2017-CH-12993 (Cir. Ct. Cook Cty. July 11, 2019) ................................................. 7, 18

*Glisson v. City of Marion*

    188 Ill. 2d 211 (1999) ................................................................................................. 6, 8

*Greer v. Illinois Housing Development Authority*

    122 Ill.2d 462 (1988) ....................................................................................................... 5

*Gubala v. Time Warner Cable, Inc.*

    846 F.3d 909 (7th Cir. 2017) ........................................................................................... 8

*Hendrix v. City of Yazoo City*

    911 F.2d 1102 (5th Cir. 1990) ........................................................................................ 16

*Hyon Waste Mgmt. Servs., Inc. v. City of Chicago*

    214 Ill. App. 3d 757 (1991) ...................................................................................... 16, 17

*In re Facebook Biometric Information Privacy Litig.*

    2018 WL 1794295 (N.D. Cal. Apr. 16, 2018) ..................................................................... 10

*Joe Hand Promotions, Inc. v. Mooney's Pub Inc.*

    2014 WL 4748272 (C.D. Ill. Sept. 24, 2014) ..................................................................... 14

*Johnson v. Northshore Univ. Judge Presiding Healthsystem*

    2011 WL 10069086 (Ill. App. Ct. Mar. 31, 2011) .......................................................... 9, 11

*Landis v. Marc Realty, L.L.C.*

    235 Ill. 2d 1 (2009) ................................................................................................ 13, 15

*Liu v. Four Seasons Hotel, Ltd.*

    2019 IL App (1st) 182645 .............................................................................................. 19

FILED DATE: 7/22/2019 4:37 PM    2018CH07627

*Maglio v. Advocate Health & Hosps. Corp.*

    2015 IL App (2d) 140782 ................................................................ 5, 6, 7

*McDonald v. Symphony Bronzeville Park, LLC, et al.*

    No. 2017-CH-11311 (Cir. Ct. Cook Cty. June 17, 2019) ..................... 18

*McDonald's Corp. v. Levine*

    108 Ill. App. 3d 732 (1982) ........................................................ 11, 13

*McGinnis v. United States Cold Storage, Inc.*

    2019 WL 95154 (N.D. Ill. Jan. 3, 2019) ........................................... 7

*Messenger v. Edgar*

    157 Ill. 2d 162 (1993) .................................................................... 6

*Meyers v. Kissner*

    149 Ill. 2d 1 (1992) ..................................................................... 16

*Miller v. Motorola*

    202 Ill. App. 3d 976 (1990) ......................................................... 11

*Murff v. Ill. Workers' Comp. Comm'n*

    2017 IL App. (1st) 160005WC .................................................... 18

*Patel v. Facebook, Inc.*

    290 F. Supp. 3d 948 (N.D. Cal. 2018) ...................................... 14, 15

*Pathfinder Co. v. Indus. Comm'n*

    62 Ill. 2d 556 (1976) ................................................................... 18

*People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*

    177 Ill. 2d 314 (1997)) ............................................................ 5, 6

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

*Roberson v. Symphony Post Acute Care Network*

    Case No 17-L-733 (Cir. Ct. St. Clair Cty., Mar. 12, 2019) .................................................. 10

*Rosenbach v. Six Flags Entm't Corp.*

    2019 IL 123186 ................................................................................................ passim

*Schroeder v. RGIS, Inc.*

    2013 IL App. (1st) 122483 .................................................................................... 18, 19

*Scott v. Ass'n for Childbirth at Home, Int'l*

    88 Ill. 2d 279 (1981) .................................................................................. 10, 13, 14, 15

*Seaman v. Thompson Elecs. Co.*

    325 Ill. App. 3d 560 (Ill. App. 3d Dist. 2001) ....................................................... 10

*Sekura v. Krishna Schaumburg Tan, Inc.*

    2018 IL App (1st) 180175 ....................................................................................... 8, 11

*Sharp v. Gallagher*

    95 Ill. 2d 322 (Ill. 1983) ......................................................................................... 18

*Soto v. Great Am. LLC*

    2018 WL 2364916 (N.D. Ill. May 24, 2018) .......................................................... 8

*Spokeo, Inc. v. Robins*

    136 S.Ct. 1540 (2016) .............................................................................................. 5

*Standard Mut. Ins. Co. v. Lay*

    2013 IL 114617 ................................................................................................. 13, 15

*Sternic v. Hunter Props., Inc.*

    344 Ill. App. 3d 915 (1st Dist. 2003) .................................................................... 13

*Toothman v. Hardee's Food Sys., Inc.*

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

304 Ill. App. 3d 521 (5th Dist. 1999)...................................................................... 19

*Travelers Cas. & Sur. Co v. Bowman*

229 Ill. 2d 461 (2008) ............................................................................................ 12

*Vainio v. Brookshire*

852 P.2d 596 (Mont. 1993) ..................................................................................... 19

*Vanguard Energy Servs. LLC v. Shihadeh*

2017 IL App (2d) 160909 ......................................................................................... 4

**Statutes**

410 ILCS 305/1 *et seq*.............................................................................................. 20

410 ILCS 513/25(c)(1)............................................................................................. 20

47 U.S.C. § 227(b)(3)(B)-(C) .................................................................................. 13

735 ILCS 5/13-205 ............................................................................................ 9, 10

735 ILCS 5/2-619 ...................................................................................................... 4

740 ILCS 14/10.......................................................................................................... 3

740 ILCS 14/15(a) ......................................................................................... 1, 3, 17

740 ILCS 14/15(b)(1)-(3) ......................................................................................... 3

740 ILCS 14/15(e) ..................................................................................................... 3

740 ILCS 14/15(f)-(g) ............................................................................................... 3

740 ILCS 14/20.............................................................................................. 3, 13, 15

740 ILCS 14/5............................................................................................................. 2

765 ILCS 1075/5 ...................................................................................................... 12

765 ILCS 1075/60 .................................................................................................... 12

820 ILCS 305/8 ........................................................................................................ 19

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

AIDS Confidentiality Act ................................................................................. 19

Fair and Accurate Credit Transaction Act ("FACTA") ....................... 6, 7, 8

Genetic Information Privacy Act ................................................................ 20

Illinois Biometric Information Privacy Act ("BIPA") ...................... passim

Illinois Cable Privacy Act ("ICPA") .......................................................... 14

Illinois Prevailing Wage Act (IPWA") ..................................................... 10

Illinois Right of Publicity Act ("IRPA") ................................................... 12

Illinois Workers' Compensation Act ("WCA") ............................... passim

Montana Workers' Compensation Act ....................................................... 19

Restatement (Second) of Torts § 652D ...................................................... 11

Telephone Consumer Protection Act ("TCPA") ................................ 13, 15

## Other Authorities

*Black's Law Dictionary* (10th ed. 2014) ................................................ 11

Exhibit 1, July 11, 2019 *Fluker* Order ....................................................... 7

Illinois House Transcript, 2008 Reg. Sess. No. 276 ................................... 2

*Larson's Workers' Compensation Law*, § 68.34(a) (1997) ..................... 19

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

## INTRODUCTION

Plaintiff Joseph Tellado ("Plaintiff" or "Tellado") brings this class action lawsuit against his former employer, Rich Products Corporation ("Rich Products"), and ADP LLC ("ADP") (collectively, "Defendants"), for invading his privacy by unlawfully collecting, using, storing, maintaining and disseminating his biometric identifiers and/or information (*i.e.,* fingerprints) in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*.

BIPA provides basic protections for Illinoisans whose biometric data is collected, "impos[ing] safeguards to ensure that individuals'... privacy rights in their biometric identifiers and biometric information are properly honored[.]" *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 36. Private entities are required to follow certain requirements before, during, and after any collection of biometric data. Before collecting biometric data, entities must first inform the subject that the data is being collected and stored, and secure the individual's written consent. 740 ILCS 14/15(b). The collector must also secure consent before further disseminating the data. 740 ILCS 14/15(d). And finally, any entity that possesses biometric data must create a publicly accessible policy regarding the retention and destruction of such data and adhere to it. 740 ILCS 14/15(a). Rich Products violated each of these provisions and now attempts to dismiss Plaintiff's lawsuit largely by misconstruing or outright ignoring Plaintiff's well-pled allegations.

Rich Products makes several unpersuasive arguments in its attempt to have the lawsuit dismissed. First, Rich Products argues that Plaintiff lacks common law standing to sue under BIPA. However, as the First District Appellate Court recently explained: "under Illinois law, when a plaintiff alleges a statutory violation, *no 'additional requirements' are needed for standing*." *Duncan v. FedEx Office and Print Svcs., Inc.*, 2019 IL App (1st) 180857, ¶ 23 (emphasis added) (citation omitted). Second, Rich Products, attempting to evade the default five-year limitations

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

period, suggests Plaintiff's claims are untimely. But Rich Products misconstrues both the statute of limitations period for BIPA violations (the proper timeframe is five years) as well as the claims-accrual standard (a claim accrues each time an entity violates BIPA, not just at the first violation). Finally, Rich Products claims Plaintiff's claims are preempted by the Illinois Workers' Compensation Act ("WCA"). However, as courts have already ruled, claims under the WCA are limited to compensable physical and psychological injuries, which are not contemplated here.

## I.    RELEVANT BACKGROUND

### A.    The Illinois Biometric Information Privacy Act.

BIPA represents the legislature's intention that sensitive biometric data necessitates special protections. (*See* Am. Compl. ¶¶ 17-19.) In 2007, the legislature, alarmed by the risk that the millions of fingerprint records amassed by technology company Pay by Touch would be sold as an asset or otherwise disclosed through its bankruptcy, and recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; *see also* 740 ILCS 14/5. BIPA's legislative findings are clear that the legislature's goal was to protect Illinois residents from the unique threat posed by biometrics:

> Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

740 ILCS 14/5(c).

Under BIPA, private entities are prohibited from capturing, possessing, purchasing, or disseminating an individual's "biometric identifiers" and "biometric information" (information based on a biometric identifier that is used to identify an individual), without ***first*** complying with

FILED DATE: 7/22/2019 4:37 PM    2018CH07627

easy-to-follow requirements. *See* 740 ILCS 14/10. Private entities seeking to collect biometric data must ***first*** inform the individual that it intends to collect the data, as well as the purpose(s) and length of time the data will be stored and secure a written release to do so. 740 ILCS 14/15(b)(1)-(3). In the employment context, the "written release" required by BIPA includes "a release executed by an employee as a condition of employment." 740 ILCS 14/10. Entities that possess biometric data must establish, and actually follow, a publicly-available retention policy and destruction plan. 740 ILCS 14/15(a). BIPA also prohibits private entities in possession of biometric data from "disclos[ing], redisclos[ing], or otherwise disseminat[ing] a person's or a customer's biometric identifiers or biometric information" unless it is authorized by the individual ***first***. 740 ILCS 14/15(d). The information must be protected with industry-standard security measures. 740 ILCS 14/15(e). Finally, the Illinois legislature provided a private right of action to enforce BIPA rights, as well as a statutory remedy. 740 ILCS 14/20.

The statute is prophylactic in nature and, on its face, expresses a general intent to regulate and protect biometrics for the purpose of *preventing* an irreversible security breach that would permanently expose an individual to identity theft, privacy invasion, and other evils. *Rosenbach*, 2019 IL 123186, ¶ 37; 740 ILCS 14/15(f)-(g). The danger is particularly compelling in this context because an individual may never learn – or may only learn long after the fact – that their data has been compromised, improperly used, and/or disseminated. The legislature recognized these dangers and enacted BIPA as a means to deter careless handling of biometric data and ensure that individuals were fully informed. *Id.*

### B.  Facts.

Plaintiff worked as an inventory coordinator for Rich Products at its Niles, Illinois facility from February 2, 1997 until September 26, 2016. (Am. Compl. ¶ 42.) As an employee, Tellado

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

was required to scan his fingerprint so Rich Products could use it as an authorization method to track his time. (*Id.* ¶¶ 31, 43.) Plaintiff's fingerprint data (*i.e.*, his personal, private, and proprietary biometric information) was then collected and stored in the ADP database. (*Id.* ¶¶ 31, 44.) Unlike traditional timeclocks, the ADP timeclocks that Rich Products employees used required them to use their fingerprints to clock in and out of work each day they worked. (*Id.* ¶¶ 32, 45.) However, Rich Products failed to inform Plaintiff of the extent of the purposes for which it collected and stored his sensitive biometric data or the extent to whom the data is disclosed. (*Id.* ¶¶ 10, 33, 39, 46, 81, 90.) Worse, even though BIPA requires entities to obtain written consent before collecting biometric information from Illinois citizen, Rich Products failed to secure *any* before it first began harvesting the data. (*Id.* ¶¶ 10, 33, 48, 80.) Because Rich Products failed to inform its employees of the specific purpose(s) and length of time for which it collected and stored their fingerprints, and failed to provide a publicly available retention schedule and guidelines for permanently destroying its employees' biometric data, employees are unaware if Rich Products will ever destroy their fingerprints within three years of their last interaction with Rich Products as required by BIPA. (*Id.* ¶¶ 10, 33, 35, 37, 39, 46, 47, 71, 72, 81.) Plaintiff alleges that Rich Products never destroyed his biometric data and continues to store and potentially use it in violation of BIPA. (*Id.*) Thus, Plaintiff has pled ongoing and continuous violations of BIPA.

## II.    LEGAL STANDARD

A motion under 735 ILCS 5/2-619 "admits the legal sufficiency of the complaint, but asserts an affirmative defense or matter that avoids or defeats the claim." *Vanguard Energy Servs. LLC v. Shihadeh*, 2017 IL App (2d) 160909, ¶ 11. A court considering a motion to dismiss under 2-619 interprets all pleadings and supporting materials in favor of the nonmoving party. *Id.*

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

### III.    ARGUMENT

#### A.    Plaintiff Has Standing Under Controlling First District Precedent.

As an initial matter, Plaintiff has not brought any BIPA claims under Illinois common law, and Rich Products does not dispute, because it cannot, that Plaintiff has statutory standing to pursue those claims in light of *Rosenbach*. However, Rich Products engages in a misguided effort to import federal standing doctrine into Illinois law. The federal standing doctrine is a *jurisdictional* limit on the power of federal courts. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). By contrast, under Illinois law, standing is "not jurisdictional." *Duncan*, 2019 IL App (1st) 180857, ¶ 21. In Illinois, lack of standing is an affirmative defense that remains the defendant's burden to prove. *Id*. While Illinois and federal law may both require an "injury in fact" for standing, that phrase does "not necessarily mean" the same thing under Illinois and federal law. *Id*. (quotations and citation omitted). In light of this, it is unsurprising that "Illinois courts generally are not as restrictive as federal courts in recognizing the standing of a plaintiff to bring a claim." *Id*. (citing *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 329 (1997)).

Nonetheless, while Rich Products is correct that standing in Illinois requires an "injury in fact" that is "(1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief[,]" Rich Products misinterprets these requirements. (Mot. at 5.) (citing *Greer v. Illinois Housing Development Authority*, 122 Ill.2d 462, 492-93 (1988) and *Maglio v. Advocate Health & Hosps. Corp.*, 2015 IL App (2d) 140782, ¶ 22.) A "distinct and palpable" injury—essentially what Rich Products claims Plaintiff's case is lacking—is simply one that is not "a generalized grievance common to all members of the public." *Duncan*, 2019 IL App (1st) 180857, ¶ 22 (quoting

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

*Messenger v. Edgar*, 157 Ill. 2d 162, 172 (1993)). Thus, the Illinois standing doctrine is designed to "preclude persons having no interest in a controversy from bringing suit, but it should not be an obstacle to the litigation of a valid claim." *Duncan*, 2019 IL App (1st) 180857, ¶ 22 (quoting *$1,124,905 U.S. Currency*, 177 Ill. 2d at 330)).

In *Duncan*, the First District Appellate Court held that plaintiff had standing to pursue a violation of the Fair and Accurate Credit Transaction Act ("FACTA") based on the defendant's conduct in printing more than the last five digits of the plaintiff's credit card number on a sales receipt. 2019 IL App (1st) 180857, ¶¶ 1, 25. The plaintiff did not allege any additional harm beyond the procedural violation of FACTA. In holding that the plaintiff had standing, the Appellate Court explained that in enacting FACTA, "Congress elevated intangible harms associated with printing of more than the last five digits of a person's card number to the status of legally cognizable injuries." *Id*. at ¶ 25. The Court further explained that FACTA "does not require a person to suffer actual damages in order to seek recourse for a willful violation of the statute." *Id*. The Court's holding in *Duncan* confirms an Illinois standing principle that is decisive in this case: "under Illinois law, when a plaintiff alleges a statutory violation, no 'additional requirements' are needed for standing. *Id*. at ¶ 23 (quoting *Glisson v. City of Marion*, 188 Ill. 2d 211 (1999)).

Rich Products errs by relying on the Second District's standing analysis in *Maglio*, in the face of controlling authority from the First District in *Duncan*. (Mot. at 6-7.) In *Maglio*, the Second District held that the plaintiffs lacked standing based on speculative allegations of "increased risk" of identity theft arising out of the theft of computers with their personal health information from the defendant's hospital. 2015 IL App (2d) 140782, ¶¶ 1, 24. The First District distinguished *Maglio* because there was no indication that "the statutes on which the *Maglio* plaintiffs based their claims expressly grant a private cause of action to a customer for a violation, as does

FILED DATE: 7/22/2019 4:37 PM    2018CH07627

FACTA." 2019 IL App (1st) 180857, ¶ 27. Similarly, in a recent BIPA decision denying a defendant's motion to dismiss in which it argued, among other things, that the plaintiff lacked standing, the Court rejected the defendant's reliance on *Maglio*. *See Fluker v. Glanbia Performance Nutrition, Inc.*, No 2017-CH-12993 (Cir. Ct. Cook Cty. July 11, 2019) (J. Mitchell); *see also* Exhibit 1, July 11, 2019 *Fluker* Order. There, the Court distinguished *Maglio* because it "involved statutory claims that **required** actual damages" and "[i]n contrast, BIPA provides damages for a violation of the Act alone." *Id*. at § II(A).

By contrast, BIPA—like FACTA—has a private right of action for plaintiffs to vindicate violations of their rights granted by the statute, regardless of actual damages. *Rosenbach*, 2019 IL 123186, ¶ 36. "BIPA provides a private right of action and damages for the violation of the Act alone—Plaintiff need not allege a separate injury." *See* Ex. 1 at § II(A). And, that is why Plaintiff does not pin his claims solely on a speculative "increased risk" of theft of his biometric information, as the plaintiffs did in *Maglio* and *Cooney v. Chicago Pub. Sch.*, 407 Ill. App. 3d 358, 365-66 (1st Dist. 2010) (a case Rich Products also relies on), but rather, on Rich Products' violation of his statutory right to control the circumstances under which a private entity collects, stores, uses and/or disseminates his biometric information. *See Rosenbach*, 2019 IL 123186, ¶ 34 (BIPA "vests in individuals … the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent.").

Rich Products further errs by relying on federal court BIPA opinions analyzing federal standing doctrine. (Mot. at 8-11.)[1] As explained above, federal and Illinois standing doctrines

---

[1] Rich Products cites to *McGinnis v. United States Cold Storage, Inc*., 2019 WL 95154 (N.D. Ill. Jan. 3, 2019) and *Aguilar v. Rexnord LLC*, 2019 WL 3239715 (N.D. Ill. July 3, 2018) which held that a mere technical or procedural violation alone, was insufficient to confer Article III standing. However, both decisions are clearly distinguishable as they both involved federal Article III standing, unlike here, and both were notably decided before *Rosenbach* which held "defendants' contention that redress under the Act should be limited to those who can plead and prove that they sustained some actual injury or damages

differ because standing is not jurisdictional under Illinois law and is instead a tool to preclude individuals with "no interest in a controversy from bringing suit." *Duncan*, 2019 IL App (1st) 180857, ¶¶ 21-22 (quotations and citation omitted). If there were any doubt about the differences between federal and Illinois standing doctrines, the Appellate Court dispelled that doubt by explaining that "under Illinois law, when a plaintiff alleges a statutory violation, no 'additional requirements' are needed for standing." *Duncan*, 2019 IL App (1st) 180857, ¶ 23 (quoting *Glisson*, 188 Ill. 2d at 242). Indeed, even federal courts have recognized that Illinois courts, unlike federal courts, "could find that a procedural violation of FACTA is 'sufficient to confer standing in state court.'" *Duncan*, 2019 IL App (1st) 180857, ¶ 25 (quoting *Soto v. Great Am. LLC*, 2018 WL 2364916, at *5 (N.D. Ill. May 24, 2018)). This is just what the *Duncan* court did. 2019 IL App (1st) 180857, ¶¶ 1, 25.

Furthermore, Rich Products brazenly asserts that *Rosenbach* "addressed the narrow question of what constitutes an 'aggrieved' person under BIPA for purposes of determining *statutory* standing, and the Court did not address the question of, nor did it abrogate, *constitutional* or Illinois *common law* standing." (Mot. at 2, n.1.) This is an astounding position. In *Rosenbach*, the defendant—like Rich Products here—argued that "plaintiff has suffered no actual or threatened injury and therefore lacked standing to sue." *Rosenbach*, 2019 IL 123186, ¶ 12. The Court rejected

---

beyond infringement of the rights afforded them under the law would require that we disregard the commonly understood and accepted meaning of the term 'aggrieved,' depart from the plain and, we believe, unambiguous language of the law, read into the statute conditions or limitations the legislature did not express, and interpret the law in a way that is inconsistent with the objective and purposes the legislature sought to achieve. That, of course, is something we may not and will not do." 2019 IL 123186, ¶ 38. Also, whether or not Plaintiff knew his fingerprint data was being collected or whether there was a risk of unauthorized disclosure, makes no difference. (*See* Mot. at 8-10) (citing *Aguilar* and *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017)) "To require individuals to wait until they have sustained some compensable injury beyond violation of their statutory rights before they may seek recourse … would be completely antithetical to the Act's preventative and deterrent purposes." *Rosenbach*, 2019 IL 123186, ¶ 37; *see also Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175, ¶ 77 (violation of BIPA constituted harm even if the information was not disclosed to a third party).

