**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMES NOSAL, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | Case No. 1:20-cv-04972 |
| v. | |
| RICH PRODUCTS CORPORATION, | |
| *Defendant.* | |

**PLAINTIFF'S UNOPPOSED MOTION FOR AND MEMORANDUM IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND................................................ 2

III.    SUMMARY OF SETTLEMENT TERMS.............................................................. 5

    A.    Class Definition. ................................................................................................ 5

    B.    Settlement Fund. ............................................................................................... 5

    C.    Release. .............................................................................................................. 6

    D.    Settlement Administration. .............................................................................. 6

IV.     THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23.... 8

V.      THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED
        BECAUSE IT IS A FAIR, REASONABLE, AND ADEQUATE RESOLUTION OF
        A BONA FIDE DISPUTE OVER PLAINTIFF'S CLAIMS ........................................... 9

    A.    The Settlement Is Fair, Reasonable, and Adequate. ..................................... 10

    B.    The Settlement Amount Is Substantial Given the Strength of Plaintiff's Claims and
        Attendant Risks (First Factor). ...................................................................... 10

    C.    Litigation Through Trial and Appeals Would Be Complex, Costly, and Long (Second
        Factor). ............................................................................................................. 14

    D.    The Reaction of the Class Has Been Positive (Third Factor). ...................... 14

    E.    Competent Counsel for All Parties Endorse this Agreement (Fourth Factor). ............ 15

    F.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case
        Responsibly (Fifth Factor)............................................................................... 16

VI.     CONCLUSION...................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012). ................................. 9

*Armstrong v. Cty. of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ............................................................. 17

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
   100 F.3d 1041 (1st Cir. 1996) ........................................................... 18

*Donovan v. Estate of Fitzsimmons*,
   778 F.2d 298 (7th Cir. 1985) ............................................................. 16

*EEOC v. Hiram Walker & Sons, Inc.*,
   768 F.2d 884 (7th Cir. 1985) ..................................................... 10, 13, 14

*Eubank v. Pella Corp.*,
   753 F.3d 718 (7th Cir. 2014) ............................................................. 11

*Felzen v. Andreas*,
   134 F.3d 873 (7th Cir. 1998) ............................................................. 10

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ............................................................. 17

*Goldsmith v. Tech Sols. Co.*,
   1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ...................................... 16

*Hispanics United of DuPage County v. Village of Addison, Illinois*,
   988 F. Supp. 1130 (N.D. Ill. 1997) .................................................... 17

*In re Google Buzz Privacy Litig.*,
   2011 WL 7460099 (N.D. Cal. June 2, 2011) ...................................... 13

*In re Mexico Money Transfer Litig.*,
   164 F. Supp. 2d 1002 (N.D. Ill. 2000) ............................................... 15

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ..................................................... 10, 11, 13, 18

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ............................................................. 13

*Mangone v. First USA Bank*,
   206 F.R.D. 222 (S.D. Ill. 2001) ........................................................ 17

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*,
   834 F.2d 677 (7th Cir. 1987) ............................................................. 14

*Marshall v. Lifetime Fitness, Inc.*,
   2017-CH-14262 (Cir. Ct. Cook Cty.) ................................................ 12

*Mirfasihi v. Fleet Mortgage Corp.*,
   356 F.3d 781 (7th Cir. 2004) ............................................................. 11

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ......................................................................... 12

*Patterson v. Stovall*,
   528 F.2d 108 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873
   (7th Cir. 1998) ................................................................................. 10

*Pearson v. NBTY, Inc.*,
   772 F.3d 778 (7th Cir. 2014) ............................................................. 17

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) .................................................................. 16

*Sekura v. LA Tan*,
    2015-CH-16694 (Cir. Ct. Cook Cty.) ..................................................... 12

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) .................................................................. 11

*Williams v. Quinn*,
    748 F. Supp. 2d 892 (N.D. Ill. 2010) ..................................................... 13

*Young v. Rolling in the Dough, Inc.*,
    2020 WL 969616 (N.D. Ill. Feb. 27, 2020) ............................................ 10

**Statutes**

Illinois Biometric Information Privacy Act,
    740 ILCS 14/1 .......................................................................................... 1