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

the defendant's position, however, and held that a person is "aggrieved" by a BIPA violation and may pursue a cause of action when he alleges that a private entity, like Rich Products, violates *any* of his rights under Section 15. *Id*. at ¶ 33. The Court held that "[n]o additional consequences need be pleaded or proved" because the "violation, in itself, is sufficient to support the individual's … statutory cause of action" and the "injury is real and significant." *Id*. Rich Products ignores this statement, and fails to demonstrate how an "injury that is real and significant" does not qualify as an "injury in fact." When the purpose of the Illinois standing doctrine is to preclude individuals with no interest in a controversy from asserting a claim, *Duncan*, 2019 IL App (1st) 180857, ¶ 22, that purpose is satisfied by limiting BIPA's cause of action to those "aggrieved" by a violation: those whose statutory rights are invaded, impaired, or denied. *Rosenbach*, 2019 IL 123186, ¶ 33. Plaintiff is *that* person because he alleges that Rich Products (and ADP, LLC) invaded, impaired, and denied *his* statutorily granted BIPA rights. Accordingly, Plaintiff has standing to assert his BIPA claims and Rich Products' argument must be rejected.

### B.   Plaintiff's Claims Are Timely

Rich Products suggests that Plaintiff's claims are untimely under any applicable statute of limitations period. However, Plaintiff's claims are subject to the default five-year limitations period of 735 ILCS 5/13-205 and they begin to accrue only when Rich Products stops violating his rights under BIPA. Because Plaintiff filed his lawsuit within the applicable limitations period, his claims are clearly timely.

#### 1.   A Five-Year Statute of Limitations Period Applies

BIPA does not provide its own specified statute of limitations period. As a result, Plaintiff's claims fall under Illinois's default, five-year limitation. *See Johnson v. Northshore Univ. Judge Presiding Healthsystem,* 2011 WL 10069086, at *2 (Ill. App. Ct. Mar. 31, 2011) (quoting 735

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

ILCS 5/13-205). Section 13-205 of the Illinois Code of Civil Procedure states, "[A]ll civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205. Courts apply the five-year catchall limitations period for other Illinois statutes that do not provide a specific limitations period. For example, an Illinois appellate court held that, in the context of the Illinois Prevailing Wage Act, because the law is "silent" on the limitations period, "the five-year 'catchall' period applies." *Seaman v. Thompson Elecs. Co.,* 325 Ill. App. 3d 560, 565 (Ill. App. 3d Dist. 2001). This Court should do the same here.[2]

Rich Products offers no sound basis for limiting the statutory period. First, Rich Products argues that the one-year statutory period of 735 ILCS 5/13-201 applies. (Mot. 12-13.) However, by its terms, Section 13-201 only governs privacy-related causes of action with a ***publication*** element and, here, there is no such allegation. Second, Rich Products argues a two-year statute of limitations period applies for "personal injuries or statutory penalties." (Mot. at 13-14; *see also* 735 ILCS 5/13-202.) This argument also fails because it ignores the Supreme Court's ruling that a showing of actual damages is not necessary to state a claim under BIPA, its characterization of BIPA as a remedial statute and a separate holding that a statute's provision of liquidated damages does not make it penal. *See Rosenbach*, 2019 IL 123186, ¶ 38; *see also Scott v. Ass'n for Childbirth at Home, Int'l*, 88 Ill. 2d 279, 288 (1981) (statutes "designed to grant remedies for the protection of rights, introduce regulation conductive to the public good, or cure public evils" are remedial, not penal). Finally, Rich Products contends that even the five-year limitations period would not apply because Plaintiff's causes of action "all accrued in 2008" at the time BIPA was passed. (Mot.

---

[2] Additionally, the only courts that have addressed this issue thus far, in rulings on motions for class certification, have employed five-year limitations periods. *See Alvarado v. International Laser Prod., Inc.*, Case No. 18 C 7756 (N.D. Ill. June 19, 2019), attached as Exhibit 2; *Roberson v. Symphony Post Acute Care Network*, Case No 17-L-733 (Cir. Ct. St. Clair Cty., Mar. 12, 2019), attached at Exhibit 3; *In re Facebook Biometric Information Privacy Litig.*, 2018 WL 1794295, at *10 (N.D. Cal. Apr. 16, 2018).

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

at 3, n.2, 12-14.) Rich Products is absolutely wrong; Rich Products' violations are ongoing as specifically set forth in Plaintiff's Amended Complaint.

>    **a.  The one-year period of 735 ILCS 5/13-201 does not apply because Plaintiff does not allege a "publication" of his biometric information**

Rich Products contends that Plaintiff's claims are subject to the one-year statutory period provided by 735 ILCS 5/13-201, because "BIPA claims are in essence right to privacy claims." (Mot. at 12.) However, by its express terms, Section 13-201 applies only to claims involving a "publication" element, which Plaintiff does not allege. The "publication" element is "crucial" because "the plain language of section 13-201 indicates that the one-year statute of limitations governs *only* libel, slander ad privacy torts *involving publication*." *Benitez v. KFC Nat. Mgmt. Co.*, 305 Ill. App. 3d 1027, 1034 (1999) (emphasis added); *see also Johnson*, 2011 WL 10069086, at *3 (following *Benitez*); *McDonald's Corp. v. Levine*, 108 Ill. App. 3d 732, 737 (1982) (refusing to apply a one-year statutory period to privacy claim under the Illinois Eavesdropping Act which did not allege the defendant's publication of material). Black's Law Dictionary defines "publication" as "the act of declaring or announcing *to the public*." *Black's Law Dictionary* (10th ed. 2014) (emphasis added). "Publication" for purposes of Section 13-201 means the dissemination of private information to the public at large, or specifically to people close to the plaintiff in such a way that would cause him or her embarrassment (*e.g.* friends or neighbors). *See Miller v. Motorola*, 202 Ill. App. 3d 976, 980 (1990) (quoting Restatement (Second) of Torts § 652D, comment a, at 384-85 (1977)). The fact that BIPA protects privacy rights does not bring it within the confines of a one-year limitations period which, unlike here, applies only when information is "published."[3]

---

[3] In *Sekura*, the Appellate Court concluded that a violation of BIPA constituted harm even absent disclosure to a third party. *Sekura* , 2018 IL App (1st) 180175, ¶ 77.

FILED DATE: 7/22/2019 4:37 PM    2018CH07627

BIPA is clearly distinguishable from publication-dependent privacy laws, such as the Illinois Right of Publicity Act ("IRPA"), which "replaced the common-law tort of appropriation of likeness" and applies the Section 13-201 one-year limitations period. *Blair v. Nevada Landing P'ship*, 369 Ill. App. 3d 318, 323 (2006). Unlike BIPA, the IRPA requires a plaintiff to allege the "public use or holding out" of his or her identity. 765 ILCS 1075/5, 30; *see also Blair*, 369 Ill. App. 3d at 323 (citing 765 ILCS 1075/60) ([S]ince the [IRPA] completely supplanted the common-law tort of appropriation of likeness[], we find applicable the one-year statute of limitations that pertained to the common-law tort"). Unlike the IRPA, BIPA lacks a publication element. The Supreme Court cautions "that in determining the applicable statute of limitations, the focus of [the court's] inquiry is on the nature of the liability." *Travelers Cas. & Sur. Co v. Bowman*, 229 Ill. 2d 461, 469 (2008) (quoting *Armstrong v. Guigler*, 174 Ill. 2d 281, 291 (1996)). Plaintiff does not allege the publication of biometric data; therefore, is not subject to the one-year limitations period.

### b. The two-year period of 735 ILCS 5/13-202 does not apply because this is not a personal injury matter and BIPA is a remedial, not penal, statute

Rich Products next suggests that if the one-year limitations period does not apply, then the two-year limitations period does under Section 13-202 "for personal injuries or statutory penalties." (Mot. at. 13.)[4] Not only has the Supreme Court held that remedial statutes may include pre-established statutory recoveries, the *Rosenbach* Court held that violations of BIPA statutory provisions, once proven, entitles a plaintiff to recover either actual or liquidated damages. BIPA is a remedial, not penal, statute and not subject to Section 13-202.

The Supreme Court has held that when a statute is "designed to grant remedies for the protection of rights, introduce regulation conducive to the public good, or cure public evils," it is

---

[4] Rich Products' sole contention that the two-year statute of limitations applies for a "statutory penalty" is limited solely to the heading of the section. Rich Products offers **zero** support of how BIPA is penal in nature subject to the two-year statutory period.

remedial, not penal. *Scott*, 88 Ill. 2d at 288. Remedial statutes may provide pre-calculated statutory damages, whether they are viewed "as a liquidated sum for actual harm, or as an incentive for aggrieved parties to enforce the statute, or both . . . ". *Standard Mut. Ins. Co. v. Lay*, 2013 IL 114617, ¶ 32. Penal statutes, in contrast, "subject one person to the payment of a sum of money to another without reference to any actual injury and without requiring him to allege or prove an actual injury." *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 12-13 (2009) (citation omitted). Thus, a statutory penalty "must: (1) impose automatic liability for a violation of its terms; (2) set forth a predetermined amount of damages; and (3) impose damages without regard to the actual damages suffered by the plaintiff." *Id*. (citing *McDonald's*, 108 Ill. App. 3d at 738). BIPA simply does not satisfy factors (2) and (3) noted above. BIPA allows a prevailing party to recover "actual damages," 740 ILCS 14/20, not solely a statutory penalty; thus, the two-year limitations period "does not apply where a plaintiff may recover 'actual damages and exemplary damages with a cap.'" *Sternic v. Hunter Props., Inc.,* 344 Ill. App. 3d 915, 918 (1st Dist. 2003) (citation omitted).

The Supreme Court applied these criteria in *Standard Mutual Insurance Co. v. Lay* when analyzing whether the Telephone Consumer Protection Act ("TCPA") was remedial or penal. The TCPA allows for private lawsuits and authorizes liquidated statutory damages of $500 per violation and $1,500 per willful violations. 47 U.S.C. § 227(b)(3)(B)-(C). Despite a predetermined damages scheme, the Supreme Court held that the TCPA's statutory damages provision was not punitive but remedial. *Standard Mut. Ins.*, 2013 IL 114617. The Court looked at the legislative history of the TCPA and determined that the goal of the law was not to punish advertisers, but to prevent them from shifting minor costs and annoyance onto consumers without consent. *Id. ¶* 31.

BIPA falls squarely within the Supreme Court's analysis of the TCPA and is likewise a remedial statute. Like the TCPA, BIPA was enacted to address a perceived societal concern: the

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

unregulated use of Illinois citizens' biometric data. 740 ILCS 14/5(d), (g). Rather than create a system of penalties to punish private entities in violation of BIPA's regulatory framework, the Illinois legislature "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach*, 2019 IL 123186, ¶ 33 (citing *Patel v. Facebook, Inc.*, 290 F. Supp. 3d 948, 953 (N.D. Cal. 2018)). As the *Patel* court concluded:

> [T]he plain text of BIPA as a whole . . . leave[s] little question that the Illinois legislature codified a right of privacy in personal biometric information. There is equally little doubt about the legislature's judgment *that a violation of BIPA's procedures would cause actual and concrete harm*. BIPA vested in Illinois residents the right to control their biometric information by requiring notice before collection and giving residents the power to say no by withholding consent. As the Illinois legislature found, these procedural protections are particularly crucial in our digital world because technology now permits the wholesale collection and storage of an individual's unique biometric identifiers—identifiers that cannot be changed if compromised or misused. When an online service simply disregards the Illinois procedures . . . the right of the individual to maintain her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized.

*Patel*, 290 F. Supp. 3d at 953-54) (emphasis added). This puts BIPA among other legislative efforts "designed to grant remedies for the protection of rights, introduce regulation conducive to the public good, or cure public evils." *Scott*, 88 Ill. 2d at 288 (citing *City of Monmouth v. Pollution Control Bd.*, 57 Ill. 2d 482, 490 (1974)).

Further, the Illinois legislature determined that a private entity's "invasion, impairment, or denial of [an individual's] statutory rights" codified by BIPA is compensable, and thus permitted the recovery of actual or liquidated damages. *Rosenbach*, 2019 IL 123186, ¶¶ 33, 36. This is demonstrated both by BIPA's legislative history and intent, 740 ILCS 14/5, as well as the legislature's decision to make liquidated damages available "as an alternative to actual damages." *See Joe Hand Promotions, Inc. v. Mooney's Pub Inc.*, 2014 WL 4748272, at *7 (C.D. Ill. Sept. 24, 2014) (finding the Illinois Cable Privacy Act, which permits the recovery of actual or statutory

damages, is remedial). Because BIPA does not "impose damages without regard to the actual damages suffered by the plaintiff," it is not penal in nature. *See Landis*, at 235 Ill.2d at 12-13.

Next, like the TCPA, the Illinois legislature sought to encourage private enforcement of BIPA as recognized in *Rosenbach*: BIPA's private right of action is the Act's only "enforcement mechanism" and thus, "integral to implementation of the legislature's objectives." 2019 IL 123186, ¶ 37. Like the TCPA, the goal of private enforcement shows BIPA "serves more than purely punitive or deterrent goals." *Standard Mut. Ins.,* 2013 IL 114617, ¶ 32.

Furthermore, and like the TCPA's provision for punitive damages, BIPA's statutory damages scheme provides for heightened damages in the case of an entity's "intentional[] or reckless[]" violation. 740 ILCS 14/20(2). This choice by the legislature "indicates that the [BIPA's] liquidated damages serve additional goals than deterrence and punishment and were not designed to be punitive damages." *See Standard Mut. Ins.,* 2013 IL 114617, ¶ 33. In terms of BIPA, the availability of heightened damages—even if viewed as a "possible penalty"— "is but one part of the regulatory scheme, intended as a supplemental aid to enforcement rather than as a punitive measure." *See Scott*, 88 Ill. 2d at 288 (citing *City of Monmouth*, 57 Ill. 2d at 490).

Finally, Rich Products suggestion that Plaintiff's claims are the equivalent of a "cause of action for personal injury" is nonsense. (Mot. at 13.) Rich Products simply ignores the Supreme Court's ruling in *Rosenbach* that a showing of actual damages is not necessary to state a claim under BIPA. 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an 'aggrieved' person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act"); *see also Patel*, 290 F. Supp. 3d 948, 953 ("There is equally little doubt about the legislature's judgment

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

*that a violation of BIPA's procedures would cause actual and concrete harm*.") (emphasis added). Rich Products' two-year limitations argument must be rejected.

### 2. Plaintiff's Claims Accrued Each Time He Scanned His Fingerprint and Each Day Rich Products Improperly Stored His Biometric Data

Rich Products next suggests that "Plaintiff's BIPA claims accrued in 2008" once BIPA was passed. (Mot. at 12, 14) Rich Products further contends that Plaintiff knew or reasonably should have known of his alleged injury and that it was wrongfully caused once BIPA was passed but simply "waited too long to file this lawsuit." (*Id*. at 13-14.) Rich Products is wrong; violations of BIPA are either a repeated or continuing violation resulting in the limitations period beginning to run the last time a person's fingerprints or other biometrics are illegally collected.

To determine the accrual date, Rich Products' conduct is properly examined in one of two ways. First, it can be considered a series of independent acts, each of which would "support[] a separate cause of action." *See Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 19 Ill. 2d 325, 349 (2002) (*Meyers v. Kissner*, 149 Ill. 2d 1, 10-11 (1992) (continuing private nuisance gave rise over and over again to causes of action, and limitations period merely specified the window in time for which monetary damages may be recovered prior to filing complaint); *Hendrix v. City of Yazoo City*, 911 F.2d 1102, 1103 (5th Cir. 1990) (where initial statutory violation outside the limitations period is repeated later, each violation begins the limitations period anew, and recovery may be had for at least those violations that occurred within the limitations period). Under this analysis, Plaintiff can recover for each violation of BIPA within the applicable limitations period.

On the other hand, Rich Products' ongoing collection and maintenance of Plaintiff's biometric data can be deemed a "continuing" injury, one that will not cease until Rich Products stops violating BIPA. In that case, "the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease." *Hyon Waste Mgmt. Servs., Inc. v. City of Chicago,*

214 Ill. App. 3d 757, 763 (1991) (citation omitted); *see also Accord Taylor v. Bd. of Educ. of City of Chicago*, 2014 IL App (1st) 123744, ¶ 46 ("[U]nder the 'continuing tort' or 'continuing violation' theory, where the tort involves continuous or repeated injurious behavior, by the same actor and of a similar nature, the limitations period is held in abeyance and the plaintiff's cause of action does not accrue until the date the final injury occurs or the tortious acts cease"). Rich Products continued to collect Plaintiff's biometric data until the end of his employment in September 2016, meaning Plaintiff's claims were clearly filed within the five-year limitations period.[5] Furthermore, Plaintiff has not worked for Rich Products almost three years. Under BIPA, an entity that possess biometric data must establish a publicly-available retention policy and destruction schedule, and actually adhere to such policies. 740 ILS 14/15(a). Rich Products is required to destroy such biometric data when the initial purpose for collecting or obtaining it has been satisfied. *Id.* Given Rich Products' failure to establish a retention schedule or guidelines for permanently destroying employee biometric data, Plaintiff has alleged ongoing violations. And nowhere does Rich Products suggest that it indeed destroyed his biometric data.

For purposes of Plaintiff's Amended Complaint, the result under either theory is the same: Rich Products repeatedly and continuously failed to comply with Sections 15(a), (b), and (d) of BIPA through September 2016, meaning Plaintiff's claims had to be filed by September 2021 (which they were). Plaintiff has alleged Rich Products' BIPA violations are continuing omissions to act, not merely the lingering effect of an initial unlawful collection. Each day that Rich Products negligently, intentionally, or recklessly fails to comply with BIPA not only increases the material risk that Plaintiff's and other similarly situated individuals' biometric data will be unlawfully accessed by third parties, but also constitutes independent acts each supporting a cause of action.

---

[5] Plaintiff filed the original Complaint on June 18, 2018.

17

FILED DATE: 7/22/2019 4:37 PM    2018CH07627

FILED DATE: 7/22/2019 4:37 PM    2018CH07627

Because Plaintiff's claims are subject to the five-year limitations period and did not / do not accrue until Rich Products ceases violating the Act, Rich Products' argument must be rejected.

### C.    Plaintiff's Claims Are Not Preempted by the Workers' Compensation Act

Rich Products argues that Plaintiff's claims are barred by the Workers' Compensation Act ("WCA"). (Mot. at 14-15.) However, as courts have already held, the WCA only preempts claims for a "compensable injury" under the WCA, which is limited to physical injuries and emotional distress arising out of such injuries, or a psychological injury stemming from a definite time and place. *McDonald v. Symphony Bronzeville Park, LLC, et al.*, No. 2017-CH-11311 (Cir. Ct. Cook Cty. June 17, 2019) (*See* Exhibit 4); *see also Fluker,* No. 2017-CH-12993 (Cir. Ct. Cook Cty. July 11, 2019) (*See* Exhibit 1); *Sharp v. Gallagher*, 95 Ill. 2d 322, 326 (Ill. 1983) ("the statutory remedies [in the WCA] … serves as the employee's exclusive remedies *if* he sustains a *compensable injury*") (emphasis added); *Schroeder v. RGIS, Inc.*, 2013 IL App. (1st) 122483, ¶ 30 (noting that mental injuries tied to a physical injury, known as the "physical mental" category, are compensable); *Pathfinder Co. v. Indus. Comm'n*, 62 Ill. 2d 556, 563 (1976) ("sudden, severe emotional shock traceable to a definite time, place and cause which causes psychological injury or harm" is compensable under the Act). This scope of preemption makes sense because the purpose of the WCA is to provide financial assistance for employees who are unable to work because of an injury suffered on the job. *Murff v. Ill. Workers' Comp. Comm'n*, 2017 IL App. (1st) 160005WC, ¶ 16.

As the Circuit Court of Cook County recognized, cases that do not involve a physical injury, as here, are not compensable under the WCA and are not preempted. The seminal treatise on workers' compensation summarizes the distinction:

> If the essence of the tort [] is non-physical, [] with physical injury being at most added to the list of injuries as a makeweight, the suit should not be barred. But if

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

the essence of the action is recovery for physical injury of death, *including in "physical" the kinds of mental or nervous injury that cause disability,* the action should be barred even if it can be cast in the form of a normally non-physical tort.

Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law,* § 68.34(a) at 13-180 (1997) (original emphasis). The physical/non-physical distinction is borne out in Illinois case law. *Toothman v. Hardee's Food Sys., Inc.*, 304 Ill. App. 3d 521, 533 (5th Dist. 1999) ("[F]or injuries to be compensable . . . there must be some demonstrable medical evidence of injury"); *Schroeder*, 2013 IL App (1st) 122483, ¶ 30 (mental harm compensable where "related to and caused by a physical trauma or injury").

Invasion of a statutory privacy right is not the type of disability-causing injury that the WCA compensates. As the First District observed, "[BIPA] is a privacy rights law that applies inside and outside the workplace," and "[s]imply because an employer opts to use biometric data, like fingerprints, for timekeeping purposes does not transform a complaint into a wages and hours claim." *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645, ¶ 30. Section 8 of the Act, 820 ILCS 305/8, sets out what is recoverable in "nonfatal cases" such as this. That section says nothing about compensating individuals for violations of their right to biometric privacy. Neither do any cases interpreting the WCA hold that the law provides compensation for violations of the right to biometric privacy. That makes good sense because the WCA compensates disabling injuries to workers, whereas BIPA's purpose is to regulate biometric collectors and *prevent* harm.

Rich Products' argument, if accepted, has farther-reaching effects: statutory rights aimed at regulating employer behavior, rather than purely compensating physically-injured employees, should not be found preempted by the WCA. *See Vainio v. Brookshire,* 852 P.2d 596, 601 (Mont. 1993) (sexual harassment claim not "injur[y]" precluded by Montana Workers' Compensation Act). For instance, if an employer violated the AIDS Confidentiality Act by revealing an

FILED DATE: 7/22/2019 4:37 PM    2018CH07627

employee's HIV status, or violated the Genetic Information Privacy Act by demanding an employee's genetic information as a condition of employment, the employee's sole recourse cannot be the WCA in every case. *See* 410 ILCS 305/1 *et seq*.; 410 ILCS 513/25(c)(1). This reasoning should, accordingly, be rejected.