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. 9

**Other Authorities**

Herbert B. Newberg & Alba Conte,
*Newberg of Class Actions ("Newberg")*, §11.41 at 11-88 (4th ed. 2002) ................................... 17

## I.   <u>INTRODUCTION</u>

Plaintiff James Nosal ("Named Plaintiff," "Class Representative," or "Nosal") brought a putative class action against Defendant Rich Products Corporation ("Rich Products" or "Defendant") asserting claims under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* The Court preliminarily approved this $546,975.00 non-reversionary settlement on April 17, 2024, and directed notice be provided to the Settlement Class. (Dkt. 65.) The Settlement Administrator implemented the Court-approved direct notice plan and was successful in doing so, sending direct notice to 98.57% of the Settlement Class. (*See* Exhibit 1, Declaration of Amy Lechner of Simpluris, Inc. in Support of Final Approval of Settlement ("Admin. Decl."), at ¶ 14.) Unsurprisingly, because of the excellent relief secured through the Settlement, zero Class Members objected, and no Class Members excluded themselves. (*See* Admin. Decl. at ¶¶ 18, 20.)

Plaintiff alleges Rich Products utilized a biometric timekeeping system requiring its workers to produce their biometric identifiers and/or biometric information, as defined under BIPA and collectively referred to herein as "biometric data," when clocking in and out of work. However, before collecting or otherwise obtaining its workers' biometric data, Plaintiff alleges Rich Products failed to: (1) develop and adhere to a publicly-available retention schedule and guidelines for permanent destruction of its workers' biometric data, as required by BIPA; (2) inform its workers in writing of the purposes and length of time for which their biometric data was being collected, stored, and used; (3) obtain a written release from workers for Rich Products to collect, store, or use their biometric data, as required by BIPA, and/or (4) obtain consent of its workers before disclosing, redisclosing, or otherwise disseminating their biometric data to a third party, as required by BIPA.[1]

---

[1] Unless otherwise defined herein, all capitalized terms used herein will have the same meaning as defined in the Settlement Agreement ("Settlement" or "Settlement Agreement"), attached hereto as Exhibit 2.

After extensive settlement negotiations, including a full-day mediation with the Honorable Judge Morton Denlow (Ret.) of JAMS, the Parties were able to reach a class-wide settlement that, if finally approved, will provide outstanding monetary relief to the Settlement Class, with each Class Member receiving an equal share of the proposed Settlement Fund without having to submit a claim form or otherwise "opt in" to the settlement. (*See* Exhibit 2, Settlement Agreement.) As fully explained below, the Settlement is fair, reasonable, and adequate under the governing legal standards and satisfies all criteria for final approval. The Parties respectfully request that this Court: (1) grant Final Approval of the Settlement, including the release of claims as set forth therein, and (2) enter the Proposed Final Approval Order, attached hereto as Exhibit 3.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

As noted in Plaintiff's Unopposed Motion for and Memorandum in Support of Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion") (Dkt. 62), Plaintiff worked as a maintenance technician for Rich Products, a multinational supplier and solutions provider for food service, in-store bakery, and retail marketplaces, from approximately November 2012 until November 2017. (Dkt. 1, Exhibit A ¶¶ 1, 40.) Plaintiff alleges that Rich Products required its workers, including Plaintiff, to scan their fingerprints for authentication purposes and to track their time worked. (*Id*., ¶ 41.) Plaintiff alleges that Rich Products required Plaintiff to begin scanning his fingerprint upon being hired in November 2012 and he continued to use this method of authentication and timekeeping throughout his employment. (*Id*., ¶¶ 40-43.) Plaintiff alleges that Rich Products subsequently stored Plaintiff's fingerprint data (*i.e.,* Plaintiff's personal, private, and proprietary biometric data) in its ADP employee database. (*Id*., ¶¶ 30, 42.) Plaintiff alleges that unlike traditional timeclocks, Rich Products' timekeeping devices require workers to use their