## IV.    CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests this Court enter an Order denying Rich Products' Motion to Dismiss Plaintiff's Amended Complaint and granting any further relief the Court deems equitable and just.

Date:   July 22, 2019                     Respectfully Submitted,

**JOSEPH TELLADO, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED**

By: */s/ Andrew C. Ficzko*
**ONE OF PLAINTIFF'S ATTORNEYS**

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on July 22, 2019, I electronically filed the attached with the Clerk of the Court using the electronic filing system and will send such filing to all attorneys of record.

_/s/ Andrew C. Ficzko_

Return Date: No return date scheduled
Hearing Date: 7/30/2019 9:30 AM - 9:30 AM
Courtroom Number: N/A
Location: District 1 Court
       Cook County, IL

FILED
7/22/2019 4:37 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

5866039

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

# EXHIBIT 1

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| Mitchell Fluker, | |
| Plaintiff, | Case No. 17 CH 12993 |
| v. | Calendar 2 |
| | Courtroom 2601 |
| Glanbia Performance Nutrition, Inc., | |
| | Judge Raymond W. Mitchell |
| Defendant. | |

## ORDER

This case is before the Court on Defendant Glanbia Performance Nutrition, Inc.'s motion to dismiss Plaintiff Mitchell Fluker's complaint pursuant to 735 ILCS 5/2-619.1.

### I.

The complaint alleges as follows: Plaintiff Mitchell Fluker worked for Defendant Glanbia Performance Nutrition, Inc. from July 2016 to July 2017. Defendant utilized a time clock system that required employees to provide their fingerprint. Defendant required Plaintiff to scan his fingerprint. Glanbia did not inform Plaintiff in writing of the specific purpose and length of time for which Plaintiff's fingerprint was being collected, stored, and used.

Plaintiff brings a putative class action alleging violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 (count I) and negligence (count II). Defendant now moves to dismiss for lack of standing and for failure to state a claim.

### II.

A motion to dismiss pursuant to 735 ILCS 5/2-615 challenges the legal sufficiency of a complaint based upon defects apparent on its face. *Beacham v. Walker*, 231 Ill. 2d 51, 57 (2008). The critical inquiry is whether the well-pleaded facts of the complaint, taken as true and construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Loman v. Freeman*, 229 Ill. 2d 104, 109 (2008). The complaint need only set forth the ultimate facts to be proved—not the evidentiary facts tending to prove such ultimate facts. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 369 (2004). In ruling on a section 2-615 motion, exhibits attached to the complaint are included as

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

part of the complaint and control over inconsistent factual allegations therein. *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 325 Ill. App. 3d 1139, 1147 (1st Dist. 2001).

A motion to dismiss pursuant to 735 ILCS 5/2-619 admits the legal sufficiency of the complaint, but raises defects, defenses, or some other affirmative matter that defeats the plaintiff's claim. *Ball v. County of Cook*, 385 Ill. App. 3d 103, 107 (1st Dist. 2008). The phrase "affirmative matter" encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action. *Piser v. State Farm Mutual Auto. Ins. Co.*, 405 Ill. App. 3d 341, 344 (1st Dist. 2010).

Illinois enacted the Biometric Information Privacy ACT ("BIPA") in 2008. 740 ILCS 14. BIPA is an informed consent statute that requires a private entity that collects, capture, purchases, or otherwise obtains a person's biometric information to first inform the subject in writing that biometric information is being collected or stored and the specific purposes and length of term for which the information is being collected, stored, and used. The entity must also obtain a written release from the subject consenting to collection of biometric information. 740 ILCS 14/15(b). The statute also provides a private right of action, including liquidated damages, for any person aggrieved by a violation of the Act against a private entity that negligently violates a provision. 740 ILCS 14/20(1).

A.

Defendant Glanbia Performance Nutrition, Inc. argues that Plaintiff Mitchell Fluker lacks standing. In *Rosenbach*, the Illinois Supreme Court held that when a private entity fails to adhere to the required procedures in BIPA, the affected individuals suffer a "real and significant" injury in that their right to maintain their biometric privacy is taken away. *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 34. Additionally, in *Sekura*, the appellate court concluded that a violation of BIPA constituted harm even if the information was not disclosed to a third party. *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175, ¶ 77. If affected individuals had to wait until additional harm had occurred beyond a violation of the Act, it would be "too late, because, as the drafters found, once a person's biometric identifiers have been compromised, there is simply 'no recourse' for prevention." *Id.* at ¶ 59. This would be "completely antithetical to the Act's preventative and deterrent purposes." *Rosenbach*, 2019 IL at ¶ 37.

Defendant relies on *Maglio*, but *Maglio* is readily distinguishable. *Maglio v. Advocate Health & Hospitals Corp.*, 2015 IL App (2d) 140782. *Maglio* involved statutory claims that required actual damages, and the court determined that the plaintiffs had not yet suffered actual damages and therefore lacked standing. *Id.* In contrast, BIPA provides damages for a violation of the Act alone. *See Duncan v. FedEx Office & Print Servs.*, 2019 IL App (1st) 180857 (noting that the claims in

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

*Maglio* involved statutes that did not provide a private cause of action for a mere statutory violation). Here, BIPA provides a private right of action and damages for the violation of the Act alone—Plaintiff need not allege a separate injury.

Defendant also argues that Plaintiff's claim is preempted by the Illinois Workers' Compensation Act. 820 ILCS 305. The Act is the exclusive remedy for workplace injuries unless the employee can demonstrate that the alleged injury (1) was not accidental, (2) did not arise from employment, (3) was not received during the course of employment, or (4) is not compensable under the Act. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463 (1990). In *Schroeder*, the appellate court held that psychological injuries caused by a physical trauma or injury are compensable under the Act. *Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483, ¶ 30. However, the injury that Plaintiff allegedly suffered was the loss of the ability to maintain his privacy right. This is neither a psychological nor physical injury and is not compensable under the Act.

Additionally, in *Liu*, the appellate court stated that the Act applies "inside and outside the workplace." *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645, ¶ 30. BIPA specifically defines written release in the employment context showing the drafters intended for BIPA to apply to violations by employers in the workplace. 740 ILCS 14/10.

## B.

Defendant argues that Plaintiff's claim for liquidated damages under BIPA should be stricken because Plaintiff has not pleaded negligence nor actual damages. BIPA provides that "[a] prevailing party may recover for each violation . . . against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater." 740 ILCS 14/20(1). The complaint alleges that Defendant "failed to take note of the retail industry's trend recognizing the dangers in storing biometric identifiers and the passage of Illinois law governing the collection and use of biometric data." Compl. ¶ 21. Accepted as true and construed in a light most favorable to the Plaintiff, the complaint alleges a negligent violation of the Act.

Finally, Defendant argues that count II (negligence) should be dismissed because Plaintiff fails to plead a common law duty and does not allege proximate causation or actual damages. Plaintiff did not respond to Defendant's argument. No common law duty required Defendant to inform Plaintiff about the collection and storage of biometric data. Absent a duty, there is no negligence. *See Cooney v. Chicago Public Schools*, 407 Ill. App. 3d 358, 363 (1st Dist. 2010) (no common law duty to safeguard information).

3

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

III.

Therefore, it is hereby ORDERED:

(1)   Defendant Glanbia Performance Nutrition, Inc.'s motion to dismiss
      Plaintiff Mitchell Fluker's complaint pursuant to 735 ILCS 5/2-619.1 is
      GRANTED in part and DENIED in part. Count I stands. Count II
      (negligence) is dismissed with prejudice.

(2)   Defendant has until August 2, 2019, to answer.

(3)   The ruling date set for July 12, 2019, is stricken.

(4)   This case is set for a case management conference on August 7, 2019,
      at 10:00 a.m.

ENTERED,

Judge Raymond W. Mitchell

JUL 11 2019

Judge Raymond W. Mitchell, No. 1992

Circuit Court – 1992

4

Return Date: No return date scheduled
Hearing Date: 7/30/2019 9:30 AM - 9:30 AM
Courtroom Number: N/A
Location: District 1 Court
        Cook County, IL

FILED
7/22/2019 4:37 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

5866039

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

# EXHIBIT 2

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSUE ALVARADO, on behalf of himself and all other persons similarly situated, known and unknown, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  18 C 7756 |
| | ) | |
| INTERNATIONAL LASER PRODUCTS, INC., INTERNATIONAL TONER CORP., and CRAIG FUNK, individually, | ) ) ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff's motion to certify class [43] is granted.  Plaintiffs are directed to furnish an amended class notice, consistent with the court's rulings, within seven (7) days.

## STATEMENT

Plaintiff Josue Alvarado filed this lawsuit alleging that his employers, Defendants International Laser Products, Inc. and  International Toner Corp., violated the Fair Labor Standards Act and the Minimum Wage Law by failing to pay overtime wages at the rate of one and one-half times Alvarado's straight pay rate.  He seeks to represent a class of workers who were also allegedly victims of this practice.

The focus of the parties' disagreement on this issue relates to the language of the class notice.  The court has reviewed the competing proposals and rules as follows:

1.  Plaintiffs' proposed class notice begins with an all-caps notice that recipients are eligible to participate in the lawsuit even if they had previously signed a settlement agreement that Defendants proposed and negotiated with several workers.  The language of the class notice ends with the words "THE SETTLEMENT DOCUMENT YOU SIGNED IS VOID, AND THE LAWSUIT SEEKS TO RECOVER MORE MONEY THAN THE COMPANY OFFERED YOU." Defendants object to this language; Defendants contend that the court has ruled that the agreements entered into are "not enforceable" (as stated in paragraph 3 of the Class Notice), not that they were "void."  (Defendants' Memorandum in Opposition to Plaintiff's Motion to Authorize Notice [50] [hereinafter, "Defs.' Opp."] at 2.)  Defendants also argue, without elaboration, that there is no "apple to apple comparison" between what the lawsuit is seeking and the relief offered employees in the proposed settlement agreement.  (*Id.*)  Without commenting on the merits of either of these contentions, the court directs that the final sentence of the notice be amended to read as follows: THE SETTLEMENT DOCUMENT YOU SIGNED IS NOT ENFORCEABLE, AND THE LAWSUIT SEEKS TO RECOVER COMPENSATION AS DESCRIBED IN THIS NOTICE.

2.  Defendants object to Plaintiffs' definition of the class seeking relief for alleged violations of the Biometric Information Privacy Act ("BIPA").  Defendants note that the complaint

defined that class as "Production Laborers and other hourly paid workers employed in Illinois by Defendants who were required to scan their fingerprints in Defendants' timekeeping system." (Defs.' Opp. at 1; *see* First Amended Complaint [20] ¶ 111.)  The proposed class notice, in contrast, defines the class as "All persons who worked for Defendants in Illinois since November 21, 2013, and who scanned their fingerprints in Defendants' timekeeping system without first executing a written release."  Plaintiffs contend that the revised definition is *narrower* than the original, at least to the extent that it imposes a time limit and excludes persons (if any) who executed a release.  (Plaintiffs' Reply in Support of Motion for Class Notice [52] [hereinafter, "Pltfs.' Reply"], at 2-3.)  Plaintiffs have also cited caselaw holding that amendments to the class definition are acceptable so long as they do not "greatly expand" the scope of the litigation beyond what Defendants might have expected.  *Compare Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018), *cert. denied*, No. 18-1127, 2019 WL 979392 (U.S. Apr. 1, 2019) (approving certification of a class narrower than the one proposed in the original complaint where defendant had fair notice) *with Supreme Auto Transport, LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 737, 741 (7th Cir. 2018) (refusing to adopt class definition that "greatly expanded the potential scope of the class").  The court has no information about how many more employees might be included in the new definition; that is, neither side has explained whether there are a number of employees other than "production laborers and other hourly paid workers" who were required to scan their fingerprints.  If the class definition is in fact significantly broader than what Defendants could have anticipated when this case was initiated, the court would expect Defendants to provide that information.  This objection is overruled.

3.      Defendants contend that "The notice should state that the purpose of the lawsuit is to inform the employee of a collective action lawsuit in which s/he is potentially 'similarly situated.'"  (Defs.' Opp. at 2.)  The court disagrees that informing employees is the purpose of the lawsuit.  That may be the purpose of Plaintiffs' proposed notice, but using the expression "similarly situated" is unnecessary and may be misleading.  This objection, too, is overruled.

4.      Defendants believe class members should be notified that "there is no money available now, and no guarantee that there will be."  (Defs.' Opp. at 2.)  The court believes this purpose can be served by making the following change to the notice form:  In the fourth full paragraph of the proposed notice, beginning with the words "The lawsuit seeks to recover owed overtime wages for employees, plus additional damages," the notice should read, "If Plaintiffs prevail in this lawsuit, employees will be entitled to recover unpaid overtime wages, plus additional damages . . . ."

5.      Defendants contend employees should be warned that they may be liable to pay costs if they do not prevail.  (Defs.' Opp. at 2-3.)  Plaintiffs oppose this proposal.  They cite *Boltinghouse v. Abbott Labs., Inc.*, 196 F. Supp. 3d 838, 843 (N.D. Ill. 2016), in which this court expressed reluctance to chill the rights of workers to participate in a collective action by means of a warning that they could be required to sit for their depositions or even pay opposing counsel fees.  (Pltfs.' Reply at 5.)  This court deemed those risks too remote to require inclusion in a notice.  The issue in this case is whether the possibility of an award of costs is equally remote.

Defendants have cited a handful of cases in which courts have endorsed the inclusion of a notice of this possibility:  *see, e.g., Dunkel v. Warrior Energy Servs., Inc.,* 304 F.R.D. 193, 207 (W.D. Pa. 2014) (dictating inclusion of a several-sentence long disclosure of possible liability for costs); *Wright v. Lehigh Valley Hosp. & Health Network*, No. 10-cv-431, 2011 WL 221770, at *7 (E.D. Pa. Jan. 20, 2011) (requiring notice to include provision about opt-ins potentially paying court costs); *Creten-Miller v. Westlake Hardware, Inc.,* 2009 WL 2058734, at *4 (D. Kan. July 15, 2009) (modifying notice to include, "If you do not prevail on your claim, court costs and expenses

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

FILED DATE: 7/22/2019 4:37 PM    2018CH07627

may possibly be assessed against you"); *Garcia v. Elite Labor Serv., Ltd.*, No. 95 C 2341, 1996 WL 33500122, at *4 (N.D. Ill. July 11, 1996) (modifying notice to include statement that, "if you do not prevail on your claim, court costs and expenses may possibly be assessed against you"); *White v. Kcpar, Inc.*, No. 6:05–cv–1317–Orl–22DAB, 2006 WL 1722348, at *4 (M.D. Fla. June 20, 2006) (finding a notice defective because it did not fully inform recipients about consequences of opting in, including potential liability for costs and expenses).

In reaching its conclusion, the *Creten-Miller* court called such an award "clearly possible and [] not merely theoretical." None of the cases it cited for this conclusion are from this Circuit, and it is not clear that such an award has been made in a collective action here. *Creten-Miller*, 2009 WL 2058734 at *4 (citing *Johnson v. Big Lots Stores, Inc.*, Nos. 04–3201, 05–6627, 2009 WL 1870862, at *9–10 (E.D. La. June 25, 2009) (awarding costs related to claims of 43 individual participants who moved to dismiss their claims); *Gomez v. Reinke*, No. CV91–299–S–LMB, 2008 WL 3200794, at *6 (D. Idaho Aug.7, 2008) (awarding costs to defendants for prevailing on merits of class action claims); *Reyes v. Tex. Expawn, L.P.*, No. V–03–128, 2007 WL 4530533, at *2 (S.D.Tex. Dec.19, 2007) (awarding costs to defendant as prevailing party). *See also Wright*, 2011 WL 221770, at *7. The court therefore remains concerned that the true purpose for inclusion of such a notice is to discourage workers from participating in the litigation. Having reviewed caselaw, however, the court concludes it is appropriate to amend the language under question 8 in the notice to provide some information "concerning the cost issue, without giving it undue emphasis." *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 765 (N.D. Ill. 2011). This court directs that the second sentence of that provision be amended to read, "If you participate in this lawsuit and the employees lose, you will be bound by the outcome of this lawsuit and will not receive any money, and it is possible that a portion of the court costs would be assessed against you in that event."

6. Defendants argue that notice of this case should be furnished solely by means of first-class mail. Communication via text message or e-mail, Defendants contend, is "unwarranted and susceptible to abuse." (Defs.' Opp. at 3.) Defendants also object to notice by way of a posting at the workplace, but Plaintiffs have not requested such a process. (Defs.' Opp. at 5; Pltfs.' Reply at 5-6 n.4.) Nor have Plaintiffs requested production of employee Social Security numbers and birthdates, so the court need not address Defendants' objection to such production. (Defs.' Opp. at 5-7; Pltfs.' Reply at 8.)

The court agrees with Plaintiffs that e-mail and text communication is the most straightforward and effective method of communicating with the potential class members. As observed in *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017), cited by Plaintiffs, "Courts have recognized that notice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved." To that end, the court directs production by Defendants of employee telephone numbers, and any known e-mail addresses, and authorizes one reminder notice. *See Boltinghouse*, 196 F. Supp. 3d at 844. Defendants' purported concern about potential abuse or alteration of the notice (Defs.' Opp. at 3-4) is dispatched by Plaintiffs' explanation that e-mail would include a .pdf version of the notice, and text messages will direct the recipient to website that includes the form notice. (Pltfs.' Reply at 8.) In any event, Defendants themselves should have effective means of determining whether persons who attempt to opt in are or have been employed by Defendants.

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

ENTER:

Dated: June 19, 2019

_____
REBECCA R. PALLMEYER
United States District Judge

Return Date: No return date scheduled
Hearing Date: 7/30/2019 9:30 AM - 9:30 AM
Courtroom Number: N/A
Location: District 1 Court
　　　　　　Cook County, IL

FILED
7/22/2019 4:37 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

5866039

FILED DATE: 7/22/2019 4:37 PM　2018CH07627

# EXHIBIT 3

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

SAROYA ROBERSON, individually and on )
behalf of all others similarly situated, )
                                 )
Plaintiff, )
                                 )     Case No. 17 -L- 733
v. )
                                 )
SYMPHONY POST ACUTE CARE )
NETWORK; SYMPHONY SYCAMORE )
LLC; SYMPHONY HEALTHCARE LLC; )
SYMPHONY M.L. LLC; SYMPHONY )
MONARCH HOLDINGS, LLC; and DOE )
DEFENDANTS 1-100, )
                                 )
Defendants. )

> **FILED**
> ST. CLAIR COUNTY
>
> MAR **1 2** 2019
>
> *Rebekah a. Clay*
> 35      CIRCUIT CLERK

## MEMORANDUM AND ORDER
## ON CLASS CERTIFICATION

       The case comes before the Court on Plaintiff's Motion for Class Certification ("Motion").

The issues have been briefed and argued by the parties.[1]  The Court hereby **ORDERS**:

**I.**      **NATURE OF THE CASE AND PLAINTIFF'S MOTION FOR CLASS CERTIFICATION.**

       Plaintiff Saroya Roberson worked at a nursing home in Swansea, Illinois.  Plaintiff alleges

that as part of timekeeping while she worked at this location, Defendants and others captured

her biometric information or biometric identifiers (a palm scan) within the meaning of the

Illinois Biometric Privacy Information Act, 740 ILCS 14/1 ("BIPA").  Defendants' opposition brief

does not dispute Roberson's biometric information or biometric identifiers were so captured.

       BIPA manifests the Illinois General Assembly's findings that:

---

[1] Arguments were heard on December 20, 2018 before Judge Julia R. Gomric. On February 8, 2019, after hearing, but before Judge Gomric ruled on the pending Motion for Class Certification, the court granted Symphony Sycamore LLC's Motion for Substitution as a Matter of Right, and this case was subsequently assigned to the undersigned. The court has reviewed the court file and report of proceedings held on December 20, 2018 and is ready to proceed without the need for additional hearing.

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

(1) Biometrics are uniquely sensitive identifiers. "Biometrics are unlike other unique identifiers . . . [and] are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS § 14/5(c).

(2) Biometric technology is a new frontier subject to unpredictable developments. "The full ramifications of biometric technology are not fully known." *Id*. at § 14/5(f).

(3) People are apprehensive of transactions involving their biometrics. The "overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information" and are "deterred from partaking in biometric identifier-facilitated transactions." *Id*. at § 14/5(d)-(e).

(4) Regulation of biometric collection, use, and storage serves the public interest. The "public welfare, security and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id*. at § 14/5(g).

Accordingly, BIPA puts certain requirements on parties dealing with biometric identifiers or biometric information, including:

(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/5(b) (2018).

2

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

Plaintiff alleges none of these requirements were met when capturing her biometric information.  Defendants' opposition to the Motion does not dispute this.

BIPA further provides a right of action for violations of its requirements:

> Sec. 20.  Right of action.  Any person aggrieved by a violation of this Act shall have a right of action in a State circuit court . . . against an offending party.  A prevailing party may recover for each violation:
>
> (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;
>
> (2) against a private entity that intentionally violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater; . . . .

740 ILCS 14/20 (2018).  Plaintiff brought this action pursuant to these and other provisions of BIPA.

Plaintiff alleges the Swansea, Illinois location where her biometric identifiers were captured is part of a network, the Symphony Post Acute Network ("SPAN" or the "Network").  She seeks to certify a class of Illinois citizens who had their biometric information or biometric identifiers captured, collected, *etc.* at any Illinois location in the Network (and associated subclasses discussed below):

> All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at any location associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*
>
> Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

## II.    LAW REGARDING A DETERMINATION OF CLASS CERTIFICATION.

"In determining whether to certify a proposed class, the trial court . . . should avoid

3

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

deciding the underlying merits of the case or resolving unsettled legal questions." *CE Design Ltd. v. C & T Pizza, Inc.,* 2015 IL App (1st) 131465 (2015), ¶ 9. "In making its decision as to whether to certify a class, the court may consider any matters of fact or law properly presented by the record, which includes the pleadings, depositions, affidavits, answers to interrogatories, and any evidence that may be adduced at the hearings." *Bueker*, 2016 IL App (5th) 150282 at ¶ 22. "To determine whether the proposed class should be certified, the court accepts the allegations of the complaint as true." *Clark*, 343 Ill. App. 3d at 544-45. *See also CD Design*, 2015 IL App (1st) 131465 at ¶ 9 ("In determining whether to certify a proposed class, the trial court accepts the allegations of the complaint as true . . . ."); *S37 Mgmt.*, 2011 IL App (1st) 102496 at ¶ 15 (same).