fingerprints to clock in and out of work. (*Id.*, ¶¶ 31, 43.) Plaintiff alleges, however, that Rich Products failed to inform its workers of the extent of the purposes for which it collected and used their sensitive biometric data or the extent to whom the data was disclosed. (*Id.*, ¶¶ 10, 32, 37, 44, 70, 79.) Furthermore, even though BIPA requires entities to obtain written consent before collecting biometric data from Illinois citizens, Plaintiff alleges that Rich Products failed to secure any consent and/or release from workers before collecting their biometric data. (*Id.*, ¶¶ 10, 32, 46, 83.) Plaintiff alleges that because Rich Products failed to inform its workers of the specific purpose(s) and length of time for which it collected, stored, and used their fingerprints, and failed to provide a publicly available retention schedule and guidelines for permanently destroying workers' biometric data, workers are unaware if Rich Products will destroy their fingerprints within three years of their last interaction with the company as required by BIPA. (*Id.*, ¶¶ 10, 32-33, 35, 44-46, 79, 87-89.) Thus, Plaintiff alleges Rich Products failed to comply with BIPA by failing to: (1) develop and adhere to a publicly available retention schedule or guidelines for permanent destruction of the biometric data by Rich Products; (2) inform Plaintiff and other similarly-situated workers in writing of the purposes and length of time for which their fingerprint data is being collected, stored, and used by Rich Products; (3) provide Plaintiff and other similarly-situated workers a written release for Rich Products to collect, store, and use their fingerprints; and (4) ask for consent before disclosing, redisclosing, or otherwise disseminating their fingerprint data to a third party.

On June 18, 2018, then-Plaintiff Joseph Tellado filed this BIPA action in the Circuit Court of Cook County against Rich Products and ADP LLC. On March 20, 2019, each Defendant filed a Motion to Dismiss Plaintiff's Class Action Complaint. On May 2, 2019, with leave from the Court, then-Plaintiff Joseph Tellado filed an Amended Class Action Complaint adding substantive

allegations that enhanced his claims and narrowed the issues raised in each Defendant's respective Motion to Dismiss. On June 7, 2019, each Defendant filed a Motion to Dismiss Plaintiff's Amended Class Action Complaint, which were fully briefed and pending oral argument scheduled for December 3, 2019.[2] However, prior to oral argument, then-putative Class Representative Joseph Tellado passed away; thus, Class Counsel sought leave to file a Second Amended Complaint naming Plaintiff James Nosal as the putative class representative. On July 24, 2020, the Honorable Anna M. Loftus granted Plaintiff's Motion for Leave to File a Second Amended Complaint, which was filed shortly thereafter.

On August 24, 2020, Rich Products removed this case to the U.S. District Court for the Northern District of Illinois under the Class Action Fairness Act ("CAFA"). (Dkt. 1.) On October 5, 2020, Rich Products filed a Motion to Dismiss, which was fully briefed as of November 20, 2020. (Dkts. 14, 19, 24.) However, before the Court ruled on the motion, the case was stayed based on several then-pending appeals before the Illinois Appellate Courts and the Illinois Supreme Court. (Dkts. 26, 29.) On August 22, 2023, after all appellate decisions at issue had been decided, the Court lifted the stay; that same day, the Court denied Defendant's Motion to Dismiss. (Dkts. 46, 47.)

On September 5, 2023, Rich Products filed its Answer. (Dkt. 48.) Thereafter, discovery commenced, with both Parties exchanging their respective Rule 26(a)(1) Initial Disclosures as well as each party propounding written discovery. (Dkt. 55.) On January 30, 2024, the Parties participated in a full-day mediation with the Honorable Judge Morton Denlow (Ret.) of JAMS, which culminated in an agreement in principle and ultimately lead to a fully-executed settlement agreement on March 20, 2024, attached hereto as Exhibit 2. Plaintiff filed his Preliminary

---

[2] Defendant ADP, LLC was voluntarily dismissed without prejudice on September 20, 2019.

Approval Motion (Dkt. 62) on April 11, 2024, and the Court granted preliminary approval on April 17, 2024 (Dkt. 65).

### III.    SUMMARY OF SETTLEMENT TERMS

The terms of the settlement are set forth in the Settlement Agreement, and are summarized here:

#### A.    Class Definition.

The "Settlement Class" includes all individuals, including the Named Plaintiff, who worked or are currently working at and/or for Rich Products Corporation in the state of Illinois and who had their purported biometric identifier(s) and/or biometric information collected, captured, otherwise obtained, used, received, converted, maintained, stored, shared, disseminated, or disclosed by Rich Products Corporation between June 18, 2013, and April 17, 2024. (*See* Settlement Agreement, ¶ 37.) Excluded from the Settlement Class are: (1) the Court and members of their families; (2) persons who properly execute a timely request for exclusion from the Class; and (3) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released. (*Id.*, ¶ 38.)