The factors which the Court must consider on a motion for class certification are the familiar framework established by statute. For a suit to proceed as a class action in Illinois, the Court must find that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class, which predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interests of the class; and (4) a class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801 (2018). *See also e.g. Clark, et al. v. TAP Pharm. Prods., Inc., et al.,* 343 Ill. App. 3d 538, 544-45 (5th Dist. 2003).

### III.    FIRST FACTOR: NUMEROSITY (735 ILCS 5-2/801(1)).

Section 801(1) requires not only that the number of plaintiffs be numerous, but also that joinder of plaintiffs in one individual action be impractical. 735 ILCS 5/2-801(1). Where there are a number of potential claimants, and the individual amount claimed by each is small,

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

making redress on an individual level difficult, if not impossible, Illinois courts have been particularly receptive to proceeding on a class action basis. *Miner v. Gillette Co.*, 87 Ill.2d 7 (1981). Avoiding unnecessary burdens on the courts themselves is also a legitimate concern. "Affirming the trial court's class certification order will avoid the filing of numerous, repetitive cases placing a burden on the court." *Fakhoury v. Pappas*, 395 Ill. App. 3d 302, 316 (1st Dist. 2009).

Plaintiff states that Defendants have identified, at a minimum, 552 workers who would be members of the class from the Swansea, Illinois location alone. Defendants' opposition to the Motion does not dispute this; in fact, Defendants' opposition does not mention numerosity at all. Accordingly, the Court finds that the numerosity factor is satisfied. *See Wood River Area Dev. Corp. v. Germania Fed. Sav. and Loan Ass'n*, 198 Ill. App. 3d 445 (5th Dist. 1990).

## IV.    SECOND FACTOR: COMMON AND PREDOMINANT ISSUES OF FACT OR LAW (735 ILCS 5-2/801(2)).

Section 801(2) requires "questions of fact or law common to the class." 735 ILCS 5/2-801(2) (2018). As the statute is phrased in the alternative, certification requires "only that there be either a predominating common issue of law or fact, not both." *Martin v. Heinold Commodities, Inc.*, 117 Ill.2d 67, 81 (1994).

Plaintiff suggests that a case presents common issues when defendants have engaged in the same or similar course of conduct, and that this is particularly true where – as here – the claims are based predominantly upon the application of a single statute or statutory scheme. "A common question may be shown when the claims of the individual class members are based upon the common application of a statute . . . ." *Clark*, 343 Ill. App. 3d at 548. *See also Bueker*, 2016 IL App (5th) 150282, ¶ 27 ("With regard to the commonality requirement, a common issue

5

FILED DATE: 7/22/2019 4:37 PM 2018CH07627

may be shown where the claims of the individual class members are based upon the common application of a statute or where the proposed class members are aggrieved by the same or similar conduct or pattern of conduct."); *Hall*, 376 Ill. App. 3d at 831 (same).[2]  Defendants' opposition to the Motion did not dispute this general premise.

Thus, according to Plaintiff, "Examination quickly establishes that commonality is easily satisfied in this case.  All class members are citizens of Illinois.  All are proceeding principally under a single Illinois statute, BIPA.  Each was subjected to an identical course of conduct by defendants:  The capture of their biometric information."

Plaintiff further goes on to enumerate specific questions of law or fact which she states will predominate:

a.   Whether the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class?

b.   If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants inform the Plaintiff and the Class in writing that a biometric identifier or biometric information was being collected or stored?

c.   If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants inform the Plaintiff and the Class in writing of the specific purpose and length of term for which a biometric identifier or biometric information was being collected, stored, and used?

d.   If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants receive a written release executed by the Plaintiff and the Class of the biometric identifier or biometric information or the Plaintiff's or Class' legally

---

[2] Bearing in mind that the court does not consider the merits at this stage, see *supra,* the Court also does not consider which class members will ultimately prevail.  "That some members of the class are not entitled to relief because of some particular factor will not bar the class action." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 831-32 ("That some members of the class are not entitled to relief will not bar the class action.").

6

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

authorized representative?

e.    If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first?

f.    Whether Defendants' violations of BIPA were negligent, or instead, intentional or reckless, within the meaning of 740 ILCS 14/20?

Thus, Plaintiff summarizes: "Defendants' compliance with the requirements of BIPA – a single statutory scheme – is the central question in this case. This same question will predominate for each and every class member."

Defendants argue that common questions do not predominate in this case. Defendants assert that "'The purpose of the predominance requirement is to ensure that the proposed class is sufficiently cohesive to warrant adjudication by representation . . .' *Smith v. Illinois Cent. R.R. Co.*, 223 Ill. 2d 441, 448 (2006)." According to Defendants, to satisfy this predominance requirement, a plaintiff must show that "successful adjudication of the class representative's individual claim 'will establish a right of recovery in other class members' such that 'all that should remain is for other class members to file proof of their claim., *Id.* (quotation omitted); *see also Mashal v. City of Chicago*, 2012 IL 112341, ¶33 (same)."

Defendants then go on to provide a list of issues they claim defeat commonality and predominance in this case:

a.    whether a class member used the same type of "finger or hand print reader/scanner" that Roberson used,

7

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

b.      whether a class member has suffered a sufficient injury to invoke BIPA's private right of action,

c.      whether a class member has suffered actual injury such that actual damages could be recovered in excess of the BIPA's liquidated damages,

d.      whether that injury exceeds the liquidated damages provision in BIPA,

e.      whether that injury was suffered at the hands of any person or business that is in fact "associated with the Symphony Post-Acute Care Network, a/k/a Symphony Post-Acute Network,"

f.      whether that entity acted negligently or willfully with respect to that particular class member,

g.      whether that class member's claim is subject to any affirmative defenses, like consent or ratification.

First, since the hearing on Plaintiff's Motion on December 20, 2018, the Supreme Court of Illinois has ruled that "an individual need not allege some injury or adverse effect, beyond violation of this or her right under [BIPA], in order to qualify as an 'aggrieved' person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, slip op. at p.13 (Ill. Jan. 25, 2019).  As such, many of the arguments raised above are moot.

Moreover, it is well-established that by themselves, such issues do not defeat class certification.  "Individual questions of injury and damages do not defeat class certification." *Clark*, 343 Ill. App. 3d at 549.  *See also Hall*, 376 Ill. App. 3d at 832 (same).  At most, if damage questions do present significant issues, they can be handled in ancillary proceedings.  "It is appropriate to litigate the questions of law or fact common to all members of the class and, after the determination of the common questions, to determine in an ancillary proceeding or proceedings the questions that may be peculiar to individual class members."  *Clark*, 343 Ill.

8

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

App. 3d at 548 (internal quotations omitted).   In fact, Defendants' own cited authority establishes that these differences (if true) are generally not grounds to defeat class certification. *Walczak v. Onyx Acceptance Corp.*, 365 Ill. App. 3d 664, 679 (2nd Dist. 2006). ("Moreover, we note that, generally, individual counterclaims or defenses do not render a case unsuitable for class action.")

More broadly, Defendants' characterization of the common issues in this case, and which of them will predominate, is questionable. *Smith* was a toxic tort case involving a train derailment, and then a resulting chemical spill, with all the attenuated questions as to proximate causation of bodily injury resulting from a complicated series of events. *Smith*, 233 Ill.2d 442-58.  This is not that case.  This case involves a single statutory scheme – BIPA – and the issues presented can be summarized in a straightforward way:  Did the Network capture biometric information from members of the class, and if so, did they comply with BIPA while doing so?  These questions are what will consume "the bulk of the time at trial." *Smith*, 233 Ill.2d at 458.

That BIPA's straightforward, statutory requirements may have been met in some cases, but not others, does not preclude class certification, as Defendants suggest.  First, this invites the Court to determine the merits of the case, which the Court does not do at this stage, as has already been established.

Second, the fact that some class members may recover, but not all, is no impediment to class certification.  "That some members of the class are not entitled to relief because of some particular factor will not bar the class action." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 831-32 ("That some members of the class are not entitled to relief will not bar the

FILED DATE: 7/22/2019 4:37 PM    2018CH07627

class action.").

Third, the flexibility of the class action procedure ensures that even if the issues Defendants raise do become significant at some future point in time, the Court has the ability to address such matters then. "If individual damage determinations are necessary, the court can utilize various procedures to determine damages, including the creation of subclasses." *Bueker*, 2016 IL App (5th), ¶ 31 (citing *Hall*, 376 Ill. App. 3d at 832). "Furthermore, if the class becomes unmanageable at some later time in the litigation, the court always has the option to set aside the class certification or a portion of it." *Id.* (citing *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill.App.3d 1069, 1075 (1st Dist. 1988)).

Finally, while the Court finds that common questions of fact or law will predominate this case as a whole, it alternately finds that issue certification would be appropriate as well. Even in cases involving the most complex questions of injury or damages – and again, this is not that case, as it arises under a single simple statute – classes may be certified as to issues, such as legal issues, or the issue of liability. Even the cases Defendants themselves cite recognize this. *See e.g. Smith*, 223 Ill.2d at 457 ("the trial court in this case did not limit class certification to the issue of liability . . . ."); *Bueker*, 2016 IL App (5th) 150282, ¶ 34 (courts have the ability to limit certification for liability purposes only). Thus, in the alternative, the commonality and predominance of legal and liability issues in this case demonstrate it is also appropriately suited for certification as to common legal issues, and to issues concerning liability.

## V.     THIRD FACTOR: ADEQUATE REPRESENTATION OF THE INTERESTS OF THE CLASS (735 ILCS 5-2/801(3)).

Section 801(3) requires that the "representative parties will fairly and adequately protect the interests of the class." 735 ILCS 5/2-801(2) (2018). Adequate representation has

10

two components: (1) adequacy of the named Plaintiff; and (2) adequacy of the named Plaintiff's attorneys. *See Miner v. Gillette Co.*, 87 Ill.2d 7 (1981). As Defendant posits, "[t]he purpose of the adequate representation requirement is to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim. *Walczak*, 365 Ill. App. 3d at 678.

Defendants do not argue that Plaintiff's attorneys are inadequate. Accordingly, the Court accepts that they will provide proper, efficient, and appropriate protection of the interests of the class in presenting the claims.

Defendants do, however, challenge the adequacy of Plaintiff Roberson. The principal argument made by Defendants is that the interests of Roberson are antagonistic to those of the class, as class members may want to seek a monetary award, and that (according to Defendants) during her deposition Roberson disclaimed any intention of seeking a monetary recovery.

This is wholly unpersuasive. Plaintiff, by way of her pleadings, discovery responses, statements of her attorneys, and otherwise, has made it abundantly clear on multiple occasions that she seeks a monetary recovery in this action, not only on her own behalf, but also on behalf of the other class members. Her deposition responses did not contradict that. In fact, Plaintiff stated she wants the law (BIPA) enforced, and BIPA expressly provides for monetary awards.

The rest of Defendants' adequacy arguments are much in the same vein. Quizzing Plaintiff on what she understands about Defendants' corporate structure, or how the law interprets "injury" or "damages," does nothing to demonstrate Plaintiff's inadequacy as a class

FILED DATE: 7/22/2019 4:37 PM    2018CH07627

representative, as it does nothing to show that Plaintiff is either antagonistic to the class or will fail to properly pursue the interests of the class. It merely demonstrates that Plaintiff, a layperson, does not understand the intricacies of the law or lawsuits. But that is why a representative is – not only encouraged, but outright *required* – to hire effective legal counsel.

In short, the quantum of understanding necessary on the part of a representative is not nearly as complex as Defendants would have it. "The plaintiff class representative need only have a marginal familiarity with the facts of his case and does not need to understand the legal theories upon which his case is based to a greater extent." *Clark*, 343 Ill. App. 3d at 550-51 (internal quotations omitted). The Court finds that the adequacy of representation requirement is fulfilled in this case.

## VI. FOURTH FACTOR: THE CLASS ACTION PROCEDURE IS THE APPROPRIATE METHOD FOR THE FAIR AND EFFICIENT ADJUDICATION OF THE CONTROVERSY (735 ILCS 5-2/801(4)).

Finally, the fourth statutory factor requires the Court to consider whether "[t]he class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(d) (2018). The balance of Defendants' remaining arguments are entered on this factor.

One of these arguments centers around who was Plaintiff's employer. Defendants seem to invest this with independent legal significance. But this was already addressed in the context of Defendants' § 2-615 motion to dismiss. The terms "employer" and "employee" appear nowhere in BIPA, nor do any related terms. In fact, BIPA expressly contemplates many circumstances well outside the employment context, such as "finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14-5(b) (2018).

Accordingly, dividing the world up into "Employer Defendants" and "Non-Employer

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

Defendants" is meaningless for purposes of BIPA liability, which applies to any "private entity" (740 ILCS 14/10-15 (2018)) who constitutes an "offending party" (740 ILCS 14-20 (2018)).

To the extent Defendants' argument asks this Court to first construe those terms, and then to apply them to the facts of this case, the Court must decline. This involves disputed issues of fact, going to the merits of the case, and/or unsettled legal issues. As previously established, it is not the province of the Court to decide these issues on a motion to certify a class. Nor will the Court render an advisory opinion. Indeed, issues like this weigh affirmatively in *favor* of class certification, as they will be common questions to which any affected class member will seek an answer – no matter what that answer may be.

Much the same is true for Defendants' other arguments, which may be broadly classified as "corporate liability." Defendants claim each Network location is independently owned and operated, and argue that only some defendants will be liable as to some class members, mentioning in passing things such as the statutes regarding limited liabilities. Defendants make a further argument that they cannot be held liable for anything other than events occurring in Swansea. Defendants even go so far as to as to argue there are "constitutional concerns" as to the rights of any non-party entities. Defendants do not provide any explanation, however, as to how Defendants would have standing to raise any such concerns on behalf of entities with whom they also disavow any connection.

For her part, Plaintiff points out that she has pleaded from the outset of the case a variety of theories assessing mutual liability of the Network. Those theories include topics such as *respondeat superior*, alter ego, agency, joint enterprise, civil conspiracy, *etc.* Plaintiff points out any assertion by Defendants as to who did or did not operate any given Network location

13

FILED DATE: 7/22/2019 4:37 PM    2018CH07627

simply begs the questions this lawsuit will answer. Plaintiff further contends that the fact Defendants raise these common questions shows all the more strongly why this case should proceed as a class action.

Both sides have presented discovery responses, discovery productions, public documents, Network documents, *etc.* in support of their positions. The Court has reviewed all of these materials. The Court finds that none of these materials conclusively resolves such issues either way.

Accordingly, the Court concludes that the parties have legitimate disputes of material facts over these issues, and those issues intersect in several instances with unresolved questions of law. The Court further finds that many of these arguments go to the merits of the case. As such, the Court will not resolve them on a motion for class certification. Nor will the Court issue an advisory opinion.

Once again, the presence of such sweeping issues – essentially, "who is liable for what, and to whom" – argues in favor of class certification, not against it. Seeking the answers to these questions – questions applicable across the class, and the common answers which will be generated – makes proceeding on a class basis an appropriate method for the fair and efficient adjudication of these controversies.

## VII.   ORDER AND FINDINGS.

Pursuant to the foregoing analysis, the Court finds the case is proper to proceed as a class action in accordance with 735 ILCS 5/2-801 (2018). The Court hereby certifies the following class:

> All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at any location associated with

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*

Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

The Court also finds it appropriate to certify the following subclass:

All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network location in Swansea, Illinois, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*

Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

The Court finds it appropriate to certify each of these classes as to all issues in this case. The Court further finds it appropriate to certify these classes as to legal and factual issues concerning the liability of the Network and those associated with it. The Court reserves jurisdiction to certify further subclasses or otherwise amend these certifications as circumstances warrant.

**SO ORDERED:**

**DATE**: March 12, 2019.

Hon. Kevin T. Hoerner

Return Date: No return date scheduled
Hearing Date: 7/30/2019 9:30 AM - 9:30 AM
Courtroom Number: N/A
Location: District 1 Court
        Cook County, IL

FILED
7/22/2019 4:37 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

5866039

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

# EXHIBIT 4

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

Marquita McDonald, individually and
on behalf of all others similarly situated,

        Plaintiff,

  v.

Symphony Bronzeville Park LLC,
Symcare Healthcare LLC, and
Symcare HMG LLC

        Defendants.

Case No. 2017-CH-11311

Calendar 2
Courtroom 2601

Judge Raymond W. Mitchell

**ORDER**

This case is before the Court on Defendant Symphony Bronzeville Park LLC's motion to dismiss Plaintiff McDonald's complaint pursuant to 735 ILCS 5/2-619(a)(9).[1]

I.

Illinois enacted the Biometric Information Privacy Act ("BIPA") in 2008. 740 ILCS 14. BIPA is an informed consent statute which requires a private entity that collects, captures, purchases, or otherwise obtains a person's biometric information to first inform the subject in writing that biometric information is being collected or stored and the specific purposes and length of term for which the information is being collected, stored, and used. The entity must also obtain a written release from the subject consenting to collection of biometric information. 740 ILCS 14/15(b). The statute also provides a private right of action, including liquidated damages, for any person aggrieved by a violation of the act against a private entity that negligently violates a provision. 740 ILCS 14/20(1).

The facts alleged in the complaint are taken as true for the purpose of ruling on a motion to dismiss. Plaintiff McDonald was employed at Defendant Symphony for three months. During the course of her employment, McDonald was required to scan her fingerprint to track her time at work. McDonald was never provided with nor signed a release consenting to storage of her biometric information. McDonald has also never been informed of the purposes or length of time for which her biometric information was being stored. McDonald claims to have experienced

---

[1] Defendant Symphony's Motion *Instanter* for Leave to File an Oversized Reply Brief is Granted.

FILED DATE: 7/22/2019 4:37 PM   2018CH07627

mental anguish from being uninformed about what Symphony will do with her biometric information.

Plaintiff McDonald filed a class action complaint on behalf of herself and all other individuals similarly situated against Symphony alleging a violation of BIPA and negligence.

## II.

A section 2-619 motion to dismiss admits the legal sufficiency of the complaint. 735 ILCS 5/2-619. The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of the litigation. *Henry v. Gallagher* (In re Estate of Gallagher), 383 Ill. App. 3d 901, 903 (1st Dist. 2008). Although a section 2-619 motion to dismiss admits the legal sufficiency of a complaint, it raises defects, defenses, or some other affirmative matter appearing on the face of the complaint or established by external submissions, which defeat the plaintiff's claim. *Ball v. County of Cook,* 385 Ill. App. 3d 103, 107 (1st Dist. 2008).

## A.

Symphony argues McDonald lacks standing to bring suit. Symphony claims that the recent *Rosenbach* decision held that a violation of BIPA was only enough to establish statutory standing, but the affirmative defense of lack of common law standing requires a concrete injury beyond just a violation of the statute. *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186. However, in *Rosenbach,* the Court held that when a private entity fails to adhere to the required procedures in BIPA, the affected individuals suffer a "real and significant" injury in that their right to maintain their biometric privacy is taken away. *Id.* at ¶ 34. Additionally, in *Sekura,* the appellate court concluded that a violation of BIPA constituted harm even if the information was not disclosed to a third party. *Sekura v. Krishna Schaumburg Tan, Inc.,* 2018 IL App (1st) 180175, ¶ 77. If affected individuals had to wait until additional harm had occurred beyond a violation of the Act, it would be "too late, because, as the drafters found, once a person's biometric identifiers have been compromised, there is simply 'no recourse' for prevention." *Id.* at ¶ 59. This would be "completely antithetical to the Act's preventative and deterrent purposes." *Rosenbach,* 2019 IL at ¶ 37.

Symphony also argues that McDonald's only claim of injury is mental anguish over what could happen to her data and relies on *Maglio,* which held that risk of future harm does not constitute an injury. *Maglio v. Advocate Health & Hospitals Corp.*, 2015 IL App (2d) 140782. However, in *Duncan,* the court distinguished *Maglio* because the statute plaintiffs relied on did not expressly grant a private right of action for violations. *Duncan v. FedEx Office & Print Services,*

FILED DATE: 7/22/2019 4:37 PM    2018CH07627

2019 IL App (1st) 180857, ¶ 25. Additionally, the court held in *Sekura* that mental anguish can constitute a concrete injury. *Sekura*, 2018 IL App (1st) at ¶ 78.

Symphony claims that McDonald's fear of disclosure of her biometric information would exist regardless of their compliance with the requirements in BIPA because it is merely an informed consent statute. However, *Rosenbach* held that a violation of BIPA results in the injury of lost privacy rights. *Rosenbach*, 2019 IL at ¶ 34. The loss of these rights are directly traceable and would not exist without Symphony's alleged violation of the Act.

Finally, Symphony argues that allowing plaintiffs to recover liquidated damages for minor technical violations of the Act, would expose defendants to substantial liability that would amount to punitive damages. However, the Court in *Rosenbach* stated that this liability gives these entities "the strongest possible incentive to conform to the law." *Id.* at ¶ 37. It should not be too difficult or costly for entities to comply. *Id.*

### B.

Symphony also argues that if McDonald did suffer an injury, her claim is preempted by the Illinois Workers' Compensation Act. 820 ILCS 305. The Act is the exclusive remedy for workplace injuries unless the employee can demonstrate her injury (1) was not accidental, (2) did not arise from employment, (3) was not received during the course of employment, or (4) is not compensable under the Act. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463 (1990). In *Schroeder*, the court held that psychological injuries caused by a physical trauma or injury are compensable under the Act. *Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483, ¶ 30. However, the injury that McDonald suffered was the loss of the ability to maintain her privacy rights. This is neither a psychological nor physical injury and is not compensable under the Act.

Additionally, in *Liu*, the court stated that the Act applies "inside and outside the workplace." *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645, ¶ 30. BIPA specifically defines written release in the employment context showing the drafters intended for BIPA to apply to violations by employers in the workplace. 740 ILCS 14/10.

III.

Therefore, it is hereby ORDERED:

(1)    Defendant Symphony's motion to dismiss Plaintiff McDonald's complaint is DENIED.

(2)    Defendant has until July 18, 2019 to answer.

(3)    The ruling date set for June 21, 2019 at 10:00 a.m. is stricken.