#### B.    Settlement Fund.

Under the Settlement, Rich Products will establish a non-reversionary Settlement Fund of $546,975.00, from which each Settlement Class Member, including the Class Representative, shall be entitled to a payment of an equal *pro rata* share of the Settlement Fund in the amount of $975.00, less Court-approved Administrative Fees paid to the Settlement Administrator, a Fee Award to Class Counsel, and an Incentive Award to the Class Representative are deducted. (*Id.*, ¶¶ 34, 46.) Rich Products has represented there are 561 total members in the Settlement Class. (*Id.*, ¶ 34.) If at any time before final approval it is determined that the class size exceeds 561 individuals, the

5

Settlement Fund shall equal $975.00 per Class Member. (*Id.*) For any uncashed amounts after distribution at the end of the 150-day check cashing period, 50% of such amounts will be transferred to the *cy pres* Illinois Equal Justice Foundation,[3] upon approval by the Court, and 50% of such amounts will be returned to Defendant. (*Id.*, ¶ 49.) Should the Court require a second round of *pro rata* distribution to those Settlement Class Members who participated in the Settlement by cashing their initial check or reject the 50% returning to the Defendant, the Settlement will not be impacted. (*Id.*)

### C.    Release.

In exchange for the relief described above, the Settlement Class Members who did not opt out shall release, relinquish, and give up any and all actual, potential, filed, unfiled, known or unknown claims, suits, actions, controversies, demands, and/or causes of action arising out of or related to the allegations set forth in the pleadings in the Action, including those arising under BIPA and any similar law, that were brought or could have been brought in the Action or that were brought or could have been brought in the Action relating to the alleged Biometric Timekeeping System used at or by any Released Party. (*Id.*, ¶ 30.)

### D.    Settlement Administration.

The Parties engaged Simpluris, Inc. ("Simpluris" or "Settlement Administrator") as the Settlement Administrator to execute a comprehensive Notice plan and to draft and mail settlement checks. (Admin. Decl. at ¶ 3.) Simpluris formatted the long form notice to be sent by mail, email, and SMS to Settlement Class Members; additionally, the long form notice was formatted to be made available on the settlement website. (*Id.* at ¶ 5.) On May 1, 2024, Counsel for Defendant

---

[3] The Illinois Equal Justice Foundation was created in 1999 pursuant to the Illinois Equal Justice Act and provides funding to nonprofit organizations that offer free legal assistance and other resources to those unable to afford legal representation.

provided Simpluris with the Class List containing 559 known Settlement Class Member names, mailing addresses, email addresses, telephone numbers, and Social Security numbers. (*Id*. at ¶ 7.) Upon receipt of the Class List, Simpluris compared the address data against the United States Postal Service ("USPS") National Change of Address ("NCOA") database and updated the data accordingly with the changes received from the National Change of Address database. (*Id*. at ¶ 8.) Thirteen records did not contain a valid mailing address, and the Class List was confirmed to contain 560 Settlement Class Members. (*Id.*) On May 8, 2024, Simpluris mailed the Notice to the 546 Settlement Class Members in the Class List for whom a valid mailing address was available. (*Id*. at ¶ 9; Ex. B to Admin Decl.) On June 21, 2024, the Parties notified Simpluris of an additional Settlement Class Member and Simpluris mailed the Notice to the Settlement Class Member. (*Id.* at ¶ 10.) As of August 26, 2024, 37 Notices have been returned by USPS. (*Id*. at ¶ 11.) For the mailings returned without a forwarding address, Simpluris performed an advanced address search (*i.e.,* skip trace) on these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis. (*Id*.) Simpluris used the Class Member's name and previous address to locate a more current address. (*Id.*) Of the 37 returned Notices, 24 Notices were re-mailed to either a newfound address or with forwarding addresses provided by USPS, and 13 Notices were determined to be undeliverable because no updated address was available. (*Id*.) On May 8, 2024, Simpluris sent the Email Notice to 125 Settlement Class Members for whom a valid email address was available; of those, Simpluris successfully delivered Email Notice to 122 Settlement Class Members. (*Id*. at ¶ 12; Ex. C to Admin Decl.) On May 8, 2024, Simpluris sent the SMS Notice to 301 Settlement Class Members for whom a valid telephone number was available. (*Id*. at ¶ 13; Ex. D to Admin. Decl.) Of the various Notice methods employed, Simpluris delivered at least one form of direct Notice (*i.e.*, either a Mail Notice, Email Notice, or SMS Notice) to 552 Settlement Class Members,