(4)    The case is continued to August 7, 2019 at 10:00 a.m.

ENTERED,

Judge Raymond W. Mitchell

JUN 1 7 2019

Circuit Court –

Judge Raymond W. Mitchell, No. 1992

FILED DATE: 7/22/2019 4:37 PM 2018CH07627

4

## PROOF OF SERVICE

**Tellado v. Rich Products Corporation, and ADP, LLC**
**Case No.: 2018-CH-07627**

I, the undersigned, declare as follows:

On July 22, 2019, I served the foregoing documents described as follows:

> 1. Plaintiff's Response in Opposition to Defendant ADP, LLC's Motion to Dismiss Plaintiff's Amended Class Action Complaint.

on all interested parties in this action addressed as follows:

Ross B. Bricker – rbricker@jenner.com
David C. Layden – dlayden@jenner.com
Precious S. Jacobs – pjacobs@jenner.com
Joshua M. Levin – jlevin@jenner.com
Reann Zheng – rzheng@jenner.com
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, IL 60654

Richard P. McArdle – mcardle@seyfarth.com
Joseph A. Donado – jdonado@seyfarth.com
Hoorya R. Ahmad – hahmad@seyfarth.com
**SEYFARTH SHAW LLP**
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606

__X__ By Electronic Mail on July 22, 2019, in Chicago, Illinois, I served the above-referenced document on the above-stated addressee(s) by electronic mail.

_____ By depositing in U.S. Mail on July 22, 2019, at 100 N. Riverside Plaza, Chicago, Illinois, I served the above-referenced document on the above-stated addressee(s) with proper postage prepaid.

_____ By Facsimile on July 22, 2019, in Chicago, Illinois, I served the above-referenced document on the above-stated addressee(s).

I declare under penalty of perjury that the above is true and correct.

Executed on July 22, 2019, in Chicago, Illinois.

SUBSCRIBED AND SWORN
TO BEFORE ME THIS 22ND DAY
OF JULY, 2019

NOTARY



KERRY D BOWERS
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
March 01, 2021

_/s/ Andrew C. Ficzko_
Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
Telephone: (312) 233-1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

Order

(Rev. 02/24/05) CCG N002

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Tellado

v.

No. 2018-CH-7627

Rich Products Corporation
and A&P, LLC

ORDER

This matter, coming before the Court on clerk status, the Court being duly advised on the premises, it is hereby Ordered:

- Based on the parties' previously agreed revised briefing schedule, defendants' Reply briefs are due by August 12, 2019;

- Hearing on defendants' Motion to dismiss is scheduled for September 20, 2019 @ 10:30 am;

- Plaintiff's Motion for Leave to File Excess Pages for his Response brief is granted;

- Notice date of July 30, 2019 is stricken.

Attorney No.: 43734
Name: Andrew Ficzko
Atty. for: π
Address: 100 N. Riverside Plaza
City/State/Zip: Chicago, IL
Telephone: 312-233-1550

ENTERED:
Judge Anna
Date
Circuit Court 2102

Judge                    Judge's No.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
8/1/2019 1:39 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

6010031

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| **JOSEPH TELLADO, individually, and on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 2018-CH-07627** |
| **v.** | ) ) | |
| **RICH PRODUCTS CORPORATION and ADP LLC,** | ) ) ) | **Honorable Anna M. Loftus** |
| **Defendants.** | ) ) | |

**PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY**

PLEASE TAKE NOTICE that Plaintiff hereby submits the attached Opinion as supplemental authority in support of Plaintiff's Response in Opposition to Defendant Rich Products Corporation's Motion to Dismiss Plaintiff's Amended Class Action Complaint:

*Robertson v. Hostmark Hospitality Group, Inc., et al.*, No. 2018-CH-5194 (Cir. Ct. Cook Cty. July 31, 2019) (denying defendants' motion to dismiss plaintiff's claims arising under the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, finding: (1) action is not preempted by the Illinois Workers' Compensation Act, 820 ILCS 305 and (2) because Section 14/20 of BIPA does not contain a limitations provision, and neither 735 ILCS 5/13-201 or 5/13-202 applies, the applicable statute of limitations period for Section 14/20 of BIPA is the five-year catchall provided for in 735 ILCS 5/13-205).

Dated: August 1, 2019

Respectfully submitted,

/s/ Andrew C. Ficzko
Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

FILED DATE: 8/1/2019 1:39 PM   2018CH07627

FILED DATE: 8/1/2019 1:39 PM   2018CH07627

Attorneys for Plaintiff and the Putative Class

FILED DATE: 8/1/2019 1:39 PM   2018CH07627

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on August 1, 2019 I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

/s/ Andrew C. Ficzko

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
8/1/2019 1:39 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

6010031

FILED DATE: 8/1/2019 1:39 PM   2018CH07627

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| THOMAS ROBERTSON,<br>individually, and on behalf of all<br>others similarly situated,<br>                   Plaintiff,<br>v.<br>HOSTMARK HOSPITALITY<br>GROUP, INC., et al,<br>                  Defendants, | ) ) ) ) ) ) ) ) ) )<br><br>    Case No. 18-CH-5194 |

### MEMORANDUM AND ORDER

Defendants Hostmark Hospitality Group, Inc. and Raintree Enterprises Mart Plaza, Inc. have filed a motion to dismiss Plaintiff, Thomas Robertson's complaint pursuant to 735 ILCS 5/2-619.1.

### I.    Background

The Biometric Information Privacy Act ("BIPA") requires private entities in possession of biometric information to develop a publicly available written policy establishing a retention schedule and guidelines for permanently destroying biometric information. 740 ILCS 14/15(a). BIPA also requires a private entity to obtain written consent from the individual before it can collect the individual's biometric information. 740 ILCS 14/15(b). Significantly, BIPA prevents a private entity from disseminating an individual's biometric information unless it has received the individual's consent. 740 ILCS 14/15(d).

Section 14/20 of BIPA grants any person aggrieved by a violation of BIPA a right of action. 740 ILCS 14/20. A prevailing party may recover actual damages or a statutory penalty whichever is greater for each violation. 740 ILCS 14/20 (1) and (2).

### A.  Plaintiff Thomas Robertson

Plaintiff Thomas Robertson ("Robertson") filed a Class Action Complaint (the "Complaint"). Robertson alleges that he worked as a food and beverage manager for Defendants Hostmark Hospitality Group, Inc. ("Hostmark") and Raintree Enterprises Mart Plaza, Inc. ("Raintree") (collectively "Defendants") from 2010 to January 2016. (Compl. at ¶41). Robertson alleges that beginning in 2010, as a condition of his employment, he was required to scan his fingerprint so Defendants could authenticate and track his time. (Id. at ¶42). Robertson alleges that Defendants stored his fingerprint data in their employee database. (Id. at ¶43).

Robertson alleges that Defendants violated BIPA because: (1) he was never informed of the specific limited purposes or length of time for which Defendants collected, stored, and disseminated his biometric information; (2) he was never informed of any biometric data retention and deletion policy; (3) he never signed a written release allowing Defendants to

1

FILED DATE: 8/1/2019 1:39 PM   2018CH07627

collect, store, use, or disseminate his biometric data; and (4) upon information and belief, Defendants have disclosed his fingerprint data to at least one out-of-state third-party vender. (Compl. at ¶¶33, 45-47, 71, 76-77, 81, 86-88, 92, 97-98).

## II.  Motion to Dismiss

Defendants are seeking to dismiss the Complaint pursuant to 735 ILCS 5/2-619.1. Section 2-619.1 allows a party to bring a combined motion to dismiss under Sections 2-615 and 2-619. 735 ILCS 5/2-619.1.

"A section 2-615 motion to dismiss challenges the legal sufficiency of the complaint. Yoon Ja Kim v. Jh Song, 2016 IL App (1st) 150614-B, ¶41. "Such a motion does not raise affirmative factual defenses but alleges only defects on the face of the complaint." Id. "All well-pleaded facts and all reasonable inferences from those facts are taken as true. Where unsupported by allegations of fact, legal and factual conclusions may be disregarded." Kagan v. Waldheim Cemetery Co., 2016 IL App (1st) 131274, ¶29. "In determining whether the allegations of the complaint are sufficient to state a cause of action, the court views the allegations of the complaint in the light most favorable to the plaintiff. Unless it is clearly apparent that the plaintiff could prove no set of facts that would entitle him to relief, a complaint should not be dismissed." Id.

A section 2-619 motion to dismiss "admits the legal sufficiency of the complaint and affirms all well-pled facts and their reasonable inferences, but raises defects or other matters either internal or external from the complaint that would defeat the cause of action." Cohen v. Compact Powers Sys., LLC, 382 Ill. App. 3d 104, 107 (1st Dist. 2008). A dismissal under §2-619 permits "the disposal of issues of law or easily proved facts early in the litigation process." Id. Section 2-619(a)(5) authorizes dismissal where "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5).

### A.  Section 2-619

Defendants argue that the Complaint should be dismissed pursuant to section 2-619 because (1) his claim is preempted by the Illinois Workers' Compensation Act (the "IWCA"); and (2) his claims are time barred by any applicable statute of limitations.

#### 1. Preemption

Defendants argue that the IWCA preempts Robertson's claims because his injury falls into the types of injuries covered by the IWCA. (Memo at 11). The court disagrees.

Section 305/5(a) of the IWCA (the "exclusivity provision") provides:

[. . .] no common law or statutory right to recover damages from the employer [...] for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act [. . .].

820 ILCS 305/5(a).

FILED DATE: 8/1/2019 1:39 PM   2018CH07627

In order to avoid the exclusivity provision an employee must establish "that the injury (1) was not accidental; (2) did not arise from his employment; (3) was not received during the course of employment; or (4) was not compensable under the [IWCA]." Folta v. Ferro Engineering, 2015 IL 118070, ¶ 14.

The Illinois Supreme Court has held that "whether an injury is compensable is related to whether the type of injury categorically fits within the purview of the Act." Folta, 2015 IL 118070, ¶ 23.

Robertson's alleged injury is not compensable under the IWCA because it is not a type of injury which categorically fits within the purview of the IWCA.

"The purpose of the [IWCA] is to protect employees against risks and hazards which are peculiar to the nature of the work they are employed to do." Mytnik v. Illinois Workers' Compensation Comm'n, 2016 IL App (1st) 152116WC, ¶ 36. Defendants offer no explanation as to how Robertson's statutory right to maintain his privacy in his biometric data is a risk or hazard peculiar to his employment as a food and beverage manager.

Further, the court finds persuasive Judge Raymond W. Mitchell's well-considered opinion in McDonald v. Symphony Bronzeville Park, LLC, et al., No. 2017-CH-11311 (Cir. Ct. Cook Cty. June 17, 2019). In McDonald, Judge Mitchell held that the plaintiff's loss of her ability to maintain her privacy rights under BIPA was neither a psychological nor a physical injury and thus was not compensable under the IWCA.

Therefore, the court finds that the IWCA does not preempt Robertson's claim.

## 2. Statute of Limitations

Section 14/20 of BIPA does not include a statute of limitations. Defendants have identified three different statutes of limitation which they think are applicable. The court will address each in turn.

Initially, Defendants have argued that public policy favors the application of the shortest possible statute of limitations.

The Illinois Supreme Court has held that "[t]he determination of the applicable statute of limitations is governed by the type of injury at issue, irrespective of the pleader's designation of the nature of the action." Travelers Casualty & Surety Co. v. Bowman, 229 Ill. 2d 461, 466 (2008) (quoting Armstrong v. Guigler, 174 Ill. 2d 281, 286 (1996)). "[I]t is the nature of the plaintiff's injury rather than the nature of the facts from which the claim arises which should determine what limitations period should apply." Travelers, 229 Ill. 2d at 466. "To determine the true character of a plaintiff's cause of action, [Armstrong] emphasized that '[t]he focus of the inquiry is on the nature of the liability and not on the nature of the relief sought.' " Travelers, 229 Ill. 2d at 467 (quoting Armstrong, 174 Ill. 2d at 291).

Defendants have cited no case law which indicates that a court may apply any statute of limitations on a public policy basis. The court rejects Defendants' argument.

FILED DATE: 8/1/2019 1:39 PM   2018CH07627

### a. 1-Year (Privacy Actions)

Section 13-201 provides that "[a]ctions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued." 735 ILCS 5/13-201.

Defendants argue that because Robertson is alleging a violation of his right to privacy in his biometric data, Section 13-201 applies. Robertson argues that Section 13-201 applies only to privacy claims involving a publication element. The court agrees with Robertson.

Section 14/20 of BIPA grants any person aggrieved by a violation of BIPA (a statute) a right of action. 740 ILCS 14/20. The fact that Robertson alleges his privacy rights were violated does not change the fact that the true nature of any potential liability stems from alleged violations of the BIPA statute. The Travelers' court makes clear that regardless of Robertson's allegation that his privacy rights were violated; we are dealing with an action for a violation of the BIPA statute and not an action for slander, libel, or for the publication of matter violating the right to privacy. Travelers, 229 Ill. 2d at 466; 735 ILCS 5/13-201.

Even assuming that Section 14/20 of BIPA created an action for violating a right of privacy in one's biometric data, the plain and unambiguous language of Section 13-201 is clear that it applies to actions *for publication* of matter violating the right of privacy. 735 ILCS 5/13-201. Nothing in the plain and unambiguous language of Section 14/20 indicates that publication is a necessary element for a person to be aggrieved by a violation of the BIPA statute. 740 ILCS 14/20.

While Defendants point out that Robertson has alleged that his biometric data has been disseminated (published) to at least one out-of-state third-party vendor and disclosed (published) to other, currently unknown, third-parties in violation of Section 15/15(d) of BIPA, Defendants have not cited any legal authority to justify the application of Section 13-201 to the alleged violations of the other sections of BIPA. (Compl. at ¶33); 740 ILCS 14/15(d); 735 ILCS 5/13-201.

Therefore, the court finds that Section 13-201 does not apply to Robertson's claims.

### b. 2-Year (Penal Statues)

Section 13-202 provides that "Actions for [. . .] a statutory penalty [. . .] shall be commenced within 2 years next after the cause of action accrued [. . .]. 735 ILCS 5/13-202.

Defendants argue that because Section 14/20 of BIPA is penal in nature Section 13-202 applies. Robertson argues that because Section 14/20 of BIPA is remedial in nature Section 13-202 does not apply. The court agrees with Robertson.

A statutory penalty is penal in nature if it "(1) impose[s] automatic liability for a violation of its terms; (2) set[s] forth a predetermined amount of damages; and (3) impose[s] damages without regard to the actual damages suffered by the plaintiff." Landis v. Marc Realty, L.L.C., 235 Ill. 2d 1, 13 (2009) (citing McDonald's Corp. v. Levine, 108 Ill. App. 3d 732, 738 (1982)).

Here, it is clear that Section 14/20 does not impose damages without regard to the actual damages suffered by a plaintiff because it allows a plaintiff to recover the greater of his actual damages or the applicable liquidated damages amount. 740 ILCS 14/20. The fact that a plaintiff

may be awarded or seeks only liquidated damages does not mean Section 14/20 is penal in nature.

The Illinois Supreme Court's decision in <u>Standard Mutual Insurance Co. v. Lay</u>, 2013 IL 114617 instructive. In <u>Standard Mutual</u>, the Supreme Court held that the statutory penalty of the Telephone Consumer Protection Act (the "TCPA") was remedial and not penal. <u>Standard Mutual</u>, 2013 IL 114617, ¶ 33. The TCPA allows a person to bring an action to recover their actual monetary loss or $500 for each violation, whichever was greater. <u>Id.</u> at ¶29. In reaching its holding the Supreme Court noted that the TCPA was "clearly within the class of remedial statutes which are designed to grant remedies for the protection of rights, introduce regulation conducive to the public good, or cure public evils." <u>Id.</u> at ¶ 31 (quoting <u>Scott v. Association for Childbirth at Home, International</u>, 88 Ill. 2d 279, 288 (1981)). "Whether we view the $500 statutory award as a liquidated sum for actual harm, or as an incentive for aggrieved parties to enforce the statute, or both, the $500 fixed amount clearly serves more than purely punitive or deterrent goals." <u>Id.</u> at ¶ 32.

Like the TCPA, Section 14/20 of BIPA allows a plaintiff to recover either their actual damages or a liquidated amount. <u>Standard Mutual</u>, 2013 IL 114617, ¶ 29; 740 ILCS 14/20. Also like the TCPA, BIPA is clearly "within the class of remedial statutes which are designed to grant remedies for the protection of rights, introduce regulation conducive to the public good or cure public evils." <u>Standard Mutual</u>, 2013 IL 114617, ¶ 31.

As the Illinois Supreme Court pointed out in <u>Rosenbach v. Six Flags Entertainment Corp.</u>, 2019 IL 123186, ¶ 37, by allowing private entities to face liability for violating BIPA, without requiring an individual to show more than a violation of their statutory rights, "those entities have the strongest possible incentive to conform to the law and prevent problems before they occur and cannot be undone." Whether this court views Section 14/20's liquidated damages provisions "as a liquidated sum for actual harm, or as an incentive for aggrieved parties to enforce the statute, or both, the [liquidated damages] amount clearly serves more than purely punitive or deterrent goals." <u>Standard Mutual</u>, 2013 IL 114617, ¶ 32.

Therefore, the court finds that Section 13-202 does not apply to Robertson's claims.

### c. 5-Year (Catchall 5-Year)

Section 13-205 provides "[. . .] all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205.

Because, Section 14/20 does not contain a limiting provision and neither Section 13-201 nor Section 13-202 applies, the court finds that Section 13-205 provides the applicable statute of limitation for Section 14/20.

### 3. Whether Robertson's Claims are barred by the 5-Year Statute of Limitations

Robertson filed his complaint on April 1, 2019. Defendants argue that Robertson's claims are barred under Section 13-205 because management position employees, like Robertson, are not hourly employees and have not used timekeeping devices since January 16, 2013. (Memo Ex. 2, ¶ 6). Robertson argues his claims are not barred by Section 13-205 because he continued

FILED DATE: 8/1/2019 1:39 PM    2018CH07627

5

to use the fingerprint scanning method of authentication periodically through 2014. (Response Ex. 1, ¶ 7). The parties have supported their arguments with affidavits.

In deciding the merits of a Section 2-619 motion, "a trial court cannot determine disputed factual issues solely upon affidavits and counter-affidavits." Vaughn v. Blue Cross Blue Shield of Illinois, 403 Ill. App. 3d 830, 836 (1st Dist. 2010). Because the parties have presented conflicting affidavits, the court cannot resolve this disputed factual issue on a Section 2-619 motion and denies Defendants' motion without prejudice. 735 ILCS 5/2-619(c).

**B. Section 2-615**

Defendants argue that Robertson's complaint must be dismissed because he has failed to identify who his employer was, in violation of the Illinois fact pleading requirements. The court disagrees.

Illinois is a fact pleading jurisdiction. Simpkins v. CSX Transportation, Inc., 2012 IL 110662, ¶ 26. Fact pleading does not require a plaintiff to set forth evidence but does require a "plaintiff allege facts sufficient to bring a claim within a legally recognized cause of action." Simpkins, 2012 IL 110662, ¶ 26. "A plaintiff may not rely on conclusions of law or fact unsupported by specific factual allegations." Id.

Here, Robertson's complaint does allege the ultimate facts which if proven would bring his claim within the legally recognized cause of action for a violation of the BIPA statute. While Defendants are correct that throughout Robertson's complaint he generally refers to both Defendants, Defendants have cited[1] no persuasive or binding case law which indicates this practice violates Illinois fact pleading requirements. Robertson's complaint it is clear that he is alleging that both defendants employed him and engaged in conduct violating BIPA. (Compl. at ¶¶33, 41-47, 71, 76-77, 81, 86-88, 92, 97-98).

**III.  Conclusion**

Defendants' motion to dismiss pursuant to 735 ILCS 5/2-619 is denied without prejudice.

Defendants' motion to dismiss pursuant to 735 ILCS 5/2-615 is denied without prejudice.

The status date of August 2, 2019 is stricken. Status is set for August 22, 2019

Entered:

> **ENTERED**
> Judge Neil H. Cohen-2021
> JUL 31 2019
> DOROTHY BROWN
> CLERK OF THE CIRCUIT COURT
> OF COOK COUNTY, IL
> DEPUTY CLERK

_____
[1] The court notes that Defendants have cited Carter v. Dolan, No. 08 C 7464, 2009 U.S. Dist. LEXIS 53735, a non-binding opinion from the Northern District of Illinois, and Elder v. Cook Count Department of Corrections., 2016 IL App (1st) 153428-U, an unpublished opinion. Although a circuit court may look to federal court orders for guidance or persuasive authority they are not binding authority. Reichert v. Board of Fire & Police Commr's of Collinsville, 388 Ill. App. 3d 834, 845 (5th Dist. 2009). Similarly, unpublished opinions are not binding authority and may not be cited as persuasive authority. Ill. Sup. Ct., R 23(e).

FILED DATE: 8/1/2019 1:39 PM   2018CH07627

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

FELIPE BERNAL, individually and on behalf )
of a class of similarly situated individuals, )
                                       )
                           )    Case No. 2017-CH-12364
         *Plaintiff*,          )
                                          )
        v.                      )    Hon. David B. Atkins
                                          )
ADP, LLC, a Delaware limited liability )
corporation, )
                                          )
        *Defendant*.        )
                                          )

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on ~~Septenter~~ 11, 2019, at 10: 00 a.m., counsel for

Plaintiff will appear before the Honorable Moshe Jacobius, or any judge sitting in his stead, in

courtroom 2410 of the Richard J. Daley Center, 50 West Washington Street, Chicago, Illinois, and

present *Plaintiff's Motion to Reassign and Consolidate Related Cases*.