or 98.57% of the Settlement Class. (*Id*. at ¶ 14.) Simpluris prepared and maintains a Settlement website at www.rpcbipasettlement.com that includes important dates and deadlines, Settlement-related documents including the Class Action Settlement Agreement and Release, Plaintiff's Unopposed Motion for and Memorandum in Support of Preliminary Approval of Class Action Settlement, the Preliminary Approval Order, and a downloadable version of the Notice of Class Action Settlement. (*Id*. at ¶ 15.) The website has been available to the public since May 8, 2024. (*Id*.) A Settlement-specific toll-free telephone number was included in the Notices and on the Settlement website for the purpose of allowing Settlement Class Members to make inquiries regarding the Settlement. (*Id*. at ¶ 16.) The system is accessible 24 hours a day, 7 days a week, and will remain in operation throughout the settlement administration. (*Id*.) This telephone number is active and has been available to the public since May 8, 2024; the telephone number has received 39 phone calls between May 8, 2024, and August 26, 2024. (*Id*.) The postmark deadline for Settlement Class Members to submit a request for exclusion from the proposed Settlement was June 22, 2024. (*Id*. at ¶ 17.) As of August 26, 2024, Simpluris has received zero requests for exclusion from the proposed Settlement from Settlement Class Members. (*Id*. at ¶ 18.) The postmark deadline for Settlement Class Members to submit an objection to the proposed Settlement was June 22, 2024. (*Id*. at ¶ 19.) As of August 26, 2024, Simpluris has received zero objections to the proposed Settlement from Settlement Class Members. (*Id*. at ¶ 20.)

## IV.  THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23

Under Rule 23(c)(2)(B), notice must provide:

[T]he best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney

if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

As set forth above and demonstrated by the thoroughness of the Notice, the Parties' effort to effectuate notice to the Class Members certainly meets the requirements of Rule 23(c)(2)(B). (*See generally* Admin. Decl.; *see also* Exs. B-D to Admin Decl. (long form notice, e-mail notice, and SMS notice).)

## V. THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE, AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFF'S CLAIMS

Under Rule 23(e), court approval is required for class action settlements in order to ensure they are procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). Courts have held that a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012). "In reviewing a proposed settlement, the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *Young v. Rolling in the Dough, Inc.*, 2020 WL 969616, at *3 (N.D. Ill. Feb. 27, 2020). As set forth in detail below, the proposed Settlement is fair, reasonable, and adequate under Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute over the provisions of BIPA. Accordingly, the Settlement should be granted final approval.

### A. The Settlement Is Fair, Reasonable, and Adequate.

In approving a class action settlement under Rule 23, a court's review of the agreement is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196 (citations omitted); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("*Hiram Walker*"). The court's duty is to evaluate "the general principles governing approval of class action settlements" not the "substantive law governing the claims asserted in the litigation." *Isby*, 75 F.3d at 1197 (citation omitted). However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). To do so, courts consider five factors, including the: (1) strength of plaintiff's case compared to the terms the proposed settlement; (2) likely complexity, length, and expense of continued litigation; (3) amount of opposition; (4) opinion of competent counsel; and (5) stage of the proceedings and discovery completed. *Am. Int'l Grp., Inc.*, 2012 WL 651727 at *2 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). Courts must view the settlement in its entirety and not focus on any individual component. *Isby*, 75 F.3d at 1199.

### B. The Settlement Amount Is Substantial Given the Strength of Plaintiff's Claims and Attendant Risks (First Factor).

The Settlement is substantial considering Rich Products' agreement to settle this case for $546,975.00 for 560 Settlement Class Members. (*See* Settlement Agreement, ¶ 34.) First, all Settlement Class Members who did not exclude themselves will automatically receive an equal share of the Settlement Fund without having to submit a claim form or otherwise "opt in" to the Settlement. (*Id.* ¶ 47.) The monetary relief provided by the Settlement excels in comparison to other statutory privacy settlements, including other BIPA settlements with comparable class sizes.