Dated: August 22, 2019                Respectfully Submitted,

                                      FELIPE BERNAL, individually and on behalf
                                      of a class of similarly situated individuals

                                      By:      /s/ Jad Sheikali
                                             *One of Plaintiff's Attorneys*

Evan M. Meyers
Jad Sheikali
Timothy P. Kingsbury
MCGUIRE LAW, P.C. (Firm ID 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
emeyers@mcgpc.com
jsheikali@mcgpc.com
tkingsbury@mcgpc.com

Steven A. Hart
John S. Marrese
HART McLAUGHLIN & ELDRIDGE, LLC
22 W. Washington Street, #1600
Chicago, IL 60602
shart@hmelegal.com
jmarrese@hmelegal.com

*Attorneys for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2019, I caused copies of the foregoing *Plaintiff's Motion to Reassign and Consolidate Related Actions* to be electronically filed with the Circuit Court of Cook County. A copy of the Motion will be served via U.S. Mail upon the following counsel:

Baker & Hostetler LLP
191 N. Wacker Drive, Suite 300
Chicago, IL 60606

Jackson Lewis PC
150 N. Michigan Avenue, #2500
Chicago, IL 60601

Daspin & Aument, LLP
300 S. Wacker Dr., #2200
Chicago, IL 60606

Bishop & LaForte LTD
1 S. 450 Summit Ave, #325
Oakbrook Terrace, IL 60181

O'Hagan Meyer LLC
1 E Wacker Drive, #3400
Chicago, IL 60601

Seyfarth Shaw LLP
233 S. Wacker Drive, #8000
Chicago, IL 60606

Vedder Price PC
222 N. LaSalle, #2400
Chicago, IL 60601

Edelson P.C.
350 N. LaSalle Drive, 14th Fl.
Chicago, IL 60654

Shook Hardy & Bacon LLP
111 S. Wacker Drive, #4700
Chicago, IL 60606

Jenner & Block LLP
353 N. Clark Street
Chicago, IL 606054

Stephan Zouras, LLP
205 N. Michigan Avenue, #2560
Chicago, IL 60601

By:  /s/ Jad Sheikali
*One of Plaintiff's Attorneys*

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

FELIPE BERNAL, individually and on behalf of a class of similarly situated individuals, )
)
)
Plaintiff, )
)
v. )
)
ADP, LLC, a Delaware limited liability corporation, )
)
)
Defendant. )
)

Case No. 2017-CH-12364

Hon. David B. Atkins

## PLAINTIFF'S MOTION TO REASSIGN AND CONSOLIDATE RELATED ACTIONS

Plaintiff Felipe Bernal ("Plaintiff"), through his undersigned counsel, hereby moves for entry of an Order (i) reassigning a series of cases under the Illinois Biometric Information Privacy Act (the "ADP Biometric Cases," attached as Group Exhibit A) to the Honorable David B. Atkins as related to the instant case, *Bernal v. ADP, LLC*, No. 2017-CH-12364 (the "*Bernal*" case), and (ii) consolidating the ADP Biometric Cases with the *Bernal* case. In support of his Motion, Plaintiff states as follows:

### INTRODUCTION

Since 2017, there has been a proliferation of class action lawsuits brought pursuant to the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"), in the employment timekeeping context. ADP, LLC ("ADP"), as a global leader in providing biometric-enabled timekeeping solutions, is a central figure in the overall backdrop of BIPA employment litigation. ADP plays the same role – a third-party biometric technology vendor – in each respective lawsuit asserted against it. As such, the legal question as to the scope of ADP's liability under BIPA as a technology vendor, which is currently undecided in this Circuit, is a significant legal issue that is

1

now pending before a myriad of Chancery Division judges. There are now over a dozen BIPA class actions implicating ADP with the same legal issues pending in each case. Thus, there is a material risk of wasting judicial resources, duplication of efforts, and inconsistent proceedings and rulings, prompting Plaintiff's instant Motion to effectively organize the pending BIPA litigation involving ADP.

On September 12, 2017, Plaintiff filed his original Class Action Complaint in the Circuit Court of Cook County, Illinois, seeking class-wide redress under BIPA. Plaintiff's operative Complaint ("Complaint")[1] asserts a claim against Defendant ADP for its alleged BIPA violations. Since September 12, 2017, at least a dozen BIPA class actions have been filed, and are currently pending in the Circuit Court of Cook County, directly naming ADP as a party-defendant. (*See* Group Ex. A). Notably, because ADP plays an identical (and central) role in the respective biometric transactions at issue in the *Bernal* case and in each of the ADP Biometric Cases, the same legal and factual issues pertaining to ADP's liability under BIPA as a biometric technology vendor are pending before nine (9) Chancery Division judges. Therefore, because the *Bernal* case and the ADP Biometric Cases all involve ADP as a common party, set forth the same legal and factual issues, and are class actions that contain overlapping and/or identical classes, these matters should be reassigned to Judge Atkins[2] as related to the *Bernal* case. As set forth *infra*, relating the ADP Biometric Cases to the *Bernal* case would result in substantial savings of judicial time and effort, and would not result in prejudice to any party.

Once reassigned as related to the *Bernal* case, the ADP Biometric Cases should be consolidated with the *Bernal* case. Here, consolidation is appropriate because several actions are pending involving identical, or substantially similar, factual and legal issues. The legal issues

---

[1] Plaintiff's First Amended Complaint is attached as Exhibit B.
[2] The *Bernal* case pending before Judge Atkins is a lower numbered case than the ADP Biometric Cases.

raised in ADP's Motion to Dismiss in the *Bernal* case are fully briefed and currently under advisement with Judge Atkins, and these *same* issues are present in ADP's six (6) other motions to dismiss currently pending in the ADP Biometric Cases before a myriad of Chancery Division judges. (*See* Group Exhibit C). Therefore, the *Bernal* case and the ADP Biometric Cases should be consolidated before Judge Atkins so that Judge Atkins may issue a ruling on the legal issues presented in the *Bernal* matter – which are the same legal issues vis-a-vs ADP pending in nearly all of the ADP Biometric Cases – and then proceed accordingly and in an efficient and consistent manner in adjudicating the ADP Biometric Cases.

Thus, for the reasons more fully developed below, the ADP Biometric Cases set forth in Group Exhibit A (*Jackson v. ADP LLC, et al.*, 18-CH-07424; *Brown v. ADP LLC, et al.*, 19-CH-00503; *Krause v. ADP LLC, et al.*, 18-CH-11660; *Gonzalez v. CH Ventures, LLC*, 19-CH-09349; *Cameron v. Polar Tech Industries, et al.*, 18-CH-10001; *Tellado v. ADP LLC, et al.*, 18-CH-07627; *Bryski v. ADP LLC, et al.*, 18-CH-07264; *Garcia v. R.A. Kerley Ink Engineers, Inc.*, 19-CH-09350; *Henderson v. ADP, LLC, et al.*, 18-CH-07139; *Peaks-Smith v. ADP LLC, et al.*, 18-CH-07077; *Bryant v. ADP LLC, et al.*, 18-CH-09477; *Kane v. ADP, LLC, et al.*, 18-CH-12194; and *Zepeda v. ADP, LLC*, 19-CH-01612) should be reassigned to Judge Atkins as related to *Bernal v. ADP, LLC*, 17-CH-12364, and then consolidated with the *Bernal* case.

## LEGAL ANALYSIS

### A.    The ADP Biometric Cases Should Be Reassigned As Related To The *Bernal* Case.

Pursuant to General Order 22, cases may be designated for reassignment for relatedness before a single judge "wherever it serves the convenience of interested parties and the court. Gen. Ord. 22.1. Cases should be deemed related and reassigned where such reassignment is likely to "result in a substantial saving of judicial time and effort and does not result in prejudice to any

party . . . [and] at least one of the following characteristics [are present]: (a) the cases have at least one party in common . . . (c) the cases involve the same issues of fact or law . . . or (e) in class actions, the cases involve one or more of the same classes. Gen. Ord. 22.2.

Here, there is no question the ADP Biometric Cases satisfy at least one, if not multiple, relatedness characteristics of Gen. Order No. 22.2. ADP is a party in common for each of the ADP Biometric Cases, and each of the ADP Biometric Cases involve the same issues of fact and law, *i.e.* ADP's liability under BIPA as a vendor of biometric-enabled technologies and services. (*See* Group Exs. A, C). In fact, there are at least seven (7) motions to dismiss filed by ADP pending across the ADP Biometric Cases, and nearly all of the motions address the exact same issues of fact and law: whether Section 15(b) of BIPA applies to a biometric technology provider like ADP, whether Section 15(a) requires an entity like ADP to develop a public data retention schedule prior to receiving biometric information, and whether ADP's conduct in redisclosing the subject data for employment purposes constitutes an unlawful disclosure as contemplated under BIPA. (*See* Group Ex. C). Finally, the ADP Biometric Cases are all class actions involving either the same class or subsumed classes. Nearly all the ADP Biometric Cases assert general classes that would encapsulate all of ADP's biometric practices in the state of Illinois (*see* Group Ex. A), and the minority of cases that assert smaller classes would be subsumed within the general ADP classes.

Critically, relating the ADP Biometric Cases before a single judge will result in substantial savings of judicial time, effort, and expense, and will not result in prejudice to any party. If the ADP Biometric Cases are not related, more than a half-dozen different Chancery Division judges will be tasked with analyzing the briefing and issuing orders on the exact same legal issues involving the exact same party, ADP. Not only would such a result be highly inefficient from a judicial economy standpoint, but the risk of inconsistent or alternate rulings pertaining to ADP's

4

liability would materialize, which would prejudice all interested parties. In contrast, reassigning the ADP Biometric Cases as related to the *Bernal* case would allow the parties to proceed in an orderly, efficient, and consistent fashion, preserving resources on all sides and facilitating judicial economy. Additionally, the *Bernal* case and the ADP Biometric Cases are all in the pleadings stage and discovery has not commenced in any respective action, so no party can credibly claim any delay-based prejudice in reassigning these actions.

Thus, the ADP Biometric Cases should be reassigned to Judge Atkins as related to the *Bernal* case because doing so will result in substantial savings of judicial time and effort, will not prejudice any party, and will allow for the efficient disposition of identical factual and legal issues.

**B.      The ADP Biometric Cases Should Be Consolidated With The *Bernal* Case.**

Section 5/2-1006 of the Illinois Rules of Civil Procedure provides that "actions pending in the same court may be consolidated, as an aid to convenience, whenever it can be done without prejudice to a substantial right." 735 ILCS 5/2-1006. A trial court has broad discretion in determining the propriety of consolidation. *Ad-Ex, Inc. v. City of Chicago*, 247 Ill. App. 3d 97, 102 (1st Dist. 1993). "The purpose of consolidating cases is to expedite the resolution of lawsuits, conserve the court's time, avoid duplicating efforts, and save unnecessary expenses. Consolidation is proper where the cases are of the same nature, arise from the same acts, involve the same issue and depend on the same evidence." *J.S.A. v. M.H.*, 384 Ill. App. 3d 998, 1004–05 (3rd Dist. 2008) (citations omitted). There are three types of consolidation: (1) where several actions are pending involving substantially the same subject matter, the court may stay proceedings in all but one and see whether the disposition of the one action may settle the others thereby avoiding multiple trials on the same issue; (2) where several actions involve an inquiry into the same event in its general aspects, the actions may be tried together, but with separate docket entries, verdicts and judgment,

the consolidation being limited to a joint trial; and (3) where several actions are pending which might have been brought as a single action, the cases may be merged into one action, thereby losing their individual identities, to be disposed of as one suit. *In re Marriage of Harnack & Fanady*, 2014 IL App (1st) 121424, ¶ 40; *Busch v. Mison*, 385 Ill. App. 3d 620, 624 (1st Dist. 2008).

Here, consolidation under the first avenue is appropriate because there are several actions pending, *i.e.* the *Bernal* case and the ADP Biometric Cases, involving substantially the same, if not exactly the same, subject matter, and adjudication of the *Bernal* case will avoid duplicative proceedings, briefing, and rulings involving the ADP Biometric Cases because the matters to be resolved in Judge Atkins' forthcoming ruling on ADP's Motion to Dismiss in the *Bernal* case will apply to all of the ADP Biometric Cases.

There is no doubt that consolidating these matters before Judge Atkins would conserve judicial economy, avoid duplication of efforts, and save unnecessary expenses. As it stands, the adjudication of ADP's seven (7) nearly-identical motions to dismiss will require several judges to expend their respective time, resources, and effort to analyze and issue rulings on the *same* issues, resulting in significant duplication of efforts and completely undermining the concept of judicial economy. In contrast, by consolidating the ADP Biometric Cases with the *Bernal* case and staying adjudication of ADP's motions to dismiss in the ADP Biometric Cases until Judge Atkins issues his forthcoming ruling in the *Bernal* case, the analysis, time, and effort of Judge Atkins and his staff may be applied to resolve, and expedite the resolution of, the common issues involving ADP's liability in the ADP Biometric Cases. Indeed, consolidating the ADP Biometric Cases with the *Bernal* case would allow one judge, *i.e.* Judge Atkins, to efficiently adjudicate what would

6

otherwise require the resources of several other Chancery Division judges and their respective staffs.

Importantly, consolidating the ADP Biometric Cases with the *Bernal* case under the first avenue will not result in prejudice to a substantial right of any party. As discussed above, ADP currently has 7 motions to dismiss pending collectively in the *Bernal* case and the ADP Biometric Cases. ADP's Motion to Dismiss filed in the *Bernal* case is fully briefed and under advisement, awaiting ruling from Judge Atkins since July 16, 2019. Therefore, staying the ADP Biometric Cases before Judge Atkins pending his ruling in the *Bernal* case will not result in any delay to the proceedings of the ADP Biometric Cases; on the contrary, it would likely *expedite* the adjudication on the merits of the ADP Biometric Cases compared to those cases being adjudicated in a piecemeal state. Further, by consolidating the ADP Biometric Cases with the *Bernal* case before Judge Atkins, all interested parties will benefit from receiving consistent rulings as opposed to facing the risk of a hodge-podge of decisions being issues from multiple judges on the same exact legal issues, *i.e.* ADP's liability under BIPA as a biometric technology provider. Finally, through consolidation, ADP will be better equipped to efficiently manage the BIPA litigation landscape in which it finds itself and avoid any further duplication of its efforts in defending itself in these substantially similar cases.

Thus, the ADP Biometric Cases should be consolidated before Judge Atkins and stayed pending Judge Atkins' forthcoming ruling on ADP's Motion to Dismiss in the *Bernal* case.

## CONCLUSION

For the foregoing reasons, Plaintiff Felipe Bernal, individually and on behalf of all others similarly situated, respectfully requests that the Court enter an Order (i) reassigning the ADP Biometric Cases (attached as Group Exhibit A) to the Honorable David B. Atkins as related to the

*Bernal* case; (ii) consolidating the ADP Biometric Cases with the *Bernal* case; (iii) and for any

other relief the Court deems appropriate.

Dated: August 22, 2019                    Respectfully Submitted,

                                          FELIPE BERNAL, individually and on behalf
                                          of a class of similarly situated individuals

                                          By:    /s/ Jad Sheikali
                                                 *One of Plaintiff's Attorneys*

Evan M. Meyers
Jad Sheikali
Timothy P. Kingsbury
MCGUIRE LAW, P.C. (Firm ID 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
emeyers@mcgpc.com
jsheikali@mcgpc.com
tkingsbury@mcgpc.com

Steven A. Hart
John S. Marrese
HART McLAUGHLIN & ELDRIDGE, LLC
22 W. Washington Street, #1600
Chicago, IL 60602
shart@hmelegal.com
jmarrese@hmelegal.com

*Attorneys for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2019, I caused copies of the foregoing *Plaintiff's Motion to Reassign and Consolidate Related Actions* to be electronically filed with the Circuit Court of Cook County. A copy of the Motion will be served via U.S. Mail upon the following counsel:

Baker & Hostetler LLP
191 N. Wacker Drive, Suite 300
Chicago, IL 60606

Jackson Lewis PC
150 N. Michigan Avenue, #2500
Chicago, IL 60601

Daspin & Aument, LLP
300 S. Wacker Dr., #2200
Chicago, IL 60606

Bishop & LaForte LTD
1 S. 450 Summit Ave, #325
Oakbrook Terrace, IL 60181

O'Hagan Meyer LLC
1 E Wacker Drive, #3400
Chicago, IL 60601

Seyfarth Shaw LLP
233 S. Wacker Drive, #8000
Chicago, IL 60606

Vedder Price PC
222 N. LaSalle, #2400
Chicago, IL 60601

Edelson P.C.
350 N. LaSalle Drive, 14th Fl.
Chicago, IL 60654

Shook Hardy & Bacon LLP
111 S. Wacker Drive, #4700
Chicago, IL 60606

Jenner & Block LLP
353 N. Clark Street
Chicago, IL 606054

Stephan Zouras, LLP
205 N. Michigan Avenue, #2560
Chicago, IL 60601

By: /s/ Jad Sheikali
*One of Plaintiff's Attorneys*

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
8/23/2019 3:45 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

6312670

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

JOSEPH TELLADO, individually and on
behalf of all other similarly situated,

        Plaintiff,

    v.

RICH PRODUCTS CORPORATION and
ADP, LLC,

        Defendant.

Case No. 2018-CH-7627

Calendar:  15

Honorable Anna Loftus

**DEFENDANT RICH PRODUCTS CORPORATION'S REPLY**
**IN SUPPORT OF ITS SECTION 2-619 MOTION TO DISMISS PLAINTIFF'S**
**AMENDED CLASS ACTION COMPLAINT**

<u>**INTRODUCTION**</u>

Whether standing is an affirmative defense in Illinois state court or a jurisdictional bar

dictated by Article III of the U.S. Constitution in federal court, the fundamental principle is the

same: Plaintiff must have an injury-in-fact and he has not alleged one. Plaintiff only alleges a bare

statutory violation of BIPA. Thus, Plaintiff's Amended Complaint fails to overcome this basic

hurdle and his lawsuit must be dismissed because he lacks standing to bring suit on his own behalf

and on behalf of a putative class.

Plaintiff's purported BIPA claims are also time-barred under the one-year statute of

limitation for privacy claims under 735 ILCS 5/13-201. In his response, Plaintiff now asserts that

his claims are not based on a privacy claim because he did not allege "publication." Not true.

Plaintiff alleges that his privacy rights were violated because Rich Products *disclosed* his biometric

information to co-defendant ADP and other unknown third parties. (Am. Compl. ¶ 33.) This is an

alleged *publication*. Plaintiff's BIPA claims are even time-barred by Illinois's catch-all five- year

statute of limitation. Finally, if the Court finds that Plaintiff suffered an "injury," that injury is

FILED DATE: 8/23/2019 3:45 PM   2018CH07627

preempted by Illinois Workers' Compensation Act because by definition, it occurred in the workplace during the course of employment and was caused by his employer.

## ARGUMENT

## I.     PLAINTIFF LACKS ILLINOIS COMMON LAW STANDING TO SUE.

According to *Greer v. Illinois Housing Development Authority,* 122 Ill. 2d 462, 492 (1988), a plaintiff must allege "some injury in fact to a legally cognizable interest." Plaintiff agrees. (Resp. p. 5.) Indeed, absent a particularized harm, Plaintiff's claims are nothing more than a generalized grievance. In his response, Plaintiff does not even assert that he has established common law standing. Instead, Plaintiff tries to blur the distinction between statutory and common-law standing by incorrectly asserting he need only establish *statutory* standing. Just because a plaintiff has statutory standing does not mean he also has common-law standing. *See People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 331 (1997); *Lutkauskas v. Ricker*, 2015 IL 117090, ¶31. Plaintiff also conflates actual harm with actual damages. Plaintiff need not allege actual damages because BIPA provides for statutory damages; however, he must *still* allege a distinct and palpable injury and not just a mere technical violation of a statute.[1]

*Rosenbach* is the only Illinois Supreme Court BIPA decision, and it never mentioned common law standing. *Rosenbach* did not hold, as Plaintiff suggests, that a plaintiff who has statutory standing is automatically relieved from his obligation to establish common law standing. Contrary to Plaintiff's assertions, there is nothing "brazen" or "astounding" by pointing out that

---

[1] Plaintiff contends that a "distinct and palpable" injury is one that is not "a generalized grievance." (Resp. p. 5.) But while that contention may speak to whether a plaintiff has suffered a "distinct" injury, it has nothing to do with whether that injury is "palpable." A plaintiff must have suffered an injury that is both "distinct *and* palpable" in order to survive a common-law standing defense. *See Wood River Twp. v. Wood River Twp. Hosp*., 331 Ill. App. 3d 599, 604 (2002) (emphasis added); *see also Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016) ("Congress' judgment that there should be a legal remedy for the violation of a statute does not mean each statutory violation creates an Article III injury.").

58548293v.6

FILED DATE: 8/23/2019 3:45 PM   2018CH07627

FILED DATE: 8/23/2019 3:45 PM   2018CH07627

*Rosenbach* limited its holding to whether the plaintiff was an "aggrieved party" under BIPA and had *statutory* standing. The decision never addressed, and indeed did not abrogate existing common law standing principles and case law. *Greer* still governs this case.

Plaintiff's standing argument heavily relies on one First District Case, *Duncan v. FedEx Office & Print Servs., Inc.*, 2019 IL App (1st) 180857, ¶ 23. Plaintiff, however, misreads *Duncan*.[2] Plaintiff incorrectly argues that other than alleging a bare statutory violation of BIPA, "no additional requirements are needed for standing" to sue in Illinois, quoting *Duncan*. (*See* Resp. pp. 1, 6, 8). But this is misleading. The quote that Plaintiff cherry-picked from *Duncan* refers to *Greer's* refusal to adopt the zone-of-interest test utilized by federal courts when a plaintiff alleges a statutory violation by an administrative agency. *Duncan*, 2019 IL App (1st) 180857, ¶ 23. *Duncan* did not proclaim that a plaintiff automatically has standing to sue for *any* statutory violation no matter how technical.[3] Nor did *Duncan* state that common law standing was not required. In fact, *Duncan* discussed the requirement of a distinct and palpable injury and cited *Greer*. *See Duncan*, 2019 IL App (1st) 180857, ¶ 24.