Thus, every participating Settlement Class Member will receive an estimated gross recovery of $975.00. If the Fee Award, Administrative Fees, and the Incentive Award are approved, each Settlement Class Member will receive approximately $569.00. Because each Settlement Class Member was subject to the same alleged non-compliant BIPA policies and suffered from the same alleged statutory violations, the Settlement provides each Settlement Class Member with identical relief. *See Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999) (equitable treatment of a class is "assured by straightforward pro rata distribution of the limited fund").

When compared to other BIPA settlements, this Settlement favorably compares. *E.g., Marshall v. Lifetime Fitness, Inc*., 2017-CH-14262 (Cir. Ct. Cook Cty.) (in case against employer, paying claimants $270 plus credit monitoring)*; Sekura v. LA Tan*, 2015-CH-16694 (Cir. Ct. Cook Cty.) (in case against tanning salon, claimants split $1.5 million fund for a total of approximately $150 per claimant). This amount also dwarfs the amounts recovered in many other statutory privacy class actions, particularly against a backdrop where settlements have commonly secured no relief to the class or only *cy pres* relief. *See*, *e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir. 2012) (resolving tens of millions of claims under the Electronic Communications Privacy Act ["ECPA"] for a $9.5 million *cy pres*-only settlement—amounting to pennies per class member—where $10,000 in statutory damages were available per claim); *In re Google Buzz Privacy Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3–5 (N.D. Cal. June 2, 2011) (resolving tens of millions of claims, again under the ECPA, for $8.5 million *cy pres*-only settlement).

When courts evaluate the strength of a plaintiff's case based on the merits and balanced against the proposed settlement, courts should refrain from drawing conclusions on issues which have not been fully litigated. *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (noting "[t]he purpose of a fairness hearing is not to resolve the merits of the case, but to determine whether

the settlement is fair, reasonable, and adequate when viewed in its entirety"). Because "[t]he essence of settlement is compromise," *Hiram Walker*, 768 F.2d at 889, courts should not reject a settlement "solely because it does not provide a complete victory to the Plaintiff." *Isby*, 75 F.3d at 1200. Parties to a settlement benefit by resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

This Settlement—providing excellent monetary relief without delay—is highly beneficial for the Settlement Class. When considered in light of the potential hurdles faced in obtaining recovery through continued litigation, and the delay that would entail, the relief is well deserving of this Court's final approval. Though not providing a maximum value that conceivably might be awarded at trial at a later date, the Settlement provides immediate substantial guaranteed monetary benefits now. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"). The Settlement Administrator will send a check by First Class U.S. mail to each Settlement Class Member, including the Plaintiff, who did not submit an exclusion request, equal to each Settlement Class Member's *pro rata* share of the Settlement Fund within 14 calendar days after the Effective Date. (*See* Settlement Agreement, ¶ 67(a).) Checks to the Settlement Class Members will remain valid and negotiable for 150 calendar days from the date of their issuance and may thereafter automatically be canceled if not cashed within that time period. (*Id.,* ¶ 68.) The Settlement Administrator will include language on all settlement checks stating that such checks are void 150 calendar days following the date such check was originally issued.

(*Id.*) The Settlement Administrator will provide counsel for the Parties with bi-weekly reports regarding the status of administration of the Settlement Agreement, including, without limitation, the portion of the Settlement Fund that has not been cashed within 150 calendar days following the date such check was issued. (*Id.,* ¶ 69.) Within 60 calendar days of issuance of settlement checks, the Settlement Administrator will provide a list of any settlement checks that are not cashed/negotiated within 45 calendar days of issuance to counsel for the Parties. (*Id.,* ¶ 70.) Within 10 calendar days thereafter, the Settlement Administrator will attempt to confirm or obtain valid mailing and email addresses, if available, including by telephone, if available, and send a reminder postcard, email, and text to affected Class Members. (*Id.*) If there is any amount remaining after the single distribution of checks, providing a 150-day check cashing period, 50% of such amounts will be transferred to the *cy pres* Illinois Equal Justice Foundation, upon approval by the Court, and 50% will be returned to Defendant. (*Id.,* ¶ 71.) Should the Court require a second round of *pro rata* distribution to those Settlement Class Members who participated in the Settlement by cashing their initial checks or reject the 50% to be returned to the Defendant, the Settlement will not be impacted. (*Id.*)

Here, the proposed Settlement ensures that participating Class Members will receive a guaranteed Settlement Payment, without having to submit a claim form, that is reasonable and consistent with the established facts as applied to the governing law. And, the Settlement ensures that the Settlement Class Members will receive significant monetary relief *now.* In light of the significant recovery this Settlement provides and the attendant risks of litigation, this factor weighs in favor of final approval.