---

[2] The FACTA provision at issue in *Duncan* is inapposite because it does not deal with (1) biometric information or (2) data retention or (3) a statutory provision requiring informed consent, but rather prohibits the disclosure of certain credit card information. *See Duncan*, 2019 IL App (1st) 180857 at ¶¶5-6. Accordingly, Defendant's cited authority, which addresses a statute that protects biometric information (alongside other types of information) and data retention should guide the Court's analysis. Moreover, another panel of the First District addressing standing under FACTA issued a ruling that is diametrically opposed to *Duncan*. *See Paci v. Costco Wholesale Corp.*, 2018 IL App (1st) 180164-U, ¶2. *Paci* held that the plaintiff lacked standing to bring her complaint because she did not suffer an injury-in-fact; plaintiff did not suffer a distinct and palpable injury because she only alleged a technical statutory violation. *Id*. While *Paci* is an unpublished opinion, it reflects "there is substantial ground for difference of opinion," such "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Ill. Sup. Ct. R. 308(a); *see also* Ill. Sup. Ct. R. 23 (noting, among other things, that an appellate panel may issue an unpublished disposition if it "unanimously determines" that "the disposition is clearly controlled by case law precedent, statute, or rules of court").

[3] *Some* statutory violations may give rise to a "distinct and palpable" injury, but not *all* statutory violations do. The purpose of the lack-of-standing defense under Illinois common law is to provide a jurisprudential principle that separates the two.

58548293v.6

FILED DATE: 8/23/2019 3:45 PM    2018CH07627

Plaintiff must allege that he suffered some actual harm (or the imminent risk of actual harm), otherwise, he does not have an injury-in-fact under Illinois common law. *See e.g. Maglio* v. *Advocate Health & Hosps. Corp.*, 2015 IL App (2d) 140782, ¶¶ 3, 24-29, *appeal denied*, 39 N.E.3d 1003 (Ill. 2015). Plaintiff fails to assert a cogent argument explaining why cases interpreting what constitutes an "injury" in the data-retention context and under a statute that covers "biometric data" (as opposed to a FACTA case like *Duncan*) should not control the outcome here. For example, under the Personal Information Protection Act ("PIPA"), 815 ILCS § 530/1— which, like BIPA, pertains to "[u]nique biometric data generated from measurements… such as a fingerprint," 815 ILCS § 530/5—an increased risk of identity theft is insufficient to give rise to a "distinct and palpable" injury-in-fact. *See Maglio*, 2015 IL App (2d) 140782 at ¶¶ 9, 30; *Beck v. Plaintiff*, 848 F.3d 262, 275-76 (4th Cir. 2017) (no injury in fact where compromised data included unencrypted personal information of approximately 7,400 patients, including names, birth dates, the last four digits of social security numbers, and physical descriptors such as age, race, gender, height, and weight). Plaintiff asks this Court to disregard *Maglio*—although it is more applicable in this context—because it is a Second District case and the PIPA did not provide a private right of action for a mere statutory violation absent actual damages. Plaintiff overreaches again. Even the First District recognized that a claim based upon the improper disclosure of personal data under PIPA cannot proceed where the alleged injury is merely the increased risk of future identity theft. *See Cooney v. Chicago Pub. Sch.*, 407 Ill. App. 3d 358, 365-66 (1st Dist. 2010).[4]

Plaintiff also incorrectly argues that Illinois courts do not follow federal standing principles. Although Illinois courts are not bound by federal law, *Greer* did not depart from federal

---

[4] Plaintiff relies on *Fluker v. Glanbia Performance Nutrition, Inc.*, No. 2017-CH-122993 (Cir. Ct. Cook Cty. July 11, 2019 (J. Mitchell) for the proposition that Plaintiff need not allege an injury separate from a statutory violation. However, this decision is not binding on this Court.

58548293v.6

FILED DATE: 8/23/2019 3:45 PM   2018CH07627

law on the injury-in-fact and other standing requirements. *Greer*, 122 Ill. 2d. at 489-91, 493. The *Greer* court in fact specifically cited United States Supreme Court cases for the "distinct and palpable," "fairly traceable to the defendant's actions," and "substantially likely to be redressed by the grant of the requested relief" standards for standing in Illinois. *Id.* (internal citations omitted). Furthermore, while the legislature can elevate statutory harms sufficient to confer statutory standing, the United States Supreme Court has made clear that more than a mere technical statutory violation is required. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."). Thus, Illinois common-law standing principles require that Plaintiff's Amended Complaint be dismissed because Plaintiff has not pleaded a "palpable" "injury."

## II.  PLAINTIFF'S CLAIMS ARE TIME-BARRED

### A.  The one-year statute of limitations for invasion of privacy claims applies.

BIPA does not provide a statute of limitation and the Court should apply the one-year statute of limitation under 735 ILCS 5/13-201 for privacy claims. Plaintiff admits BIPA claims are right to privacy claims and that Defendant allegedly *disclosed* his biometric data. (Am. Compl. ¶ 27.) He also agrees Section 13-201 governs "privacy-related causes of action with a *publication* element." (Resp. p. 10.) Yet, in his response, Plaintiff asserts the five-year "catchall" statute of limitation under Section 13-205 applies.[5] His position is untenable. When a statute is silent on the statute of limitation, courts look to existing Illinois statutes of limitations and apply the most

---

[5] Plaintiff's reliance on recent trial court rulings on BIPA class certification motions (*see* Resp. FN 2 referring to Exhibits 2 and 3 and a Ninth Circuit District Court decision) is misplaced and improper given the apparent differences and considerations involved in certifying a class versus legal arguments presented in a motion to dismiss for purposes of the applicable statute of limitation.

58548293v.6

FILED DATE: 8/23/2019 3:45 PM   2018CH07627

specific one. *See Hernon v. E.W. Corrigan Constr. Co.*, 149 Ill. 2d 190, 195-96 (1992) (internal citations omitted) (where two statutes of limitations arguably apply to the same action, the "specific" statute of limitations trumps or "takes precedence over the general limitations period of section 13-205"). Here, he one-year period is the most specific, applicable statute of limitations. Moreover, the Illinois Right to Privacy Act—which also has no statutory limitations period—has been interpreted as incorporating a one year limitation period. *See Blair v. Nevada Landing Partnership*, 369 Ill. App. 3d 318, 323 (2006).

Inexplicably, Plaintiff asserts the one-year statute of limitation is inapplicable because he has not alleged "publication." Yet, Plaintiff alleges at length that Defendant *disclosed*, continues to disclose, and has heightened the risk of *disclosure* of his personal identifying information (i.e. his fingerprints) to ADP and other their parties. (Am. Compl. ¶¶ 33, 36, 40.) Plaintiff even alleges a violation of BIPA disclosure provision, Section 15(d). He alleges, "[e]ach Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class's biometric identifies and/or biometric information without first obtaining the consent required…" (*Id.* ¶ 91.) Plaintiff also alleges Defendant violated his and the Class's "rights to privacy in their biometric identifiers and/or biometric information….." (*Id.* ¶ 92.) He has thus alleged publication or *disclosure* of private information, which means his BIPA claims fall squarely under the one-year statute of limitation and his characterization of those claims any other way should be rejected.[6]

---

[6] Plaintiff's citation to an unpublished decision, *Johnson v. Northshore Univ. Judge Presiding Healthsystem*, 2011 WL 10069086, at *3 (Ill. App. Ct. Mar. 31, 2011) for application of the five-year statute of limitation is misplaced. *Johnson* actually applied the one-year statute of limitation to a right to privacy claim, and stated the one-year did not apply to claims involving *intrusion upon seclusion* (not at issue here) because publication was not an element of that tort.

58548293v.6

FILED DATE: 8/23/2019 3:45 PM    2018CH07627

Plaintiff's response (p. 11) only focuses on the definition of "publication" as "the act of declaring or announcing to the public" but ignores interpretations in Black's Law Dictionary which define "publication" to include "disseminating [matter], or communicating it to one or more persons (*i.e.*, to third person or persons)." He also limits publication to people close to the plaintiff that would result in "embarrassment" to him. (Resp. p. 11.) Plaintiff's self-serving interpretation of "publication" is too narrow and lacks common sense. Publications are not limited to print or broadcast media, and, include various electronic mediums. Furthermore, there is no requirement in Section 15(d) of BIPA that disclosure or dissemination must be to the public at large. "Publications" can occur within a company and do not require disclosure to the outside world. *Popko v. Contl. Cas. Co.*, 355 Ill. App. 3d 257, 264 (1st Dist. 2005) ("element of publication is satisfied, even within a corporate environment, where the communication is made to any third party" such as the corporation's agent, employee or officer). Defendant's alleged capture, storage and use of plaintiff's "fingerprint data" without the required notices and consent also qualifies as a "publication of matter violating the right of privacy" because it implicates the publication or dissemination of his private information within the company.

Here, Plaintiff's Amended Complaint repeatedly pleads an unauthorized disclosure or publication of his biometric information to third parties outside Rich Products. Because his claims are right to privacy claims, the one-year statute of limitation applies and his claims are untimely.

## B.    In the alternative, the Court should apply the two-year statute of limitation.

Alternatively, the two-year statute of limitation under 735 ILCS 5/13-202, which applies to both personal injury suits and statutes which provide for a statutory penalty, should apply. As right to privacy claims, BIPA claims involve a tort or personal injury sounding in negligence. In addition, BIPA provides for statutory and actual damages. The Illinois Supreme Court explained

FILED DATE: 8/23/2019 3:45 PM   2018CH07627

that a "statute is remedial where it 'imposes liability only when actual damage results from a violation' and where 'liability is contingent upon damage being proven by the plaintiff.'" *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 13 (2009). A statute is penal when it imposes automatic liability for a violation of its terms, sets forth a predetermined amount of damages, and imposes liability regardless of plaintiff's actual damages. *Id.* Thus, a claim seeking predetermined statutory damages is a "statutory penalty" because, like this case, the statutory "relief available . . . is not dependent on plaintiffs' actual damages." *Id.* at 14. In *Namur v. Habitat Co.*, 294 Ill. App. 3d 1007, 1010-11 (1st Dist. 1998), the ordinance at issue was *both* penal and remedial, as it permitted recovery for both statutory penalties and actual damages. The *Namur* court explained that "some portions of the ordinance are remedial because they permit recovery of actual damages." *Id.* Similarly, there, the portions of the ordinance that formed the basis for the lawsuit were "statutory penalties" because "they specify either the amount of damages that can be awarded for violations or the formula by which … damages [are] calculated." *Id.* The *Namur* court held the "action is one for a 'penalty' within the meaning of section 13-202" because plaintiffs did not seek actual damages but to recover only under the ordinance's fixed or formulaic damages. *Id.* That is precisely what Plaintiff seeks to do here in seeking the statutory, not actual damages.

Plaintiff asserts BIPA is remedial and therefore the two-year statute of limitation does not apply. However, he also argues each scan of his fingerprint is an independently actionable and continuing violation and that the five-year statute of limitation applies. (Resp. p. 16.) Under Plaintiff's broad interpretation then, Defendant would be subjected to astronomical "damages" for each employee who scans his fingerprint twice a day in a five-day workweek for five years (2 scans per day for 240 days per year for 5 years totaling 2,400 scans per employee) bringing negligent violations ($1,000 for each violation) to $2.4 million for each employee, and reckless

FILED DATE: 8/23/2019 3:45 PM   2018CH07627

violations ($5,000 for each violation) to $12 million for each employee. No reasonable person could construe this as anything other than penal. Plaintiff relies on *Standard Mutual Insurance Company v. Lay,* 2013 IL 114617 to argue that the two-year statute of limitation should not apply. However, *Lay* analyzed whether damages under the Telephone Consumer Protection Act ("TCPA") were penal and, thus, uninsurable, and was not about the two-year statute of limitations. And, unlike BIPA, the TCPA has a separate punitive damages provision (providing for treble damages) in addition to a liquidated damages provision of $500 per violation. The *Lay* court held TCPA's $500 liquidated damages provision served a "remedial" purpose to compensate plaintiffs for the costs associated with unsolicited advertising and represented a reasonable assessment of their "actual damages" and could not be "penal," because of the TCPA's additional punitive treble damages provision. BIPA has no separate punitive/treble damages provision. And Plaintiff seeks statutory damages for each violation, thus resulting in an unreasonably astronomical amount never even contemplated by *Lay*. Thus, *Lay* is easily distinguishable and should be disregarded. There is nothing remedial about the manner in which Plaintiff seeks to apply BIPA. It is undeniably punitive.

Plaintiff's argument that BIPA is remedial is further flawed because his quotation from *Sternic v. Hunter Properties, Inc.*, 344 Ill. App. 3d 915, 918-19 (1st Dist. 2003) is out of context. *Sternic* stated that the two-year statute of limitation applicable to statutory penalties did not apply because the damages provided for by the ordinance at issue were contingent on *actual* damages. While the ordinance authorized exemplary damages, the amount was <u>capped</u> at the greater of two months' rent or twice the plaintiff's actual damages. The court found that the relevant ordinance sections were "not 'statutory penalties' because they do not specify an amount to be awarded for violations or a formula for calculating an award without regard to the actual damages suffered by the plaintiff." *Id*. (citing *Namur,* 294 Ill. App. 3d at 1011). To the contrary, BIPA provides stated

58548293v.6

FILED DATE: 8/23/2019 3:45 PM    2018CH07627

amounts—$1,000 for negligent and $5,000 for reckless violations—without regard to actual damages. Moreover, BIPA provides no such cap. Plaintiff cites *Scott v. Association for Childbirth at Home, International*, 88 Ill. 2d 279, 288 (1984), however, the issue there was whether the Consumer Fraud and Deceptive Practices Act was unconstitutionally vague, not which statute of limitations applied. He similarly misconstrues the holding of *Joe Hand Promotions, Inc. v. Mooney's Pub Inc.*, No. 14-CV-1223, 2014 WL 4748272, at *8 (C.D. Ill. Sept. 24, 2014). There, the statute was not penal because it did not set forth "a predetermined amount of damages." *Id.* (citing *Landis,* 235 Ill. 2d at 12-13). The court stated that the "statute allows the court to determine statutory damages as it considers just. [] Therefore the amount of statutory damages is hardly predetermined or based on a formula. Rather, it is dependent on the facts and equities of a case as determined by a judge." That is not the case here. BIPA's statutory damages scheme sets predetermined amounts and leaves no discretion to the judge. Plaintiff also misconstrues *Rosenbach* in asserting that BIPA is solely a remedial statute that cannot be characterized as penal. (Resp. pp. 12, 14-15.) To the contrary, even *Rosenbach* explained that the legislature's intent was to "subject[] private entities who fail to follow the statute's requirements to substantial potential liability" for "preventative and deterrent purposes." *Id.* ¶¶ 36-37. "Prevention" and "deterrence" are the essence of a statutory penalty.

Thus, BIPA meets the elements of what constitutes a statutory penalty. Even under the two-year statute of limitation, Plaintiff's BIPA claims are time-barred because they accrued in 2008 when BIPA was passed and expired in 2010.

### C.     Plaintiff's claims do not involve continuing violations.

Plaintiff's cause of action accrued when he knew or reasonably should have known of his injury and that it was wrongfully caused. *Witherell v. Weimer*, 85 Ill.2d 146, 156 (1981). BIPA

58548293v.6

FILED DATE: 8/23/2019 3:45 PM   2018CH07627

was passed in 2008. All persons, including Plaintiff and any putative class members, are "presumed to know the law." *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875); *Livingston v. Meyers*, 6 Ill. 2d 325, 334 (1955). Plaintiff knowingly continued to clock in and out of work for at least ten years. There is no basis to suggest that Plaintiff's claims did not accrue until numerous years later.

The "injury" Plaintiff allegedly sustained occurred *once*—when he enrolled in the biometric time clock in December 2006. Plaintiff admits the statute of limitation began running the "last time [Plaintiff's] fingerprints or other biometrics [were] illegally ***collected***." (Resp. p. 16) (emphasis added).) That would December 2006. It is simply inaccurate that Rich Products "continued to ***collect*** Plaintiff's biometric data until the end of his employment." (Resp. p. 17.) Plaintiff was not providing any new "biometric data" with each subsequent ***scan*** of his fingerprint for authentication purposes when clocking in and out of work.[7] Moreover, "where there is but one overt act from which subsequent damages may flow, it is held that the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature" of the injury. *Hyon Waste Mgmt. Servs., Inc. v. City of Chicago*, 214 Ill. App. 3d 757, 763 (1991) (citation omitted); *see also Blair*, 369 Ill. App. 3d 318, 324 ("The fact that a single photo of the plaintiff appeared via several mediums between 1995 and 2004…does not denote a continuing course of conduct for which the limitations period can be tolled."). Any subsequent scanning does not constitute a continuing violation or independent injury to support separate causes of action.

Plaintiff's cited cases support Defendant's argument. In *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 347 (2002), the court declined to adopt a continuing violation rule of general applicability in all tort cases, or cases involving a statutory cause of action.

---

[7] No court has interpreted BIPA to mean that Plaintiff is entitled to damages for each scan of his fingerprint.

58548293v.6

FILED DATE: 8/23/2019 3:45 PM   2018CH07627

That case involved a dealership's claim under the Motor Vehicle Franchise Act, which specifically provided a four-year limitations period to bring a claim, which the court noted began to run "after the cause of action accrues." *Id*. at 347. *Belleville* discussed the limited application of the continuing violation rule in the context of medical malpractice cases. That is not the case here. Moreover, the continuing violation rule is limited by the discovery rule, under which "the limitations period begins to run, when the party seeking relief knows or reasonably should know of an injury and that it was wrongfully caused." *Id*. at 347. Plaintiff's reliance on *Hyon*, 214 Ill. App. 3d 757, 765 also does not support his theory. There, the court held that "[r]ather than a series of acts, the act of sealing the incinerator was a single, discreet event. Although Hyon attempts to portray the sealing of the incinerator as a continuous violation, we find that any alleged damages resulting from the City's act were instead continued ill effects from a single alleged due process violation…Hyon's complaint, filed more than five years after…is time-barred." *Id*. at 763.

Plaintiff's claims thus accrued in 2008, when BIPA was implemented. Even if this Court were to apply the five-year statute of limitations, Plaintiff's claims are still time-barred because the latest he could have filed his lawsuit was 2013. Thus, Plaintiff's claims are barred under the one, two, or even five year statutes of limitation.

## III.    PLAINTIFF'S "INJURY" FROM CLOCKING IN AND OUT OF WORK IS PREEMPTED BY THE ILLINOIS WORKERS' COMPENSATION ACT.

Even assuming that Plaintiff has pleaded a distinct and palpable injury, his Amended Complaint should be dismissed because any injury he obtained during the course of his employment is preempted by the WCA. Plaintiff squarely alleges that his injury arises from clocking in and out at work. (Am. Compl. at ¶¶ 3, 32-34, 43, 45.) Plaintiff thus pleads himself out of court. *See Pettigrew v. Putterman*, 331 Ill. App. 3d 633, 641 (1st Dist. 2002) (allegations in a complaint constitute admissions). The WCA is the exclusive remedy for accidental injuries

FILED DATE: 8/23/2019 3:45 PM   2018CH07627

transpiring in the workplace, *see Meerbrey v. Marshall Field & Co*., 139 Ill. 2d 455, 462 (1990), such that an employee has "[n]o common law **or statutory right** to recover damages from the employer … for injuries incurred in the course of her employment." *Richardson v. Cty. of Cook*, 250 Ill. App. 3d 544, 547 (1st Dist. 1993); 820 ILCS § 305/5(a) (same) (emphasis added); 820 ILCS § 305/11. To circumvent this exclusivity rule, Plaintiff must demonstrate that his injury (1) "was not accidental," (2) "did not arise from his employment," (3) "was not received during the course of his employment," or (4) "is not compensable under the Act." *See Nischan v. Stratosphere Quality, LLC,* 865 F.3d 922, 934 (7th Cir. 2017). No exception to exclusivity applies here. First, Plaintiff's injury was accidental. Though he does not allege a separate negligence cause of action, in his Prayer for Relief, he in fact seeks statutory damages for "*each* intentional and/or reckless violation of BIPA....or, in the alternative, statutory damages…for *each* negligent violation…." (Am. Compl. p. 20.)  "Both an employee's claim of employer negligence and a claim of employer willful and wanton conduct fall within the definition of 'accidental' and are preempted" by the WCA. *Baylay v. Etihad Airways P.J.S.C*., 222 F. Supp. 3d 698, 704 (N.D. Ill. 2016), *aff'd*, 881 F.3d 1032 (7th Cir. 2018) (citing authority). Nor are there allegations that Defendant implemented a time-clock system with the specific intent of injuring Plaintiff. Thus, his injury is accidental, and he cannot establish that the first exception to exclusivity applies. As for the second and third exceptions, there is no dispute that his purported "injury" arose in the course of his employment.

However, Plaintiff contends that his "injury" is not a "compensable" injury because it "is limited to physical injuries and emotional distress arising out of such injuries, or psychological injury stemming from a definite time and place." (Resp. p. 18.) Plaintiff's position is unsustainable in light of Illinois Supreme Court precedent to the contrary. "The fact that the employee sustained no physical injury or trauma is irrelevant to the applicability of the Act. Rather, an injury is

FILED DATE: 8/23/2019 3:45 PM    2018CH07627

compensable under the Act if it was sustained during the course of employment and arose from that employment." *Richardson*, 250 Ill. App. 3d at 548; *Folta v. Ferro Eng'g*, 2015 IL 118070, ¶¶ 18-30 (broadly construing exclusivity provisions of Sections 5(a) and 11 to hold that an injury will be found to be "compensable under the Act" whenever it "aris[es] out of and in the course of the employment"); *Pathfinder Co. v. Industrial Comm'n*, 62 Ill.2d 556, 563 (1992); *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 468 (1990); *Unger v. Continental Assurance Co.*, 107 Ill. 2d 79, 85 (1985) (similar); *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237–38 (1980) (similar); *Sjostrom v. Sproule*, 33 Ill. 2d 40, 43 (1965) (similar). The Illinois Supreme Court further explained that whether an "injury is compensable" under the WCA is not defined or controlled by the "ability to recover benefits for a particular injury" or by "limitations on the amount and type of recovery under the Act." *Folta*, ¶¶ 23, 30. "[S]ince 1956, this court has held that despite limitations on the amount and type of recovery under the Act, the Act is the employee's exclusive remedy for workplace injuries." *Id.* ¶ 30. Therefore, in light of Plaintiff's allegations, the plain language of Section 5(a) and 11, and controlling Illinois Supreme Court precedent, Plaintiff cannot establish the fourth exception to the exclusivity rule – that his injury is not compensable under the WCA.