**C.      Litigation Through Trial and Appeals Would Be Complex, Costly, and Long (Second Factor).**

The complexity, length, and expense of further litigation that will be avoided by the proposed Settlement is the second factor to be considered, which also weighs in favor of final approval. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000). "As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). Here, the Settlement allows participating Settlement Class Members to receive immediate money, avoiding lengthy and costly additional litigation.

In attaining a settlement prior to fully engaging in lengthy and expensive discovery, dispositive motions, and trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the Settlement Class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). What lay ahead for the Parties would be potentially years more of litigation—all of which could pose the possibility of significant stumbling blocks for Plaintiff and the Class. Although Plaintiff may be confident on the merits, continued litigation is subject to considerable risks and costs if the case is not settled as well as a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002). The proposed Settlement provides immediate benefits to all Settlement Class Members and should be finally approved.

**D.      The Reaction of the Class Has Been Positive (Third Factor).**

The Settlement Class's reaction to the Settlement has been overwhelmingly positive and weighs strongly in favor of final approval. Zero Class Members opted-out of the Settlement, and

zero Class Members objected. (Admin Decl. at ¶¶ 18, 20.) The absence of objections by persons in the Settlement Class is significant in determining whether the proposed Settlement is reasonable to the Settlement Class as a whole. *See Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1166, 1169 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many Class Members"); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226-27 (S.D. Ill. 2001) (same). The lack of any opposition or exclusion demonstrates overwhelming support for the Settlement. Accordingly, this factor also favors final approval.

### E. Competent Counsel for All Parties Endorse this Agreement (Fourth Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Cty. of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980) (overruled on other grounds)). Courts cannot, though, rely solely on that opinion. *See Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). Importantly, there was absolutely no collusion here. *See Isby*, 75 F.3d at 1200. Plaintiff actively litigated this Action for over six years. (Exhibit 4, Declaration of Andrew C. Ficzko, ("Ficzko Decl."), ¶ 1.) The issues developed sufficiently for Class Counsel to assess the strengths and weaknesses of the claims and evaluate the appropriateness of any proposed resolution. (*Id*. ¶ 14.)

Courts have held "[t]here is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Herbert B. Newberg & Alba Conte, *Newberg of Class Actions ("Newberg")*, §11.41 at 11-88 (4th ed. 2002); *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Class Counsel are competent and experienced in class actions and are familiar with the strengths and weaknesses of the claims and defenses. (Ficzko Decl. ¶ 14.) With that litigation experience and their intimate knowledge of the facts of the case and the legal issues

facing the Class Members, Class Counsel were capable of making, and did make, well informed judgments about the value of the claims, the time, costs and expense of protracted litigation and appeals, and the adequacy of the Settlement. (*Id.*, ¶¶ 14-15.) Thus, Class Counsel believes that the Settlement is certainly in the best interest of the Settlement Class. (*Id.*, ¶ 15.) This factor therefore weighs in favor of final approval.

### F. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).

This complex class action was resolved after over six years of litigation. This period involved extensive research, analysis, and investigation. The stage of litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the Settlement. (*Id.*, ¶ 14.) Given the significant time and resources spent by the Parties exchanging information and advancing settlement negotiations, this final factor favors final approval of the Settlement.

## VI. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court grant his Motion for and Memorandum in Support of Final Approval of Class Action Settlement and enter the Proposed Final Approval Order, attached as Exhibit 3.

Date:   August 29, 2024

Respectfully Submitted,

*/s/ Andrew C. Ficzko*

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**STEPHAN ZOURAS, LLC**
222 West Adams Street
Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*

rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

**CLASS COUNSEL**

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on August 29, 2024, I filed the attached with the Clerk

of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ Andrew C. Ficzko*

17