Plaintiff cherry-picks language from *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645, a decision that did not concern the application of the WCA's exclusive remedy defense. (Resp. p. 19.) There, the First District denied a motion to compel arbitration because the arbitration clause was too narrowly drafted to cover BIPA claims. The *Liu* court rejected Four Seasons' argument that the BIPA claim involved timekeeping and, thus, was a wage and hour claim within the arbitration agreement's coverage. Had the arbitration agreement been broadly drafted to cover claims "arising out of and in the course of the employment" – like the WCA's coverage formula, the BIPA claim would have been sent to arbitration.

58548293v.6

FILED DATE: 8/23/2019 3:45 PM   2018CH07627

Plaintiff's position also lacks common sense.  Under Plaintiff's theory, had he cut his finger on the time-clock while scanning it, his cut is preempted by the WCA, but the scan is not? Surely, the Illinois legislature did not intended such an absurd outcome. Plaintiff's interpretation of how and why he *thinks* the statute should apply has no support in the language of the WCA. Contrary to Plaintiff's assertion, Sections 5(a) and 11 do not limit their application to employees who are "unable to work" or whose injuries interfere with their ability to work. Plaintiff cites to *Murff v. Illinois Workers Comp. Comm'n,* 2017 IL App (1st) 160005WC for the proposition that the WCA applies only to employees who cannot work. Yet, *Murff* did not say this, it addressed a claimant's request to modify or reopen his award, and had nothing to do with the exclusive remedy provisions.

And, contrary to Plaintiff's "alarmist" assertion, his sole recourse for a BIPA violation is not the WCA in every case. The WCA exclusivity does ***not*** prevent an employee from pursuing redress under BIPA. In the context of the employer-employee relationship, it is easy to harmonize and give effect to both BIPA and the WCA: to the extent an employee can demonstrate that injunctive or declaratory relief is appropriate, then he can obtain redress under BIPA; but to the extent he seeks a "statutory right" to damages under BIPA, that claim is preempted by the exclusive remedies afforded under the WCA. Moreover, by enacting BIPA, there is no indication that the Illinois legislature sought to upheave the liability protection to common law and statutory claims that employers enjoy with respect to workplace-related injuries under the WCA. *Gannon v. Chicago, M., St. P. & P. Ry. Co*., 13 Ill. 2d 460, 463 (1958) (holding that WCA preempts employee claim brought under a statute). Furthermore, there is no binding authority that provides BIPA

FILED DATE: 8/23/2019 3:45 PM   2018CH07627

claims are exempted from the WCA.[8] *Rosenbach*, did not address WCA exclusivity, which is an affirmative defense, and this issue was not before the court. Accordingly, to the extent Plaintiff seeks monetary relief under BIPA, his claims must be dismissed.

## CONCLUSION

WHEREFORE, for the foregoing reasons and those stated in Defendant's opening memorandum, Defendant respectfully requests that this Court dismiss Plaintiff's lawsuit in its entirety, with prejudice, and grant such other relief it deems just appropriate.

Dated:  August 23, 2019

Respectfully submitted,

SEYFARTH SHAW LLP

By:  /s/ *Hoorya R. Ahmad*  _____

Richard P. McArdle (rmcardle@seyfarth.com)
Joseph A. Donado (jdonado@seyfarth.com)
Hoorya R. Ahmad (hahmad@seyfarth.com)
SEYFARTH SHAW LLP
233 South Wacker Drive; Suite 8000
Chicago, Illinois 60606
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

Firm ID No. 90747

Attorneys for Defendant Rich Products Corporation

---

[8] Plaintiff cites two orders from other courts in the Circuit Court of Cook County finding that the loss of the ability to maintain privacy rights under BIPA as not a "compensable injury." (*See* Resp. Exhibits 1 and 4.) However, orders from other courts in this Circuit are not binding on this Court. Notably, in *McDonald v. Symphony Bronzeville Park, LLC, et al.*, No. 2017-CH-11311 (Cir. Ct. Cook Cty. June 17, 2019) (J. Raymond Mitchell), Defendant's motion for reconsideration or in the alternative, a motion for interlocutory appeal is currently pending before Judge Mitchell, who after reading Defendant's motion ordered the parties to further brief the WCA preemption issue.

58548293v.6

FILED DATE: 8/23/2019 3:45 PM   2018CH07627

## CERTIFICATE OF SERVICE

I, Hoorya R. Ahmad, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing **DEFENDANT RICH PRODUCTS CORPORATION'S REPLY IN SUPPORT OF ITS SECTION 2-619 motion TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT** to be served upon the following by email on this 23rd day of August, 2019:

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois, 60601
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

Ross B. Bricker
David C. Layden
Joshua M. Levin
Reanne Zheng
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
RBricker@jenner.com
DLayden@jenner.com
JLevin@jenner.com
RZheng@jenner.com

/s/ *Hoorya R. Ahmad*

16

58548293v.6

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED DATE: 8/23/2019 5:49 PM   2018CH07627

FILED
8/23/2019 5:49 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH07627

6315139

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| JOSEPH TELLADO, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff,*<br><br>v.<br><br>RICH PRODUCTS CORPORATION, and ADP, LLC,<br><br>    *Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 2018-CH-07627

Hon. Anna M. Loftus

**DEFENDANT ADP, LLC'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PURSUANT TO 735 ILCS 5/2-615**

Plaintiff Joseph Tellado fails to rebut the arguments in ADP's Motion to Dismiss (the "Motion"), and indeed only confirms that his efforts to assert a claim against a non-employer, third-party technology provider like ADP, LLC ("ADP") under the Illinois Biometric Information Protection Act, 740 ILCS 14/1 *et seq.* ("BIPA") are foreclosed by his pleading and by the plain language of the statute. Plaintiff's claims against ADP should be dismissed with prejudice.

**I.      Plaintiff Fails to Demonstrate That Section 15(b) of BIPA Applies to an Entity Like ADP That Did Not Collect Biometric Data.**

In its Motion, ADP demonstrates that Plaintiff fails to state a claim under Section 15(b) of BIPA because where an employer (like Plaintiff's former employer, Rich Products Corporation ("Rich Products")) allegedly requires its employees to use a finger-scan timeclock, the notice and release requirements of Section 15(b) do not apply to a third party (in this case, ADP) that provided the timeclocks to the employer, but which has no relationship or interaction with the employees. (*See* Mot. at 3-8.) Plaintiff makes a number of arguments in an effort to salvage his Section 15(b) claim against ADP. (*See* Op. at 6-10.) None of those arguments have merit.

FILED DATE: 8/23/2019 5:49 PM    2018CH07627

**A.    Section 15(b) of BIPA Applies to Entities That Obtain Biometric Data Directly From Individuals.**

Plaintiff first argues that BIPA's references to "private entities" support his efforts to apply Section 15(b) to ADP. (*See* Op. at 6-7.) Plaintiff seizes on this argument because he *can* plead that ADP is a "private entity." What Plaintiff misses is that a claim under Section 15(b) *also* requires that the private entity "collect[ed], capture[d], purchase[d], receive[d] through trade, or otherwise obtain[ed]" biometric identifiers or biometric information, 740 ILCS 14/15(b), and that is what Plaintiff cannot sufficiently plead against ADP. As ADP demonstrates in its Motion, the plain text of Section 15(b) shows that the notice and release requirement applies only to entities, like employers, that collect or otherwise acquire biometric data directly from individuals. (Mot. at 3-7.) Indeed, Plaintiff admits as much in its opposition. (Op. at 2.) Plaintiff states that "the law requires *collectors* of biometric data, in advance of any such collection, to inform the individual in writing that biometric data is being collected or stored, and receive the person's written consent." (*Id.*) (emphasis added). Likewise, Plaintiff asserts that "*[i]f the collector discloses* the data, it generally must receive consent for that as well." (*Id.*) (emphasis added).[1]

Plaintiff argues that "[t]he legislature's emphasis on 'major national corporations' testing biometric devices in third-party locations . . . indicates that [BIPA] targeted companies that were 'non-employer, third party technology provider[s],'" (Op. at 8), but then acknowledges (as he must) that this was only "*if they were collecting…the biometric data themselves.*" (*Id.*) (emphasis added). Plaintiff also quotes the Illinois Supreme Court's decision in *Rosenbach v. Six Flags*

---

[1] Contrary to Plaintiff's argument (Op. at 7), ADP is not suggesting that it should be "exempted" from BIPA. Instead, the question is whether Section 15(b) applies to ADP in the first instance, and as ADP demonstrates in its Motion, ADP's alleged indirect, downstream "possession" of Plaintiff's alleged biometric data falls outside the scope of Section 15(b)'s written notice and release requirements because ADP is not the collector of that information. (Mot. at 3-7.)

FILED DATE: 8/23/2019 5:49 PM   2018CH07627

*Entertainment Corp.,* 2019 IL 123186, for the proposition that Section 15(b) "vests in individuals and customers the right to control their biometric information by requiring notice before *collection* and giving them the power to say no by withholding consent," (Op. at 14) (emphasis added), confirming that Section 15(b) applies to private entities that collect biometric data directly from the individual, not to entities that allegedly receive such data from the collector.

Recognizing that Section 15(b) only applies to those entities that collect data directly from individuals, Plaintiff argues that he has sufficiently alleged that ADP collected data from Plaintiff. (*See* Op. at 1-3). Plaintiff's argument, however, is contradicted by his own pleading—which not only fails to allege facts showing that ADP collected biometric data from Plaintiff and the putative class members, but which contains allegations that foreclose Plaintiff from alleging that ADP collected such data—and also contradicted by Plaintiff's opposition to Rich Products' motion to dismiss. For example, Plaintiff asserts that:

- ADP is an "out-of-state, third-party vendor" (Am. Compl. ¶ 33);

- "*Rich Products uses* the ADP employee database to monitor the time worked by its hourly employees" (*Id.* ¶ 2 (emphasis added));

- "*Rich Products uses* an employee time tracking system supplied by ADP" (*Id.* ¶ 32 (emphasis added));

- "*Rich Products' employees are required, as a condition of employment*, to have their fingerprints scanned by a biometric timekeeping device" (*Id.* ¶ 3 (emphasis added); *see also id.* ¶¶ 43-45);

- Plaintiff "was required to scan his fingerprint *so Rich Products could use it* as an authorization method to track his time" (Plaintiff's Response in Opposition to Defendant Rich Products Corporation's Motion to Dismiss ("Op. to Rich MTD") at 4 (emphasis added));

- "Rich Products failed to inform Plaintiff of the extent of the purposes for which *it collected and stored*" his biometric data (*Id.* (emphasis added));

- "Rich Products failed to secure *any* [written consent] before it first began harvesting the data" (*Id.*);

3

FILED DATE: 8/23/2019 5:49 PM   2018CH07627

- "Rich Products failed to inform its employees of the specific purpose(s) and length of time for which *it collected and stored* their fingerprints" (*Id.* (emphasis added); and

- "Rich Products failed and continues to fail to inform its employees that it discloses their fingerprint data to at least one out-of-state third party vendor, ADP." (Am. Compl. ¶ 33.)

These allegations form the alleged factual basis for Plaintiff's claims: ADP provides timeclocks (and allegedly an "employee database") to Rich Products, Rich Products allegedly uses those timeclocks to collect biometric data from its employees, and then Rich Products "discloses" that collected data to ADP. None of these allegations support Plaintiff's arguments that *ADP* collected biometric data, and indeed foreclose Plaintiff from making such allegations.

Tacitly conceding that his claim that ADP *collected* his biometric data fails on its face, Plaintiff next argues that he can allege a Section 15(b) claim against ADP by contending that ADP "otherwise obtain[ed]" biometric data. (Op. at 7.) The plain language of BIPA, however, confirms that Section 15(b)'s notice and release obligations apply only to entities that acquire biometric data directly from individuals. Plaintiff's argument that the phrase "otherwise obtain" was intended to bring any post-collection receipt and possession of biometric data within the ambit of Section 15(b)—when each of the more specific, preceding verbs connote active acquisition from the individual—violates "the cardinal rule of statutory construction known as ejusdem generis." *Pooh-Bah Enters., Inc. v. Cty. of Cook*, 232 Ill. 2d 463, 492 (2009) (cited in the Motion at 4 n.2). Under this rule, the General Assembly's inclusion of "other" or "otherwise" at the end of the specific set of terms in Section 15(b) must be "interpreted to mean 'other such like'" and must not render superfluous the more specific preceding terms. *See id*.

Moreover, Plaintiff's interpretation of the phrase "otherwise obtain" ignores the express distinction the legislature drew between entities that "possess" and entities that "collect, capture,

4

FILED DATE: 8/23/2019 5:49 PM   2018CH07627

purchase, receive through trade, or otherwise obtain" biometric data. If "otherwise obtaining" biometric data included the indirect, downstream "possession" of biometric data—which is all that is actually alleged here—it would contravene the General Assembly's choice to use "possession" in four of the five subsections but not in subsection (b). Indeed, Plaintiff's expansive reading that would apply Section 15(b) to "*any* entity that obtains biometric data, no matter the source or the manner of collection" (Op. at 7) (emphasis in original), would render the other subsections superfluous, in violation of the rules of statutory construction. *See Collins v. Bd. of Trs. of Firemen's Annuity & Benefit Fund of Chicago*, 155 Ill. 2d 103, 111 (1993) ("no word or paragraph should be interpreted so as to be rendered meaningless"). Plaintiff makes no effort to demonstrate how his reading of "otherwise obtain" in Section 15(b) to include any possession of biometric data is consistent with this rule of statutory construction. (*See* Op. at 6-10.) It is not, and this Court should reject it.

### B. When Biometric Data Is Collected in the Context of Employment, Only the Employer Is Subject to Section 15(b)'s Notice and Release Obligations.

Plaintiff argues that BIPA's definition of "written release" creates an exception for compliance in the employment context, which "permit[s]" employers to obtain consent as a condition of employment. (Op. at 9.) However, as ADP demonstrates in its Motion, BIPA specifies that, in "the context of employment," the "written release" mandated under Section 15(b) *must be* "a release executed by an employee *as a condition of employment*." 740 ILCS 14/10 (emphasis added). This is a mandate, not an option. If the legislature had intended a "release executed by an employee as a condition of employment" to be nothing more than an "exception" permitting employers to obtain consent when biometric data is collected in the employment context, the legislature could have (and would have) added language indicating that it was merely an example of a form of written release. The "condition of employment" requirement thus confirms that the

5

FILED DATE: 8/23/2019 5:49 PM   2018CH07627

General Assembly intended that, in the context of employment, Section 15(b) applies only to employers that allegedly collect biometric data directly from their employees, because only an employer that collects biometric data from its employee has the capacity to set the conditions of employment.[2] This Court should give effect to the actual words used by the General Assembly, and reject Plaintiff's argument.

### C.      BIPA's Legislative History Does Not Support Plaintiff's Arguments.

Lastly, Plaintiff argues that BIPA's legislative history supports its effort to apply Section 15(b) to ADP. (Op. at 8.) Plaintiff is incorrect. The legislative history reveals that the General Assembly's original concern was with the possible *sale* of the biometric data in Pay by Touch's possession, and it addressed that concern by banning such sales altogether in Section 15(c) of BIPA. *See* Rep. Kathleen A. Ryg, 95th Ill. Gen. Assem., House Proceedings, May 30, 2008, at 249 (discussing the potential "sale" of Pay by Touch's data, the "very serious need of protections for . . . biometric information," and the provision of BIPA "prohibiting the sale of biometric information"). Contrary to what Plaintiff suggests (Op. at 8), the legislature did not address its original concern about a possible sale of biometric data by extending Section 15(b)'s notice and release obligations to a potential buyer of biometric data—because the legislature already had expressly prohibited the sale of such data in Section 15(c). BIPA's legislative history thus does not support Plaintiff's efforts to distort the plain language of Section 15(b) to assert a claim against ADP.

For all of these reasons, Plaintiff fails to state a claim against ADP under Section 15(b), and thus this claim should be dismissed with prejudice.

---

[2] Although Plaintiff attempts to place the onus on ADP to "ensure" the employer's compliance with BIPA (*see* Op. at 6-10), nothing in BIPA supports such an obligation.

6

FILED DATE: 8/23/2019 5:49 PM   2018CH07627

**II.     Plaintiff Fails to State a Claim Under Section 15(a) of BIPA.**

Plaintiff fails to state a claim under Section 15(a) of BIPA because, contrary to what Plaintiff argues (*see* Op. 10-12), the plain language of Section 15(a) does not require that an entity have a publicly available retention policy in place *before* coming into possession of biometric data. As ADP made clear in its Motion, Section 15(a) states that entities in possession of biometric data "*must develop*" a written retention policy and destruction guidelines. 740 ILCS 14/15(a). "Develop" means "to create or produce especially by deliberate effort over time." *Merriam-Webster* (2019). This is exactly what ADP asserts. ADP did not argue that it never had an obligation to comply with Section 15(a). (*See* Op. at 3.) Instead, ADP demonstrates that BIPA requires an entity that comes into possession of biometric data to "create or produce" a written retention policy after coming into possession of such data.

Plaintiff contends that the Illinois Supreme Court's *Rosenbach* decision supports his argument that Section 15(a) requires an entity to develop a retention policy before coming into possession of biometric information. (*See* Op. at 12.) However, as the Court's *Rosenbach* opinion makes clear, the Court was addressing only Section 15(b) of BIPA—which expressly requires notice *before* any collection of biometric information—and *not* Section 15(a), which does not require that a retention policy be made available before an entity allegedly comes into possession of biometric information. *Rosenbach*, 2019 IL 123186, ¶ 11. Thus, the language that Plaintiff cites in *Rosenbach* refers to the Section 15(b) notice and release obligations, and not to the Section 15(a) retention policy requirement.

For all of these reasons, Plaintiff's Section 15(a) claim should be dismissed with prejudice.

FILED DATE: 8/23/2019 5:49 PM    2018CH07627

### III.    Plaintiff Fails to State a Claim Under Section 15(d) of BIPA.

In its Motion, ADP demonstrates that Plaintiff fails to state a claim against ADP under Section 15(d) because Plaintiff has not sufficiently alleged, and cannot sufficiently allege, that ADP ever disclosed any biometric data.[3]

Contrary to what Plaintiff suggests, ADP does not argue that it can "freely disseminate Plaintiff's biometric data as long as it is careful." (*See* Op. at 14.) Rather, ADP demonstrates that Plaintiff has failed to allege ADP ever disseminated Plaintiff's biometric data within the meaning of BIPA because ADP did not "*disclose*" or "*disseminate*" any information to a third party. And, even if Plaintiff could sufficiently allege that ADP had transmitted biometric information to a data storage vendor or a payroll services vendor (which Plaintiff has not sufficiently alleged), the text and structure of BIPA confirm that not every transfer of data constitutes a disclosure or dissemination under Section 15(d).[4] In order for a transfer of data to constitute a disclosure or dissemination, as ADP made clear in the Motion, it would have "to make (something) known or public" or "to reveal," "to spread abroad," or to "disperse throughout." (*See* Mot. at 11.) These are the specific meanings attributed to disclosure and dissemination. As a result, the plain meaning of "disclosure" and "disseminate," the specific terms used in Section 15(d) of BIPA, make clear that

---

[3] The Amended Complaint is devoid of any specific facts regarding ADP's supposed disclosure and dissemination, and is wholly insufficient to state a claim under Section 15(d). *Pooh-Bah Enters.,* 232 Ill. 2d at 473 (noting that Illinois is a fact pleading jurisdiction, and a complaint that contains "mere conclusions of law or fact unsupported by specific factual allegations" should be dismissed). And, although Plaintiff now argues that it is ADP that is in possession of the specific facts (Op. at 14), ADP is not because no such facts exist.

[4] Plaintiff asserts that the Seventh Circuit's decision in *Epstein v. Epstein*, 843 F.3d 1147 (2016), supports his interpretation of "disclosure." (Op. at 13-14.) It does not. Indeed, *Epstein* confirms that Plaintiff has failed to allege any "disclosure" of his biometric data, because his biometric data was never "revealed to a third party" by ADP. Even if, as Plaintiff contends, when information is disclosed, disseminated, or transmitted to a third party, "the point [in each case] is that a third party has learned previously unrevealed information" (*see* Op. at 13), Plaintiff does not, and cannot, allege that any supposed third-party storage provider ever accessed or used his biometric data.

8

FILED DATE: 8/23/2019 5:49 PM   2018CH07627

an alleged *transmission* of biometric data to data storage and payroll vendors would not constitute a disclosure or dissemination for purposes of BIPA. Although Plaintiff does not like the definitions, this is simply a plain reading and interpretation of the language the General Assembly used in Section 15(d).

Plaintiff also incorrectly contends that a "disclosure" has occurred within the meaning of Section 15(d) whenever information is *transmitted* to a third party. (Op. at 12-13.) As ADP demonstrates in its Motion, the text and structure of BIPA foreclose such an expansive interpretation of Section 15(d). The General Assembly drew an explicit distinction between "disclosing," which is addressed in Section 15(d), and "transmitting," which is addressed in Section 15(e). Plaintiff asserts that "[a] word or phrase in a statute cannot be interpreted in a vacuum" (Op. at 14), yet fails to explain why the General Assembly would intentionally use two different words to refer to the same activity in two different sections of the same statute, especially in light of well-established principles of statutory interpretation compelling the opposite conclusion. *See Carver v. Bond/Fayette/Effingham Reg'l Bd. of Sch. Trs.*, 146 Ill. 2d 347, 353 (1992). "Dissemination" and "transmission" are two different activities, and the text and structure of BIPA make clear that not every transfer of biometric data constitutes a "disclosure" or "dissemination" under Section 15(d).

Because Plaintiff does not—and cannot—sufficiently allege that ADP disclosed or disseminated his biometric data, his Section 15(d) claim should be dismissed with prejudice.

FILED DATE: 8/23/2019 5:49 PM   2018CH07627

## CONCLUSION

For the reasons set forth above and in ADP's Motion, ADP respectfully requests that this Court grant the Motion and enter an Order dismissing Plaintiff's Amended Complaint with prejudice, and providing for such other and further relief as is just and appropriate.

Dated: August 23, 2019                              Respectfully submitted,

ADP, LLC


By: */s/ David C. Layden*
                    One of its attorneys

Ross B. Bricker
David C. Layden
Precious S. Jacobs
Reanne Zheng
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
(312) 222-9350
RBricker@jenner.com
DLayden@jenner.com
PJacobs@jenner.com
RZheng@jenner.com